# EXHIBIT C

# SEVERANCE PAY PLAN

## OF

### JPMORGAN CHASE & CO.
As Amended through June 30, 2005
Reflects
Amendments as of April 1, 2004 Resulting from Bank One Corporation Merger

SEVERANCE PAY PLAN

OF JPMORGAN CHASE & CO.

TABLE OF CONTENTS

Preface ................................................................................................................. iii

Article I         Purpose ....................................................................................... 1

Article II        Definitions ................................................................................. 1

Article III       Eligibility .................................................................................. 6

Article IV        Benefits ..................................................................................... 8

Article V         Participating Employers ........................................................ 11

Article VI        Plan Administration ............................................................... 12

Article VII       Miscellaneous ......................................................................... 13

264648-v1

FROM JPMORGANCHASELEGAL    39FL.    (TUE) 3.14'06 12:15/ST.12:13/NO.4860102098 P 6

## PREFACE

This Severance Pay Plan of JPMorgan Chase & Co. is intended to be a welfare plan as defined in Section 3(1) of the Employee Retirement Income Security Act of 1974 ("ERISA").

## PLAN

The Employers adopting this Plan have voluntarily determined to offer assistance to certain of their Employees whose employment involuntarily terminates as a result of the events specified in this Plan. (Unless an event is described in this Plan, no benefits are provided to an Employee.) The severance payment provided hereunder is intended to provide financial assistance to such Employees. Such payment does not represent consideration for past services rendered.

Outplacement assistance under the Plan is provided to help Employees find other employment. Such outplacement assistance is intended to complement the independent job search efforts of affected Employees. In all events, the responsibility for seeking, identifying and locating other employment remains with the Employee.

This Plan can be amended, discontinued or terminated, in whole or in part, without notice, and benefits hereunder, whether in an individual case or more generally, may be altered, reduced or eliminated without notice. The benefits provided hereunder are not vested nor do they represent a contractual undertaking by participating Employers. Because there is no entitlement to benefits under this Plan, individual determinations may be made as may be deemed to be in the best interest of an Employer.

As of the Effective Date, this Plan supersedes all statements, plans or policies with respect to providing benefits to employees, whose jobs have been eliminated, including any and all statements, plans or policies with respect to providing benefits because of any of the events described in the Plan. This Plan may be terminated or amended or benefits curtailed at anytime.

With respect to Notifications dated after June 30, 2005, this Plan is no longer effective. A new Severance Plan, effective July 1, 2005, applies to Notifications dated after June 30, 2005.

ARTICLE I

PURPOSE

1.1    No Right to Severance.  In amplification of the Preface, this Plan does not provide severance benefits to any terminated Employee as a matter of right.

1.2    Discretionary.  The payment of a severance benefit to a terminated Employee is a matter solely within the discretion of the Employer; provided that severance benefits are never provided under this Plan or any formal or informal Plan of an Employer without a written Notification.  Because of discretionary nature of this plan, any Employer reserves the right to provide different level of benefits, as well as eligibility criteria, for an individual employee or groups of employees or business units.

1.3    Defines General Circumstances.  The purpose of this Plan is to define those circumstances under which the Employer may, in its discretion, grant severance benefits to an eligible Employee.

1.4    Application to Bank One Employees. This Plan has no application to those individuals who were employed by Bank One Corporation or its Subsidiaries immediately prior to Bank One Corporation's merger into JPMorgan Chase & Co.   Such individuals will be subject to the Severance Plan of Bank One Corporation.

1.5    Termination of Plan.  This Plan is no longer effective for Notifications dated after June 30, 2005.  It has been superseded by a new Severance Plan applicable to all Employees of JPMorgan Chase, including former Bank One Employees.

ARTICLE II

DEFINITIONS

2.1.    Whenever used herein, unless the context otherwise indicates, the following terms shall have the meanings set forth below:

Administrator:          The individual who holds the title of Director Corporate Human Resources of the Corporation or holds the successor position or title.

Base Salary:            An amount equal to (i) the per annum amount that a Participant is scheduled to receive from his Employer as salary or wages for services rendered (including shift differential, but excluding all bonuses, commissions, overtime, and other forms of special or incentive remuneration) immediately preceding the Date of Termination of

1

Employment divided by (ii) 52. (In the case of an individual who does not receive salary or wages and receives instead draw, commissions in excess of draw or production overrides, the per annum amount shall be such amount, including zero, as the Employer may prescribe from time to time.)

Benefit Period: The length of time certain welfare benefits may be maintained by a Participant as described in Section 4.2.

Chase: The Chase Manhattan Corporation after its merger with Chemical Banking Corporation and prior its merger with J.P. Morgan & Co. Incorporated.

Corporation: JPMorgan Chase & Co., a corporation incorporated under the laws of the State of Delaware.

Date of Notification: The date set forth on notice described in Section 3.1.

Date of Termination of Employment: Close of business of the last day for which an Employee received compensation for services rendered to an Employer as specified on the payroll records of the Employer.

Effective Date: April 1, 2004 and as amended thereafter.

Employee: Any individual who is (i) regularly scheduled to work at least 20 hours per week, (ii) on the United States payroll of an Employer and (iii) classified as a full-time or part-time salaried Employee of an Employer, in each case, in accordance with the Employer's classifications then in effect; provided that, for purposes of this Plan, an individual shall not be considered an Employee if such individual is on a Leave of Absence on the Date of Notification. By way of further clarification, a person who (A) serves only as a director of an Employer, (B) agrees to render services as or to an independent contractor, (C) is considered by the Employer to be rendering services as or to an independent contractor or (D) whose compensation is paid solely in the form of a commission or fee under contract, is not considered employed by an Employer.

2

| | |
|---|---|
| Employer: | The Corporation or any Subsidiary of the Corporation which has adopted the Plan pursuant to Article IV hereof or any successor to the Corporation or to any such Subsidiary. Any reference to a particular Employee's Employer is intended to refer to the Employer which is or was the Employer of such Employee at the time in question. Any Employee employed by more than one Employer shall be considered to be an Employee of the Employer which is or was such Employee's principal employer at the time in question. |
| Heritage Chase: | The Chase Manhattan Corporation, a corporation incorporated under the laws of the State of Delaware, immediately prior to its merger with the Chemical Banking Corporation (a predecessor of the Corporation). |
| Heritage Morgan: | J.P. Morgan & Co. Incorporated, a corporation incorporated under the laws of the State of Delaware, immediately prior to its merger with The Chase Manhattan Corporation (a predecessor of the Corporation). |
| Leave of Absence: | A leave of absence from employment (whether or not paid) with the consent of an Employer. |
| MHC: | Manufacturers Hanover Corporation. |
| Notification: | The written notification described in Section 3.1. |
| Participant: | An Employee who is eligible to receive benefits under the Plan in accordance with Section 3.1 following the Date of Termination of Employment; provided that any Employee who has a contract or is covered by a program, in either case providing severance benefits, shall not be a Participant under this Plan and shall not receive benefits hereunder, irrespective of whether he or she receives benefits under such program or contract; provided, further, that an Employee who is described in Section 409A (a)(2)(B) of the Internal Revenue Code shall not be eligible for benefits under this Plan. |
| Plan: | The Severance Pay Plan of the Corporation, as set forth in this document and as it may be amended from time to time. |
| Subsidiary: | Any corporation or other business entity (other than the Corporation) that is: (a) included in a controlled group of corporations within which the Corporation is included, as provided in Section 414(b) of the |

3

Internal Revenue Code of 1986, as amended; or (b) a trade or business under common control with the Corporation, as provided in Section 414(c) of such Code.

Year of Service:      A twelve-month uninterrupted continuous period of active employment as an Employee of an Employer, provided that:

(i)      a period of uninterrupted continuous active employment of an individual shall only include the length of employment with his or her latest Employer at the Date of Termination of Employment except as provided below;

(ii)      in amplification of the term "latest Employer",

(a)      if an individual had been employed by MHC or its Subsidiaries and had also been employed by Chemical Banking Corporation or its Subsidiaries prior to Chemical Banking Corporation's merger with MHC, Years of Service shall include only service with the entity employing the individual immediately prior to the merger plus continuing service with the Corporation and its Subsidiaries thereafter;

(b)      if an individual had been employed by Heritage Chase or its Subsidiaries and had also been employed by Chemical Banking Corporation or its Subsidiaries (or by MHC) prior to the Chemical Banking Corporation's merger with Heritage Chase, then Years of Service shall include only service with the entity employing the individual immediately prior to the merger, plus continuing service with the Corporation and its Subsidiaries thereafter;

(c)      if an individual had been employed by Heritage Morgan or its Subsidiaries and had also been employed by The Chase Manhattan Corporation or its Subsidiaries prior to The Chase Manhattan Corporation's merger with Heritage Morgan, then Years of Service shall include only service with the entity employing the individual immediately prior to

the merger, plus continuing service with the Corporation and its Subsidiaries thereafter;

(iii) a period of uninterrupted continuous active employment of an individual shall include a period of active employment with a prior Employer if the Employee, at the request of such prior Employer transferred, to the employ of his/her current Employer without interruption in service;

(iv) an Employee's period of employment will not be deemed interrupted if the Employee is re-employed by the same Employer within six months of his Date of Termination of Employment; and

(v) an Employee's period of employment may include, in the sole and absolute discretion of the Administrator, a period of service with an entity unrelated to the Corporation in the case of immediate employment following the acquisition of such unrelated entity or other corporate transaction with such entity.

By way of further clarification, for purposes of the Exhibits attached hereto, Years of Service shall be determined as of the Date of Termination.

2.2.    Whenever used herein, words in the masculine form shall be deemed to refer to females as well as to males.

## ARTICLE III

## ELIGIBILITY

3.1.    <u>Participation</u>.  Subject to Article I and Sections 3.2 and 3.3, on and after the Effective Date, an Employee who is not on a Leave of Absence may be a Participant if:

(i)    such individual's employment is involuntarily terminated with an Employer because of:

(a)    a relocation of the Employee's place of work to a location that is more than a reasonable commuting distance (as determined by the Administrator in his sole discretion) from such individual's existing place of work; or

(b)    a sale or closing of all or part of the business unit in which the Employee is employed; or

5

(c)     an elimination or re-assignment of the job position or functions held or performed by the Employee; and

(ii)   an Employee described in (i) above receives a specific written notification from the Employer addressed to the Employee providing that the Employee is eligible for benefits under this Plan as a result of the termination of employment and the amount of such benefits ("Notification"), and

(iii)  notwithstanding (i) and (ii) above, the Administrator will condition the effectiveness of the Notification and the payment of severance on the execution of a release ( in such form as the Administrator may designate) and such other agreements as the Administrator may specify including, but not limited to, non-solicitation of customers and employees.

By way of amplification of the foregoing, no benefits under this Plan or any other formal or informal Plan are payable with respect to any termination of employment (i) absent receipt of the Notification by the Participant or (ii) following receipt of the Notification the execution and return of the release with in the period specified by the Administrator. Notwithstanding receipt of the Notification and execution of a release, the Employee shall not be a Participant and receive benefits hereunder unless such individual shall have complied with any reasonable request of his/her Employer, including, but not limited to, cooperating with the Employer through out the Benefit Period. If an individual fails to comply with any such reasonable request, such individual's employment (if not previously terminated) shall terminate and no benefits shall be provided hereunder (or in the case of a former Employee, benefits shall cease).

3.2    Ineligible for Benefits. An Employee shall not be a Participant or eligible for benefits hereunder if the Administrator (or his or her delegates), in his/her sole discretion, determines that such Employee (i) has been offered another position or reassigned to perform other functions (whether or not such position or reassignment is accepted or comparable to the current position) by any Employer, Subsidiary, affiliate, any purchaser of a business unit or any other potential employer with whom an Employer has made arrangements for the employment of the Employee, (ii) has been terminated for misconduct, performance reasons (including attendance or lateness) or any other reason unrelated to the events described in Section 3.1, (iii) has not received a written Notification or (iv) has not executed and returned the release and/or agreement provided by the Administrator within the time period set forth in the Notification. By way of

clarification, it is not the intent of the Plan (notwithstanding Section 3.3) to provide benefits to an Employee who has agreed to accept a position or reassignment more than a reasonable commuting distance from such individual's current location or who continues employment with a Subsidiary, Employer or purchaser of a business unit or any other potential employer with whom an Employer has made arrangements for the employment of the Employee.

     3.3          Redeployment. An Employee shall not be a Participant if such individual's position is eliminated by action of his Employer and if, prior to his/her Date of Termination of Employment, such individual obtains continued employment with an Employer. However, if during the ninety-day period following commencement of such employment, the Employer or Employee determines that it is desirable for the Employee's employment to terminate and his/her employment so terminates within such period, then the Employer may grant severance benefits hereunder in its discretion; provided that the additional period of employment shall not count as service for purpose of severance benefits hereunder.

ARTICLE IV

BENEFITS

     4.1.    Amount of Severance. (a) In lieu of any wages, salary, bonus, other compensation not otherwise earned and payable (including any amounts under any annual incentive compensation program of the Corporation) or any other severance program of the Corporation or an Employer, effective for Notifications dated on or April 1, 2004, a Participant shall receive, following the Date of Termination of Employment, severance equal to the number of weeks of a Participant's Base Salary, as set forth on the Exhibit applicable to such individual, opposite such individual's Years of Service. (The Administrator has the authority in his/her sole and absolute discretion to determine the Exhibit applicable to an Employee and such determination shall be final and conclusive on all parties.) Such severance shall be payable in equal semi-monthly installments following the Date of Termination of Employment.

7

(b)    Business Unit Exception.    Employers, with the consent of the Administrator, may provide higher or lower levels of benefits than those set forth in Exhibits I and II for particular Employees of various business units. With respect to the Bank One Corporation merger and resulting actions that have or will result in a geographic relocation of certain business functions after March 31, 2004, as well as the closing of certain credit card centers, Exhibit III sets forth the levels of benefits that may be provided and those Employees who are eligible for such benefits.

(c)    Outplacement.    Participants receiving benefits hereunder may receive such outplacement services as the Employer shall determine.

(d)    Termination of Employment For Salaried Part-time.    Severance for all part-time salaried employees shall be based on their Base Salary in effect at the Date of Termination of Employment.

4.2.    Medical and Other Welfare Benefits.    A Participant may elect to continue to maintain medical and/or dental coverage from his or her Employer, as well as other welfare benefits as may be specified from time to time, at the active employee rate for a number of weeks equal to the number of weeks of Base Salary payable as severance under Section 4.1(a) ("Benefit Period"); provided that such coverages will cease if a Participant requests a lump sum of the remaining installments of severance (lump sums are not permitted with respect to Notifications dated after January 1, 2005) or fails to pay for the cost of coverage; provided, further, that if the Participant had any coverages, subject to COBRA, as of the date the Benefit Period ends, a Participant may continue such coverages for the full COBRA period. In the event that a Participant on termination of employment qualifies for retiree medical coverage and continues medical coverage, such Participant for the Benefit Period shall pay for such medical coverage at a cost no greater than that of a similarly situated Participant who has elected similar coverage.

4.3    Employer Paid Group Term.    For the Benefit Period, the Employer will provide a Participant with Employer paid group-term life insurance on such individual's life equal to individual's actual Employer paid group term life insurance coverage on the Date of Termination of Employment; provided that if such Participant qualifies for retiree life insurance on the Date of Termination of Employment, any reduction in the amount of coverage shall commence on the day following the expiration of the Benefit Period; provided further that if a Participant requests a lump sum payment of severance or of any remaining severance installments (lump sums are not permitted

8

with respect to Notifications dated after January 1, 2005), such Employer paid group-term life insurance shall cease.

    4.4    <u>Loss of Benefits</u>.  No benefits shall be provided (or benefits shall cease) if the Participant:

        (i)    is found by such individual's Employer at any time to have engaged in misconduct, including an act or acts of willful misfeasance or nonfeasance of his duties; or

        (ii)    fails to perform any services requested by such individual's Employer between the Date of Notification and the Date of Termination of Employment; or

        (iii)    demonstrates a deterioration in performance between the Date of Notification and the Date of Termination of Employment which warrants termination of his employment; or

        (iv)    is offered another position or is reassigned to perform other functions, which position or reassignment is determined by the Administrator to be within a reasonable commuting distance (whether or not such new position or functions are with an Employer) or refuses to interview for another position with the Employer, a Subsidiary or affiliate, purchaser of a business unit, or any other potential employer with whom an Employer has made arrangements for the potential employment of the Employee; or

        (v)    subject to Section 3.3, voluntarily terminates employment with Employer for any reason, including, but not limited to, a change in bonus, salary, incentive compensation, title or job functions; or

        (vi)    fails to cooperate with reasonable requests of Employer for assistance during the Benefit Period; or

        (vii)    engages in conduct during the Benefit Period detrimental to his/her Employer.

    4.5    <u>Offsets</u>.  Any benefits hereunder may be reduced by any amounts owed to an Employer by the Participant (including, but not limited to, overpayments of compensation or benefits or salary or other advances) and may be reduced in the discretion of the Administrator by

9

any amounts previously provided by the Corporation and its Subsidiaries (or any predecessor Employer) duplicative of benefits hereunder and any and all withholdings required by law or authorized by the Participant.

4.6    Allocations. Payments of benefits under this Plan shall be made by the Employer who last employed the Participant. In case such benefits are payable with respect to a Participant whose service included employment with more than one Employer, the Administrator in his or her sole discretion shall determine any amounts to be reimbursed by the prior Employer to the Employer paying benefits hereunder.

## ARTICLE V

## PARTICIPATING EMPLOYERS

This Plan may be adopted by any Subsidiary by written act of its Board of Directors or Human Resources Executive and approval of the Administrator. Upon such adoption, the Subsidiary shall become an Employer hereunder and the provisions of the Plan shall be fully applicable to all Employees of that Subsidiary or to such classes of Employees as the Subsidiary shall designate as eligible for benefits hereunder. Further, any Employer may cease to be an Employer as defined in the Plan by providing the Administrator with written notice 60 days prior to the date that participation shall cease.

## ARTICLE VI

## PLAN ADMINISTRATION

6.1    Administrator. The Plan shall be administered by the Administrator on behalf of all Employers. The Administrator shall have all powers necessary to administer the Plan. The Administrator or his delegates may, from time to time, establish rules for administration of the Plan and shall have sole responsibility and complete discretion to interpret all terms and provisions of the Plan and to decide any matters in connection with the Plan including, but not limited to, whether an (A) individual (i) qualifies to participate, (ii) is eligible or continues to be eligible for benefits, and/or (iii) has refused an offer of employment and (B) the calculation of the amount and type of benefits to which such individual (including the determination of which Exhibit is applicable to the individual) is entitled hereunder. The Administrator may delegate all or part of his/her responsibilities hereunder to others. The Administrator or his/her delegates are empowered to make case by case or specific group by group determinations and interpretations. The Administrator or

10

his delegates may grant benefits in such circumstances in which they may deem appropriate which act of discretion shall not be deemed precedential for future grants of benefits or denial. To the extent permitted by law, interpretations and determinations of the Administrator or his delegates shall be final and conclusive.

6.2.    Claims and Appeals. If an individual does not receive benefits hereunder, such individual may make such claim by writing to his or her Employee Relations Representative within six months after the events giving rise to the claim arose. Such claim shall (i) be in writing, (ii) include the name and address of the individual, and (iii) include a statement of the facts and reason that the individual believes that the claim should be considered. A written decision shall be provided to the individual within 90 days after the claim is received; provided that it may be extended for an additional period in conformity with regulations issued under ERISA. If such claim is denied, an appeal, including all information set forth above, may be made to the Administrator or his/her delegate within 60 days of the denial. A written decision shall be provided to the individual within 60 days after the appeal is received; provided that such period may be extended for an additional period in conformity with regulations issued under ERISA.

6.3    Fiduciary. The Administrator or his/her delegates with respect to the duties set forth in Articles III, IV and VI and any individual responding to an appeal shall be deemed a fiduciary under ERISA.

## ARTICLE VII
## MISCELLANEOUS

7.1.    Amendments, Termination. The Corporation reserves the right to amend, discontinue or terminate the Plan in whole or part, without notice, on behalf of itself and any Employer at any time in writing by act of the Administrator, and benefits hereunder, whether in an individual case or more generally, may be altered, reduced or eliminated by act of the Administrator, and without notice or regard to the effect such action would have on any Participant.

7.2.    Supersede. This Plan supersedes all statements, plans or policies with respect to providing separation benefits to Participants whose jobs have been eliminated and does not provide retroactive benefits.

7.3.    No Rights of Employment. This Plan does not constitute a contract of employment or impose on any Employer (or potential employer) any obligation to retain any Employee or Participant as an employee, to change the status of an Employee's or a Participant's employment, or to change the policies of any Employer regarding termination of employment. The benefits

11

provided hereunder are not vested nor do they represent a contractual undertaking by participating Employers.

7.4    <u>Not Assignable</u>.   No right to receive benefits hereunder shall be transferable or assignable.  Any attempt to assign or transfer benefits shall be void and of no force or effect.

7.5.    <u>New York Law</u>.  The validity, interpretation, construction and performance of the Plan shall in all respects be governed by the laws of the State of New York.

Exhibit I

Effective For Involuntary Terminations Of Employment
Pursuant to Notifications dated on or after April 1, 2004

Subject to the other terms and conditions of this Plan, this Exhibit 1 shall only apply to Participants whose annual Base Salary is less than $150,000 as of the Date of Notification. By way of further amplification of the foregoing, no severance under this Exhibit 1 shall be paid to:

- Individuals who have contracts or who are covered under another program, in either case providing for severance benefits (whether or not benefits are actually received under such program or contracts).
- Individuals whose severance would be calculated under Exhibit II or III (whether or not benefits are actually received).

Severance under this Exhibit is conditioned on receipt of a release in such form as the Administrator shall specify.

| Years of Continuous Service | Weeks of Base Salary As Severance |
|---|---|
| 0-2 | 4 |
| 3 | 7 |
| 4 | 8 |
| 5 | 10 |
| 6 | 12 |
| 7 | 14 |
| 8 | 16 |
| 9 | 19 |
| 10 | 22 |
| 11 | 25 |
| 12 | 28 |
| 13 | 31 |
| 14 | 34 |
| 15 | 37 |
| 16 | 40 |
| 17 | 43 |
| 18 | 46 |
| 19 | 49 |
| 20 | 52 |
| 21 | 54 |
| 22 | 56 |
| 23 | 58 |
| 24 | 59 |
| 25 | 60 |
| 26 | 61 |
| 27 | 62 |
| 28 | 63 |
| 29 | 64 |
| 30 or more | 65 |

(a)    Years of Service are determined as of the Date of Termination of Employment.

(b)     A partial Year of Service of at least six months, determined as of the Date of Termination of Employment, shall be deemed one Year of Service solely for purpose of Exhibit I.

ii

Exhibit II

Effective For Involuntary Terminations Of Employment
Pursuant to Notifications dated on or after April 1, 2004

Subject to the other terms and conditions of this Plan, this Exhibit II shall apply only to Participants whose annual Base Salary is at $150,000 or more as of the Date of Notification. By way of amplification of the foregoing, no severance shall be paid under Exhibit II to:

- Individuals whose severance would be calculated under Exhibit I or III (whether or not benefits are actually received).
- Individuals who have contracts or who are covered under another program, in either case providing for severance benefits (whether or not benefits are actually received under such program or contracts).

Severance under this Exhibit is conditioned on receipt of a release in such form as the Administrator shall specify.

| Years of Continuous Service | Weeks of Base Salary As Severance |
|---|---|
| 0-5 | 16 |
| 6 | 18 |
| 7 | 21 |
| 8 | 24 |
| 9 | 27 |
| 10 | 30 |
| 11 | 33 |
| 12 | 36 |
| 13 | 39 |
| 14 | 42 |
| 15 | 45 |
| 16 | 48 |
| 17 | 49 |
| 18 | 50 |
| 19 | 51 |
| 20 | 52 |
| 21 | 54 |
| 22 | 56 |
| 23 | 58 |
| 24 | 59 |
| 25 | 60 |
| 26 | 61 |
| 27 | 62 |
| 28 | 63 |
| 29 | 64 |
| 30 or more | 65 |

iii

(a)     Years of Service are determined as of the Date of Termination of Employment.

(b)     A partial Year of Service of at least six months, determined as of the Date of Termination of Employment, shall be deemed one Year of Service solely for purpose of Exhibit II.

iv

Exhibit III
Business Unit Exception
With Respect to Bank One Corporation Merger

As provided in Section 4.1(b), this Exhibit defines those circumstances in which Eligible Employees of certain business units may receive the Enhanced Severance Benefits set forth below.

**Business Units**
Business units subject to this Exhibit are
- specified business units of the Credit Card Division that are relocated or eliminated (including the closing of a Credit Card Center) because the Division is headquartered in Delaware;
- specified business units of the Retail Banking Division that are relocated or eliminated because the Division is headquartered in Chicago;
- specified business units of the Middle Market Division that are relocated or eliminated because the Division is headquartered in Chicago, and
- specified business units of the Investment Bank that are relocated or eliminated because the Division is headquartered in New York.

The Administrator (or his designee), in his sole and absolute discretion, shall determine and specify the business units of the above Divisions that are subject to this Exhibit, and such determination shall be final and conclusive on all parties.

**Definition**
An Eligible Employees is an Employee
- employed on or before March 31, 2004 by one of the business units that the Administrator has determined to be the subject of this Exhibit;
- whose employment terminates with an Employer in such a manner, so that he or she would be a Participant as defined in Section 3.1 of this Plan;
- but only if the job elimination or other termination of such Employee is determined by the Administrator (or his designee), in his sole and absolute discretion, to be the immediate and direct result of the business unit's relocation or elimination (including the closing of a Credit Card Center) as a result of a geographic relocation of the business function on or after March 31, 2004;
  - in the case of an Eligible Employee who is employed by a Credit Card Center, such individual must be employed as of the date that the center is closed, unless the Administrator specifically determines that an earlier date shall be used;
- whose employment terminates on or before January 31, 2006, and
- whose Notification specifically provides for the Enhanced Severance Benefits set forth below, and who in fact receives such a Notification

The Enhanced Severance Benefits are not payable unless each of the above conditions is satisfied. By way of further clarification, as among Employees employed by the specified business units, it is expected that the Administrator will determine that certain job eliminations are not the result of a geographic relocation of the business function; and accordingly such Employees are only entitled to the benefits, as applicable, set forth on Exhibits I and II.

Additionally, the Administrator in his sole and absolute discretion may determine that an Employee in a staff position supporting such business units on a substantially full-time basis would be an Eligible Employee.

**Enhanced Severance Benefits**

Subject to the other terms and conditions of this Plan and this Exhibit, Eligible Employees shall receive Enhanced Severance Benefits based upon the following schedules except that no benefits under this Exhibit shall be paid to:

- Individual who have contracts providing for severance benefits or who are subject to the Executive Severance Program whether or not they receive benefits there under.
- Individuals whose severance would be calculated under Exhibit I or II (whether or not benefits are actually received).

| Non-Managing Directors/Senior Vice President Schedule | | Managing Directors/Senior Vice President Schedule | |
|---|---|---|---|
| Years of Continuous Service | Weeks of Base Salary | Years of Continuous Service | Weeks of Base Salary |
| 0-2 | 8 | 0-17 | 52 |
| 3 | 9 | 18 | 54 |
| 4 | 12 | 19 | 57 |
| 5 | 15 | 20 | 60 |
| 6 | 18 | 21 | 63 |
| 7 | 21 | 22 | 66 |
| 8 | 24 | 23 | 69 |
| 9 | 27 | 24 | 72 |
| 10 | 30 | 25 | 104 |
| 11 | 33 | | |
| 12 | 36 | | |
| 13 | 39 | | |
| 14 | 42 | | |
| 15 | 45 | | |
| 16 | 48 | | |
| 17 | 51 | | |
| 18 | 54 | | |
| 19 | 57 | | |
| 20 | 60 | | |
| 21 | 63 | | |
| 22 | 66 | | |
| 23 | 69 | | |
| 24 | 72 | | |
| 25 | 104 | | |

(a)    Years of Service are determined as of the Date of Termination of Employment.

(b)     A partial Year of Service of at least six months, determined as of the Date of Termination of Employment, shall be deemed one Year of Service solely for purpose of Exhibit III.

# EXHIBIT D



**Case Information**
*Case # 983927-0*

| | | |
|---|---|---|
| Pay # 474707 | Name | Pinsky, Susan |
| SSN 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 | Address | 300 E. 64th St |
| Co. ID 802 | | New York, NY 10021 |

Bus. Phone  (212) 638-1958
Home Phone  (212) 477-4481

**Reported By**

| | | |
|---|---|---|
| Pay # U305945 | Name | Dee Lakhani |
| SSN | Relationship | Manager |

Alt. Phone  2123914097

| | Opened By | Assigned To | Closed By |
|---|---|---|---|
| | Leaves and Terms Databa | Saundra Prejean | Saundra Prejean |
| Dates | 06/30/2005 | 03/01/2006 | 03/09/2006 |

**Case Type**  Leave of Absence / Hartford Disability
**Priority**  Urgent

**Case Notes:**

| | Appended On | Appended By | Details |
|---|---|---|---|
| 0 | 03/01/2006 08:16 A | Saundra Prejean | CASE REASSIGNED ON 03/01/2006 TO Belinda Kennedy, BY Saundra Prejean. |
| | | | CASE REASSIGNED ON 03/01/2006 TO Saundra Prejean, BY Saundra Prejean. |
| 0 | 02/08/2006 02:37 Pl | Saundra Prejean | Per call to Hartford, clm has been approved. Requested that they fax copy to me. |
| 0 | 12/13/2005 12:40 Pl | N Richard Clark | EE approved for LTD per Hartford eff 12/12/05. |
| 0 | 12/06/2005 02:39 Pl | Shana Saunders | CASE REASSIGNED ON 12/06/2005 TO Saundra Prejean, BY Shana Saunders. |
| 0 | 12/06/2005 02:36 Pl | Shana Saunders | Keyed EE unpaid LOA LSP eff 12-12-05 (STD ends). Reassigning to LTD round robin. |
| 0 | 10/20/2005 11:22 A | Shana Saunders | Approved with Hartford thru 12-11-05 |
| 0 | 09/19/2005 11:34 A | Shana Saunders | Called Hartford. EE has submitted additional info beyond approval date of 9-11-05 |
| 0 | 09/08/2005 10:01 A | Shana Saunders | Approved with Hartford thru 9-11-05 |
| 0 | 09/02/2005 10:33 A | N Richard Clark | See Tier II notes for email. |
| 0 | 08/24/2005 08:55 A | Shana Saunders | Approved with Hartford thru 8-21-05 |
| 0 | 08/15/2005 12:05 Pl | N Richard Clark | See Tier II notes for email communication |
| 0 | 08/09/2005 11:20 A | Shana Saunders | Claim pending with Hartford |
| 0 | 07/26/2005 10:20 A | Shana Saunders | Claim is pending with Hartford |
| 0 | 07/18/2005 10:46 A | Shana Saunders | Claim is pending with Hartford |
| 0 | 07/18/2005 10:42 A | Shana Saunders | Keyed EE on partial pay eff 7-18-05 |
| 0 | 07/01/2005 08:41 A | Shana Saunders | Processed disability LOA eff 6-13-05. Partial pay eff 7-18-05 |
| 0 | 06/30/2005 07:40 Pl | Leaves and Terms Dat | LOA Reported Via LTDB Database |
| 0 | 06/30/2005 07:40 Pl | Leaves and Terms Dat | COMM |
| 0 | 06/30/2005 07:40 Pl | Leaves and Terms Dat | Disability is based on base pay only. |

**Tier II Notes:**

| | Appended On | Appended By | Details |
|---|---|---|---|
| 0 | 09/02/2005 10:33AM | N Richard Clark | ----- Forwarded by N Richard Clark/JPMCHASE on 09/02/2005 10:32 AM ---- |
| | | | Home Equity Human Resources - Tel (602) 221-4740 |
| | | | Barbara Zimmer |



**Case Information**
Case # 983927-0

09/02/2005 09:53 AM

To: N Richard Clark/JPMCHASE@JPMCHASE
cc:
Subject: Re: Fw: LOA - Susan Pinsky U474707

Hello Richard,

I still haven't gotten an update on this LOA. Can you see if there is any new
information? Who can I escalate this to? She has been out since 6/13/05.

Thanks!!

Barbara Zimmer
HR Business Partner
Chase Home Finance - Home Equity
(602) 221-4740  Office
(602) 221-4716  Fax

> N Richard Clark
> 08/15/2005 10:06 AM
>       To: Barbara Zimmer/JPMCHASE@JPMCHASE
>       cc:
>       Subject: Re: Fw: LOA - Susan Pinsky U474707

OK...

According to the Examiner at Hartford, Lisa Becker, the employee is seeing
multiple physicians; none of which want to take "ownership" of placing her out
on disability, but all agree that she needs to be out. Lisa is trying to gather all
of the data to make the determination, which is really delaying the decision
process beyond what is normal for Hartford.

Hope this helps somewhat.

Richard
----- Forwarded by N Richard Clark/JPMCHASE on 08/15/2005 11:59 AM ----
-

> N Richard Clark
> 08/15/2005 11:50 AM
>
>       To: Barbara Zimmer/JPMCHASE@JPMCHASE
>       cc:
>       Subject: Re: Fw: LOA - Susan Pinsky U474707

Sure!  Let me do a little checking for you. I see that her claim is still pending
at Hartford, but I'll call to get specifics and let you know.

Home Equity Human Resources - Tel (602) 221-4740
      Barbara Zimmer



**Case Information**
Case # 983927-0

08/15/2005 11:40 AM

    To: N Richard Clark/JPMCHASE@JPMCHASE
    cc:
    Subject: Fw: LOA - Susan Pinsky U474707

Hello!

Any possibility that you might be able to assist me with an update on this case?

Barbara Zimmer
HR Business Partner
Chase Home Finance - Home Equity
(602) 221-4740  Office
(602) 221-4716  Fax
----- Forwarded by Barbara Zimmer/JPMCHASE on 08/15/2005 09:31 AM ----
-

    Susan O'Flaherty
    08/15/2005 08:40 AM
        To: Barbara Zimmer/JPMCHASE@JPMCHASE
        cc:
        Subject: Fw: LOA - Susan Pinsky U474707

You would need to talk with accessHR as we don't manage these NY cases so we hve no information in DMS at all

susan O'flaherty
----- Forwarded by Susan O'Flaherty/IL/ONE on 08/15/2005 10:37 AM -----

To: LEAVE STATUS@BANCONE
cc:

Subject: Fw: LOA - Susan Pinsky U474707

----- Forwarded by Jesus R Mendez/IL/ONE on 08/15/2005 08:37 AM -----

To: Disability Management Services@BANCONE
cc:
Subject: LOA - Susan Pinsky U474707

Can I please get an update on the Leave of Absence for Susan Pinsky. Susan has been out on leave since 6/13/05.

Since I had not received any updates, on 7/21 I called accessHR regarding her leave. I was told to contact Hartford as there were no updates on the case with accessHR. I spoke to Eileen at Hartford who told me that Susan had been contacted on 7/1 since she had not filed a claim. On 7/13 Susan called to file the claim. As of 7/21 they were still waiting for medical information



**Case Information**
*Case # 983927-0*

On 7/29 I left a follow-up message for Eileen but did not receive a call back.

On 8/2 I spoke to Eileen with Hartford and was told that some medical information had been received but that they were still waiting for information from one doctor. She said that Susan had not been given a deadline but was told to get the information "as soon as possible."

This employee was on job elimination notice when she went out on leave. If is very important that I understand her current status to determine whether she should be placed on severance or remain active, in leave status.

Thank you for your assistance.

Barbara Zimmer
HR Business Partner
Chase Home Finance - Home Equity
(602) 221-4740  Office
(602) 221-4716  Fax

0  08/15/2005  12:05PM N Richard Clark    ----- Forwarded by N Richard Clark/JPMCHASE on 08/15/2005 12:06 PM ----

> N Richard Clark
> 08/15/2005 12:06 PM
>
>         To: Barbara Zimmer/JPMCHASE@JPMCHASE
>         cc:
>         Subject: Re: Fw: LOA - Susan Pinsky U474707

OK...

According to the Examiner at Hartford, Lisa Becker, the employee is seeing multiple physicians; none of which want to take "ownership" of placing her out on disability, but all agree that she needs to be out. Lisa is trying to gather all of the data to make the determination, which is really delaying the decision process beyond what is normal for Hartford.

Hope this helps somewhat.

Richard
----- Forwarded by N Richard Clark/JPMCHASE on 08/15/2005 11:59 AM ----
-

> N Richard Clark
> 08/15/2005 11:50 AM
>
>         To: Barbara Zimmer/JPMCHASE@JPMCHASE
>         cc:
>         Subject: Re: Fw: LOA - Susan Pinsky U474707

Sure! Let me do a little checking for you. I see that her claim is still pending at Hartford, but I'll call to get specifics and let you know.



**Case Information**
Case # 983927-0

Home Equity Human Resources - Tel (602) 221-4740
Barbara Zimmer
08/15/2005 11:40 AM

    To: N Richard Clark/JPMCHASE@JPMCHASE
    cc:
    Subject: Fw: LOA - Susan Pinsky U474707

Hello!

Any possibility that you might be able to assist me with an update on this case?

Barbara Zimmer
HR Business Partner
Chase Home Finance - Home Equity
(602) 221-4740  Office
(602) 221-4716  Fax
----- Forwarded by Barbara Zimmer/JPMCHASE on 08/15/2005 09:31 AM ----
-

    Susan O'Flaherty
    08/15/2005 08:40 AM
        To: Barbara Zimmer/JPMCHASE@JPMCHASE
        cc:
        Subject: Fw: LOA - Susan Pinsky U474707

You will need to talk with accessHR as we don't manage these NY cases so
we hve no information in DMS at all

susan O'flaherty
----- Forwarded by Susan O'Flaherty/IL/ONE on 08/15/2005 10:37 AM -----

To: LEAVE STATUS@BANCONE
cc:

Subject: Fw: LOA - Susan Pinsky U474707

----- Forwarded by Jesus R Mendez/IL/ONE on 08/15/2005 08:37 AM -----

To: Disability Management Services@BANCONE
cc:
Subject: LOA - Susan Pinsky U474707

Can I please get an update on the Leave of Absence for Susan Pinsky. Susan
has been out on leave since 6/13/05.

Since I had not received any updates, on 7/21 I called accessHR regarding her
leave. I was told to contact Hartford as there were no updates on the case with
accessHR. I spoke to Eileen at Hartford who told me that Susan had been



## Case Information
### Case # 983927-0

contacted on 7/1 since she had not filed a claim. On 7/13 Susan called to file the claim. As of 7/21 they were still waiting for medical information

On 7/29 I left a follow-up message for Eileen but did not receive a call back.

On 8/2 I spoke to Eileen with Hartford and was told that some medical information had been received but that they were still waiting for information from one doctor. She said that Susan had not been given a deadline but was told to get the information "as soon as possible."

This employee was on job elimination notice when she went out on leave. It is very important that I understand her current status to determine whether she should be placed on severance or remain active, in leave status.

Thank you for your assistance.


Barbara Zimmer
HR Business Partner
Chase Home Finance - Home Equity
(602) 221-4740 Office
(602) 221-4716 Fax

0  07/01/2005  08:41AM  Shana Saunders    6/13/2005 - First Date of Absence,
7/15/2005 - Hartford Claim Due Date,
7/18/2005 - Partial Pay Date,
12/12/2005 - Total Paid Leave Time,
12/12/2005 - Maximum Disability Leave Time

# EXHIBIT E

## RELEASE AGREEMENT

I, Susan Pinsky, (474707) on behalf of myself, my heirs, assigns, representatives and estate, as RELEASOR, for and in consideration of severance under The Severance Pay Plan of JPMorgan Chase & Co., severance-related benefits and career services as detailed in the notice letter to me dated May 20, 2005 from Dee Lakhani (the "notice letter") and intending to be legally bound, hereby release to the fullest extent permitted by law JPMorgan Chase Bank (and any predecessor or successor entities thereof) and its and their affiliates, subsidiaries, parent corporations (including J.P. Morgan Chase & Co.) and any predecessor or successor entities thereof, any other merged entities, and all present, former and future employees, directors, officers, representatives, administrators, agents, successors, assigns, trustees, heirs, executors and any fiduciaries of any employee benefit plan (hereinafter "JPMC" or "RELEASEES") from any and all suits, claims, charges, obligations, causes of action or demands in law or in equity (including any arbitration claims) arising from or relating to my employment relationship with JPMC and/or the termination thereof, from the beginning of the world up to and including the date of execution of this RELEASE (whether known or unknown to me and including any continuing effects of any acts or practices prior to the date of execution of this RELEASE), including, but not limited to:

- any employment and/or benefit related claims under any federal, state or local law, employment law or civil rights law, including, but not limited to, the Americans with Disabilities Act, the National Labor Relations Act, the Employee Retirement Income Security Act of 1974 ("ERISA") including, but not limited to, breach of fiduciary duty and equitable claims arising under §1132(a)(3) of ERISA, Title VII of the Civil Rights Act of 1964, the Vocational Rehabilitation Act of 1973,the Civil Rights Acts of 1866, 1871 and 1991, including Section 1981 of the Civil Rights Act, the Family and Medical Leave Act, the Worker Adjustment and Retraining Notification Act (all as amended); and

- any and all employment and/or benefit related claims arising under common or other law including any policy, procedure or practice (including any funding practice associated with employee benefits) or any contract (whether express, oral, written or implied from any source, including but not limited to any claim for severance under any other plan or agreement and for bonus or incentive compensation, including any such claim for performance years 2003 and 2004); tort (including but not limited to claims of defamation, intentional or negligent infliction of emotional distress, tortious interference, wrongful or abusive discharge, conversion, fraud, negligence, loss of consortium), common law or public policy; and

- any and all claims of retaliation under all federal, state, local or common or other law; and

- any and all employment and/or benefit related claims subject to or covered by any arbitration agreements or provisions.

1

Provided, however, the foregoing does not release:

- any employment and/or benefit related legal claims under the Age Discrimination in Employment Act of 1967, including the Older Workers Benefit Protection Act of 1990, both as amended;

- any statutory claims for state unemployment insurance, worker's compensation, or disability insurance benefits (other than discrimination or retaliation claims related to the pursuit of such benefits);

- any claim under the Fair Labor Standards Act for failure to pay minimum wages or overtime;

- any legal obligations of RELEASEES under any award of restricted stock/units ("stock/units") or options existing as of the date of the termination of my employment (i.e., vested benefits), which award(s) shall remain in effect in accordance with its terms, provided that I acknowledge that notwithstanding those terms, the delivery to me of any restricted stock/units that vest at my termination will be pursuant to JPMC's administrative and audit/control practices;

- any legal obligations of JPMC to indemnify me under applicable by-laws consistent with applicable law; or

- any legal obligations of JPMC in connection with the terms of my notice letter and this RELEASE that, by their terms, are to be performed after the date of execution of this RELEASE (including, without limitation, payment of any vested benefits under any pension plan or deferred compensation plan or benefits under any employee welfare plan in which I participate, all of which shall remain in effect in accordance with their terms).

I agree that I will not pursue, file or assert or permit to be pursued, filed or asserted any civil action, suit or legal proceeding seeking equitable or monetary relief (nor will I seek or in any way obtain or accept any such relief in any civil action, suit or legal proceeding) in connection with any and all claims released above; provided, however, that the foregoing does not affect any right to file an administrative charge with the Equal Employment Opportunity Commission (EEOC) subject to the restriction that if any such charge is filed, I agree not to violate the non-publicity and confidentiality provisions of this RELEASE or to seek or in any way obtain or accept any monetary award, recovery, settlement or relief therefrom.

If I should bring any action arising out of the subject matter covered by this RELEASE, I understand and recognize that I will, at the option of RELEASEES, be considered in breach of this RELEASE and shall be required to immediately return any and all funds received pursuant to this RELEASE. Furthermore, if RELEASEES should prevail concerning any or all of the issues so presented, I shall pay to RELEASEES all of their costs and expenses of defense, including RELEASEES' attorney's fees.

I understand and recognize that I continue to be bound by JPMC's Worldwide Rules of Conduct, including, but not limited to, the Intellectual Property Policy and I will

continue to discharge my duty of confidentiality with respect to all trade secrets and confidential and proprietary information which I received by virtue of my employment with JPMC. Additionally, and in that regard, I have advised JPMC of all facts of which I am aware that I believe may constitute a violation of JPMC's Worldwide Rules of Conduct and/or JPMC's legal obligations.

I understand that JPMC views its relationships with its employees, officers and consultants as important and valuable assets. Accordingly, I understand and agree that for a period of one (1) year after execution of this RELEASE, I will not on my own behalf or that of any other persons or entities, directly or indirectly, solicit or induce to leave or hire any officer, consultant or independent contractor of JPMC who is or was retained by JPMC within 12 months prior to such solicitation, inducement or hire.

I further represent that I have not and will not, in any way, publicize the terms of this RELEASE and agree that its terms are confidential and will not be disclosed by me except that I may discuss the terms of this RELEASE with my attorneys, financial advisors and members of my immediate family and as required by law; provided, however, that nothing in this RELEASE shall prohibit or restrict me from providing information or otherwise testifying or assisting in any governmental or regulatory investigation. I understand and agree that, unless otherwise prohibited by law, I will promptly notify JPMC, in writing sent by facsimile to the Legal Department, Office of the Managing Clerk at (212) 552-5043, of any such request for assistance or testimony.

I agree to cooperate fully with and provide full and accurate information to JPMC and its counsel with respect to any matter (including any audit, tax, tax proceeding, litigation, investigation or governmental proceeding) that relates to matters over which I may have knowledge or information, subject to reimbursement for appropriate and reasonable costs and expenses.

I understand and agree that violation of certain provisions of this RELEASE, including the notice and/or confidentiality provisions, will constitute a material breach of this RELEASE; that pursuit of both monetary and injunctive relief are appropriate; and that RELEASEES' entitlement to the remedy of injunctive relief shall be in addition to any monetary damages. I further understand that if I violate the terms or conditions of this RELEASE and/or the notice letter, my severance payments will cease and/or be due and owing to JPMC.

I understand and agree that should I violate any material term of this RELEASE, including, but not limited to the notice and confidentiality provisions, I will be responsible to RELEASEES for liquidated damages in the amount of all funds payable pursuant to this RELEASE and understand that such monetary relief shall not be a bar to RELEASEES' pursuit of injunctive relief.

I agree that if any of the provisions contained in this RELEASE are declared illegal, unenforceable or ineffective by a legal forum of competent jurisdiction, such provisions shall be deemed severable, such that all other provisions shall remain valid and binding upon both parties; provided, however, that, notwithstanding this or any other provision of this RELEASE, if any portion of the waiver or release of claims or rights or the non-publicity or confidentiality terms entered into between the parties is held to be

3

unenforceable, RELEASEES, at their option, may seek modification or severance of such portion and/or terminate the RELEASE and/or consider the RELEASE null and void.

*(the remainder of this page is intentionally left blank)*

I understand and agree that I have until July 3, 2005 to sign and return this RELEASE to Barbara Zimmer, 201 N. Central Ave. AZ1-1065, Phoenix, AZ, 85004.

I hereby certify that I have read the terms of this RELEASE, that I have been advised to discuss the RELEASE with an attorney of my choosing, and that I understand the terms and effects of this RELEASE. I hereby execute this RELEASE knowingly and voluntarily. Neither JPMC nor its agents or representatives have made, and I am not relying upon, any representations to me concerning the terms or effects of this RELEASE other than those contained herein. I agree that I have been afforded a reasonable time (up to forty-five (45) days) to review, consider and execute this RELEASE and understand that the RELEASE becomes effective immediately upon such execution.

Intending to be legally bound, I, Susan Pinsky, hereby execute the foregoing RELEASE this 24 day of June, 2005.

Susan Pinsky

STATE OF New York )
                                      ) ss.:
COUNTY OF Kings )

On this 24 day of June, 2005, before me personally came Susan Pinsky, known to me to be the individual described herein, and who executed the foregoing RELEASE, and duly acknowledged to me that She executed the same.

Notary Public

VEDELYN DAVIS
Notary Public, State of New York
No. 01-DA5019495
Qualified in Kings County
Commission Expires 10/25/05

5

# EXHIBIT F

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------- X

SUSAN PINSKY,

                    Plaintiff,

           - against -

JP MORGAN CHASE & CO.,

                    Defendant.

-------------------------------------------------------------------- X

Index No. 07-04146

**COMPLAINT**

## **INTRODUCTION**

1.      This is an action brought under the New York City and New York State Human Rights Laws for damages and injunctive relief, filed by an employee of JP Morgan Chase & Co. (hereinafter "Chase") who sought to have a disability accommodated, whose disability was not properly accommodated, and who, as a result, has lost the ability to work.

## **VENUE**

2. .     Venue of this action is properly set in New York County.  Defendant's principal New York office is located in New York County, and all actions complained of occurred in New York County.

## **PARTIES**

3.      Plaintiff Susan Pinsky, at all relevant times, was an employee of defendant Chase.

4.      Defendant Chase is a financial services corporation whose corporate headquarters is located at 270 Park Avenue, New York, New York 10017.

## STATEMENT OF RELEVANT FACTS

5.     Plaintiff began her employment with defendant on or about November 12, 2002. Her initial position was Assistant Financial Advisor. In around February 2004, plaintiff was promoted to the position of Home Equity Loan Officer. In around July 2005, plaintiff was again promoted by being transferred to the JP Morgan Chase Mega-Branch at 55 Water Street in Manhattan.

6.     Plaintiff's work as a Home Equity Loan Officer for defendant largely involved sitting at a desk, for eight to ten hours a day, speaking with customers on the phone.

7.     In around December 2004 plaintiff began to experience an aching pain in her left hip. She sought medical attention and was advised that sitting for long periods of time was the cause of the problem. Prior to her transfer to Water Street, plaintiff was able to alleviate some of the pain by taking breaks, and taking a long walk during lunch.

8.     Upon her transfer to Water Street, plaintiff's workload increased substantially, making it difficult to take breaks and walks. The hip pain worsened and plaintiff's physician recommended that her employer accommodate her by providing her with a "standing desk."

9.     On or about February 24, 2005, plaintiff presented a medical note to Barbara Zimmer, her Human Resources representative, requesting that she be accommodated with the standing desk.

10.     Despite repeated inquiries by plaintiff, she learned on April 14, 2005 that the desk had not been ordered. Plaintiff contacted the Human Resources Medical Department which immediately directed plaintiff's manager to order the standing desk.

11.     In fact, the standing desk was never ordered.

12.     During May 2005, plaintiff's hip pain worsened, forcing her to miss work. Upon her return, she was placed at a "service desk," in the back of the branch, which was not constructed in such a way as to alleviate the pressure which was causing plaintiff's hip pain.

13.     On June 1, 2005, plaintiff learned that the standing desk had not been ordered and complained to her supervisor, Dee Lakhani, and Human Resources Representative Barbara Zimmer. Several days later, plaintiff was advised that the desk hadn't been ordered because her position was being eliminated.

14.     In fact, plaintiff's position had been eliminated as part of a corporate reorganization. However, she was being given sixty days to find a new position within Chase, and fully intended and expected, as a high performing employee, to find a new position.

15.     On or about June 10, 2005, plaintiff had an MRI done and discovered that she had disc herniations. Her physicians ordered her to stop work immediately. After two months of physical therapy plaintiff's pain continued; further tests showed that the lining in her left hip was torn and that cysts and a bone spur had developed on her femur.

16.     Plaintiff's inability to work since June 2005 was a proximate result of defendant's failure to provide a reasonable accommodation for her disability.

17.     In addition, plaintiff, as a proximate result of defendant's failure to accommodate her disability, has suffered from severe hip and back pain, and as a result of the extended period of severe pain and inability to work, has suffered from emotional distress, with additional attendant physical consequences.

3

18.    The allegations in paragraphs 1-17 hereunder are incorporated by reference into the Causes of Action set forth below.

## AS AND FOR A FIRST CAUSE OF ACTION

19.    By acting as aforedescribed, defendant discriminated against plaintiff because of her disability, in violation of § 296(1) of the New York State Executive Law.

## AS AND FOR A SECOND CAUSE OF ACTION

20.    By acting as aforedescribed, defendant discriminated against plaintiff because of her disability, in violation of the New York City Human Rights Law, Section 8-107(1) *et seq.*

## DAMAGES

21.    Plaintiff, as a result of defendant's action, has suffered a loss of wages and benefits and suffered severe emotional distress, to her injury, in an amount exceeding $2 million.

22.    By proceeding against plaintiff as described hereinabove, defendant acted with malice, or with reckless disregard for plaintiff's health and well being.

4

## **PRAYER FOR RELIEF**

WHEREFORE plaintiff prays that this Court enter judgment:

1.    Awarding plaintiff all pay and benefits lost by her.

2.    Awarding plaintiff $2 million in compensatory damages.

3.    Awarding plaintiff punitive damages in the amount of $2 million.

4.    Awarding plaintiff attorneys' fees and costs.

Dated: March 26, 2007

SCHWARTZ, LICHTEN & BRIGHT, P.C.
Attorneys for Plaintiff

By: _____
Arthur Z. Schwartz
113 University Place, 11th Floor
New York, New York  10003
(212) 228-6320
Fax: (212) 358-1353
E-mail:  districtleader@msn.com