UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | | |
|---|---|---|
| SUSAN PINSKY, | : | ECF |
| Plaintiff, | : | 07 Civ. 3328 (CM) (HP) |
| - against - | : | **DEFENDANT'S STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1(a) OF THE MATERIAL UNDISPUTED FACTS** |
| JP MORGAN CHASE & CO., | : | |
| Defendant. | : | |

------------------------------------------------------------X

Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "the Bank"), incorrectly named herein as JPMorgan Chase & Co., by its attorneys, JPMorgan Chase Legal and Compliance Department, Frederic L. Lieberman, Assistant General Counsel, pursuant to Local Civil Rule 56.1(a) of the United States District Court for the Southern District of New York, submit that the following are material facts as to which no genuine issue exists and by virtue of which Defendant is entitled to summary judgment in its favor as a matter of law, denying all of Plaintiff's claims for relief, and dismissing the Complaint and this action in its entirety.[1]

**THE PARTIES**

1. Plaintiff Susan Pinsky ("Pinsky" or "Plaintiff") at all relevant times has been an employee of the Bank. See Exhibit "F" at ¶ 3.

2. Defendant Bank is a national banking association. See Exhibit "H" at ¶ 4.

---

[1] All exhibits referred to in Defendant's motion are annexed to the Affidavit of Frederic L. Lieberman ("Lieberman Aff.").

**PLAINTIFF'S EMPLOYMENT WITH THE BANK**

3.    Plaintiff began her employment with Chase Investment Services Corp., an affiliated entity of the Bank, in November 2002, as a Personal Financial Advisor Assistant. See Exhiibit "A" at page 5; Exhibit "F" at ¶ 5; Exhibit "H" at ¶ 5.

4.    Plaintiff then was hired by JPMorgan Chase Bank, effective February 1, 2004, as a Home Equity Loan Officer. See Exhibit "F" at ¶ 5; Exhibit "H" at ¶ 5.

5.    Ms Pinsky received a Bachelor of Arts degree from Baruch College in June 2002. See Exhibit "A" at page 4.

6.    Ms Pinsky has received Series 7 and Series 66 securities licenses, as well as a Life & Health Insurance license, from a financial industry self-regulatory organization. See Exhibit "A" at page 6.

7.    Between June 1997 and May 2005, Ms Pinsky had been employed as a Technical Recruiter for Interim Technology, The Consulting Group, as a Senior Technical Recruiter for Excel Partners, as a New York Metro Account Manager for Jobs.com, as a Financial Advisor for Merrill Lynch, as an Personal Financial Advisor Assistant for Chase Investment Services Corp., and as a Home Equity Loan Officer for the Bank. See Exhibit "A" at pages 5-6.

**JPMORGAN CHASE & CO.'S SEVERANCE PAY PLAN**

8.    JPMorgan Chase & Co., the holding company parent of the Bank, has a Severance Pay Plan that sets forth certain benefits available to eligible employees. See Exhibit "C".

9.    The Severance Pay Plan offers various forms of assistance, including financial assistance, to employees "whose employment involuntarily terminates as a result of the events specified in this Plan". See Exhibit "C", p. iii.

10. One of the "events" specified in the Plan is "an elimination ... of the job position or functions held or performed by the Employee". See Exhibit "C", § 3.1(i)(c), pp. 5-6.

11. The Severance Pay Plan "condition[s] the effectiveness of the Notification and the payment of severance on the execution of a release". See Exhibit "C", § 3.1(iii), p. 6.

12. The Severance Pay Plan further provides that only "an Employee who is not on a Leave of Absence may be a participant" in the Plan. See Exhibit "C", § 3.1, p. 5.

**THE ELIMINATION OF PINSKY'S POSITION AND THE PROPOSED TERMINATION OF HER EMPLOYMENT WITH THE BANK**

13. On May 20, 2005, Dee Lakhani, Plaintiff's manager, gave Plaintiff written notice that her position was being eliminated and her employment would be terminated as of July 18, 2005. See Exhibit "B" at 1.

14. The notice letter provided Plaintiff with sixty (60) days paid notice of the elimination of her position and the proposed termination of her employment. See Exhibit "B" at 1.

15. The notice letter also offered Plaintiff seven (7) weeks of severance pay if she did not obtain another position with JPMorgan Chase during that period, on condition that Plaintiff execute a proposed Release Agreement. See Exhibit "B" at 1.

16. On June 13, 2005, Plaintiff began a short-term disability leave of absence. See Exhibit "D".

17. On June 24, 2005, Plaintiff executed the Release Agreement proposed in the May 20, 2005 notice letter and returned it to JPMorgan Chase. See Exhibit "E".

18. Plaintiff had forty-five (45) days in which to consult an attorney regarding, and to consider, the proposed Release Agreement before needing to execute and return it in order to agree to its benefits. See Exhibit "E" at p. 5.

19. Plaintiff had the Release Agreement for thirty-five (35) days before she executed and returned it to Chase. See Exhibits "B" and "E".

20. The consideration given in exchange for plaintiff's Release Agreement exceeded the benefits to which she already entitled, since Plaintiff had no other right to any severance benefits. See Exhibits "C" and "E".

21. Plaintiff was encouraged by the Bank to consult an attorney regarding the Release Agreement. See Exhibit "E" at p. 5.

22. Under the terms of the Release Agreement executed by Plaintiff, she agreed to "release to the fullest extent permitted by law JPMorgan Chase Bank (and any predecessor or successor entities thereof) and its and their affiliates, subsidiaries, parent corporations (including J.P. Morgan Chase & Co.) ... (hereinafter "JPMC" or "RELEASEES") from any and all suits, claims, charges, obligations, causes of action or demands in law or in equity ... arising from or relating to my employment relationship with JPMC and/or the termination thereof, from the beginning of the world up to and including the date of execution of this Release (whether known or unknown to me and including any continuing effects of any acts or practices prior to the date of execution of this RELEASE), including, but not limited to: ... any employment and/or benefit related claims under any federal, state or local law, employment law or civil rights law...." See Exhibit "E".

23. On December 12, 2005, Plaintiff was approved for a long-term disability leave of absence. See Exhibit "D".

24. On July 10, 2007, Plaintiff's physician cleared her to return to work. See Lieberman Aff. at ¶ 17 and Exhibit "I".

25. Since Plaintiff had been cleared to return to work, and pursuant to the Severance Pay Plan, Plaintiff received payment for ten (10) weeks of severance on September 13 and 14, 2007. See Exhibit "J".

**THIS ACTION**

26. On March 27, 2007, Pinsky filed her Complaint in this action in New York State Supreme Court, asserting claims of disability discrimination under the New York State Human Rights Law and the New York City Human Rights Law. See Lieberman Aff. at ¶ 12 and Exhibit "F".

27. According to the allegations of the Complaint, all of Plaintiff's claims accrued during a period between February 24, 2005 (when she claims to have first requested a reasonable accommodation) and June 13, 2005 (when she began her leave of absence). See Exhibit "F" at ¶¶ 9-16.

28. Plaintiff's Complaint was served on Defendant on March 28, 2007. Lieberman Aff. at ¶ 13.

29. On April 26, 2007, Defendant removed this action from New York State Supreme Court, New York County, to the United States District Court for the Southern District of New York. Lieberman Aff. at ¶ 14.

30. On May 15, 2007, Defendant filed its Answer to Pinsky's Complaint. See Lieberman Aff. at ¶ 15 and Exhibit "G".

31. On June 4, 2007, Defendant filed its Amended Answer to Pinsky's Complaint. See Lieberman Aff. at ¶ 16 and Exhibit "H".

32. On September 19, 2007, Pinsky attempted to file a First Amended Complaint in this action, asserting an additional claim of disability discrimination under the Americans with Disabilities Act. <u>See</u> Lieberman Aff. at ¶ 19 and Exhibit "K".

WHEREFORE, Defendant respectfully requests that the Court (1) grant its motion for summary judgment; (2) dismiss this action in its entirety with prejudice; (3) grant Defendant its costs and attorneys' fees; and (4) grant such other and further relief as this Court deems just and proper.

Dated: September 20, 2007

**JPMORGAN CHASE LEGAL AND COMPLIANCE DEPARTMENT**

By: _____
Frederic L. Lieberman
Attorneys for Defendant
JPMorgan Chase Bank, N.A.
One Chase Manhattan Plaza, 26th Floor
New York, New York 10081
(212) 552-1815