UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

SUSAN PINSKY,                                        :

                         Plaintiff,    :      ECF

        - against -                        :      07 Civ. 3328 (CM) (HP)

JP MORGAN CHASE & CO.,                       :

                     Defendant.    :

-------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**JPMORGAN CHASE LEGAL AND COMPLIANCE DEPARTMENT**
Frederic L. Lieberman
Assistant General Counsel
One Chase Manhattan Plaza, Floor 26
New York, New York 10081
(212) 552-1815

Attorneys for Defendant

# TABLE OF CONTENTS

                                                                    Page

Table of Authorities............................................................    i

Preliminary Statement.......................................................    1

Statement of Facts...........................................................    2

The Severance Pay Plan.....................................................    4

This Action...................................................................    4

ARGUMENT...................................................................    5

I       THE COURT SHOULD GRANT SUMMARY JUDGMENT TO
        DEFENDANT BECAUSE THERE ARE NO GENUINE ISSUES OF
        MATERIAL FACT WITH RESPECT TO PLAINTIFF'S RELEASE OF
        HER CLAIMS AGAINST DEFENDANT......................................    5

II      PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE SHE
        RELEASED HER RIGHT TO BRING THOSE CLAIMS......................    6

        A.    The Terms of the Release Agreement Cover All of Plaintiff's
              Claims in This Action..............................................    6

        B.    All of Plaintiff's Claims in this Action Accrued Prior to Plaintiff's
              Execution of the Release Agreement..................................    7

        C.    The Release Agreement is Enforceable Under State and Federal Law.    7

              1.    Plaintiff's ADA Claim.........................................    7

              2.    Plaintiff's State Law Claims..................................    9

Conclusion....................................................................    11

TABLE OF AUTHORITIES

| Cases | Page |
|---|---|

Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S. Ct. 1011 (1974) — 7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986) — 5

Bachiller v. Turn On Prods., Inc., 00 Civ. 8701 (JSM), 2003 WL 1878416 (S.D.N.Y. Apr. 14, 2003), aff'd, 86 Fed. Appx. 465 (2nd Cir. 2004) — 10

Bormann v. AT & T Communications, Inc., 875 F.2d 399 (2nd Cir.), cert. denied, 493 U.S. 924 (1989) — 10

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986) — 5

Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2nd Cir. 1994) — 5

Clark v. Buffalo Wire Works Co., Inc., 3 F. Supp.2d 366 (W.D.N.Y. 1998) — 10

Cordoba v. Beau Dietl & Associates, 02 Civ. 4951 (MBM), 2003 WL 22902266 (S.D.N.Y. Dec. 8, 2003) — 7, 8, 9, 10

Cramer v. Newburgh Molded Products, Inc., 228 A.D.2d 541, 645 N.Y.S.2d 46 (2nd Dep't), lv. den., 89 N.Y.2d 803, 653 N.Y.S.2d 280 (1996) — 10

Distasio v. Perkin Elmer Corp., 157 F.3d 55 (2nd Cir. 1998) — 5

Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14 (2nd Cir. 1995) — 5

Hsueh v. The Bank of New York, 05 Civ. 5345 (JSR), 2006 WL 2778858 (S.D.N.Y. Sept. 26, 2006) — 8

Knight v. U.S. Fire Ins. Co., 804 F.2d 9 (2nd Cir. 1986) — 5

Laramee v. Jewish Guild for the Blind, 72 F. Supp.2d 357 (S.D.N.Y. 1999) — 10

Livingston v. Adirondack Beverage Co., 141 F.3d 434 (2nd Cir. 1998) — 8

Mergler v. Crystal Properties Assoc., Ltd., 179 A.D.2d 177, 583 N.Y.S.2d 229, 232 (1st Dep't 1992). — 10

Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10 (2nd Cir. 1993) — 7

Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459 (2nd Cir. 1998) — 10

Skluth v. United Merchants & Manufacturers, Inc., 163 A.D.2d 104, 106, 559 N.Y.S.2d
    280 (1st Dep't 1990)    10

Woroski v. Nashua Corp., 31 F.3d 105 (2nd Cir. 1994)    5

**Statutes**

Fed. R. Civ. P. 56(c)    5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

SUSAN PINSKY,                                          :

                                    Plaintiff,        :
                                                              ECF
                    - against -                       :
                                                              07 Civ. 3328 (CM) (HP)
JP MORGAN CHASE & CO.,                                :

                                    Defendant.        :

-------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT


### Preliminary Statement

Defendant JPMorgan Chase Bank, N.A. ("the Bank", "JPMorgan Chase" or "Defendant"), incorrectly named herein as JPMorgan Chase & Co., by and through its attorneys, respectfully submits this Memorandum of Law in support of its motion for summary judgment. Defendant's motion should be granted and Plaintiff's disability discrimination claims dismissed because Plaintiff released all such claims against Defendant in a Release Agreement she

executed on June 24, 2005. Accordingly, Plaintiff's Complaint and this action should be dismissed in their entirety.

### STATEMENT OF FACTS

Plaintiff Susan Pinsky ("Pinsky" or "Plaintiff") at all relevant times has been an employee of the Bank. Statement at ¶ 1. Plaintiff was first employed by Chase Investment Services Corp., an affiliated entity of the Bank, in November 2002 as an Assistant Personal Financial Advisor. Id. at ¶ 3. Plaintiff then was hired by JPMorgan Chase Bank, effective February 1, 2004, as a Home Equity Loan Officer. Id. at ¶ 4.

According to the Bank's records regarding Ms Pinsky, she received a Bachelor of Arts degree from Baruch College in June 2002, see Statement at ¶ 5, and has received Series 7 and Series 66 securities licenses, as well as a Life & Health Insurance license, from a financial industry self-regulatory organization. Id. at ¶ 6. In addition, between June 1997 and May 2005, Ms Pinsky had been employed as a Technical Recruiter for Interim Technology, The Consulting Group, as a Senior Technical Recruiter for Excel Partners, as a New York Metro Account Manager for Jobs.com, as a Financial Advisor for Merrill Lynch, as an Assistant Financial Advisor for Chase Investment Services Corp., and as a Home Equity Loan Officer for the Bank. Id. at ¶ 7.

On May 20, 2005, Plaintiff's manager gave Plaintiff written notice that her position was being eliminated and her employment would be terminated as of July 18, 2005. Statement at ¶ 13. The letter provided Plaintiff with sixty (60) days paid notice of the elimination of her position and the proposed termination of her employment, id. at ¶ 14, and also offered Plaintiff seven (7) weeks of severance pay if she did not obtain another position with JPMorgan Chase during that period, on condition that Plaintiff execute a proposed Release Agreement. Id. at ¶ 15. On June 13, 2005, Plaintiff began a short-term disability leave of absence. Id. at ¶ 16. On June

24, 2005, Plaintiff executed the Release Agreement proposed in the May 20, 2005 notice letter and returned it to JPMorgan Chase. Id. at ¶ 17.

Plaintiff was given up to forty-five (45) days in which to consult an attorney regarding, and to consider, the proposed Release Agreement before needing to execute and return it in order to agree to its benefits, Statement at ¶ 18, and actually had the Release Agreement for thirty-five (35) days before she executed and returned it to Chase. Id. at ¶ 19. In addition, the consideration given in exchange for plaintiff's Release Agreement exceeded the benefits to which she already entitled, since Plaintiff had no other right to any severance benefits. Id. at ¶ 20. Finally, Plaintiff was encouraged by the Bank to consult an attorney regarding the Release Agreement. Id. at ¶ 21.

Under the terms of the Release Agreement executed by Ms Pinsky, she agreed to "release to the fullest extent permitted by law JPMorgan Chase Bank (and any predecessor or successor entities thereof) and its and their affiliates, subsidiaries, parent corporations (including J.P. Morgan Chase & Co.) ... (hereinafter "JPMC" or "RELEASEES") from any and all suits, claims, charges, obligations, causes of action or demands in law or in equity ... arising from or relating to my employment relationship with JPMC and/or the termination thereof, from the beginning of the world up to and including the date of execution of this Release (whether known or unknown to me and including any continuing effects of any acts or practices prior to the date of execution of this RELEASE), including, but not limited to: ... any employment and/or benefit related claims under any federal, state or local law, employment law or civil rights law...." Statement at ¶ 22.

On December 12, 2005, Plaintiff was approved for a long-term disability leave of absence. Statement at ¶ 23. On July 10, 2007, Plaintiff's physician cleared her to return to work. Id. at ¶ 24. Since Plaintiff had been cleared to return to work, and pursuant to the Severance Pay

Plan, Plaintiff received payment for ten (10) weeks of severance on September 13 and 14, 2007. Id. at ¶ 25.

## THE SEVERANCE PAY PLAN

JPMorgan Chase & Co., the Bank's holding company parent, has a Severance Pay Plan that sets forth certain benefits available to eligible employees. Statement at ¶ 8. The Severance Pay Plan offers various forms of assistance, including financial assistance, to employees "whose employment involuntarily terminates as a result of the events specified in this Plan", id. at ¶ 9, one of which is "an elimination ... of the job position or functions held or performed by the Employee". Id. at ¶ 10. The Severance Pay Plan "condition[s] the effectiveness of the Notification and the payment of severance on the execution of a release. Id. at ¶ 11. Moreover, the Severance Pay Plan further provides that only "an Employee who is not on a Leave of Absence may be a participant" in the Plan. Id. at ¶ 12.

## THIS ACTION

Notwithstanding the broad scope of the Release Agreement that she executed, Plaintiff commenced this action against the Bank on March 27, 2007 when she filed her Complaint with the Supreme Court of the State of New York, New York County. Statement ¶ 26 and Exhibit "F". In her Complaint, Plaintiff asserts claims of disability discrimination under the New York State Human Rights Law ("NYSHRL"), New York Executive Law §§ 290 et seq., and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code §§ 8-107(1) et seq. Id., Statement, Exhibit "F" at ¶¶ 5-20. Defendant then removed this action from New York State Supreme Court to this Court. Id. at ¶ 14. Defendant answered Plaintiff's Complaint on May 15, 2007 and filed an Amended Answer on June 4, 2007. Id. at ¶¶ 30, 31 and Exhibits "G" and "H". In both its Answer and Amended Answer, Defendant asserted as a defense that "Plaintiff's claims

are barred and/or limited by the Release Agreement with JPMorgan Chase Bank that she executed on or about June 24, 2005." Id., Exhibit "G" at ¶ 37 and Exhibit "H" at ¶ 37.

## ARGUMENT

### I

#### THE COURT SHOULD GRANT SUMMARY JUDGMENT TO DEFENDANT BECAUSE THERE ARE NO GENUINE ISSUES OF MATERIAL FACT WITH RESPECT TO PLAINTIFF'S RELEASE OF HER CLAIMS AGAINST DEFENDANT

Summary judgment is warranted when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986). The court must view the record "in the light most favorable to the party opposing the motion" by resolving "all ambiguities and draw[ing] all factual inferences in favor of the party against whom summary judgment is sought." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2nd Cir. 1994).

A party opposing summary judgment must present concrete evidence, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2510-11 (1986), not "unsupported assertions," Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2nd Cir. 1995), or "speculation or conjecture," Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2nd Cir. 1986). The inquiry is "whether the evidence present is sufficient to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52, 106 S. Ct. at 2512; Woroski v. Nashua Corp., 31 F.3d 105, 109-10 (2nd Cir. 1994). Thus, summary judgment is "fully appropriate, indeed mandated, when the evidence is insufficient to support the non-moving party's case." Distasio v. Perkin Elmer Corp., 157 F.3d 55, 61-62 (2nd Cir. 1998).

## II

### PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE SHE RELEASED HER RIGHT TO BRING THOSE CLAIMS

Defendant's motion should be granted and this action dismissed because Plaintiff entered into a valid agreement with Defendant releasing, inter alia, the claims asserted in this action. The Release Agreement covers all employment-related claims, including those under "any federal, state or local law, [or] employment law", Statement at ¶ 22, all of the claims herein had already accrued at the time Plaintiff executed the Release Agreement, id. at ¶ 27, and Plaintiff's entry into the Release Agreement was knowing and voluntary. Accordingly, this action should be dismissed.

### A.    THE TERMS OF THE RELEASE AGREEMENT COVER ALL OF PLAINTIFF'S CLAIMS IN THIS ACTION. [1]

In her Complaint and Amended Complaint, Plaintiff has asserted claims for disability discrimination under the NYSHRL, the NYCHRL, and the ADA. Statement at ¶¶ 26, 32. Each of these claims is covered by the specific language of the Release Agreement.

In the Release Agreement, Plaintiff released all claims she had or may have had in relation to her employment with Defendant. Specifically, the Release Agreement states that it applied to:

> "all suits, claims, charges, obligations, causes of action or demands in law or in equity ... arising from or relating to my employment relationship with JPMC and/or the termination thereof, ... including, but not limited to: ... any employment and/or benefit related claims under any federal, state or local law, employment law or civil rights law ...."

---

[1]    Although not yet served on Defendant, Plaintiff attempted to file an Amended Complaint on September 19, 2007, asserting a claim under the Americans with Disabilities Act ("ADA"), in addition to the claims previously asserted under the New York State and New York City Human Rights Laws. For the convenience of the Court and the parties, but without waiving any rights, Defendant will also address the standards for enforcing a release of federal statutory claims.

Statement at ¶ 22. Discrimination claims under the NYSHRL, the NYCHRL, and the ADA certainly are "employment ... related claims under any federal, state or local law, [or] employment law...." Id. Therefore, the Release Agreement applies to the types of claims asserted by Plaintiff.

## B. ALL OF PLAINTIFF'S CLAIMS IN THIS ACTION ACCRUED PRIOR TO PLAINTIFF'S EXECUTION OF THE RELEASE AGREEMENT.

According to the allegations of the Complaint, all of Plaintiff's claims accrued during a period between February 24, 2005 (when she claims to have first requested a reasonable accommodation) and June 13, 2005 (when she began her leave of absence). Statement at ¶ 27. Such claims fall well within the time frame covered by the specific language of the Release Agreement. Specifically, the Release Agreement states that it applied to:

> "all suits, claims, charges, obligations, causes of action or demands in law or in equity ... arising from or relating to my employment relationship with JPMC and/or the termination thereof, ... up to and including the date of execution of this Release (whether known or unknown to me and including any continuing effects of any acts or practices prior to the date of execution of this RELEASE) ...."

Statement at ¶ 22. Plaintiff executed the Release Agreement on June 24, 2005. Id. at ¶ 17. Therefore, the Release Agreement applies to the claims asserted by Plaintiff, all of which had accrued no later than June 13, 2005.

## C. THE RELEASE AGREEMENT IS ENFORCEABLE UNDER STATE AND FEDERAL LAW.

### 1. PLAINTIFF'S ADA CLAIM.

For purposes of determining the enforceability of the Release Agreement, Plaintiff's ADA claim is governed by federal law. Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 15 (2nd Cir. 1993). Under federal law, "an employee may validly waive a discrimination claim so long as the waiver is made knowingly and voluntarily." Cordoba v. Beau Dietl & Associates, 02 Civ. 4951 (MBM), 2003 WL 22902266 *4 (S.D.N.Y. Dec. 8, 2003) (copy attached at Tab 1) (citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 n.15, 94 S. Ct. 1011, 1021 n.15

(1974)); Hsueh v. The Bank of New York, 05 Civ. 5345 (JSR), 2006 WL 2778858 *3 (S.D.N.Y.

Sept. 26, 2006) (copy attached at Tab 2) (claims waived included ADA claim). In the Second

Circuit, a "totality of the circumstances" inquiry [is used] to determine whether a release of Title

VII claims is knowing and voluntary." Cordoba, 2003 WL 22902266 *5; Livingston v.

Adirondack Beverage Co., 141 F.3d 434, 438 (2nd Cir. 1998). Relevant factors include "(1) the

plaintiff's education and business experience; (2) the amount of time the plaintiff had possession

of or access to the release before signing it; (3) the plaintiff's role in deciding the terms of the

release; (4) the clarity of the release; (5) whether the plaintiff was represented by or consulted an

attorney; (6) whether the consideration given in exchange for the employee's waiver exceeds

benefits to which the employee was already entitled by contract or law; (7) whether the employer

encouraged the employee to consult an attorney; and (8) whether the employee had a fair

opportunity to do so." Id.; Hsueh, 2006 WL 2778858 *4. These factors are more than satisfied

here.

Plaintiff's education and business experience, especially that in the financial services

industry, is more than sufficient. According to the Bank's records regarding Ms Pinsky, she

received a Bachelor of Arts degree from Baruch College in June 2002, Statement at ¶ 5, and has

received Series 7 and Series 66 securities licenses, as well as a Life & Health Insurance license,

from a financial industry self-regulatory organization. Id. at ¶ 6. In addition, as of May 2005,

Plaintiff had been employed as a Technical Recruiter for Interim Technology, The Consulting

Group, as a Senior Technical Recruiter for Excel Partners, as a New York Metro Account

Manager for Jobs.com, as a Financial Advisor for Merrill Lynch, as a Personal Financial Advisor

Assistant for Chase Investment Services Corp., and as a Home Equity Loan Officer for the Bank.

Id. at ¶ 7.

Plaintiff was given forty-five (45) days in which to consult an attorney regarding, and to consider, the Release before needing to execute and return it in order to agree to its benefits. Statement at ¶ 18, and actually had the Release Agreement for thirty-five (35) days before she executed and returned it to Chase. Id. at ¶ 19. Moreover, Plaintiff was specifically encouraged by the Bank to consult an attorney regarding the Release Agreement. Id. at ¶ 21.

In addition, the consideration given in exchange for Plaintiff's entry into the Release Agreement exceeded the benefits to which she already entitled, since Plaintiff had no right to any severance benefits absent execution of the Release Agreement. Statement at ¶ 20.

Finally, Defendant submits that the language of the Release Agreement makes clear that one of the effects of execution of the Agreement is to release all claims that an employee of the Bank may have against the Bank through the date of execution of the Agreement. Moreover, by signing the Agreement, Plaintiff stated that she had read the Agreement, had been advised to discuss the Agreement with an attorney, understood the terms and effects of the Agreement, executed it knowingly and voluntarily, and executed it "intending to be legally bound". Exhibit "E" at p. 5.

Thus, Plaintiff's release of her ADA claim was knowing and voluntary.

### 2.    PLAINTIFF'S STATE LAW CLAIMS.

For purposes of determining the enforceability of the Release Agreement, Plaintiff's state law claims, even though statutory, are subject to New York contract law. Thus, in Cordoba, 2003 WL 22902266 *6, the Court held that "[t]he enforceability of the Release as to Cordoba's NYSHRL and NYCHRL claims ... is governed by ordinary contract law principles."

As such, "[u]nder New York contract law, a valid release that is clear and unambiguous on its face, even one relinquishing a discrimination claim, is enforceable so long as the release

has been knowingly and voluntarily entered into." Cordoba, 2003 WL 22902266 *6; Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 463 (2nd Cir. 1998); Skluth v. United Merchants & Manufacturers, Inc., 163 A.D.2d 104, 106, 559 N.Y.S.2d 280, 282 (1st Dep't 1990). The enforceability of a release does not depend on whether the releasor was subjectively aware of the precise claims to which the release pertains when executing the release. Clark v. Buffalo Wire Works Co., Inc., 3 F. Supp.2d 366, 373 (W.D.N.Y. 1998); Mergler v. Crystal Properties Assoc., Ltd., 179 A.D.2d 177, 583 N.Y.S.2d 229, 232 (1st Dep't 1992). Moreover, a release will not be "treated lightly, and will be set aside by a court only for duress, illegality, fraud or mutual mistake." See Cramer v. Newburgh Molded Products, Inc., 228 A.D.2d 541, 541, 645 N.Y.S.2d 46 (2nd Dep't), lv. den., 89 N.Y.2d 803, 653 N.Y.S.2d 280 (1996).

Finally, "it is well settled that the totality-of-the-circumstances standard is stricter than ordinary contract law principles for determining whether a release is knowing and voluntary.... Because Cordoba's waiver of her Title VII claims was knowing and voluntary under the totality-of-the-circumstances standard, ... and Cordoba does not raise any novel arguments concerning the Release's enforceability as to her NYSHRL and NYCHRL causes of action, BDA is entitled to summary judgment dismissing all of Cordoba's NYSHRL and NYCHRL causes of action." Cordoba, 2003 WL 22902266 *6; Bormann v. AT & T Communications, Inc., 875 F.2d 399, 402 (2nd Cir.), cert. denied, 493 U.S. 924 (1989); Laramee v. Jewish Guild for the Blind, 72 F. Supp.2d 357, 360 (S.D.N.Y. 1999); Bachiller v. Turn On Prods., Inc., 00 Civ. 8701 (JSM), 2003 WL 1878416 *4 (S.D.N.Y. Apr. 14, 2003) (copy attached at Tab 3), aff'd, 86 Fed. Appx. 465 (2nd Cir. 2004). Thus, since the Release Agreement was knowing and voluntary under federal law, it also is knowing and voluntary under federal law under New York law.

Because Plaintiff has plainly waived any and all claims she may have had against Defendant, Plaintiff's claims, Complaint and action should be dismissed.

## CONCLUSION

For all of the above reasons, the Court should grant Defendant's motion for summary judgment and dismiss all of Plaintiff's claims and this action.

Dated:  September 20, 2007

                                        **JPMORGAN CHASE LEGAL AND
                                        COMPLIANCE DEPARTMENT**

                                        By: _____
                                                Frederic L. Lieberman
                                        One Chase Manhattan Plaza, Floor 26
                                        New York, New York 10081
                                        (212) 552-1815

                                        Attorneys for Defendant

1

Westlaw.

Not Reported in F.Supp.2d

Page 2

Not Reported in F.Supp.2d, 2003 WL 22902266 (S.D.N.Y.)

(Cite as: Not Reported in F.Supp.2d)

▷

Cordoba v. Beau Dietl & Associates
S.D.N.Y.,2003.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Gloria CORDOBA, Plaintiff,
v.
BEAU DEITL & ASSOCIATES, Defendant.
No. 02 Civ.4951 MBM.

Dec. 8, 2003.

**Background:** Bookkeeper brought wrongful termination action against **employer**. **Employer** moved for summary judgment.

**Holdings:** The District Court, Mukasey, J., held that:

(1) **release** barred claims under Title VII, New York State Human Rights Law (NYHRL) and New York City Human Rights Law (NYCHRL);

(2) bookkeeper did not have discrimination claim under Age Discrimination in **Employment** Act (ADEA);

(3) bookkeeper did not have retaliation claim under ADEA; and

(4) complaint filed with Equal **Employment** Opportunity Commission (EEOC) did not preserve retaliation claims.

Judgment for **employer**.
West Headnotes
**[1] Release 331 ⟶15**

331 **Release**
    331I Requisites and Validity
        331k15 k. Reality of Assent in General. Most Cited Cases
Terminated bookkeeper knowingly and voluntarily waived her rights to be bring discrimination claim under Title VII, by signing **release**; she was high school graduate with long business experience, qualifying her to understand **release**, she had four days to sign it, **release** was unambiguous and comprehensible, bookkeeper was informed that she

could consult attorney, and there was consideration for **release**, over and above **severance** pay, in form of promise to tell prospective future **employees** that she had resigned. 42 U.S.C.A. § 2000e et seq.

**[2] Release 331 ⟶15**

331 **Release**
    331I Requisites and Validity
        331k15 k. Reality of Assent in General. Most Cited Cases
Terminated bookkeeper knowingly and voluntarily waived her rights to be bring national origin, age discrimination, and retaliation claims under New York State Human Rights Law (NYHRL) and New York City Human Rights Law (NYCHRL), by signing **release**; she was high school graduate with long business experience, qualifying her to understand **release**, she had four days to sign it, **release** was unambiguous and comprehensible, bookkeeper was informed that she could consult attorney, and there was consideration for **release**, over and above **severance** pay, in form of promise to tell prospective future **employees** that she had resigned. McKinney's Executive Law § 296; New York City Administrative Code, § 8-107 et seq.

**[3] Civil Rights 78 ⟶1209**

78 Civil Rights
    78II **Employment** Practices
        78k1199 Age Discrimination
            78k1209 k. Motive or Intent; Pretext. Most Cited Cases
Absence of any evidence that over-40 bookkeeper was fired because of her age, while two bookkeepers under-40 were retained, precluded rejection as pretextual, under Age Discrimination in **Employment** Act (ADEA), of **employer's** claim that reduction in force was necessary and claimant was least able of three bookkeepers. 29 U.S.C.A. § 623(a)(1).

**[4] Civil Rights 78 ⟶1244**

78 Civil Rights
    78II **Employment** Practices
        78k1241 Retaliation for Exercise of Rights
            78k1244 k. Activities Protected. Most Cited

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 22902266 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

Page 3

**Cases**
Terminated bookkeeper could not maintain suit against **employer**, claiming she was retaliated against in violation of Age Discrimination in **Employment** Act (ADEA), when alleged protected activity was complaint that president had ridiculed bookkeeper's national origin. 29 U.S.C.A. § 623(d).

**[5] Civil Rights 78 ⚷➔1516**

78 Civil Rights
   78IV Remedies Under Federal **Employment** Discrimination Statutes
      78k1512 Exhaustion of Administrative Remedies Before Resort to Courts
         78k1516 k. Scope of Administrative Proceedings; Like or Related Claims. Most Cited Cases
Terminated bookkeeper's Equal **Employment** Opportunity Commission (EEOC) complaint did not preserve for judicial review claim that she was retaliated against for complaining of discriminatory practices, in violation of Title VII and Age Discrimination in **Employment** Act (ADEA), when complaint merely alleged commission of unlawful discrimination. 29 U.S.C.A. § 621 et seq.; 42 U.S.C.A. § 2000e et seq.

Saul D. Zabell, Jeffrey D. Fields, Somma, Zabell & Associates, LLP, Farmingdale, NY, for Plaintiff.
Andrew M. Laskin, The Kelly Group, P.C., New York, NY, for Defendant.

**OPINION AND ORDER**
MUKASEY, J.
*1 Gloria Cordoba sues Beau Dietl & Associates (" BDA" ), her former **employer**, alleging national origin discrimination, age discrimination, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (2000) (" Title VII" ); the Age Discrimination in **Employment** Act, 29 U.S.C. § 621 *et seq.* (2000) (" ADEA" ); the New York State Human Rights Law, N.Y. Exec. Law § 296 (" NYSHRL" ); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* (" NYCHRL" ). BDA moves for summary judgment dismissing all of Cordoba's claims pursuant to Fed.R.Civ.P. 56, and an award of costs and attorney's fees pursuant to 42 U.S.C. § 1988(b). For the reasons stated below, BDA's motion for summary judgment is granted and all of Cordoba's claims are dismissed. BDA's motion for costs and fees is denied.

I.

The following relevant facts are either undisputed or presented in the light most favorable to Cordoba.

In September 1996, BDA, a private investigation and security firm, **employed** Cordoba as a bookkeeper. (Amended Complaint (" Compl." ) ¶¶ 10-11; Def.'s Mem. at 3) Cordoba worked in BDA's accounting department until April 27, 2001, when BDA terminated her **employment**. (Compl. ¶¶ 10-11; Cordoba Aff. ¶ 4) No **employment** contract existed between Cordoba and BDA. (3/2/03 Cordoba Dep., Laskin Decl. Ex. 7 (" Cordoba Dep." ), at 45)

Cordoba is a Hispanic woman of Colombian origin.FN1 (Cordoba Aff. ¶ 3) Cordoba's supervisor at BDA was Patrick Bernard, who is of Jamaican origin. (Compl. ¶ 17; Cordoba Aff. ¶ 6) Bernard has testified that Cordoba was a " good **employee**, very good **employee**," " always truthful and honest," and " a friendly person." (3/21/03 Bernard Dep., Laskin Decl. Ex. 10 (" Bernard Dep." ), at 11, 46) Similarly, BDA's president, Michael Ciravolo, has testified that he liked Cordoba and had no reason to doubt her honesty, and that Cordoba was an " okay" **employee**. (3/21/03 Ciravolo Dep., Laskin Decl. Ex. 10, at 29, 57) On a " Salary Change Form" dated August 30, 1999, signed by Bernard and Ciravolo, Cordoba is described as " able to work with minimal supervision, [though] she needs to better organize her work flow," " get[ting] along well with fellow **employees** and work[ing] hard in making sure the ongoing investigation case report is accurate," and " a very good worker ... willing to work extended hours in order to complete her assignments." (8/30/99 Salary Change Form, Zabell Decl. Ex. E) Although Ciravolo noticed that Cordoba occasionally would use her lunch hour for shopping and then eat lunch at her desk when she was supposed to be working (Def.'s Rule 56.1 Statement ¶ 21), he never reported to Bernard any problems with Cordoba's work or behavior. (Bernard Dep. at 44) Cordoba received salary increases of 13.45% in 1998; 17.28% in 1999; and 3.43% in 2000. (Pl.'s Rule 56.1 Counter-Statement ¶ 11)

> FN1. Although Cordoba states in her amended complaint that she is " of Columbian [*sic* ] national origin," (Compl.¶ 10), she states in the affidavit accompanying her opposition memorandum that she " was

born in Columbia [*sic* ] and ... [is] of Hispanic national origin." (Cordoba Aff. ¶ 3) The term "national origin" is defined as "the country where a person was born, or more broadly, the country from which his or her ancestors came." *Pasic v. Eatzi's Texas Holding Corp.,* 01 Civ. 1114(AGS), 2003 U.S. Dist. LEXIS 305, at *14 (S.D.N.Y. Jan. 9, 2003) (citing *Espinoza v. Farah Mfg. Co.* 414 U.S. 86, 88, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973)). Accordingly, I construe Cordoba's submissions to mean that she is of Colombian national origin.

Winny Tam worked with Cordoba in BDA's accounting department. (Compl.¶ 18) Cordoba had helped to train Tam, who joined BDA in 1999. (Cordoba Aff. ¶ 11) Bernard has testified that Tam was a "good **employee**" with "good accounting knowledge." (Bernard Dep. at 24, 47) However, Tam's written performance appraisal for the year 2000 states that "Winnie need [*sic* ] to improve her overall accounting knowledge, that way she will better understand her responsibilities," "Winnie need [*sic* ] to pay closer attention to her responsibilities so that she can recognize mistakes and spot problems," "Winnie need [*sic* ] to keep her personal calls to a minimum and improve on her tardiness by coming to work on time," and "Winnie need [*sic* ] to better understand her responsibilities. Especially [*sic* ] in the areas of payroll and producing reports. She need [*sic* ] to take time to review her assignments upon completion." (9/20/00 Tam Performance Appraisal, Zabell Decl. Ex. E) Bernard has acknowledged that Tam's performance in the year 2000 "wasn't so hot." (Bernard Dep. at 23-24). Nevertheless, Tam, like Cordoba, received a salary increase of 3.43% in that year. (9/22/00 Tam Salary Change Form, Zabell Decl. Ex. E)

**\*2** Cordoba alleges that, over the course of her **employment** at BDA, Ciravolo "ridiculed [her] national origin on many occasions." (Cordoba Aff. ¶ 10) According to Cordoba, Ciravolo made faces at her, said he did not understand her, mocked her English language skills, and "systematically" asked her to repeat herself. (Compl. ¶¶ 13-14; Cordoba Aff. ¶ 10; Pl.'s Rule 56.1 Counter-Statement ¶ 15) On one occasion, Ciravolo suggested that Cordoba "send [her] children into Spanish Harlem on an undercover assignment" being conducted by BDA. (Cordoba Aff. ¶ 10; Pl.'s Rule 56.1 Counter-Statement ¶ 15) Cordoba left Ciravolo's office crying many times.

(Cordoba Aff. ¶ 10) She complained to Bernard and at least one other BDA **employee**, Frank Renaldt, about Ciravolo's comments.[FN2] (Compl. ¶ 15; Cordoba Aff. ¶ 10) Bernard told Cordoba "not to pay attention to Mr. Ciravolo" and instructed her to return to work. (Com pl. ¶¶ 16-17; Cordoba Aff. ¶ 10) Likewise, Renaldt told Cordoba to disregard Ciravolo's comments, and to "go to work, relax." (Cordoba Dep. at 30)

> FN2. Cordoba testified in a deposition that she also complained about Ciravolo's ridicule to a BDA **employee** named Bob Babdock. (Cordoba Dep. at 30) However, Cordoba states in her amended complaint and affidavit only that she complained to Bernard and Renaldt, and does not mention Babdock.

In or about January 2001, Tam began maternity leave. (Compl.¶ 18) BDA hired Carril Lindsay, a woman of Jamaican origin, as a temporary replacement for Tam. (Compl.¶¶ 19-22) According to Bernard, Lindsay "knew how to process payroll" and displayed "good accounting knowledge." (Bernard Dep. at 46-47)

On or about April 27, 2001, Cordoba was called into a meeting with Ciravolo, Bernard, and other BDA personnel. (Compl.¶ 23) In the meeting, Bernard told Cordoba that Tam was scheduled to return from maternity leave on April 30, 2001, and, because there was not enough work for three **employees** in the accounting department, BDA had decided to fire Cordoba based on a comparison of her and her co-workers' abilities. (Compl. ¶ 23; Cordoba Aff. ¶ 6; Bernard Dep. at 12) Bernard said also that the company could not fire Tam because she was returning from maternity leave. (Compl.¶ 23) At the time BDA fired Cordoba, she was 59 years old, Tam was 27, and Lindsay was 34. (Cordoba Aff. ¶ 11)

At the April 27 meeting, Cordoba was promised that BDA would pay her for three weeks of accrued vacation and four weeks **severance**, and would not contest her receipt of unemployment insurance. (Cordoba Aff. ¶ 7) Ciravolo confirmed these benefits in a letter to Cordoba dated May 2, 2001. (5/2/01 Ciravolo Letter, Laskin Decl. Ex. 2) The letter did not state that Cordoba's receipt of these benefits was conditioned upon her execution of a **release**. (*Id.*) At some point after receiving Ciravolo's letter, Cordoba received payment for the three weeks of accrued

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 22902266 (S.D.N.Y.)

(Cite as: Not Reported in F.Supp.2d)

Page 5

vacation. (Cordoba Dep. at 54)

On or about June 1, 2001, Cordoba received from Ciravolo a letter agreement dated May 30, 2001 (the " **Release** " ), setting forth certain terms governing Cordoba's separation from the company. (Cordoba Aff. ¶ 9) The **Release** stated, in relevant part:

*Payments and Benefits*

**\*3** 3. Upon your execution of this letter agreement, you will receive a special lump sum payment equal to four (4) weeks of your current salary, less all federal, state and local taxes and withholdings.

...

*Complete Waiver and **Release***

5. You agree for yourself, your heirs, executors, administrators, assigns and agents to fully, finally and forever **release** and discharge BDA ... from any and all claims, actions, causes of action, suits and demands whatsoever, known or unknown, asserted or unasserted, at law or at equity, in any and all forums which you ... have had or may have including, but not limited to, any and all rights under The Age Discrimination in **Employment** Act, Title VII of the Civil Rights Act, The American with **Disabilities** Act, any claim of breach of any express or implied contract, wrongful, abusive or retaliatory discharge or **employment** discrimination whether based on federal, state or local law or judicial or administrative decision, and any and all claims arising out of the terms or conditions of your **employment**.

...

*Employment Inquiries*

9. You should direct all inquiries from prospective **employers** to Michael A. Ciravolo. Prospective **employers** will be given only the dates of your **employment**, your last position held, duties, and last salary unless you expressly authorize in writing that further information may be disclosed. The stated reason for your separation from BDA will be ' resignation.'

...

11. By signing this agreement, you acknowledge that you have reviewed it carefully and understand its terms. You further acknowledge that you have been given an opportunity to consult an attorney

concerning this agreement and its terms.

12. This proposal is null and void if not signed and returned to [Ciravolo] by June 6, 2001.

(5/30/01 **Release**, Laskin Decl. Ex. 1 (" **Release** ))
Before receiving the **Release**, Cordoba was not told that she would have to execute a waiver of claims against BDA in order to obtain the **severance** payment promised her at the April 27 meeting. (Cordoba Aff. ¶ 9; Pl.'s Rule 56.1 Counter-Statement ¶ 9)

Cordoba read the **Release**, showed it to her husband, and discussed it with an attorney who worked in her husband's office. (Pl.'s Rule 56.1 Counter-Statement ¶ 2; Def.'s Rule 56.1 Statement ¶ 5; Pl.'s Mem. at 8) On June 5, 2001, Cordoba signed the **Release** in her husband's presence and returned it. (Def.'s Rule 56.1 Statement ¶ 5; Cordoba Aff. ¶ 9) Cordoba acknowledges having " understood everything" in the **Release**. (Cordoba Dep. at 59) However, she claims that she " signed ... and returned, [the **Release**] believing that it was not valid." (Cordoba Aff. ¶ 9). Cordoba received the promised **severance** payment from BDA in June or July 2001. (Cordoba Dep. at 77; Def.'s Rule 56.1 Statement ¶ 7) She then filed for and obtained unemployment benefits until approximately October 2001, when she began a new job. (Def.'s Rule 56.1 Statement ¶ 7)

**\*4** Tam resigned from BDA approximately four months after returning to the firm from maternity leave. (Cordoba Aff. ¶ 12) BDA did not re-hire Cordoba after Tam resigned. (*Id.*)

On or about August 30, 2001, Cordoba filed a complaint with the Equal **Employment** Opportunity Commission (" EEOC" ) (the " EEOC Complaint" ), alleging that BDA " committed unlawful discriminatory practices and retaliation against me based on my age and national origin...." (8/30/01 EEOC Complaint, Laskin Decl. Ex. 4, ¶ 1) The EEOC subsequently issued a right-to-sue letter. (3/27/02 EEOC Dismissal of Notice and Rights, Compl. Ex.)

On June 26, 2002, Cordoba filed an initial complaint in this court, alleging national origin discrimination in violation of Title VII, NYSHRL, and NYCHRL. In a letter to the court dated April 8, 2003, Cordoba sought leave to file an amended complaint adding various age discrimination and retaliation claims. On April 18, 2003, BDA filed a Memorandum of Law in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 6

Not Reported in F.Supp.2d, 2003 WL 22902266 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

support of its pending motion for summary judgment, seeking dismissal of Cordoba's initial complaint and denial of Cordoba's request to amend her complaint. On April 28, 2003, Cordoba filed her amended complaint, alleging the following claims for relief: (1) national origin discrimination in violation of Title VII, NYSHRL, and NYCHRL; (2) age discrimination in violation of the ADEA, NYSHRL, and NYCHRL; and (3) retaliation in violation of the ADEA, Title VII, NYSHRL, and NYCHRL. I issued an order, dated April 29, 2003, granting Cordoba leave to file her amended complaint and deeming BDA's Memorandum of Law addressed to the amended complaint. On June 17, 2003, BDA filed a Reply Declaration in further support of its motion for summary judgment.

BDA seeks summary judgment on two principal grounds: (1) Cordoba knowingly and voluntarily signed a **release** waiving all of her non-ADEA claims and, in any event, those claims fail on the merits as a matter of law; and (2) Cordoba's ADEA claims fail on the merits as a matter of law.

II.

BDA first argues for dismissal of all of Cordoba's non-ADEA claims-her first, second, third, fifth, sixth, eighth, ninth, and tenth causes of action-on the ground that the **Release** precludes her from raising those claims.[FN3] (Def.'s Mem. at 1-5; Def.'s Reply Decl. at 2-5) Cordoba argues that the **Release** is unenforceable as to her non-ADEA claims because it was not a knowing and voluntary waiver. (Pl.'s Mem. at 7-10) Whether the **Release** is enforceable as to Cordoba's non-ADEA claims depends on whether the claim in question arises under a federal (Title VII) or a state or local (N.Y.SHRL and NYCHRL) statute.

> FN3. BDA acknowledges that the **Release** is unenforceable as to Cordoba's ADEA claims. *See infra* discussion at page 17.

*A. Title VII Claims*

[1] The enforceability of the **Release** as to Cordoba's Title VII claims-her first (national origin) and eighth (retaliation) causes of action-is governed by federal law. *See Olin Corp. v. Consolidated Aluminum Corp.,* 5 F.3d 10, 15 (2d Cir.1993) (federal law determines validity of **release** of federal statutory claim). Under Title VII, an **employee** may validly

waive a discrimination claim so long as the waiver is made knowingly and voluntarily. *See Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Bormann v. AT & T Communications, Inc.,* 875 F.2d 399, 402 (2d Cir.1989).

*5 The Second Circuit has adopted the " totality of the circumstances" inquiry to determine whether a **release** of Title VII claims is knowing and voluntary. *See Bormann,* 875 F.2d at 403. In *Bormann,* the Court identified several factors relevant to this inquiry (the " *Bormann* factors" ): (1) the plaintiff's education and business experience; (2) the amount of time the plaintiff had possession of or access to the **release** before signing it; (3) the plaintiff's role in deciding the terms of the **release**; (4) the clarity of the **release**; (5) whether the plaintiff was represented by or consulted an attorney; (6) whether the consideration given in exchange for the **employee's** waiver exceeds benefits to which the **employee** was already entitled by contract or law; (7) whether the **employer** encouraged the **employee** to consult an attorney; and (8) whether the **employee** had a fair opportunity to do so. *Id.* These factors are not exhaustive, and all need not be satisfied before a **release** is deemed enforceable. *Id.* at 403 & n .1. " The essential question is ' whether, in the totality of the circumstances, the individual's waiver of his right can be characterized as ' knowing and voluntary." " *Baba v. Warren Mgmt. Consultants, Inc.,* 882 F.Supp. 339, 344 (S.D.N.Y.1995) (quoting *Laniok v. Advisory Comm.,* 935 F.2d 1360, 1368 (2d Cir.1991) and *Bormann,* 875 F.2d at 403).

Here, the balance of *Bormann* factors supports a finding that Cordoba's waiver of Title VII claims was knowing and voluntary. First, Cordoba's education and business experience-a high school diploma, one year of college, an associate business degree in Accounting, **employment** in BDA's accounting department for five years, and **employment** generally for approximately 25 years (Def.'s Rule 56.1 Statement ¶¶ 3,4)-warrants the inference that she was capable of understanding the terms of the **Release**. *See Prunella v. Carlshire Tenants, Inc.,* 94 F.Supp.2d 512, 516 (S.D.N.Y.2000) (**release** valid where **employee** had a high school diploma and was a certified plumber); *Bachiller v. Turn On Prods., Inc.,* 00 Civ. 8701(JSM), 2003 U.S. Dist. LEXIS 6164, at *9-10 (S.D.N.Y. Apr. 11, 2003) (**release** valid where **employee** had a high school equivalency diploma and was an accounts payable clerk). Second, BDA gave

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Cordoba approximately four days to sign and return the **Release**-a period sufficient for Cordoba to acquaint herself with the **Release's** terms and make a considered decision. *See Evans v. Waldorf-Astoria Corp.*, 827 F.Supp. 911, 913 (E.D.N.Y.1993) (a few hours is sufficient), *aff'd* 33 F.3d 49 (2d Cir.1994); *Dewey v. PTT Telecom Netherlands, US, Inc.*, 94 Civ. 5983(HB), 1995 U.S. Dist. LEXIS 13134, at *6 (S.D.N.Y. Sept. 12, 1995) (four days is sufficient). Third, although Cordoba did not have an opportunity to negotiate the terms of the **Release**, this fact alone does not warrant a trial on " voluntariness." *See Bormann,* 875 F.2d at 403 n. 1; *Branker v. Pfizer, Inc.,* 981 F.Supp. 862, 867 (S.D.N.Y.1997) (" [I]n light of the balance of the other [*Bormann* ] factors to be considered, lack of input [in determining **release's** terms] alone cannot support invalidating the **release**." ). Fourth, the **Release** is unambiguous and comprehensible. It is slightly longer than two typewritten pages and refers specifically to Cordoba's waiver of Title VII claims. *See Laramee v. Jewish Guild for the Blind,* 72 F.Supp.2d 357, 360 (S.D.N.Y.1999) (upholding validity of **release** that was three pages and written in plain English); *Dewey,* 1995 U.S. Dist. LEXIS 13134, at *6 (upholding validity of **release** that was less than two typewritten pages and written in clear and simple language). Cordoba has testified that she read and in fact understood the terms of the **Release**. (Cordoba Dep. at 51) Fifth, the **Release** states plainly that the signer is aware of the right to consult an attorney, and Cordoba acknowledges discussing the **Release** with an attorney before signing it. (**Release** ¶ 11; Pl.'s Rule 56.1 Counter-Statement ¶ 2) Cordoba protests that her attorney did not participate in negotiating the **Release** (Pl.'s Mem. at 8), but that alone does not preclude a finding that the **Release** was knowing and voluntary. *See Baba,* 882 F.Supp. at 344 (upholding validity of **release** where **employee** was represented by an attorney, even though the **release** contained standardized language). *Cf. George v. Mobil Oil Corp.,* 739 F.Supp. 1577, 1581 (S.D.N.Y.1990) (invalidating **release** where attorney did not participate in negotiating the agreement but advised **employee** that **release** was not binding).

***6** The parties have used considerable space debating whether Cordoba's receipt of **severance** was additional consideration in excess of benefits to which she was already entitled. BDA contends that Cordoba, an at-will **employee**, was not entitled to a **severance** package when BDA terminated her, and thus the **severance** was additional consideration.

(Def.'s Mem. at 4; Def.'s Reply Decl. at 2-4) Cordoba argues that she was already sufficient for the **severance** payment because BDA promised it to her at the April 27, 2001, meeting predating her execution of the **Release**. (Pl.'s Mem. at 5-6, 8-9) I need not resolve this debate because Cordoba received other valid consideration for her waiver-namely, BDA's promise to tell prospective **employers** that Cordoba had resigned.

Cordoba nowhere alleges that she would have been entitled to BDA's promise to tell prospective **employers** she had resigned even had she not signed the **Release**.[FN4] It is plain, moreover, that BDA's promise constitutes valid consideration in exchange for Cordoba's waiver of claims. *See Startech, Inc. v. VSA Arts,* 126 F.Supp.2d 234, 237 (S.D.N.Y.2000) (defining " consideration" as a bargained-for gain or advantage to the promisee or a bargained-for legal detriment or disadvantage to the promisor). Cordoba obtained an advantage from BDA's promise insofar as it made her a more attractive job applicant to prospective **employers**. Moreover, as discussed above, the **Release** is written in clear and understandable language, and Cordoba consulted an attorney before signing it, and read and understood its terms. These facts warrant the inference that Cordoba bargained for BDA's promise.

> FN4. Cordoba invests considerable significance generally in Bernard's and Ciravolo's deposition testimony that she did not receive any additional consideration in exchange for signing the **Release** (Pl.'s Mem. at 6,9). I find that testimony to be of little weight because Bernard and Ciravolo, as non-lawyers, would have no reason to be familiar with the legal concept of consideration. *See United States v. DiGiulio,* 95 Civ. 219S, 1997 U.S. Dist. LEXIS 19062, at *25 (W.D.N.Y. Nov. 5, 1997) (non-lawyer's statement that he received no " actual consideration" was not dispositive); *United States v. Nirelli,* 92 Civ. 563C, 1996 U.S. Dist. LEXIS 5472, at *7 (W.D.N.Y. Jan. 4, 1996) (non-lawyers' statements that they had not received anything of value for transfer were not admissions of lack of consideration).

In sum, the totality of the circumstances shows that Cordoba signed a knowing and voluntary **release** precluding her from asserting Title VII claims against

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 22902266 (S.D.N.Y.)

(Cite as: Not Reported in F.Supp.2d)

BDA. Accordingly, Cordoba's first and eighth causes of action are dismissed. [FN5]

> FN5. BDA argues that even if the **Release** was not knowing and voluntary, dismissal of Cordoba's Title VII claims is still warranted because: (1) Cordoba never repudiated the **release**, and ratified the **release** by retaining benefits she received in exchange for signing it (Def.'s Mem. at 4); and (2) the Title VII claims fail on the merits as a matter of law. (Def.'s Mem. at 5-7; Def.'s Reply Decl. at 8-9) Because Cordoba's **release** is enforceable as to her Title VII claims, I need not consider these arguments.

### B. NYSHRL and NYCHRL Claims

[2] The enforceability of the **Release** as to Cordoba's NYSHRL and NYCHRL claims-her second (N.Y.SHRL national origin discrimination), third (N.Y.CHRL national origin discrimination), fifth (N.Y.SHRL age discrimination), sixth (N.Y.CHRL age discrimination), ninth (N.Y.SHRL retaliation), and tenth (N.Y.CHRL retaliation) causes of action-is governed by ordinary contract law principles. See _Bank of Am. Nat'l Trust and Sav. Ass'n v. Gillaizeau,_ 766 F.2d 709, 715 (2d Cir.1985) (applying New York law); _Cramer v. Newburgh Molded Prods., Inc.,_ 228 A.D.2d 541, 541, 645 N.Y.S.2d 46, 47 (2d Dep't 1996). Under New York contract law, a valid **release** that is clear and unambiguous on its face, even one relinquishing a discrimination claim, is enforceable so long as the **release** has been knowingly and voluntarily entered into. See _Zveiter v. Brazilian Nat'l Superintendency of Merchant Marine,_ 833 F.Supp. 1089, 1096 (S.D.N.Y.), opinion supplemented, 841 F.Supp. 111 (S.D.N.Y.1993).

It is well settled that the totality-of-the-circumstances standard is stricter than ordinary contract law principles for determining whether a **release** is knowing and voluntary. See _Bormann,_ 875 F.2d at 403; _Laramee,_ 72 F.Supp.2d at 359; _Nicholas,_ 929 F.Supp. at 730. Because Cordoba's waiver of her Title VII claims was knowing and voluntary under the totality-of-the-circumstances standard, for the reasons discussed above at pages 10-15, and Cordoba does not raise any novel arguments concerning the **Release's** enforceability as to her NYSHRL and NYCHRL causes of action, BDA is entitled to summary judgment dismissing all of Cordoba's NYSHRL and NYCHRL causes of action. See

_Laramee,_ 72 F.Supp.2d at 359, 361 (dismissing NYSHRL causes of action because **employee** was found, under totality-of-the-circumstances standard, to have **released** federal claims); _Bachiller,_ 2003 U.S. Dist. LEXIS 6164, at *10 (dismissing NYSHRL and NYCHRL causes of action because **employee** was found, under totality-of-the-circumstances standard, to have **released** federal claims). Accordingly, Cordoba's second, third, fifth, sixth, ninth, and tenth causes of action are dismissed.

### III.

*7 BDA concedes that the **Release,** even if knowing and voluntary, does not bar Cordoba's ADEA claims-her fourth (age discrimination) and seventh (retaliation) causes of action-because it fails to satisfy the requirements set forth in the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f)(1) (" OWBPA" ).[FN6] (Def.'s Reply Decl. at 2 n.1) However, BDA argues that Cordoba's ADEA claims nevertheless should be dismissed because they fail on the merits. (Id. at 2 n. 1, 9-11)

> FN6. Non-compliance with the OWBPA provisions does not invalidate Cordoba's **release** of her Title VII, NYSHRL, or NYCHRL claims because the OWBPA applies only to ADEA claims. See _Branker v. Pfizer, Inc.,_ 981 F.Supp. 862, 867 (S.D.N.Y.1997).

Cordoba's ADEA claims are to be assessed by applying the burden-shifting rules of _McDonnell Douglas Corp. v. Green,_ 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. See _Slattery v. Swiss Reinsurance America Corp.,_ 248 F.3d 87, 91 (2d Cir.2001). Under the _McDonnell Douglas_ framework, Cordoba has the initial burden of establishing a prima facie case of discrimination or retaliation. _Id._ at 91, 94. The burden then shifts to BDA to rebut the presumption of discrimination or retaliation by articulating a legitimate, non-discriminatory reason for its action. _Id._ at 91, 94-95. If BDA does so, the burden shifts back to Cordoba to show that BDA's articulated non-discriminatory reason is simply a pretext for discrimination or retaliation. _Id._ at 91, 95.

The Second Circuit Court of Appeals has repeatedly advised that a plaintiff's presentation of evidence rebutting an **employer's** proffered justification will not always preclude summary judgment. See, e.g.,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 22902266 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

_Farias v. Instructional Sys., Inc.,_ 259 F.3d 91, 98-99 (2d Cir.2001); _James v. New York Racing Assoc.,_ 233 F.3d 149, 154-56 (2d Cir.2000). _See also Cobian v. New York City,_ 99 Civ. 10533(KMW)(AJP), 2000 U.S. Dist. LEXIS 17479, at *28 n. 21 (S.D.N.Y. Dec. 6, 2000) (citing cases where courts within the Second Circuit have granted summary judgment despite evidence of pretext). As the Court of Appeals has reasoned, a plaintiff's success in persuading a jury that his **employer's** given reason for an adverse **employment** action is pretextual does not constitute affirmative evidence that the actual reason was the sort of discrimination prohibited under the applicable statute. _See James,_ 233 F.3d at 154. It follows that " evidence that the defendant's articulated nondiscriminatory reason is false, when added to the prima facie case, may or may not be ' sufficient to support a reasonable inference that prohibited discrimination occurred' and warrant submitting the case to the jury." _Farias,_ 259 F.3d at 98-99 (citation omitted). When the **employer** proffers an explanation and the plaintiff attempts to refute it, the court's responsibility is to " analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove...." _James,_ 233 F.3d at 157.

Because ADEA age discrimination and retaliation claims contain different elements, the _McDonnell Douglas_ test must be applied to each separately.

### A. Age Discrimination

**\*8 [3]** The ADEA makes it unlawful " for an **employer** to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of **employment**, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie case of age discrimination under the ADEA, Cordoba must show that: (1) she was within the protected age group; (2) she was qualified for her position; (3) she suffered an adverse **employment** action; and (4) the action took place under circumstances giving rise to an inference of discrimination. _Schnabel v. Abramson,_ 232 F.3d 83, 87 (2d Cir.2000). The burden of proof for establishing a prima facie case of age discrimination is minimal. _Id._

Cordoba has carried this minimal burden. First, she was almost 60 when BDA fired her (Cordoba Aff. ¶ 11), and thus falls within the protected class. _See 29 U.S.C. § 631(a)_ (limiting prohibitions of ADEA to individuals who are at least 40 years old). Second, as discussed above, Cordoba had an associate's business degree in Accounting, almost 20 years of professional experience before joining BDA, and almost five years of experience in BDA's accounting department when she was fired. A jury easily could find that Cordoba was qualified to serve as a bookkeeper for BDA. _See Gregory v. Daly,_ 243 F.3d 687, 696 (2d Cir.2001) (inference of minimal qualification is not difficult to draw where **employer** has already hired **employee** and discharge is at issue); _Slattery,_ 248 F.3d at 92 (" [P]laintiff must show only that he ' possesses the basic skills necessary for performance of [the] job." ' ) (alteration in original) (citation omitted). Third, Cordoba's termination constitutes an adverse **employment** action. _See Perry v. Manocherian,_ 675 F.Supp. 1417, 1423 (S.D.N.Y.1987). Fourth, that BDA terminated Cordoba but retained Tam, who was 27, and Lindsay, who was 34, is enough to warrant the inference-at the prima facie stage-that Cordoba was the victim of age discrimination. _See Schnabel,_ 232 F.3d at 87 (plaintiff was over 60 years old and replacement was 30); _Tarshis v. Riese Org.,_ 211 F.3d 30, 38 (2d Cir.2000) (plaintiff was 67 years old and replacement was 59).

In turn, BDA argues that it dismissed Cordoba because there was insufficient work for three **employees** in the accounting department, and Bernard and Ciravolo determined that Cordoba was less qualified than Tam and Lindsay. (Def.'s Reply Decl. at 5-8). In furtherance of its claim that Cordoba was less qualified than her co-workers, BDA points to Cordoba's inability to process payroll, as well as Cordoba's written performance evaluations indicating certain work-related shortcomings. (Def.'s Reply Decl. at 7 & 10 n.6). In light of this evidence, I find that BDA satisfies its burden of stating a legitimate, non-discriminatory reason for firing Cordoba.

Because BDA has articulated a legitimate, non-discriminatory reason for firing Cordoba, the burden shifts back to Cordoba to present sufficient evidence for a reasonable jury to conclude that BDA discriminated against her because of her age. Cordoba offers testimonial and documentary evidence that BDA's proffered justification for terminating her is pretextual, including: she had the most seniority among the **employees** in the accounting department; her written performance evaluations reveal that she completed her work at least as satisfactorily as Tam; BDA hired Lindsay as

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 22902266 (S.D.N.Y.)

(Cite as: Not Reported in F.Supp.2d)

a permanent **employee** after firing Cordoba; and BDA failed to re-hire Cordoba after Tam resigned. (Pl.'s Mem. at 14-15) Although a reasonable jury could conclude, based on this evidence, that BDA's stated explanation is pretext, Cordoba fails to allege a single fact-aside from the age difference between Cordoba and her co-workers-supporting the claim that BDA fired her *on the basis of age.* For instance, Cordoba does not allege that any BDA personnel discussed her age as a justification for terminating her. Nor does she allege, let alone present any evidence, that she ever encountered any age-related comments or criticisms on the job. In short, Cordoba fails to present sufficient evidence that age was a determinative factor in BDA's decision to dismiss her. *See Jetter v. Knothe Corp.,* 324 F.3d 73, 76 (2d Cir.2003); *Slattery,* 248 F.3d at 94; *Schnabel,* 232 F.3d at 91; *Newsom-Lang v. Warren Int'l, Inc.,* 249 F.Supp.2d 292, 303 (S.D.N.Y.2003) (all dismissing ADEA age discrimination claims in final *McDonnell Douglas* step because plaintiff failed to present sufficient evidence of age-based animus). *Cf. Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (denying summary judgment where, among other things, **employee** testified that his supervisor said he " was so old [he] must have come over on the Mayflower" and he " was too damn old to do [his] job" ) (alterations in original). Accordingly, Cordoba's fourth claim is dismissed.

### B. *Retaliation*

**\*9** [4] The ADEA also makes it unlawful " for an **employer** to discriminate against any of his **employees** ... because such individual ... has opposed any practice made unlawful by this section." 29 U.S.C. § 623(d). To establish a prima facie case of retaliation under the ADEA, Cordoba must show that: (1) she participated in an activity protected under the ADEA; (2) BDA was aware of her participation in the protected activity; (3) she suffered an adverse **employment** action; and (4) a causal connection exists between the protected activity and the adverse action. *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 465 (2d Cir.1997). Although the burden of proof for establishing a prima facie case of retaliation is minimal, *id.,* Cordoba fails to carry this burden.

The only discernible theory of retaliation in Cordoba's pleadings is that BDA fired her because she complained to Bernard and Renaldt about

Ciravolo's alleged ridicule of her national origin. However credible that theory, it does not state a cognizable ADEA retaliation claim because her complaints did not pertain to age discrimination-the particular offense against which the ADEA is directed-and thus do not constitute " protected activity" within the meaning of the statute. *See Banez v. New York Foundling Hosp.,* 98 Civ. 518(GEL), 2001 U.S. Dist. LEXIS 13883, at \*16-18 (S.D.N.Y. Sept. 6, 2001) (demands for overtime pay not causally connected to age discrimination were not " protected activity" under ADEA); *McCalman v. Partners in Care,* 01 Civ. 5844(FM), 2003 U.S. Dist. LEXIS 17211, at \*17-18 (S.D.N.Y. Sept. 29, 2003) (complaints to Department of Health about **employer's** non-age related practices did not constitute " protected activity" under ADEA).

In short, the ADEA does not protect against retaliation in the abstract. *See McCalman,* 2003 U.S. Dist. LEXIS 17211, at \*17 (ADEA is not " an all-purpose whistleblower statute" ). Absent a showing that Cordoba opposed the particular species of discrimination targeted by the ADEA, she cannot establish a prima facie case of ADEA retaliation. Accordingly, her seventh claim is dismissed.

### IV.

[5] It appears that Cordoba's Title VII and ADEA retaliation claims-her seventh and eighth claims for relief-should be dismissed also because she failed to assert these claims in her EEOC Complaint. As a precondition to filing Title VII and ADEA claims in federal court, a plaintiff must assert those claims in a timely complaint filed with the EEOC. *See Legnani v. Alitalia Linee Aeree Italiane, S.p.A.,* 274 F.3d 683, 686 (2d Cir.2001). However, a defendant's failure to raise a timely objection about lack of exhaustion may constitute a waiver of the right to complain on that ground. *See Francis v. City of New York,* 235 F.3d 763, 768 (2d Cir.2000) (finding waiver where defendant failed to object to unexhausted Title VII claim until after entry of judgment and twice elected not to object after judge raised doubts about whether claim belonged in the case).

**\*10** Here, although it is a close question, BDA does not seem to have waived its right to object to Cordoba's failure to exhaust her retaliation claims. While BDA does not explicitly seek dismissal of Cordoba's Title VII and ADEA retaliation claims on exhaustion grounds, it repeatedly observes that she

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 22902266 (S.D.N.Y.)

(Cite as: Not Reported in F.Supp.2d)

failed to assert any retaliation claims in her EEOC Complaint. (Def.'s Mem. at 7 n.2; Def.'s Reply Decl. at 9)

A careful reading of the EEOC Complaint substantiates this observation. Cordoba marked the " NATIONAL ORIGIN" and " AGE" boxes on the cover sheet of the EEOC Complaint, and she alleges facts therein corresponding to those claims. (EEOC Complaint) By contrast, Cordoba does not appear to have marked the " RETALIATION" box on the cover sheet of the EEOC Complaint,[FN7] and the only language therein referring to retaliatory conduct is Cordoba's statement that BDA " committed unlawful discriminatory practices and retaliation against me based upon my age and national origin." (*Id.*) That statement says merely that BDA committed national origin and age discrimination against Cordoba; it cannot reasonably be read to have alerted the EEOC that Cordoba suffered retaliation because she complained about BDA's discriminatory practices. Indeed, the EEOC Complaint does not contain a single reference to Cordoba's complaints to Bernard and Renaldt. This omission is critical because Cordoba's complaints are the predicate of the retaliation claims set forth in her amended complaint.

> FN7. The cover sheet of the copy of the EEOC Complaint submitted to the court is partly illegible, and thus I cannot say with absolute certainty that Cordoba did not check the " RETALIATION" box as a cause of discrimination. However, in a subsequent EEOC letter notifying BDA of the claims Cordoba asserted in the EEOC Complaint, the only causes marked are " nat. origin" and " age." (10/23/01 EEOC Notice of Charge of Discrimination, Laskin Decl. Ex. 4)

Claims not asserted before the EEOC may be pursued directly in federal court if they are " reasonably related" to claims already filed with the agency. *Legnani,* 274 F.3d at 686. The Second Circuit has recognized three types of unasserted claims that are reasonably related to those asserted in an EEOC complaint: (1) claims falling within the scope of the EEOC investigation which can reasonably be expected to grow out of the discrimination charged in the EEOC complaint; (2) claims alleging retaliation against an **employee** for filing an EEOC complaint; and (3) claims alleging further incidents of discrimination carried out in the precise manner

alleged in the EEOC complaint. *Terry v. Ashcroft,* 336 F.3d 128, 151 (2d Cir.2003) (citing *Butts v. City of New York Dep't of Hous. Pres. and Dev.,* 990 F.2d 1397, 1402-03 (2d Cir.1993)).

Cordoba's Title VII and ADEA retaliation claims do not fall within any of these exceptions. The first exception is inapplicable because the EEOC's investigation into national origin and age discrimination claims cannot be expected to evolve into an investigation of retaliatory motive. *See Sussle v. Sirina Protection Sys. Corp.,* 269 F.Supp.2d 285, 314-15 (S.D.N.Y.2003) (citing cases). The second exception is inapplicable because Cordoba's retaliation claim is premised upon her complaints to Bernard and Renaldt-which she made before she was fired and before she filed the EEOC Complaint-not on her filing of the EEOC Complaint. *See Gambrell v. National R.R. Passenger Corp.,* 01 Civ. 6433(NRB), 2003 U.S. Dist. LEXIS 1515, at *29 (S.D.N.Y. Jan. 31, 2003). The third exception is inapplicable because Cordoba's retaliation claim plainly is not a further incident of discrimination carried out in precisely the same manner as the national origin and age discrimination alleged in the EEOC Complaint. *See id.* at *29.

*11 Because Cordoba failed to allege retaliation in the EEOC Complaint, and her retaliation claims are not reasonably related to the claims alleged therein, her Title VII and ADEA retaliation claims are dismissed also for failure to exhaust administrative remedies. Moreover, because the time for Cordoba to cure this defect has expired,[FN8] these claims are dismissed with prejudice. *See Berry v. Kerik,* 345 F.3d 126, 127-28 (2d Cir. Sept.25, 2003) (failure to pursue administrative remedies while they are available results in dismissal with prejudice).

> FN8. Under Cordoba's theory of retaliation, BDA's retaliatory conduct-*i.e.,* terminating Cordoba for complaining to Bernard and Renaldt about Ciravolo's ridicule-took place on or about April 27, 2001. Thus, Cordoba's last day for filing an administrative charge with the EEOC alleging retaliation was on or about February 21, 2002. *See Flaherty v. Metromail Corp.,* 235 F.3d 133, 136 (2d Cir.2000) (" To sustain a claim for unlawful discrimination under Title VII and/or the ADEA, a plaintiff must file administrative charges with the EEOC within 300 days of the alleged discriminatory acts." ).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2003 WL 22902266 (S.D.N.Y.)

**(Cite as: Not Reported in F.Supp.2d)**

V.

BDA moves under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988(b) (the " Attorney's Fees Award Act" ), for costs and attorney's fees on the ground that Cordoba's counsel filed the initial complaint in this action after BDA's counsel advised him that the **Release** barred all of Cordoba's national origin discrimination claims. (Def.'s Mem. at 8) The Attorney's Fees Award Act enables a court, in its discretion, to award reasonable attorney's fees to the prevailing party " in any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title." Because Cordoba does not assert claims arising under any of the enumerated statutes, BDA's motion for costs and attorney's fees is denied.

To the extent BDA seeks costs and attorney's fees directly under the attorney's fee provision of Title VII, 42 U.S.C. § 2000e-5(k), that request is denied because Cordoba's Title VII claims were not " frivolous, unreasonable, or groundless," nor did she " continue[ ] to litigate after [they] clearly became so." *Am. Fed'n of State, County & Mun. Employees v. County of Nassau,* 96 F.3d 644, 646 (2d Cir.1996) (citing *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)).

For the above reasons, BDA's motion for summary judgment is granted, and all of Cordoba's claims are dismissed. BDA's motion for costs and attorney's fees is denied.
SO ORDERED:

S.D.N.Y.,2003.
Cordoba v. Beau Dietl & Associates
Not Reported in F.Supp.2d, 2003 WL 22902266 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2

Westlaw.

Slip Copy                                                                                    Page 2

Slip Copy, 2006 WL 2778858 (S.D.N.Y.)

**(Cite as: Slip Copy)**

**C**
Hsueh v. The Bank of New York
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Eric HSUEH, Plaintiff,
v.
THE BANK OF NEW YORK, Defendant.
**No. 05 Civ.5345 JSR.**

Sept. 26, 2006.

*ORDER*

RAKOFF, J.
**\*1** On October 31, 2005, the Honorable Andrew J.
Peck, United States Chief Magistrate Judge, issued a
Report and Recommendation (" Report " ) in the
above-captioned case recommending that defendant's
motion to dismiss be granted with prejudice on the
grounds that plaintiff's **disability** discrimination
claims are barred by a valid **release**.

After the Report issued, plaintiff submitted an
objection dated November 4, 2005, to which
defendant submitted a reply dated November 23,
2005. Having considered the matter *de novo,* the
Court finds itself in total agreement with the
reasoning set forth in the Report, which the Court
hereby adopts by reference with one exception.[FN1]
Accordingly, the defendant's motion to dismiss is
hereby granted and the action is dismissed with
prejudice. Clerk to enter judgment.

> FN1. In response to separate objections from
> plaintiff and defendant, the case caption is
> hereby amended to read " Eric Hsueh v. The
> Bank of New York."

SO ORDERED.

*REPORT AND RECOMMENDATION*

PECK, Chief Magistrate J.
Pro se plaintiff Eric Hseuh brought this action against
defendant Bank of New York alleging discriminatory
termination and retaliation in violation of the
Americans With **Disabilities** Act. *See generally* Dkt.
No. 1: Compl.) Presently before the Court is
defendant Bank of New York's motion to dismiss on
the ground that plaintiff Hseuh's claims are barred by

a valid **release**. (Dkt. No. 9: Notice of Motion to
Dismiss; Dkt. No. 10: Bank Br.)

For the reasons set forth below, the Bank's motion
should be *GRANTED* and the complaint dismissed
with prejudice.

*FACTS*

Plaintiff's complaint asserts that his " [m]edical
history indicates [he has] hemoptysis after expos[ure
to] environmental irritants" as a result of the
September 11, 2001 attacks. (Dkt. No. 1: Compl. ¶ 8
at p. 4.) The Bank accommodated him by transferring
him to a different location, but he " was ordered back
to downtown a couple of times." (*Id.*) In March
2004, he was laid off in a reduction in force. (*Id.*) In
conclusory fashion, the complaint asserts that since
his work had been excellent for the ten years of his
employment, " [i]n light of the discrimination and
harassment to which [he] was subjected based on
[his] **disability**, it is evident that [he] was discharged
in retaliation for [his] valid requests for reasonable
accommodation," in violation of the ADA. (Compl.
¶ 8 at pp. 4, 6.)

Hseuh attached to the complaint various documents
(Compl.: Attachments). [FN1] One of the documents
attached to the Complaint is a March 18, 2004 letter
from the Bank to Hseuh, entitled " Letter Agreement
with General **Release**." (Compl. Att. at pp. 65-71;
*accord,* Dkt. No. 9: Raphan Aff. Ex. B: " Letter
Agreement With General **Release**." ) The Letter
Agreement is countersigned by Hseuh on May 13,
2004. (Compl. Att. at p. 69.) The Letter Agreement
provided for a " Special **Severance** Payment" of
about $33,000 to Hseuh, along with other benefits.
(*Id.* at p. 67.) The Letter Agreement gave Hseuh time
to consider whether to sign the Agreement:

> FN1. The complaint did not label the
> attachments in any way. For convenience,
> the Court will refer to the copy of the
> complaint submitted by defendant on the
> motion, in which defendant numbered all of
> the pages of the complaint and attachments.
> (Dkt. No. 9: Raphan Aff. Ex. A: Compl.)

*Signing the General **Release**:* You may take until
May 4, 2004 (which is at least 45 days from your

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                            Page 3

Slip Copy, 2006 WL 2778858 (S.D.N.Y.)

**(Cite as: Slip Copy)**

receipt of this Letter Agreement) to consider whether or not you will accept the Company's offer. Furthermore, you shall have seven (7) days following your signing of the General **Release** to revoke your execution, at which time the provisions of this Letter Agreement shall be of no force or effect.
**\*2** (Compl. Att.: Letter Agreement ¶ 6 at p. 67.) The General **Release** attached to the Letter Agreement, which Hseuh signed on May 9, 2004, provided a **release** of all claims against the Bank, including specifically ADA claims. (Compl. Att.: Letter Agreement & General **Release** at pp. 70-71.) The General **Release** further provided:

Mr. Hseuh represents and warrants that he has been advised to consult independent legal counsel before signing this General **Release** and that he has executed this General **Release** after having the opportunity to consider its terms for at least 45 days. Mr. Hseuh further represents and warrants that he has read this General **Release** carefully, that he has discussed it, or has had reasonable opportunity to discuss it, with his attorney, that he fully understands its terms, and that he is signing it voluntarily and of his own free will.

*(Id.* at 71.) Hseuh did retain a lawyer to " negotiate [his] **severance** package." (Compl. Att. at pp. 55-60: Hseuh's EEOC " Intake Questionnaire-Discharge" ¶ 19 at p. 58.)

### *ANALYSIS*

### I. *THE STANDARD GOVERNING A MOTION TO DISMISS* [FN2]

FN2. For additional decisions by this Judge discussing the standard governing a motion to dismiss in language substantially similar to that in this section, *see, e.g., Brooks v. Von Lenthe,* 05 Civ. 3655, 2005 WL 2679716 at \*8-9 (S.D.N.Y. Oct. 21, 2005) (Peck, M.J.); *Wong v. Health First, Inc.,* 04 Civ. 10061, 2005 WL 1676705 at \*1-3 (S.D.N.Y. July 19, 2005); *Chase v. Czajka,* 04 Civ. 8228, 2005 WL 668535 at \*4-5 (S.D.N.Y. Mar. 23, 2005) (Peck, M.J.); *Amadsau v. Bronx Lebanon Hosp. Ctr.,* 03 Civ. 6450, 2005 WL 121746 at \*3 (S.D.N.Y. Jan. 21, 2005) (Peck, M.J.), *report & rec. adopted,* 2005 WL 954916 (S.D.N.Y. Apr. 26, 2005) (Kaplan, D.J .); *Doe v. Goord,* 04 Civ. 0570, 2004 WL 2829876 at \*5-6 (S.D.N.Y. Dec. 10, 2004)

(Peck, M.J.); *LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,* 951 F.Supp. 1071, 1080-81 (S.D.N.Y.1996) (Knapp, D.J. & Peck, M.J.); *In re Towers Fin. Corp. Noteholders Litig.,* 93 Civ. 0180, 1995 WL 571888 at \*11 (S.D.N.Y. Sept. 20, 1995) (Peck, M.J.), *report & rec. adopted,* 936 F.Supp. 126 (S.D .N.Y.1996) (Knapp, D.J.).

A district court should deny a Rule 12(b)(6) motion to dismiss " ' unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief." ' *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052 (2d Cir.1993) (quoting *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.,* 748 F.2d 774, 779 (2d Cir.1984)), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86 (1994).[FN3] A court must accept as true the facts alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party-here, the plaintiff. *Cosmas v. Hassett,* 886 F .2d 8, 11 (2d Cir.1989). [FN4]

> FN3. *Accord, e.g., Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 216 (2d Cir.2004); *Weinstein v. Albright,* 261 F.3d 127, 131 (2d Cir.2001); *In re Scholastic Corp. Sec. Litig.,* 252 F.3d 63, 69 (2d Cir.), *cert. denied,* 534 U.S. 1071, 122 S.Ct. 678 (2001); *Grandon v. Merrill Lynch & Co.,* 147 F.3d 184, 188 (2d Cir.1998).

> FN4. *Accord, e.g., Freedom Holdings, Inc. v. Spitzer,* 357 F.3d at 216; *Weinstein v. Albright,* 261 F.3d at 131; *In re Scholastic Corp. Sec. Litig.,* 252 F.3d at 69.

A motion to dismiss challenges only the face of the pleading. Thus, in deciding a motion to dismiss, " the Court must limit its analysis to the four corners of the complaint." *Vassilatos v. Ceram Tech Int'l Ltd.,* 92 Civ. 4574, 1993 WL 177780 at \*5 (S.D.N.Y. May 19, 1993) (citing *Kopec v. Coughlin,* 922 F.2d 152, 154-55 (2d Cir.1991)).[FN5] The Court, however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference. *E.g., Chambers v. Timer Warner, Inc.,* 282 F.3d 147, 153 (2d Cir.2002) (" Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." ); *Yak v. Bank Brussels*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Lambert, BBL (USA) Holdings, Inc.,* 252 F.3d 127, 130 (2d Cir.2001) (citing *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 1125 S.Ct. 1561 (1992)); *Rothman v. Gregor,* 220 F.3d 81, 88 (2d Cir.2000) (" For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference ...." ); *see also, e.g., Paulemon v. Tobin,* 30 F.3d 307, 308-09 (2d Cir.1994); *Brass v. American Film Tech., Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

> FN5. *Accord, e.g., Aniero Concrete Co. v. New York City Constr. Auth.,* 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.,* 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar. 9, 2000) (" When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein." ).

When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed.R.Civ.P. 56. *See* Fed.R.Civ.P. 12(b); *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000); *Fonte v. Board of Managers of Cont'l Towers Condos,* 848 F.2d 24, 25 (2d Cir.1988).

*3 The Court's role in deciding a motion to dismiss " ' is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." ' *Saunders v. Coughlin,* 92 Civ. 4289, 1994 WL 88108 at *2 (S.D.N.Y. Mar. 15, 1994) (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980)); *accord, e.g., Watson v. McGinnis,* 964 F.Supp. 127, 130-31 (S.D.N.Y.1997) (Kaplan, D.J. & Peck, M.J.). " ' [T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." ' *Saunders v. Coughlin,* 1994 WL 88108 at *2 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686 (1974)). A Rule 12(b)(6) motion will be granted " ' only if it is clear that no relief could be granted under any set of facts that could be proved consistent with

the allegations." ' *Saunders v. Coughlin,* 1994 WL 88108 at *2 (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232 (1984)).

When reviewing a pro se complaint, the Court must use less stringent standards than if the complaint had been drafted by counsel. *See, e.g., LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991); *Watson v. McGinnis,* 964 F.Supp. at 131; *Saunders v. Coughlin,* 1994 WL 88108 at *2 (citing *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173 (1980)). However, " [d]ismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief...." 2 *Moore's Federal Practice* § 12.34[4][a], at 12-72.7 (2005). Thus, the " duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Id.,* § 12.34[1][b], at 12-61; *see also, e.g., Joyner v. Greiner,* 195 F.Supp.2d 500, 503 (S.D.N.Y.2002) (action dismissed because pro se plaintiff " failed to allege the facts tending to establish" that defendants violated his constitutional rights).

## II. *PLAINTIFF HSEUH'S COMPLAINT IS BARRED BY HIS PRIOR RELEASE*

An **employee** may waive his federal claims of discrimination, whether under the ADA, Title VII, the ADEA or similar statutes (and related state claims), provided the waiver is knowing and voluntary. *See, e.g., Bormann v. AT & T Commc'ns, Inc.,* 875 F.2d 399, 401-03 (2d Cir.) (ADEA), *cert. denied,* 493 U.S. 924, 110 S.Ct. 292 (1989); *Matusovsky v. Merrill Lynch,* 186 F.Supp.2d 397, 400, 401 (S.D.N.Y.2002) (Title VII & N.Y. law); *Livingston v. Bev-Pak, Inc.,* 112 F.Supp.2d 242, 247, 249 (S.D.N.Y.2000) (Title VII & N.Y. law); *Campbell v. Alliance Nat'l Inc.,* 107 F.Supp.2d 234, 239-40 (S.D.N.Y.2000) (Title VII; *Laramee v. Jewish Guild for the Blind,* 72 F.Supp.2d 357, 359 (S.D.N.Y.1999) (ADA & N.Y. law); *Reid v. IBM Corp.,* 95 Civ. 1755, 1997 WL 357969 at *5, 17 (S.D.N.Y. June 26, 1997) (Title VII, ADA & N.Y. law); *Nicholas v. NYNEX, Inc.,* 929 F.Supp. 727, 730 (S.D.N.Y.1996) (Title VII); *Baba v. Warren Mgmt. Consultants, Inc.,* 882 F.Supp. 339, 343 (S.D.N.Y.) (Title VII), *aff'd,* 89 F.3d 826 (2d Cir.1995), *cert. denied,* 519 U.S. 840, 117 S.Ct. 119 (1996).

*4 The federal courts in this Circuit have established a list of eight non-exhaustive factors for the Court to consider in determining whether a waiver was knowing and voluntary:

In determining whether under the totality of the circumstances an individual's waiver was knowing and voluntary, the following factors must be considered: (1) the plaintiff's education and business experience; (2) the amount of time the plaintiff had possession of or access to the agreement before signing it; (3) the role of the plaintiff in deciding the terms of the agreement; (4) the clarity of the agreement; (5) whether the plaintiff was represented by or consulted with an attorney; (6) whether the consideration given in exchange for the waiver exceeds any benefits to which the **employee** was already entitled by contract or law; (7) whether an **employer** encouraged or discouraged the **employee** to consult an attorney; and (8) whether the **employee** had a fair opportunity to consult with an attorney. These factors are neither exhaustive nor must all of the factors be satisfied before a **release** is enforceable.

*Laramee v. Jewish Guild for the Blind,* 72 F.Supp.2d at 359-60 (citations omitted, including to *Bormann v. AT & T Commc'ns, Inc.,* 875 F.2d at 403); *accord, e.g., Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437-38 (2d. Cir.1998); *Matusovsky v. Merrill Lynch,* 186 F.Supp.2d at 400; *Daigle v. West,* 225 F.Supp.2d 236, 245 (N.D.N.Y.2002); *Livingston v. Bev-Pak, Inc.,* 112 F.Supp.2d at 247; *Knoll v. Equinox Fitness Clubs,* 02 Civ. 9120, 2003 WL 23018807 at *3-4 (S.D.N.Y. Dec. 22, 2003), *amended on other grounds,* 02 Civ. 9120, 2004 WL 439500 (S .D.N.Y. Mar. 10, 2004); *Cordoba v. Beau Deitl & Assocs.,* 02 Civ. 4951, 2003 WL 22902266 at *5 (S.D.N.Y. Dec. 8, 2003); *Bachiller v. Turn On Prods., Inc.,* 00 Civ. 8701, 2003 WL 1878416 at *3-4 (S.D.N .Y. Apr. 14, 2003), *aff'd,* 86 Fed. Appx. 475 (2d Cir.2004); *Benson v. NYNEX, Inc.,* 97 Civ. 2168, 2001 WL 579786 at *2 (S.D.N .Y. May 29, 2001), *aff'd,* 33 Fed. Appx. 10 (2d Cir.2002); *Reid v. IBM Corp.,* 1997 WL 357969 at *5; *Branker v. Pfizer, Inc.,* 981 F.Supp. 862, 865-66 (S.D.N.Y.1997); *Kristoferson v. Otis Spunkmeyer, Inc.,* 965 F.Supp. 545, 546-47 (S.D.N.Y.1997) (Rakoff, D.J.).

All of these factors lead the Court to find Hseuh's waiver valid.

1. *Hseuh's Education and Business Experience:* Hseuh worked for the Bank for ten years and held the title of Assistant Treasurer for more than the final five years of that **employment.** (Compl. at pp. 4, 11, 73.) " This Court has held that ' a plaintiff with a high school education and management experience

[is] capable of understanding a straightforward release much like the stipulation at issue here." ' *Campbell v. Alliance Nat'l Inc.,* 107 F.Supp.2d at 240.

2. *Hseuh Had Time to Review the Agreement and Release:* The Bank forwarded the " Letter Agreement with General **Release**" to Hseuh on March 18, 2004, and gave him over 45 days, until May 4, 2004, to decide whether to sign it. (Compl. Att.: Letter Agreement With General **Release**, at pp. 65, 67.) In fact, Hseuh did not sign the Agreement until May 13, 2004 (*id.* at p. 69), some 56 days after he first received it.

*5 3. *The Non-Negotiable Nature of the Agreement Does Not Make It Unenforceable:* Hseuh alleges that the Bank refused to negotiate the terms of the agreement. (Compl. at p. 58.) Assuming for purposes of this motion the truth of that allegation, it does not render the Agreement unenforceable. *See, e.g., Bormann v. AT & T Commc'ns, Inc.,* 875 F.2d at 403 n.1; *Cordoba v. Beau Deitl & Assocs.,* 2003 WL 22902266 at *5; *Laramee v. Jewish Guild for the Blind,* 72 F.Supp.2d at 360; *Reid v. IBM Corp.,* 1997 WL 357969 at *5; *Nicholas v. NYNEX, Inc.,* 929 F.Supp. at 732; *Frumkin v. International Bus. Machs. Corp.,* 801 F.Supp. 1029, 1043 (S.D.N.Y.1992).

4. *The Agreement is Clear:* The Letter Agreement and **Release** are clearly and simply written, informing Hseuh that he is giving up any federal claims including under the ADA and releasing the Bank from any and all claims. (Compl. Att.: Letter Agreement With General **Release** at p. 70, quoted at page 3 above.)

5, 7 & 8. *Hseuh Was Encouraged To and Did Retain Counsel:* The Letter Agreement With General **Release** informed Hseuh of the opportunity to consult with counsel (Compl. Att.: Letter Agreement With General **Release** at p. 71), and in fact Hseuh retained counsel (Compl. Att. at p. 58.)

6. *Hseuh Received Monetary Benefit:* Hseuh received a Special **Severance** Payment of $32,913.46, which he would not have otherwise received. (Compl. Att.: Letter Agreement With General **Release** at p. 67.)

Thus, under the totality of the circumstances, the **Release** is valid.

In response to the Bank's motion, Hseuh claims that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 6

Slip Copy, 2006 WL 2778858 (S.D.N.Y.)

**(Cite as: Slip Copy)**

he did not have enough time to consider whether to sign the agreement, and the Bank " intimidated [Hseuh] to take money off the table if [Hseuh] didn't sign the agreement." (Dkt. No. 11: Hseuh Opp. ¶ 1.) As noted above, Hseuh had almost two full months (56 days) to sign the agreement (March 18 to May 13, 2004). (*See* pages 3, 9 above.) Hseuh claims that he had " poor communication and misrepresentation from" his attorney, such that on May 6 his attorney told him the Bank gave him until May 13, 2004 to decide whether to sign the agreement. (*See* Hseuh Opp. ¶ 1 & Att.: 5/6/09 email from counsel to Hseuh.) Hseuh had had from March 18 to May 4 to sign the agreement; the May 13 deadline was an extension of time by the Bank. (*See* pages 3, 9 above.) The Court finds that Hseuh had enough time to consider his options. *See, e.g., Mareno v. Madison Square Garden, L.P.,* No. 01-7031, 21 Fed. Appx. 74, 75-76 (2d Cir. Oct. 23, 2001); *Knoll v. Equinox Fitness Clubs,* 2003 WL 23018807 at *4.

Hseuh's claim that he was " intimidated" because he alleges that he was told by he Bank that if he did not sign the Agreement he would not get the money, is unavailing. One of the factors in considering whether such an agreement is valid is whether it gave some financial or other benefit to the **employee** (*see* the sixth factor discussed above), this issue is inherent in all waiver agreement cases. Hseuh has not made a sufficient claim of duress to avoid the **release's** effect. *See, e.g., Livingston v. Bev-Pak, Inc.,* 112 F.Supp.2d at 248-49; [FN6] *see also, e.g ., Knoll v. Equinox Fitness Clubs,* 2003 WL 23078807 at *7-8 (finding no " economic duress" where there was no evidence **employer** threatened **employee** with an " unlawful injury" and **employee** did not promptly repudiate the **release**); *Bachiller v. Turn On Prods., Inc.,* 2003 WL 1878416 at *9 (rejecting duress defense to **release** signed by employee); *Reid v. IBM Corp.,* 1997 WL 357969 at *7 (" ' [O]ne cannot successfully claim duress as a defense to a contract when he had an alternative to signing the agreement.' Plaintiff could have rejected the **Release** and pursued his legal remedies. Courts have found this option-turning down the additional **severance** and pursuing legal claims-to be a reasonable alternative, even if a hefty financial incentive is offered for signing the **release**." ) (citations omitted); *Nicholas v. NYNEX, Inc.,* 929 F.Supp. at 732-33; *Frumkin v. International Bus. Machs. Corp.,* 801 F.Supp. at 1044.

> FN6. Hseuh has not returned, nor does he now offer to return, the $32,913.46 he

received. Rather, he offers to return under $20,000 because of taxes withheld and paid. (*See* Hseuh Opp. ¶ 3.) *See, e.g., Kristoferson v. Otis Spunkmeyer, Inc.,* 965 F.Supp. at 549.

*6 Finally, Hseuh argues that the " **release** clearly states it does NOT rule out the option of EEOC investigation." (Hseuh Opp. ¶ 2.) Hseuh argues that since he filed a complaint with the EEOC and received a right to sue letter, he should be able to maintain this suit as such an " ongoing investigation." (*Id.*)

The Letter Agreement states that:
In the event that you institute [or] are a party to ... any such action, your claims shall be dismissed ... with prejudice immediately upon presentation of this Letter Agreement and attached General **Release**. This General **Release** does not affect your participation in any investigation conducted by the Equal Employment Opportunity Commission, but you acknowledge that you are not entitled to any other monies other than those payments described in this Letter Agreement.

(Compl. Att.: Letter Agreement With General **Release** at p. 68.) The Letter Agreement's indication that the EEOC is not precluded from bringing an enforcement action on Hseuh's behalf is consistent with Second Circuit case law. *EEOC v. Johnson & Higgins, Inc.,* 91 F.3d 1529, 1535-37 (2d Cir.), *aff'd,* 91 F.3d 1529 (2d Cir.1996), *cert. denied,* 522 U.S. 808, 118 S.Ct. 47 (1997). That provision clearly does not allow Hseuh to himself bring such a claim where the EEOC declines to do so.

*CONCLUSION*

For the reasons stated above, the Letter Agreement With General **Release** that plaintiff Hseuh signed (in return for almost $33,000) is valid. Therefore, the defendant Bank of New York's motion to dismiss the complaint with prejudice should be *GRANTED.*.

*FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 1340, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57-59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

S.D.N.Y.,2006.
Hsueh v. The Bank of New York
Slip Copy, 2006 WL 2778858 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**3**

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 1878416 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 1370
**(Cite as: Not Reported in F.Supp.2d)**

H

Bachiller v. Turn On Products, Inc.
S.D.N.Y.,2003.

United States District Court,S.D. New York.
Rosa BACHILLER, Plaintiff,
v.
TURN ON PRODUCTS, INC. d/b/a Younique Knit,
Inc., and Desiree Ragabeer, Defendants.
**No. 00 Civ. 8701(JSM).**

April 14, 2003.

**Background:** Former employee sued former employer and former employer's office manager, alleging that she was discriminated against and terminated based on her age and race in violation of city, state, and federal law. Defendants moved for summary judgment.

**Holdings:** The District Court, <u>Martin</u>, J., held that:

(1) former employee's release of claims under Age Discrimination in Employment Act (ADEA) was valid under Older Workers' Benefit Protection Act (OWBPA);

(2) former employee's release of her federal civil rights claims was knowing and voluntary, and thus valid;

(3) release was valid as to any employment discrimination claims that former employee had under state and city laws; and

(4) release was not invalid on grounds of economic duress.

Motion granted.
West Headnotes
[1] Release 331 ⟁15

331 Release
 331I Requisites and Validity
  331k15 k. Reality of Assent in General. <u>Most Cited Cases</u>

Release 331 ⟁38

331 Release
 331II Construction and Operation
  331k38 k. Operation and Effect in General. <u>Most Cited Cases</u>
Former employee's release of any claims she had against former employer under Age Discrimination in Employment Act (ADEA) was valid under Older Workers' Benefit Protection Act (OWBPA), and therefore former employee was barred from bringing federal age discrimination claims against former employer and its office manager, inasmuch as release was typewritten and plainly informed former employee in clear language of her rights, release specifically referred to ADEA and other civil rights causes of action and applied only to existing claims, former employee executed release in exchange for severance pay to which she otherwise was not entitled, and former employee was advised, in writing, to consult attorney and informed of her rights to review release for 21 days and to revoke release after signing it. <u>29 U.S.C.A. § 626(f)</u>; Age Discrimination in Employment Act of 1967, § 2 et seq., <u>29 U.S.C.A. § 621</u> et seq.

[2] Release 331 ⟁15

331 Release
 331I Requisites and Validity
  331k15 k. Reality of Assent in General. <u>Most Cited Cases</u>
Former employee's release of federal civil rights claims against former employer and its office manager was knowing and voluntary, under totality of the circumstances test, and thus was valid, given that typewritten release and accompanying notice clearly and plainly informed former employee that she would be barred from suing defendants based on conditions or termination of her employment if she signed release, former employee was capable of understanding release and notice, former employee was not otherwise to severance pay that she was offered in exchange for executing release, notice advised former employee of her right to consult attorney, and former employee had fair opportunity to review release and speak with attorney before signing it. <u>42 U.S.C.A. § 1981</u>.

[3] Release 331 ⟁15

Not Reported in F.Supp.2d                                                      Page 3

Not Reported in F.Supp.2d, 2003 WL 1878416 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 1370

**(Cite as: Not Reported in F.Supp.2d)**

331 Release
 331I Requisites and Validity
  331k15 k. Reality of Assent in General. <u>Most Cited Cases</u>
Given that former employee's release of claims against former employer and its office manager satisfied more stringent totality of the circumstances test applicable to release of federal civil rights claims, release was also valid as to any employment discrimination claims that former employee had under state and city laws. <u>McKinney's Executive Law § 290</u> et seq.; <u>New York City Administrative Code, § 8-101</u>.

**[4] Release 331 &cong;18**

331 Release
 331I Requisites and Validity
  331k18 k. Duress. <u>Most Cited Cases</u>
Release of civil rights claims signed by former employee at her termination was not invalid under New York law on grounds of economic duress, even if former employer's office manager told former employee that she had to sign release to get her vacation pay, when former employee failed to show that she lacked practical alternative to signing agreement immediately after her discharge, despite provisions of agreement giving her 21 days to consider agreement and consult attorney before signing it, former employee's alleged " despondent" state upon signing agreement did not prevent a timely revocation, and cursory review of release would have established that only compensation contingent on executing release was severance pay to which former employee otherwise was not entitled.

<u>Lee Nuwesra</u>, New York, NY, for Plaintiff.
<u>Kenneth R. Schachter</u>, New York, NY, for Defendant.

OPINION & ORDER

<u>MARTIN</u>, J.
*1 In this action, Rosa Bachiller (" Plaintiff" ) alleges that Turn On Products, Inc. (" Turn On" or " Defendant" ) and Desiree Ragabeer (" Ragabeer" or " Defendant" ) discriminated against her in violation of <u>Section 1981</u> of the Civil Rights Act of 1866, <u>42 U.S .C. § 1981</u>, the Age Discrimination in Employment Act of 1967, <u>29 U.S.C. § 621</u>et seq., the New York State Human Rights Law, <u>Executive Law §§ 290</u>et seq., and the New York City Human Rights Law, Administrative Code §§ 8-101et seq.

Plaintiff alleges that Defendants discriminated against her during her employment at Turn On and unlawfully terminated her employment there on the basis of her race and/or national origin and her age.

This case is presently before the Court on Defendants' motion for summary judgment. For the reasons set forth below, Defendants' motion is granted.

FACTUAL BACKGROUND

Plaintiff is Puerto Rican and was 54 years old at the time she was discharged. She came to the United States at age four and eventually obtained a High School Equivalency Diploma.

Plaintiff commenced employment at Turn On on July 1, 1997 as an accounts payable clerk and was discharged on October 9, 1999. On that date, Ragabeer, Turn On's Office Manager, informed Plaintiff of her termination and provided her with a written agreement releasing all claims Plaintiff may have against Turn On and its agents (the " Release" ) and a notice letter (the " Notice" ). The Notice, which is addressed to Plaintiff, acknowledges the provision of three copies of the Release to her and establishes her rights with respect to the Release, stating:
Please note, as stated in the Release Agreement, that you have the *right to consult with an attorney and 21 days from this date to review the Release Agreement.*Additionally, if you decide to execute the attached Release Agreement, you will *have seven (7) days following the execution of the Release Agreement to revoke the same.*

(emphasis added). Plaintiff acknowledged receipt of the Notice and the Release by signing the Notice. The Release is a four-page typewritten document which provides that Plaintiff will receive a severance pay of $1,400 if she signs it. Although the Release acknowledges that Turn On owes Plaintiff one week's vacation pay, amounting to $700, it does not make receipt of that amount contingent on the execution of the Release:2. Severance Pay. (a)(i) Bachiller acknowledges that the Company has no obligation to make the Severance payment set forth hereunder. *In consideration of Bachiller entering into this agreement, together with its Release, Confidentiality, Non-Disparagement and other provisions, the Company agrees to pay Thousand Four Hundred Dollars ($1,400.00) less any and all appropriate*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 4

Not Reported in F.Supp.2d, 2003 WL 1878416 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 1370

**(Cite as: Not Reported in F.Supp.2d)**

*Federal, State and City taxes required to be deducted (the " Severance Payment" ).* The Severance Payment will be paid to Bachiller provided she has not exercised her right to cancel this Agreement under Article 5 of this Agreement.

**\*2** (ii) Additionally, *the Company acknowledges that it owes Bachiller one (1) week's vacation pay of Seven Hundred Dollars ($700 .00), which will be paid to Bachiller* by the Company minus the appropriate deductions.

(b) *This will confirm that the Company shall have absolutely no obligation to make the Severance Payment set forth in 2(a)(i)* above and Bachiller shall not be entitled to any Severance Payment *unless and until this Agreement with its Release and Confidentiality provisions and Non-Disparagement is deemed effective and enforceable* as stated above.

(emphasis added).

The Release also sets forth in detail the claims and causes of action that Plaintiff would relinquish if she signed the Release:

Bachiller hereby irrevocably and unconditionally releases, waives and forever discharges the Company and its successors, assigns, and all its past and present directors, officers, shareholders, consultants, agents, employees, representatives, attorneys, fiduciaries (hereafter the " Other Releasees" ) from any and all actions, causes of action, claims, demands, damages, right, remedies and liabilities (hereinafter referred to collectively as " Bachiller's Claims" ) of whatsoever kind or character, in law or equity, suspected or unsuspected, past or present, that she has ever had, may now have or may later assert, against the Company and the other Releasees or any of them, including, but not limited to, claims arising out of or related to Bachiller's employment and positions with the Company or her termination of employment and those positions, from the beginning of time to the last time of Bachiller's employment, including, without limitation: (i) any and all claims arising from any federal, state and/or local labor or civil rights laws, including, without limitation, the federal Civil Rights Acts of 1866, 1871, 1964 and 1991, the Age Discrimination in Employment Act of 1967, as amended by, *interalia,* the Older Worker Benefit Protection Act of 1990 ... and New York State and New York City Human Rights laws and Labor Laws ...; (ii) any and all claims arising out of any claim for ... any age, sex, race or other type of discrimination or harassment or related claims, including federal, state and/or local laws ...

Plaintiff signed the Release on the day she was discharged and claims she did so because Ragabeer told her she had to sign it in order to receive her vacation pay. Plaintiff consulted an attorney sometime after her discharge. On or about October 22, 1999, Plaintiff's attorney contacted Turn On seeking to revoke the Release. The seven-day time period permitting revocation had already expired.

### DISCUSSION

Defendants contend that Plaintiff waived the claims asserted in this action by executing the Release. Plaintiff argues that the Release is invalid because Defendants did not provide her with adequate time to consider the agreement.

[1] Under the Older Workers' Benefit Protection Act of 1990 (" OWBPA" ), 29 U.S.C. 626(f), an individual's waiver of claims under the Age Discrimination in Employment Act of 1967 (" ADEA" ) must comply with the following requirements:

**\*3** (A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;

(B) the waiver specifically refers to rights or claims arising under this chapter;

(C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F) (i) the individual is given a period of at least 21 days within which to consider the agreement; ...

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired ... The Release is typewritten and plainly informs Plaintiff in clear language of her rights. The Release

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 5

Not Reported in F.Supp.2d, 2003 WL 1878416 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 1370

**(Cite as: Not Reported in F.Supp.2d)**

specifically refers to the ADEA and other civil rights causes of action and applies only to existing claims. Plaintiff executed the Release in exchange for severance pay, compensation to which she was not otherwise entitled. Plaintiff was advised in writing in the Notice to consult an attorney. The Release and the Notice also informed Plaintiff that she had 21 days to review the agreement and that if she signed the agreement, she had 7 days to revoke it.

Despite the plain terms of the Release and its provision of 21 days to consider the agreement, Plaintiff argues that the Release is not valid because she was not " given at least 21 days to consider the agreement before signing it." Plaintiff cannot reasonably make this claim when the Notice, which Plaintiff signed before signing the Release, clearly advised her that she had 21 days to consider the Release. The Release is valid under the OBWPA and Plaintiff is therefore barred from bringing federal age discrimination claims against Defendants.

[2] In determining the validity of a release of claims brought pursuant to federal civil rights statutes other than the ADEA, the inquiry is whether under the " totality of the circumstances," the individual's waiver of his rights can be considered knowing and voluntary. *Bormann v. AT & T Communications, Inc.,* 875 F.2d 399 (2d Cir.1989); *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434 (2d Cir.1998); *Nicholas v. NYNEX,* 929 F.Supp. 727 (S.D.N.Y.1996). The following factors must be considered in determining the validity of a release: 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, ... 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law, [7] whether [the] employer encourages or discourages [the] employee to consult an attorney ... and [8] whether the employee had a fair opportunity to do so.

*4 *Bormann* at 403.These factors are not exhaustive, nor must they all be satisfied. See*Nicholas* at 730.The typewritten Release here and its accompanying Notice clearly and plainly inform Plaintiff that if she signs the Release, she will be barred from bringing any claim against Defendants based on the conditions

or termination of her employment. Plaintiff, who has a High School Equivalency Diploma and who at the time her employment was terminated was an accounts payable clerk, was capable of understanding the Release and the Notice. Plaintiff was not otherwise entitled to the severance pay which was offered in exchange for execution of the Release. The Notice accompanying the Release clearly advises Plaintiff of her right to consult an attorney and Plaintiff does not allege that Defendants discouraged her from obtaining an attorney. Plaintiff had a fair opportunity to review the agreement and speak with an attorney before signing it. The fact that Plaintiff signed the agreement immediately after her termination, that she did not have a role in deciding its terms and that she was not represented by counsel at the time she signed the agreement do not change the fact that the totality of the circumstances here overwhelmingly weigh in favor of upholding the validity of the Release. Plaintiff's waiver of the civil rights claims alleged in this action was knowing and voluntary.

[3] The " totality of the circumstances" standard " is somewhat more stringent than the analysis called for under ordinary [New York State] contract law, for determining whether a release of discrimination claims was executed knowingly and voluntarily." *Nicholas v. NYNEX, Inc.,* 929 F.Supp. 727, 730 (S.D.N.Y.1996). Accordingly, since Plaintiff has waived her federal claims, she has also waived her claims under New York State and New York City Human Rights Law. See*Laramee v. Jewish Guild for the Blind,* 72 F.Supp.2d 357, 360 (S.D.N.Y.1999).

[4] To the extent Plaintiff argues that she signed the Release under conditions of duress, that claim is without merit. The elements of a claim of economic duress under New York law are: " 1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative." *Kamerman v. Steinberg,* 891 F.2d 424, 431 (2d Cir.1989). Plaintiff claims that Ragabeer told her she had to sign the Release to get her vacation pay. Even if the Defendants unlawfully conditioned receipt of this compensation on the execution of the Release, Plaintiff has not shown that she lacked a practical alternative to signing the agreement immediately after her discharge. Plaintiff had 21 days to consider the agreement and consult an attorney before signing it even if the Defendants unlawfully threatened to withhold her vacation pay. Moreover, even if

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                              Page 6

Not Reported in F.Supp.2d, 2003 WL 1878416 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 1370

**(Cite as: Not Reported in F.Supp.2d)**

Plaintiff signed the agreement because she was in a " despondent state," that doesn't explain why she failed to timely revoke it. A cursory review of the Release would have disabused Plaintiff of the notion that receipt of her vacation pay was conditioned on execution of the Release. The Release clearly states that Turn On owes Plaintiff one week's vacation pay and that the only compensation contingent on execution of the Release is a severance pay to which Plaintiff was not otherwise entitled. Plaintiff cannot claim that she had no choice but to sign the agreement and make an untimely demand for its revocation.

CONCLUSION

**\*5** The Release is valid and enforceable and Plaintiff is barred from bringing this action. Defendants' motion for summary judgment is therefore granted.[FN1]

> FN1. The Court does not address Defendants' additional arguments in favor of summary judgment, because it is persuaded that Plaintiff's execution of the Release bars this action.

SO ORDERED.

S.D.N.Y.,2003.
Bachiller v. Turn On Products, Inc.
Not Reported in F.Supp.2d, 2003 WL 1878416 (S.D.N.Y.), 91 Fair Empl.Prac.Cas. (BNA) 1370

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.