UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

| | | |
|---|---|---|
| SUSAN PINSKY, | : | ECF |
| Plaintiff, | : | 07 Civ. 3328 (CM) (HP) |
| - against - | : | **DECLARATION OF FREDERIC L. LIEBERMAN PURSUANT TO 28 U.S.C. § 1746 IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| JP MORGAN CHASE & CO., | : | |
| Defendant. | : | |

-----------------------------------------------------------X

Frederic L. Lieberman, under the penalties of perjury, declares:

1. I am an Assistant General Counsel in the JPMorgan Chase Legal and Compliance Department, attorneys for JPMorgan Chase Bank, N.A. ("Defendant" or the "Bank"), the Defendant in this action, incorrectly named as JPMorgan Chase & Co.

2. I am familiar, based on personal knowledge, information and belief, and/or the records of the Defendant, with the facts and circumstances hereinafter set forth. I make this declaration in response to the declaration of Arthur Z. Schwartz ("Schwartz Dec."), Plaintiff's attorney, submitted pursuant to Fed. R. Civ. P. 56(f) in opposition to Defendant's motion for summary judgment.

3. In his declaration, Plaintiff's attorney requests that the motion for summary judgment be adjourned until 45 days after the completion of discovery. As will be seen, the Schwartz Declaration makes a number of substantive assertions without providing any support for them, and many of which factual assertions also are not material to Defendant's motion. Accordingly, Plaintiff's request to adjourn the motion for summary judgment is without merit and should be denied.

161256:v1

4.     For example, Plaintiff's mere "expect[ation]" that she would obtain another position with any of the JPMorgan Chase businesses, Schwartz Dec. ¶ 3, simply has no relevance to or probative value concerning Defendant's motion.

5.     Counsel also mistakenly asserts that Plaintiff "had to stop working on or about June 25, 2005 and was placed on disability leave." Schwartz Dec. ¶ 4. These assertions are simply incorrect. In fact, as shown in Defendant's moving papers, Plaintiff did not stop working on June 25, 2005 (an alleged date which coincidentally is the day after Plaintiff executed the Release Agreement). Rather, Plaintiff began a short-term disability leave almost two weeks earlier, on June 13, 2005. See Lieberman Affidavit, sworn to September 20, 2007, and Defendant's Rule 56 Statement. Moreover, the Bank does not unilaterally place an employee on disability leave. Rather, such a decision is made by the employee, if supported by documentation from the employee's physician and certified by the Bank's short-term disability carrier. That is precisely what occurred in this case.

6.     Plaintiff also appears to argue that Defendant unilaterally and without basis determined to terminate Plaintiff's long-term disability leave and stop her disability benefits payments. Schwartz Dec. ¶ 6. That too is incorrect. Rather, on July 16, 2007, Plaintiff's counsel wrote to me, advising that "Ms Pinsky will be able to return to work, with accommodation, as of September 1, 2007." He enclosed a note from Dr. Bryan Nestor, Ms Pinsky's surgeon, who stated that Ms Pinsky "is cleared to return to work on September 1, 2007". A copy of Mr. Schwartz's July 16, 2007 letter, along with the attached note from Dr. Nestor, is attached hereto as Exhibit "A".

7.     Nonetheless Defendant took no action based on those letters because the decision to conclude a long-term disability leave is not made by it, but rather by the long-term disability

carrier, based on information supplied to it by the employee and the employee's physician. Plaintiff apparently submitted such information and Dr. Nestor's note to the long-term disability carrier, because it then determined that Ms Pinsky no longer was disabled as of July 10, 2007, the date of Dr. Nestor's note, and the long-term carrier determined to cease Plaintiff's disability benefits payments. Based on the carrier's determination to terminate Plaintiff's long-term disability leave, the Bank then made severance payments to Plaintiff earlier this month.

8. Plaintiff's attorney then asserts that "Plaintiff is not, in fact, ready to return to work" because "[h]er treating physicians, in August, noting an exacerbation of her condition, have delayed her return". Schwartz Dec. ¶ 7(a). Mr. Schwartz is referring to an August 20, 2007 letter from another physician, Dr. Richard Koffler. Despite the earlier communications from Mr. Schwartz and Dr. Nestor, Dr. Koffler's letter inexplicably was not sent to Defendant for more than three weeks, until September 12, 2007, almost a week <u>after</u> Defendant notified Plaintiff that, based on her being cleared to return to work by Dr. Nestor, it was making the severance payment and intended to enforce the Release Agreement. A copy of Mr. Schwartz's September 12, 2007 letter, along with the attached note from Dr. Koffler, is attached hereto as Exhibit "B".

9. Plaintiff also alludes to alleged issues regarding what event can trigger the effectiveness of the Release Agreement. These vague allusions are insufficient to demonstrate that real, material issues of fact exist that either require discovery or are sufficient to provide a basis for denial of Defendant's motion. For example, counsel suggests that it is questionable whether the Release Agreement could be triggered "without plaintiff beginning her job search within JP Morgan Chase". Schwartz Dec. ¶ 7(a). The job search simply is not a trigger for the Release Agreement. In any event, Plaintiff at all times since she received her May 20, 2005 letter had access to all job postings through the JobConnect system which is available on JPMorgan

Chase's publicly accessible internet website. Moreover, we advised Plaintiff's counsel that, consistent with the notice letter, for a period of one year concluding September 6, 2008, Plaintiff also has access to additional, internally posted positions. A copy of my September 10, 2007 letter to Mr. Schwartz explaining the job search process is attached hereto as Exhibit "C". There simply is no "60 day clock", Schwartz Dec. ¶ 7(b), regarding Plaintiff's job search. Whether and when Plaintiff chooses to begin her job search is up to her.

10. The written Release Agreement constituted a valid contract when Plaintiff executed it on June 24, 2005 and thereby accepted Defendant's May 20, 2005 offer of severance and other benefits in return for a release of all potential claims to that date. The time for Defendant to make the severance payments called for by the notice letter and the Release Agreement was held in abeyance because Plaintiff was on a leave of absence and Defendant's Severance Pay Plan does not permit an accepting employee to receive the severance benefit during that period. When Plaintiff's leave ended, Defendant's obligation resumed to pay Plaintiff the severance benefits that she had agreed to accept. Those are the only relevant events that "trigger" the Release Agreement.

11. Despite this, Plaintiff asserts that depositions are necessary for determination of Defendant's motion. Schwartz Dec. ¶ 8. As shown in Defendant's Memorandum of Law in support of its summary judgment motion, whether the Release Agreement is enforceable depends on whether Plaintiff made a knowing and voluntary waiver of her right to assert claims against Defendant. Counsel has not suggested that there are any factual issues material to that determination, and has not provided any support for his argument that issues regarding a "triggering" event are material to that determination.

WHEREFORE, Defendant respectfully requests that Plaintiff's application to adjourn the return date of Defendant's summary judgment motion until 45 days after completion of discovery should be denied.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 28, 2007.

*Frederic Lieberman*
Frederic L. Lieberman

# EXHIBIT A



# SCHWARTZ, LICHTEN & BRIGHT PC
### Attorneys at Law

275 Seventh Avenue  Suite 1700
New York, New York 10001
Phone 212 228 6320   Facsimile 212 358 1351

Arthur Z Schwartz*
Stuart Lichten
Daniel R Bright

*Also admitted in Pennsylvania

July 16, 2007

By Fax (212-552-1630)
and First Class Mail

Frederic L. Lieberman
Assistant General Counsel
J P Morgan Chase
One Chase Manhattan Plaza
New York, NY 10081

    Re:    <u>Pinsky v. JP Morgan Chase</u>

Dear Mr. Lieberman:

Enclosed please find:

    a.    The reply to the Counterclaim.

    b.    Plaintiff's Rule 26 Disclosure.

    c.    Authorizations to J P Morgan Chase's Medical Center and to Bryan Nestor, MD, the surgeon who recently operated on Ms. Pinsky. Additional authorizations will follow by the end of the week.

I apologize for the delay.

We request until August 9 to answer the document requests and interrogatories, and that we schedule Ms. Pinsky's depositions thereafter.

In addition, we request that you adjourn the deposition and document production of Tristate Biodiesel until a date in the week of August 6 that we mutually agree upon.

Finally, there is the question of Ms. Pinsky's return to J P Morgan Chase. As per the enclosed letter from her surgeon, Ms. Pinsky will be able to return to work, with accommodation, as of



SCHWARTZ, LICHTEN & BRIGHT PC
Attorneys at Law

Frederic L. Lieberman
July 16, 2007
Page 2

September 1, 2007. Although work may not have been available for her in June 2005, when she went on leave, that does not mean that work is unavailable now. We request that a search be made for possible placement. It is Ms. Pinsky's view, and ours, that the termination agreement she signed in May or June 2005 is no longer effective. Given that you have sued her for violating the Corporate Code of Conduct when she became an officer of Tristate Biodiesel in 2007, J P Morgan Chase must agree with that view as well.

We look forward to arranging Ms. Pinsky's return to work and to scheduling discovery on a mutually convenient schedule.

Very truly yours,

Arthur Z. Schwartz

AZS:dr
Enclosures

cc: Susan Pinsky

P.S.: Ms. Pinsky recently received a Right to Sue letter on an ADA claim. I did not know that she had filed with EEOC. Would you stipulate to adding an ADA claim?



# HOSPITAL
# FOR
# SPECIAL
# SURGERY



July 10, 2007

To whom it may concern:

Re: Susan Pinsky

Please be advised that Susan Pinsky underwent a left hip arthroscopy on April 6, 2007. She was reevaluated and is cleared to return to work on September 1, 2007. She will require a standing desk and ergonomic chair. It is necessary Ms. Pinsky take frequent breaks every 20 minutes to stretch her legs. Ms. Pinsly is scheduled to undergo physical therapy five days a week for one month, then three days a week due to stress on her toe. Her toe surgery should be performed prior to her return to work

If you have any questions or require any further information, please contact our office.

Sincerely,

Bryan J. Nestor, M.D.

Bryan J. Nestor, MD
Orthopaedic Surgery
Total Joint Replacement
535 East 70th Street – 3rd Floor
New York, NY 10021
tel 212.606.1484
fax 212.774.2236

# EXHIBIT B

# SCHWARTZ, LICHTEN & BRIGHT PC
## Attorneys at Law

275 Seventh Avenue  Suite 1700
New York, New York 10001
Phone 212 228 6320  Facsimile 212 358 1353

Arthur Z Schwartz*
Stuart Lichten
Daniel R Bright
*Also admitted in Pennsylvania

September 12, 2007

By Fax (212-552-1630)
and First Class Mail

Frederic L. Lieberman
Assistant General Counsel
J P Morgan Chase
One Chase Manhattan Plaza
New York, NY  10081

   Re: Pinsky v. JP Morgan Chase & Co.
     07 Civ. 3328
     Plaintiff's Status

Dear Mr. Lieberman:

It appears from your correspondence and that received by Ms. Pinsky that it is JP Morgan's view that Ms. Pinsky's layoff, and the effectiveness of the release, was triggered by her availability to return to work, since the company's disability plan would not allow a layoff during a leave of absence due to a disability.

It is not clear whether JP Morgan Chase believes the leave of absence ended when Ms. Pinsky's disability benefits were cut off by The Hartford or on the date Ms. Pinsky's surgeon said she was likely to be able to return to work. I believe, whatever date is being used, that JP Morgan Chase has jumped the gun. First, Ms. Pinsky appealed the action on her insurance coverage, and it appears clear to me that it was stopped due to a misunderstanding and will be reactivated. Second, Ms. Pinsky's doctors have not, in fact, cleared her for a return to work, and she has notified Lisa Jelinski in Human Resources. Her letter of September 11, 2007 and a supporting letter from one of her physicians are enclosed. A letter from Dr. Nestor will follow shortly.

Very truly yours,

Arthur Z. Schwartz

AZS:dr
Enclosures

cc: Susan Pinsky

# Wall Street
# Physical Medicine
# &
# Rehabilitation

August 20, 2007

Re: Susan Pinsky

To Whom It May Concern:

Ms. Pinsky became a patient of mine on 8/21/06. She was referred to me by Dr. Richard S. Goldberg for pre-operative physical therapy on her left hip. She was recommended to complete a physical therapy and rehabilitation program of three times a week for one month.

On February 2, 2007, Ms. Pinsky re-established a physical therapy program of three times a week for one month.

On March 2, 2007, Ms. Pinsky was re-evaluated. Ms. Pinksy informed me that she was scheduled for surgery on March 23, 2007 with Dr. Nester. Patient was recommended to restrict long durations of sitting.

On July 2, 2007, Ms. Pinsky was re-evaluated status post left hip arthroscopic repair. The surgery date was April 6, 2007. The patient was recommended to start a physical therapy and rehabilitation program of three times a week for one month after her recuperation period. Post recuperation period, patient still complained of various symptoms and limitations.

Due to a recent acute exacerbation to Ms. Pinsky's left hip, it is my recommendation that she does not sit for more than a five minute duration to avoid further exacerbation. Patient symptoms were recently aggravated and emphasis of rehabilitation was shifted from rehabilitation to acute pain management. Ms. Pinsky will be re-evaluated in one month and should limit all activity until that time.

If you require additional information, please contact me at 212.248.0077.

Thank you,

Richard Koffler, MD
Board Certified Physical Medicine & Rehabilitation

# EXHIBIT C

Case 1:07-cv-03328-CM-HBP    Document 26    Filed 09/28/2007    Page 13 of 17

# JPMorganChase

**JPMorgan Chase & Co.**
Legal and Compliance Department
One Chase Manhattan Plaza
New York, NY 10081

Frederic L. Lieberman, Esq.
Vice President and
Assistant General Counsel
[212] 552-1815
[Fax] 552-1630

September 10, 2007

Via facsimile (212) 358-1353
and first class mail

Arthur Z. Schwartz, Esq.
Schwartz, Lichten & Bright, P.C.
275 Seventh Avenue, Suite 1700
New York, New York 10001

         Re:    Susan Pinsky v. JP Morgan Chase & Co.
                 (U.S. Dist. Ct., S.D.N.Y., 07 Civ. 3328 (CM) (HP))

Dear Mr. Schwartz:

      I am writing in response to your letter of September 7, 2007 in the above-entitled action. You seem to have received some misinformation about how job searches proceed for JPMorgan Chase employees who receive job elimination notices. As the May 20, 2005 job elimination notice makes clear, having executed the Release Agreement offered to her, Ms Pinsky is eligible for, inter alia, Career Services. Although Career Services provides many forms of assistance to eligible individuals, neither it nor JPMorgan Chase performs the actual job search for any individual. It always is up to the individual alone to decide which services offered by Career Services to use, to search for and identify available positions on JPMorgan Chase's job system, JobConnect, in which he or she is interested and for which he or she possesses the necessary qualifications, and to apply for that position.

      Accordingly, in order for Ms Pinsky to search for available positions throughout JPMorgan Chase at this time, she can make use of JPMorgan Chase's JobConnect system to identify and apply for positions within JPMorgan Chase. Ms. Pinsky currently has and will retain the ability to view externally posted positions via the JobConnect system by going to www.jpmorganchase.com, then to Careers, then to Experienced Opportunities, and then to Search & Apply for Jobs. I am enclosing a copy of instructions that will enable Ms Pinsky to reactivate her Single Sign-on authorization and access additional, internally posted positions via JobConnect. In accordance with the May 20, 2005 job elimination notice, Ms Pinsky will be able

160767:v1

to use the JobConnect system to view internally posted positions for one year, until September 6, 2008. In addition, Ms Pinsky also can make use of the other resources offered by Career Services.

      If you have any questions about this, please contact me. If Ms Pinsky has any questions about Career Services and JobConnect, she should contact Career Services at 212.623.1777.

Very truly yours,

FLL
Encl.

160767:v1

CAREER SERVICES

JobConnect Process for
Career Services Clients

# Accessing JobConnect

As an employee who has received notice of job elimination, you are encouraged to immediately begin using JobConnect to look for internal positions.

- During your 60-day notice period you may apply for an unlimited number of positions.
- Eligibility for open positions is based on having the required skills, experience and a rating of "meets expectations", "satisfactory" or higher on your last performance review.
- After your Termination Date, you may submit up to ten applications at the same time.
- You will continue to have an active Standard ID for a period of 12 months following your Termination Date allowing access to internal job postings.
- As a "rehire" you must meet all pre-employment screening requirements prior to start date.
- **After your Termination Date** – You must reactivate your single sign-on password to access JobConnect & MyRewards@Work (www.my-rewards-at-work.com)

   Contact JPMorgan Chase Global Administration at **866-576-1818** and enter your Standard ID, option 1,1, 6. Indicate that you need a password reset for the single-sign-on page. You will be given a temporary password reset. Enter into the system with your Standard ID, using the temporary password. You will then be asked to change your password.

**How to Access JobConnect from Home**

> You may access JobConnect from home at http://careers.jpmorganchase.com
> On the bottom right hand corner of the page, click on the following graphic.
>
> *Single Sign-On*
> Access Internal Jobs
>
> This will populate the single sign-on page where you will enter your Standard ID and password. You will then be able to view internal job postings within JPMorgan Chase.
>
> **Profile on JobConnect**
> You have the ability to update your profile; highlighting skills and areas of interest, and to provide a current resume. Respond appropriately to the questions regarding job elimination so that staffing officers and hiring managers may easily identify you as a potential redeployment candidate. This information will also provide a search element for staffing officers who may want to actively seek out redeployment candidates for an open position.


JPMorganChase

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

SUSAN PINSKY,                                    :
                               Plaintiff,    :     Index No. 104146/07

                        - against -                   :     **AFFIDAVIT OF SERVICE**

JP MORGAN CHASE & CO.,                :

                            Defendant.   :

-------------------------------------------------------------X

STATE OF NEW YORK   )
                        ) ss.:
COUNTY OF NEW YORK   )

_Stuart Madesh_____, being duly sworn, deposes and says, that deponent is not a party to the action, is over eighteen years of age and is employed by JPMorgan Chase Bank, N.A., and that on the 28th day of September, 2007, deponent served the within:

**DECLARATION OF FREDERIC L. LIEBERMAN PURSUANT TO 28 U.S.C. § 1746 IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

To:   Arthur Z. Schwartz, Esq.
      Schwartz, Lichten & Bright, P.C.
      275 Seventh Avenue, Suite 1700
      New York, New York 10001

by the address designated for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

                                                                 _signature_

Sworn to before me this
28 day of September 2007

_signature_
Notary Public

MARLENE M. THOMPSON
Notary Public, State of New York
No. 01TH6161011
Qualified in Kings County
Certificate filed in New York County
Commission Expires February 12, 2011

157604:v1