UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

SUSAN PINSKY,

                    Plaintiff,

        - against -

JP MORGAN CHASE & CO.,

                  Defendant.

-------------------------------------------------------------------- X

07 Civ. 3328 (CM)

DECLARATION SUBMITTED
PURSUANT TO RULE 56(F)
OF THE FEDERAL RULES
OF CIVIL PROCEDURE

Susan Pinsky declares, under penalty of perjury, as follows:

1.      I am the plaintiff in this action.

2.      On May 20, 2005, I received a letter, annexed as Exhibit A, advising me that my position was being eliminated. The letter advised me that I had sixty days to find another position with JP Morgan Chase — through July 18, 2005. I continued to state:

> "If you do not secure another position within JP Morgan Chase by your termination date, you will receive 7 weeks of severance pay, provided that you execute the enclosed Release Agreement."

Later in the letter, I was instructed to update my profile in JP Morgan Chase's job search system, called Job Connect, if I wanted to "pursue job opportunities at JP Morgan Chase."

3.      It was my understanding that if I signed the Release Agreement, but found a job, the Release would be null and void.

4.      After receiving the letter, I updated my profile and began a job search. I had been a high performing employee and fully expected to find another position.

5.      Shortly after receiving the May 20 letter, my back pain, which had been exacerbated by JP Morgan Chase's refusal to accommodate me, became excruciating. On June 8, 2005, I notified my manager that I had to stop work and go on sick leave. The Human Resources Director responded to me that I should begin a leave of absence immediately. E-mails demonstrating this are annexed as Exhibit B.

6.      On June 15, 2005, I received an e-mail with a work opportunity, for a job I was qualified for, from Tanya Lowy, from the JP Morgan Chase National Staffing Network. It is annexed as Exhibit C. Since I was out on leave, I could not take advantage of the work opportunity.

7.      On June 25, 2005, I signed the Release Agreement. However, I was advised that my position would not be eliminated until my disability leave ended, and that the Release Agreement, and the severance payments which would flow from the Agreement becoming effective, would not become effective until I returned from the disability leave.

8.      In July 2007, the long term disability insurance carrier decided to terminate my coverage. I appealed their action (see Exhibit D) and fully expect my coverage to be reinstated. Despite my appeal, without advance notice or even an inquiry, JP Morgan Chase declared that my leave was over, my job had been eliminated, and the Release Agreement went into effect.

9.      I filed suit well before the Release Agreement went into effect.

10.     I contend that I remain disabled, and that my disability leave and disability insurance coverage should continue. My physicians, in July, believed that I would be able to resume work on September 1, 2007, but things have not turned out that way. I continue to have

inflamation in my hip and the awkward way I walk has caused a foot injury which now requires surgery. I fully expect The Hartford, my disability insurance carrier, to reinstate my coverage.

11.    Although JP Morgan Chase has transmitted severance payments to my bank account, they have done so over my objection. I have not spent their money.

Dated: New York, New York
       September 27, 2007

                                                    Susan Pinsky

**Exhibit A**



**JPMorganChase**

May 20, 2005

Susan Pinsky
241 Third Ave
New York, NY 10003

Dear Susan,

Due to changes in our business, our staffing needs have changed. As a result, your position will be eliminated and your employment will be terminated on July 18, 2005. You will continue to receive salary and benefits during the 60-day notice period. Your notice period begins on May 20, 2005 and ends on July 18, 2005.

Please note that if you leave the firm before the 60-day notice period begins or fail to comply with requests for assistance before or during your severance period, you are not eligible for the severance benefits described in this letter or such benefits shall cease.

I want to assure you that we are prepared to provide you with a range of support services to help you manage this transition. The following summarizes those services.

**Severance Pay and Benefits**
If you do not secure another position within JPMorgan Chase by your termination date, you will receive 7 weeks of severance pay, provided that you execute the enclosed Release Agreement ("Release"). Please note that severance pay, career services and severance-related benefits (including continuation of subsidized medical and/or dental coverage, vision coverage, firm-provided basic life insurance and EAP, supplemental term life insurance, accidental death & dismemberment insurance, group legal services, and health care spending account benefits) are conditioned upon our receipt of the executed Release. Also conditioned upon our receipt of the executed Release is your eligibility for retiree benefits when such eligibility is determined by the event of position elimination. In addition, outstanding awards (both Restricted Stock/Units or Stock Options) under JPMorgan Chase's Long Term Incentive or Stock Option Plans granted on or after January 1, 2003 are also conditioned upon our receipt of the executed Release. Severance pay and severance-related benefits are provided based on the terms and conditions specified in the Severance Pay Plan. You have 45 calendar days within which to review and return the signed and notarized Release to the human resources business partner as noted in the Release. Enclosed are three copies of the Release; return two copies and retain one copy for your own records. If you have not provided us the signed Release by July 3, 2005, you will receive your regular pay for only the 60-day notice period.

***Semimonthly Severance Installments***
If you execute the Release, severance will be paid in semimonthly installments for the duration of your severance period. Applicable taxes and other legally required deductions will be withheld. During the period that you receive semimonthly severance installments, you are not an employee for any purpose. Severance payments are not considered eligible compensation under the 401(k) Savings Plan or Retirement Plan, and therefore any contributions, match, and pay credits will cease as of your termination date (July 18, 2005).

While you are receiving severance in semimonthly installments, you may continue participating in the medical and/or dental plans at subsidized employee rates on a pre-tax basis. You may also continue participating in the vision plan and the health care spending account on a pre-tax basis. If you are currently participating in the Supplemental Term Life Insurance Plan, the Accidental Death and Dismemberment

---

*This Notice is intended to serve as notice under applicable federal, state or local law regarding plant closings and job layoffs, including WARN (The Worker Adjustment and Retraining Notification Act), if applicable. If WARN applies, please be advised that this job elimination is expected to be permanent in nature and that no bumping rights exist.*

### *Summary of Eligibility for U.S. Retiree Benefits – Heritage JPMorgan Chase Employees*

#### *General Eligibility*

Generally, to be eligible for JPMorgan Chase U.S. retiree benefits, including medical coverage, you must be at least age 55 and have 15 or more years of cumulative service of which the five years immediately prior to your termination of employment must have been continuous. You must have also participated in the applicable JPMorgan Chase benefit plan for active employees immediately before termination to participate in the corresponding plan in retirement. For example, you must have participated in the JPMorgan Chase Medical Plan immediately before termination to participate in the Retiree Medical Plan. In addition, certain alternative eligibility rules apply for employees affected by position elimination, as described below.

Please note that if you are a heritage Morgan employee, you must have been employed on January 31, 1989 (without incurring a break in service longer than one year since that date) to be eligible to receive *subsidized* retiree medical coverage. If you do not meet this criteria, you will have "access" to group retiree medical coverage through JPMorgan Chase if you've attained the applicable retirement eligibility criteria as of your termination date. In this case, you will pay the full cost of group retiree medical coverage, as determined by JPMorgan Chase in its sole discretion.

#### *Alternative Eligibility for Certain Heritage Morgan Employees*

If you are a heritage Morgan employee and do not satisfy the general eligibility rules above, you may be eligible for retiree benefits, including subsidized retiree medical coverage, regardless of reason for termination, if:

- you were at least age 50 with age plus credited service under the heritage Morgan Retirement Plan equal to 70 or more on or before December 31, 2003, **and**
- you were employed on January 31, 1989 and have not incurred a break in service longer than one year since that date, **and**
- you and any eligible dependents must have participated in the JPMorgan Chase Medical Plan for five consecutive years immediately before termination (if your position is eliminated and you execute the Release, you and any eligible dependents are only required to have had medical coverage immediately before termination)

#### *Alternative Eligibility for Employees Receiving Severance*

If you do not meet the general eligibility rules above, you may be eligible for retiree benefits if you terminate employment because of position elimination, you execute the Release, you participate in the corresponding benefit plan for active employees immediately before termination (for eligibility for that plan in retirement), and you meet the criteria below.

- you are at least age 50 as of your termination date, **and**
- you have at least 20 years of cumulative service as of your termination date

OR

- you are at least age 54 as of your termination date, **and**
- you have at least 15 years of cumulative service as of your termination date

#### *For More Information on Retiree Benefits*

For more information on the retiree health and life insurance benefits offered if you meet the eligibility criteria outlined above, please refer to The 2005 Retiree Benefits Resource Guide, which is available on the Benefits home page of *access*HR on Company Home.

Plan and/or the Group Legal Services Plan, you may continue participating in these plans on an after-tax basis. Contributions for the above mentioned benefits plans will be deducted from your semimonthly severance payment. During this period, you are also eligible to use the Employee Assistance Program. In addition, firm-provided basic life insurance will continue during the period that you receive severance in semimonthly installments. You will receive additional information under separate cover regarding benefits for which you may be eligible. Please note that your participation in the Disability Leave Policy, the Long Term Disability Plan, the Child/Eldercare Spending Account, the Transit Account, and the Parking Account ends on your termination date.

When you stop receiving severance in semimonthly installments, you may, if you are eligible, continue your current medical, dental, and/or vision coverage and EAP coverage for 18 months by paying the COBRA rate which is 102% of the total cost for these benefits. You may also continue the Health Care Spending Account through the end of the plan year by making after-tax contributions.

*COBRA* – If you do not execute the Release, you may in most situations elect COBRA coverage, provided that you had medical, dental, and/or vision coverage immediately before your termination date. If you elect any coverage under COBRA, you must pay for the coverage at the COBRA rate, which is 102% of the total cost for those benefits. You may also continue the Health Care Spending Account through the end of the plan year by making after-tax contributions, otherwise, eligible expenses for reimbursement are those incurred through your termination date only. If you sign the Release and receive semimonthly severance payments, your eligibility for COBRA will begin on the first day of the month following the date your severance payments end.

**Note:** Please refer to the last page of this letter for the Summary of Eligibility for U.S. Retiree Benefits – Heritage JPMorgan Chase Employees and how the Release may affect your eligibility.

## EAP
You will be eligible for the counseling services provided by the Employee Assistance Program (EAP) for the period that you receive severance in semimonthly installments. New York City area employees may call EAP at 1-212-464-2685. Outside NYC and across the country, you may call 1-800-276-0760. If you have a hearing impairment, you may call the TDD number, 1-800-697-0353.

## Career Services
You will be provided assistance in making the transition to other employment provided you have executed the Release. You may begin using career services in advance of executing the Release and continue for a maximum of one year after your date of termination. However, if you do not execute the Release within 45 days, you may not continue using the service. The services will include one-to-one and group meetings with a career counselor who will assist you with skills assessment, resume preparation, job search strategies and training in interviewing techniques.

Assuming you meet other eligibility criteria, you may pursue job opportunities at JPMorgan Chase. In order to pursue job opportunities at JPMorgan Chase, you should create or update your profile in JobConnect at http://careers.jpmorganchase.com/jpmcdirect/default.asp. When updating your profile, be sure to include your GID number in the employee ID field and respond appropriately to all profile questions regarding the job elimination. Human Resources will support your efforts during this transition.

You may also be eligible to receive an Education and Training Grant provided you have executed the Release. Please call 1-212-623-1777 for information on career services.

## Other Pay
You will be paid for any accrued and unused vacation, as well as any floating holidays you earned but did not use. If you have used more vacation than you have accrued, an appropriate deduction will be taken from your final pay. Any other unused sources of paid time off are not paid out unless the laws in the state where you work require payment.

## 401(k) Savings Plan and Retirement Plan
If you participated in the 401(k) Savings Plan, you will receive information regarding your final distribution and/or deferral options from the 401(k) Savings Plan Call Center following your termination

date. If you have any questions regarding your account, please contact the 401(k) Savings Plan Call Center at 1-866-JPMC401k (1-866-576-2401). The TDD number for participants with a hearing impairment is 1-800-345-1833. A Retirement Plan Package will be sent to your home address within approximately two weeks of your termination date. Questions on this benefit should be referred to the *access*HR Contact Center.

## Broad-based Employee Stock Option Program Awards

If you were awarded options under JPMorgan Chase's broad-based employee stock option program, you will have the right to exercise outstanding Value Share options awarded prior to your termination date on the same terms and conditions as if you had continued working for JPMorgan Chase. Please contact Mellon Investor Services at 1-800-982-7089 for further information. Employees with a hearing impairment may call the TDD number, 1-800-231-5469.

## Long Term Incentive Plan Awards

### *For LTIP Awards Granted On or After January 1, 2003*

With respect to a job elimination, the terms and conditions of outstanding awards of Restricted Stock/Units or Stock Options under JPMorgan Chase's Long-Term Incentive or Stock Option Plans granted on or after January 1, 2003 require you to execute the enclosed Release. If you fail to do so, then those awards, if any, will be immediately forfeited on your termination of employment.

### *For LTIP Awards Granted Before January 1, 2003*

For awards granted before January 1, 2003 under such Plans, you are not required to execute the enclosed Release. Such awards will be treated in accordance with their terms and conditions applicable to a job elimination.

With respect to awards under the Long-Term Incentive Plan, including heritage-Morgan Stock Bonus or Stock Option awards, the terms and conditions for different award years and different heritage companies, vary, particularly relative to option expiration dates. (Only awards granted on or after January 1, 2003 require you to execute a release.) You should contact Executive Compensation early in your notice period to confirm the terms and conditions applicable to each grant, particularly option expiration dates. Additionally, if you have outstanding restricted stock/units that will vest as of your termination date, Executive Compensation will provide you with the Accelerated RS/U Vesting Brochure. You may contact Executive Compensation by e-mail -- internally via Lotus Notes at Executive Compensation/JPMChase and externally via the internet at Executive.Compensation@Chase.com. Please include your Global Identification Number (GID) in the e-mail message. LTIP options which are exercisable may be exercised by calling 1-212-270-8558 or 1-212-270-8121 and submitting exercise forms to the Options Unit located at 270 Park Avenue, 35th floor before Noon (New York time) of a business day. Please note that this information does not apply to grants made under the Value Sharing program.

## Deferred Compensation Program

If you are a participant in the Deferred Compensation Program, you will receive information from the Deferred Compensation Call Center after your termination. If you have questions regarding your account, please call the *access*HR Contact Center.

## Severance and Redeployment or Re-employment

If you secure another position with JPMorgan Chase before your termination date, you will still be eligible to receive severance pay if either you or the manager determines that the position is not suitable and you leave within 90 days of the placement.

If you secure a position with JPMorgan Chase after your termination date, but before the severance period ends, your semimonthly severance payments will stop. If either you or the manager determines that the new position is not suitable and you leave within 90 days of the placement, your semimonthly severance payments will resume and continue through the remainder of your severance period. Shortly following your termination date, you will receive the exit booklet, *As You Leave* or *As You Retire,* which contains important additional information regarding the disposition of your benefits. You may preview the booklet

online under the Benefits section of *access*HR or you may receive an advance copy by calling the *access*HR Contact Center.

Susan, we are committed to helping you make this transition. If you have any questions about severance, the Release or the services outlined in this letter, please call Barbara Zimmer at (602) 221-4740. If you have other questions, you may call the *access*HR Contact Center at 1-877-JPMChase (1-877-576-2427). Individuals with a hearing impairment may call the TDD number, 1-800-719-9980.

I wish you every success in your future endeavors.

Sincerely yours,


Dee Lakhani

Enclosures:
Release (3)

**Exhibit B**

**Susan X Pinsky**
→ ⓐ
06/09/2005 09:42 AM

To: Barbara Zimmer/JPMCHASE@JPMCHASE
cc:
Subject: Re: Leave of Absence 📄

I am seeing my physiatrist on Friday to confirm what my general practitioner requested.
Home Equity Human Resources - Tel (602) 221-4740

**Home Equity** Human Resources - Tel (602) 221-4740



**Barbara Zimmer**
06/08/2005 06:39 PM

To: Susan X Pinsky/JPMCHASE@JPMCHASE
cc: Dee Lakhani/JPMCHASE@JPMCHASE
Subject: Re: Leave of Absence 📄

Susan,

If you have been directed by your physician to cease work immediately, I need to ask that you comply with his directive. Please finalize anything that you are working on and we will process a request for a leave of absence. I will ask that Dee begin your Leave of Absence effective immediately. If you expect your leave to extend past 6/30, please turn any bank property in to Dee as you will be placed on non-working notice for the remainder of your notice period upon your release back to work status. Once your leave is processed you will receive documentation that your doctor will need to complete and submit to disability management. You should not provide and medical information to me or to your manager

Dee,

Please create a Leave of Absence document in the Leave database for Susan.

You are both welcome to call me with any questions.

Barbara Zimmer
HR Business Partner
Chase Home Finance - Home Equity
(602) 221-4740  Office
(602) 221-4716  Fax
Susan X Pinsky

**Susan X Pinsky**
06/08/2005 02:28 PM

To: Dee Lakhani/JPMCHASE@JPMCHASE
cc: Barbara Zimmer/JPMCHASE@JPMCHASE
Subject: Leave of Absence

Due to the deterioration of my back condition (as shown in my MRI), my physicians have instructed that I cease to work immediately.
I have postponed my surgery to an undetermined date. I intend to finish working at the end of next week as planned,
working half to full days. Then I will go on sick leave. I am happy to foreword any and all prescriptions and documentation
as needed. I will not be attending any additional work meetings post 5:00 PM or weekends.

Thank you,

Susan Pinsky

**Exhibit C**



**Tanya Lowy**
→ ☺
06/15/2005 01:48 PM

To: Susan X Pinsky/JPMCHASE@JPMCHASE
cc:
Subject: WFS Opportunity available!

Susan,
I currently have any opportunity available as a WFS Specialist in Queens or Manhattan.  Please contact me if you or someone you know may be interested in this opportunity.

Tanya Lowy
National Staffing Network
(P)212-552-2201
(F)212-552-4092

visit us at http://jpmorganchase.com/careers

The Workplace Financial Services Specialist is responsible for acquiring and retaining new consumer accounts by presenting the WFS products and services to corporate clients within a responsible territory (Market/District/Branch). The incumbent is also responsible for coaching and training, as well as, driving the sales activities of the branches. The incumbent will be responsible for partnering/influencing branch staff to help achieve weekly WFS goals and objectives. The WFS Specialist will provide comprehensive Financial Education and Money Management Solution seminars to employees of corporate clients. he/she will work closely with JPMC business partners within a market, to help maximize business opportunities through referrals and cross selling.

**Responsibilities**
- Training/Coaching Branch Teams
- Provide one-on-one coaching to Personal Bankers/Branch Managers;
- Role play presentation materials for WFS Employee Seminars;
- Assist Personal Bankers with cold calls/outside sales activities; and
- Attend branch pipeline meetings — review all pipelines and call logs.
- Corporate Client Portfolio Management
- Build and maintain a profitable portfolio by managing the financial objectives on Revenue and Expenses; 4 to 5 Million budget
- Accountable for the work site financial services relationships with the corporate
- Clients in his/her portfolio;
- Implement employee communication and marketing plans to generate new accounts;
- Responsible for managing customer service issues and manage problem resolution at Both the client level and with employee customers;
- Acquire new WFS corporate clients and expand existing relationships
- Perform sales calls, makes presentations and product demonstrations;
- Cross sell full compliment of WFS and retail products to existing clients as appropriate;
- Introduce clients to JPMC business partners to help maximize referral opportunities.
- Achieve Sales Goals
- NTB Households weekly, TBD
- 40 dials a week to new Prospects; 5 new contacts weekly
- 5 POB (place of business) call weekly
- Schedule 10 customer events (Seminars or On-sites) at clients weekly
- Provide 1 business referral per month
- Quality control of all new WFS 12 Month Plan
- Client Relationship Manager for client portfolio ranging between 300 to 400 business clients

Develop and implements sales and marketing plans;
Develop strong relationships with clients and JPMC partners — joint calls;
Monitor all on-sites and seminars;

Tanya Lowy
National Staffing Network
(P)212-552-2201
(F)212-552-4092

visit us at  http://jpmorganchase.com/careers

**Exhibit D**

Jennifer Sauerhoff                                          Susan Pinsky
Hartford Life and Accident                                  153 Garfield Place
Insurance Company                                           Brooklyn, NY 11215

August 22, 2007

Dear Miss Sauerhoff & Appeals Committee,

I am writing to you at this time to ask you to reevaluate your decision and reinstate my
disability benefit.

On August 9, 2007 I was informed that my disability benefits had been revoked on July
10, 2007. This came as a complete and unexpected shock to me due to the fact that after
my most recent visit (at that time) to my surgeon, Dr. Nestor, on June 27th, I was
specifically instructed that I would not be able to return to work until September at the
very earliest. I was ordered not to rush my recovery because I could very easily re-injure
the area. Dr. Nestor claimed that returning to deskwork before allowing my hip to fully
recover after my surgery would prolong my recovery and increase my chances of needing
to have total hip replacement in the future.  He also stated that I should have my much
needed foot surgery completed before I return to work, because it is only a matter of time
before the problem with my foot becomes so bad that I will once again become disabled.

At this time I am still having problems with my hip. I constantly suffer from stiffness,
soreness and inflammation. I have not regained full mobility of the hip and I have to be
very very careful when I bend over, stand back up, kneel, squat, lift anything over five
pounds or simply sit too long or in an inappropriate chair. Due to an incident a week and
a half ago sitting on a soft couch, I have reaggravated the area. I made an appointment
with Dr. Nestor for pain medication. He prescribed Naprocin to help with the pain and
inflammation. I was not, and am not ready to return to a desk job where it is necessary for
me to sit for prolonged periods of time and bend at the waist.

Dr. Richard Koffler, my Physiatrist who I have been seeing for over a year for both the
pre-rehabilitation and post-surgical rehabilitation of my hip surgery, has ordered me as of
August 20, 2007 not to sit at all for at least another month.

I would also like to ask you at this time to grant me an extension on returning the over
payment money. Due to an address correction I did not receive my disability termination
letter until August 17, 2007 and therefore need more time to straighten out my finances.

I have included letters from both Dr. Nestor and Dr. Koffler in this appeal. If you have
any questions for myself, or either of my Doctors please do not hesitate to call. Thank
you very much for your time and consideration.

Sincerely,

Susan Pinsky