UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

SUSAN PINSKY,

        Plaintiff,

- against -                                                    07 Civ. 3328 (CM)(HP)

JP MORGAN CHASE & CO.,

        Defendant.

_____x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/14/08
```

### DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McMahon, J.:

    Defendant has moved for summary judgment. The following facts are undisputed:

    Plaintiff Susan Pinsky was first employed by Chase Investment Services Corp., an affiliated entity of defendant, in November 2002, as an Assistant Personal Financial Advisor. She was then hired by JP Morgan Chase Bank, effective February 1, 2004, as a Home Equity Loan Officer.

    Prior to becoming employed, plaintiff received a Bachelor of Arts degree from Baruch College in June 2002, and holds Series 7 and Series 66 securities licenses, as well as a Life & Health Insurance license, from the National Association of Securities Dealers (NASD), a financial industry self-regulatory organization. She held a number of jobs between June 1997 and her arrival at Chase, including Senior Technical Recruiter for Excel Partners; New York Metro Account Manager for Jobs.com; and Financial Advisor for Merrill Lynch.

    On May 20, 2005, plaintiff's manager gave plaintiff written notice that her position was being eliminated. Her employment was to be terminated as of July 18, 2005. Plaintiff does not dispute that her position was eliminated; indeed, she affirmatively alleges as much in her complaint.

    In the May 20 letter, defendant offered Plaintiff seven weeks' severance pay if she did not obtain another position with JP Morgan Chase prior to her termination date (July 18, 2005). The offer of severance was conditioned on the execution of a Release Agreement, which was provided to plaintiff along with the May 20 letter. Plaintiff was given up to 45 days to consult an attorney

regarding the Release Agreement before she needed to sign and return it in order to receive the proffered severance payment.

The offer of severance pay was made pursuant to the Severance Pay Plan operated by JP Morgan Chase & Co., the defendant's holding company parent. The Severance Play Plan offers various forms of assistance, including financial assistance, to employees "whose employement involuntarily terminates as a result of the events specified in this Plan." One of those events is "elimination . . . of the job position or functions held or performed by the Employee." The Plan document conditions receipt of severance on the execution of a release.

The plan further provides that only "an Employee who is not on a Leave of Absence may be a participant" in the Plan.

The amount of severance is calculated as "equal to the number of weeks of a Participant's Base Salary . . . opposite such individual's Years of Service." Severance becomes payable "following the Date of Termination of Employment." (Plan Section 4.1)

Plaintiff had no other right to receive severance benefits from JP Morgan Chase.

On June 13, 2005, plaintiff began a short-term disability leave of absence due to a disc herniation and other serious complications. As long as that leave of absence continued, she was ineligible to receive severance pay, and the time for making the payment (i.e., "following the Date of Termination of Employment") was correspondingly postponed.

On June 24, 2005 – after she went out on disability – plaintiff executed the Release Agreement and returned it to JP Morgan Chase. The Release she executed provided that Pinsky "release[d] to the fullest extent permitted by law JP Morgan Chase Bank (and any predecessor or successor entities thereof) and its and their affiliates, subsidiaries, parent corporations (including J.P. Morgan Chase & Co.) . . . from any and all suits, claims, charges, obligations, causes of action or demands in law or in equity . . . arising from or relating to my employment relationship with JPMC and/or the termination thereof, from the beginning of the world up to and including the date of execution of this Release (whether known or unknown to me and including any continuing effects of any acts or practices prior to the date of execution of this RELEASE), including, but not limited to: . . . any employment and/or benefit related claims under any federal, state or local law, employment law or civil rights law . . . ."

Although plaintiff's job no longer existed after July 18, 2005, plaintiff's employment could not terminate on that date, because she was out on disability. Nor did her employment end when her short term disability benefits expired. On December 12, 2005, Plaintiff was approved for a long-term disability leave of absence. During the entire period of her disability leave, plaintiff received medical and dental benefits at employee cost, rather than at COBRA cost (which is greater), as well as vision, life insurance and other benefits under various JP Morgan benefits plans. JP Morgan Chase has paid for some of plaintiff's medical and dental bills. All these

2

advantageous benefits, which plaintiff received well into 2007, would have come to an end had plaintiff's termination been processed.

On July 10, 2007, Plaintiff's physician, Dr. Bryan J. Nestor of the Hospital for Special Surgery, cleared Pinsky to return to work effective September 1, 2007. On July 16, 2007, plaintiff's attorney forwarded Dr. Nestor's note to defendant, and asserted, "Ms. Pinsky will be able to return to work, with accommodation, as of September 1, 2007."

After receiving the note and letter, JP Morgan Chase's long term disability carrier determined that plaintiff was no longer disabled as of July 10, 2007, and terminated Pinsky's disability leave as of that date. Plaintiff's term of employment ended when her disability period expired.

Plaintiff appealed the insurer's decision. The court has not been apprised of the results of the appeal.

On or about September 12, 2007 – after plaintiff was notified of the insurer's decision and of JP Morgan Chase's intention to pay her severance and enforce the Release Agreement – a new letter (dated August 20, 2007) from another doctor materialized, this one asserting that plaintiff could not, in fact, return to work as Dr. Nestor had indicated. (A second letter from Dr. Nestor was promised by plaintiff's attorney, but none has been provided to the court.) This letter appears to have crossed in the mail with the severance payment, which was sent by JP Morgan Chase on September 13, 2007. Although the May 20, 2005 letter promised plaintiff seven weeks' severance, she was sent ten weeks' severance.[1]

There is no evidence before the court that plaintiff ever returned the money sent to her.

**The Instant Action and Motion**

On March 27, 2007, plaintiff filed a complaint in the Supreme Court of the State of New York, alleging claims of disability discrimination under the New York State Human Rights Law and the New York City Human Rights Law. The complaint asserts that plaintiff has been unable to work since June 2005, and that her disability was due to defendant's failure to provide her with a reasonable accommodation— namely, a standing desk, so that she would not have to sit for extended periods of time. Plaintiff does not allege that her employment was terminated because of her disability, or for any other improper reason.

---

[1] Although no explanation for this was provided to the court, I assume that JP Morgan Chase recomputed the severance due plaintiff because she remained an employee of the company (in the most technical sense) for more than two years after she was notified that she was entitled to seven years' severance pay. Severance pay under the Plan is computed on the basis of years of employment.

3

Defendant removed the action to this court on April 26, 2007. The ground for removal was diversity of citizenship under 28 U.S.C. § 1332. Plaintiff did not seek remand, but instead has served an amended complaint adding a cause of action under the Americans with Disabilities Act, a federal statute.

JP Morgan Chase answered the complaint and countersued for fraud and unjust enrichment, alleging that, at some unspecified point during the period when she was out on disability, plaintiff became employed by Tri-State Biodiesel LLC as Chief Administration Officer. Plaintiff allegedly failed to notify either defendant (so it could terminate her employment as originally planned) or defendant's plan coordinator (so she could be removed from long term disability status) that she had regained her ability to work. Defendant seeks a refund of all monies it has expended on plaintiff (for insurances, etc.) for any period when plaintiff was able to work.

All pleadings except for the Amended Complaint were filed prior to defendant's paying plaintiff the severance payment.

Defendant moved for summary judgment on plaintiff's claim, asserting that plaintiff released the claims when she signed the Release in June 2005. Plaintiff opposed the motion with a Rule 56(f) affidavit, claiming that there are six issues of fact on which she requires discovery. Those issues are: (1) the date on which the Release became effective; (2) whether plaintiff's leave of absence ended and, if it did, whether that was appropriate; (3) whether the cutoff of plaintiff's disability benefits was appropriate; (4) whether plaintiff was capable of returning to work either in July 2007 or at any other time since; (5) whether there were job opportunities available to plaintiff prior to July 18, 2005 that would have voided the Release Agreement; and (6) whether Plaintiff's transfer to another position prior to July 18, 2005 would have voided the Release Agreement.

The "issues of fact" identified by plaintiff are either issues of law or are immaterial to the determination of the motion. Therefore, the Rule 56(f) response is ineffective and insufficient.

The motion for summary judgment is granted.

**Discussion**

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court views the record in the light most favorable to the non-movant and resolves all ambiguities and draws all reasonable inferences against the movant. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987).

The facts of this case appear simple enough. Plaintiff does not contest that her job was eliminated in a restructuring at JP Morgan Chase. She was offered a severance package in

4

exchange for a release of claims. She executed the release of claims on June 24, 2005. Once she signed the release, she became eligible to receive the severance. However, because she was out on a disability leave, JP Morgan could not pay her the severance. So it kept plaintiff on the payroll until her physician certified that she could return to work and the company's disability carrier ended her disability period. At that point, defendant severed the employment relationship (which had ended de facto more than two years earlier) and paid plaintiff what she was due under her contract (plus an additional amount occasioned by her additional time on the payroll).

The Release clearly covers claims of disability discrimination, whether under state or federal law, that accrued at any time prior to June 24, 2005. The complaint and amended complaint in this action allege that defendant discriminated against plaintiff by refusing to accommodate her request for a standing desk prior to the time she went out on disability in June 2005. This claim is covered by the literal terms of the release, and it accrued prior to the time the Release was signed.

The Release is enforceable. Federal law permits a party to release disability claims, as long as the waiver is made knowingly and voluntarily. Cordoba v. Beau Dietl & Assocs., 2003 WL 22902266 at *4 (S.D.N.Y. Dec. 8, 2003) (citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 n.15 (1974)). All the evidence in the record supports a finding that Pinsky's waiver was knowing and voluntary: she is highly educated and has considerable business experience; was given ample time to consult an attorney and was encouraged to do so; and received a benefit in consideration for her signature that she was not otherwise entitled to receive. The language of the Release is perfectly clear and comprehensible to a person of plaintiff's attainments. By signing it, plaintiff attested to the fact that she was executing the Agreement knowingly and voluntarily and that she intended to be legally bound by its terms. Plaintiff has not suggested any reason why the Release might be found to be unknowingly or involuntarily executed.

Plaintiff's only opposition to the motion comes in the form of an affidavit, filed pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, indicating that discovery is required before she can respond to the motion.

Rule 56(f) provides as follows:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) deny the motion;
>
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>
> (3) issue any other just order.

Rule 56(f) cannot be used to delay the adjudication of a motion for summary judgment where discovery is not necessary, either because the argument in opposition to the motion raises only an issue of law, or because the purported issue of fact on which discovery is needed is immaterial. *See, e.g.*, Sage Realty Corp. v. Insurance Co. of North America, 34 F.3d 124, 128 (2d Cir. 1994); Starkey v. Capstone Enterprises of Portchester, Inc., 237 F.R.D. 46, 49 (S.D.N.Y. 2006); Robertson v. Amtrak/National R.R. Passenger Corp., 400 F. Supp. 2d 612, 620-21 (S.D.N.Y. 2005).

A review of the reasons asserted by plaintiff for deferral of the decision on the motion reveals that the Rule 56(f) affidavit raises only issues of law or of immaterial fact.

Contrary to plaintiff's assertion, the effective date of the Release does not present a question of fact, but of law, and it is a question easily answered. The Release became effective on the date it was signed, June 24, 2005. Once plaintiff signed that document, defendant became obligated to pay plaintiff her severance pay, in exchange for which plaintiff released any disability discrimination claim that had accrued prior to June 24, 2005 ("up to and including the date of execution of this Release"). That defendant could not make the severance payments as originally contemplated, but had to wait until plaintiff's disability period ended, so that her employment could be terminated, is of no moment to the effectiveness of the Release. Rather, that is purely a function of the terms of the Plan pursuant to which the payment was offered and plaintiff's own health situation. Defendant complied with its obligation to pay plaintiff her severance the moment it was free to do so.

Because the Release became effective upon signing, the severance agreement was not "triggered" after plaintiff filed suit, in March 2007, but at the time that plaintiff accepted defendant's offer of severance pay in exchange for the Release. The temporary bar on paying plaintiff the consideration due her for the Release is of no moment. Since June 24, 2005, plaintiff has had a remedy at law if defendant breached the Agreement by failing to pay the severance when it became due. But defendant has not breached the Agreement. It paid the severance as soon as it was able to do so consistent with the terms of the Plan. There is no allegation in the complaint or the proposed amended complaint that JP Morgan Chase failed to live up to any obligation owed to plaintiff during her disability period.

There is no need to take discovery on the issues relating to the termination of plaintiff's disability leave, because such discovery would not have any impact on the effectiveness of the Release signed by plaintiff. On the undisputed record, the review of plaintiff's disability status (by the insurer, not by defendant) was occasioned by the submission of a note from plaintiff's surgeon, forwarded by her attorney, attesting to plaintiff's ability to work. The insurer has made its decision. Plaintiff has sought administrative review. There is presently no issue before the court relating to that decision; indeed, at present, JP Morgan Chase could assert an affirmative defense to the court's consideration of that issue. *See* 29 U.S.C. § 1132 (ERISA); Paese v. Hartford Life Accident Ins. Co., 449 F.3d 435, 443 (2d Cir. 2006).

Finally, plaintiff states, in her affidavit filed pursuant to Rule 56(f), "It was my understanding that if I signed the Relase Agreement, but found a job, the Release would be null and void." The circumstances under which the release would become null and voide also raises an issue of law, not of fact. The text of the Release itself contains nothing to the effect that it would become void if Plaintiff should become reemployed, whether by defendant or one of its affiliates or by any other company. The Plan provides that severance payments (which are paid in semimonthly installments during a severance period) will stop, "If you secure another position with JP Morgan Chase before your termination date" (unless the employee leaves the new position within ninety days on the ground that it is unsuitable), or "If you secure a position with JP Morgan Chase after your termination date, but before the severance period ends . . . ." (May 20, 2005 Letter, Ex. B to the 9/20/07 Lieberman Aff.) It is undisputed that plaintiff has not been employed by JP Morgan Chase at any time since her disability period ended, and has not worked at JP Morgan Chase since June 13, 2005. Pinsky's allegation that she would have found another job at JP Morgan Chase is not only sheer speculation, but is undermined by the fact that she has been disabled (or has claimed to be disabled) thoughout the two year period prior to her formal termination from employment. As a result, plaintiff did not apply for any position that might have resulted in a job offer.

In short, none of the issues alleged to require discovery in order to oppose the motion in fact requires any discovery. Therefore, the Court is not bound to afford plaintiff any of the remedies available under Rule 56(f) and can proceed to deny the motion.

### Conclusion

Since plaintiff released any claim for disability discrimination against her former employer, defendant's motion for summary judgment is granted. The complaint will be dismissed as soon as the counterclaims are resolved.

The Clerk of the Court is directed to remove the motion from the Court's list of pending motions.

Dated: New York, New York
       February 11, 2008

_____
U.S.D.J.

BY ECF TO ALL COUNSEL