UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

SUSAN PINSKY,                                :    ECF

                          Plaintiff,    :    07 Civ. 3328 (CM) (HP)

               - against -        :    **AFFIDAVIT OF FREDERIC
                                                L. LIEBERMAN IN SUPPORT**
JP MORGAN CHASE & CO.,          :    **OF DEFENDANT'S MOTION
                                                 FOR SUMMARY JUDGMENT**

                          Defendant.     :

------------------------------------------------------------X

STATE OF NEW YORK    )
                              ) SS.:
COUNTY OF NEW YORK  )

         FREDERIC L. LIEBERMAN, being duly sworn, deposes and says:

         1.      I am an Assistant General Counsel in the JPMorgan Chase Legal and Compliance Department, attorneys for JPMorgan Chase Bank, N.A. ("Defendant" or the "Bank"), the Defendant in this action, incorrectly named as JP Morgan Chase & Co.

         2.      I am familiar, based on personal knowledge, information and belief, and/or the records of the Defendant, with the facts and circumstances hereinafter set forth. I make this affidavit in support of Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56(b).

         3.      After this action was commenced, I obtained copies of various Bank records and files regarding Plaintiff Susan Pinsky, including the following: the Employee Records file, the AccessHR file, the Human Resources file, the Medical Department file, compensation records, and Code of Conduct records. In addition, I obtained copies of the emailboxes of Plaintiff, Dee Lakhani (Pinsky's manager), and Barbara Zimmer (then a Human Resources Business Partner

164159:v1

for Chase Home Equity) for the period from November 1, 2004 through September 30, 2005. I also obtained documents through discovery from Plaintiff and from non-parties. These files, emailboxes, and discovery responses are the source of the documents referred to herein.

Plaintiff's Background

4.  Pinsky received a Bachelor of Arts degree from Baruch College in June 2002. See page 4 of the on-line application submitted by Pinsky for a Home Equity Loan Officer position with the Bank, a true and correct copy of which is attached to Defendant's Rule 56.1 Statement as Exhibit "1" and Pinsky's resume, a true and correct copy of which is attached to Defendant's Rule 56.1 Statement as Exhibit "2". In addition to her degree, Pinsky has received Series 7 and Series 66 securities licenses, as well as a Life & Health Insurance license, from a financial industry self-regulatory organization. See Exhibit "1" at page 6 and Exhibit "2".

5.  Between June 1997 and May 2005, Pinsky had been employed as a Technical Recruiter for Interim Technology, The Consulting Group, as a Senior Technical Recruiter for Excel Partners, as a New York Metro Account Manager for Jobs.com, as a Financial Advisor for Merrill Lynch, as an Personal Financial Advisor Assistant for Chase Investment Services Corp., and as a Home Equity Loan Officer for the Bank. See Exhibit "1" at pages 5-6 and Exhibit "2".

6.  Pinsky began her employment with Chase Investment Services Corp., a subsidiary of JPMorgan Chase & Co., in November 2002, as a Personal Financial Advisor Assistant. See Exhibit "1" at page 5; Exhibit "2"; and Exhibit "51" at ¶ 5. She then was hired by JPMorgan Chase Bank, another subsidiary of JPMorgan Chase & Co., effective February 1, 2004, as a Home Equity Loan Officer ("HELO"). See Exhibit "2"; Exhibit "51" at ¶ 5. Beginning in February 2005, Pinsky was assigned to work as a HELO at the Bank's retail branch located at 55 Water Street, New York, New York. See Pinsky 1; Lakhani 24; Centeno 29.

Pinsky's Request for a Reasonable Accommodation

7. On February 8, 2005, Plaintiff first notified her Human Resources Business Partner, Barbara Zimmer, and her manager, Dee Lakhani, that she was requesting a standing desk because of back problems. A true and correct copy of an email from Plaintiff is attached to Defendant's Rule 56.1 Statement as Exhibit "5". At that time, Zimmer advised Plaintiff that she needed to submit medical documentation regarding her physical condition to the Bank's Medical Department. Pinsky 16; Zimmer 21.

8. On February 24, 2005, Plaintiff advised Zimmer that she had obtained medical documentation from her chiropractor. A true and correct copy of an email from Plaintiff is attached to Defendant's Rule 56.1 Statement as Exhibit "6". The chiropractor's note stated that Pinsky had "lower back pain and muscle spasm, secondary to an Acute Strain/Sprain Syndrome of the Lumbosacral Spine and pelvis", should "refrain from extended periods of sitting (not to exceed 20 to 30 minutes)", and "would benefit from the use of a 'standing desk', to avoid having to sit while working for more than the recommended time frame". A true and correct copy of Dr. Stephen Weinberg's note is attached to Defendant's Rule 56.1 Statement as Exhibit "7".

9. According to Plaintiff, she faxed a copy of the letter from her chiropractor to Miriam Negron on February 24, 2005. Pinsky 16. Negron, the Regional Manager of the Bank's Medical Department, Negron 19, however, has no recollection of receiving any facsimile from Plaintiff on February 24, 2005. Id. at 20. In addition, Pinsky's faxed documents do not show that they were received by Negron, Pinsky 16, and the Medical Department's file regarding Pinsky does not include any documents claimed to have been faxed to it on February 24, 2005.

10. On March 15, 2005, Plaintiff advised Zimmer that she had not heard anything from the Medical Department regarding her request for a standing desk. A true and correct copy

of an email from Plaintiff is attached to Defendant's Rule 56.1 Statement as Exhibit "8". On March 17, 2005, Zimmer asked Plaintiff who she had sent the facsimile to in the Medical Department. A true and correct copy of an email from Zimmer is attached to Defendant's Rule 56.1 Statement as Exhibit "9". On March 31, 2005, Plaintiff responded that she remembered sending the facsimile to a person that Zimmer had identified for her, but admitted that she could not find her copy of the facsimile. A true and correct copy of an email from Plaintiff is attached to Defendant's Rule 56.1 Statement as Exhibit "10".

11.     On April 4, 2005, Pinsky wrote again to Zimmer and told her that: "I still have no standing desk. Exactly how long do I have to wait for it. I don't remember who I faxed the info to. It was to the name and number you gave me." A true and correct copy of an email from Pinsky to Zimmer is attached to Defendant's Rule 56.1 Statement as Exhibit "11".

12.     Later that afternoon, Zimmer responded: "I believe that the person whose name we were originally given may have left the bank. I have asked someone else in Health Services to follow-up. I would also suggest that you ask your manager, Dee, to follow-up as well. They cannot give her medical information but they should be able to tell her the status of the request.". A true and correct copy of an email from Zimmer to Pinsky is attached to Defendant's Rule 56.1 Statement as Exhibit "12".

13.     On April 4, 2005, Plaintiff faxed a copy of the letter from her chiropractor to Cindy Chan, a nurse in the Bank's Medical Department. A true and correct copy of the fax from Plaintiff is attached to Defendant's Rule 56.1 Statement as Exhibit "13". On April 4, 2005, Chan approved Plaintiff's request for a reasonable accommodation. A true and correct copy of an email from Chan is attached to Defendant's Rule 56.1 Statement as Exhibit "14". On April 5, 2005, Zimmer wrote to Lakhani: "You will want to work with the branch to make sure that there

is a place to put this. If the branch cannot accommodate you will want to work with Medical on other alternatives. Also, since she is a [Home Equity Loan Officer] I assume that she has only 90 days remaining. In that case, there may be less expensive alternatives that Medical can recommend. Usually the medical department calls the manager to discuss before just sending a request for the accommodation, I suggest that you call Cindy and have a conversation about the options." A true and correct copy of an email from Zimmer is attached to Defendant's Rule 56.1 Statement as Exhibit "15".

14. On April 6, 2005, Pinsky wrote to Lakhani and Chan: "Do you know when my standing desk will be arriving? My back is killing me and right now I am working with my keyboard lodged atop a moving box." A true and correct copy of an email from Pinsky to Lakhani and Chan is attached to Defendant's Rule 56.1 Statement as Exhibit "16".

15. On April 8, 2005, Lakhani wrote to Zimmer and Chan: "I spoke to Susan this morning and my only concern is ordering this desk today, getting it a month from now and her using it for a total of 3 weeks (her last day is June 30th). Not only are we spending money on it, but the Water Street Branch will have no use for this desk afterwards and they will not have the space to leave it there so we will have to discard it. They will need to throw it away to make room for a banker (with a regular desk). I just spoke to Sales Manager there and asked if Susan can stand at the Customer Service desk in the back of the branch there is no traffic) and she said it may work. I ran this by Susan this morning and she thought it would be a good idea as well. I don't know what a standing desks looks like but the way Susan described it to me, it is no different than the customer service desk. Let me know if this is okay or is it mandatory that I order this desk?" A true and correct copy of an email from Lakhani is attached to Defendant's Rule 56.1 Statement as Exhibit "17". On April 8, 2005, Chan responded to Lakhani: "You do not

need to order the desk as long as she can be accommodated by standing at the Customer Service Desk until she leaves her employment with JPMC on June 30th." A true and correct copy of an email from Chan is attached to Defendant's Rule 56.1 Statement as Exhibit "18".

16. From on or about April 8, 2005 through May 31, 2005, neither Lakhani, Zimmer, nor Centeno have any recollection of any complaint by Pinsky regarding her use of the Customer Service Desk, Lakhani 27; Zimmer 22; Centeno 32, and there are no emails from Pinsky during that period regarding her use of the Customer Service Desk.

17. On May 31, 2005, Plaintiff sent an email to Lakhani and Zimmer complaining about her back and asking whether there was "any word on [her] standing desk". A true and correct copy of an email from Plaintiff is attached to Defendant's Rule 56.1 Statement as Exhibit "19". On June 1, 2005, Lakhani responded: "I was under the impression that you were standing at the CS service desk in the back which is a standing desk and that you did not want to order one b/c you can stand at that desk. Dolly and I spoke about this and then I called you and you decided that it would be the best way to go. Am I missing something?" A true and correct copy of an email from Lakhani is attached to Defendant's Rule 56.1 Statement as Exhibit "20". On June 1, 2005, Pinsky responded: "Yes, you are missing quite a lot. I requested the standing desk originally in January. Then since nothing was done about it I called HR and they had me put in a second request for it. Dolly came up with the idea of using the service desk a month after the second time the desk was requested. Although the service desk is a lot better than the regular desk, it lacks the ability to provide sufficient support when I actually do sit. All this time, I was under the impression that the desk had been ordered, and I was using the service desk until it arrived." A true and correct copy of an email from Plaintiff is attached to Defendant's Rule 56.1 Statement as Exhibit "21". On June 2, 2005, Zimmer wrote to Pinsky: "From what I recall,

Chase Medical approved of the service desk as a reasonable accommodation for your needs. They would have based their decision on the information provided from your physician as to what you required. Since your position is being eliminated, and we were looking for a short term solution, this was deemed an appropriate way to meet your accommodation. There was not a desk ordered for you." A true and correct copy of an email from Zimmer is attached to Defendant's Rule 56.1 Statement as Exhibit "22".

Plaintiff's Disability Leave

18. On June 8, 2005, Pinsky wrote to Lakhani and Zimmer: "Due to the deterioration of my back condition (as shown in my MRI), my physicians have instructed that I cease to work immediately.... I intend to finish working at the end of next week as planned, working half to full days." A true and correct copy of an email from Plaintiff is attached to Defendant's Rule 56.1 Statement as Exhibit "29". That same day, Zimmer responded to Pinsky: "If you have been directed by your physician to cease work immediately, I need to ask that you comply with his directive. Please finalize anything that you are working on and we will process a request for a leave of absence. I will ask that Dee begin your Leave of Absence effective immediately." A true and correct copy of an email from Zimmer is attached to Defendant's Rule 56.1 Statement as Exhibit "30".

19. During discovery in this action, Defendant served a subpoena on The Hartford, the short-term and long-term disability insurance carrier for JPMorgan Chase's employee disability benefit plan, for its records relating to Plaintiff and received documents from The Hartford in response to that subpoena.

20. On June 13, 2005, Plaintiff began a short-term disability leave of absence. A true and correct copy of the AccessHR Case Information form regarding Plaintiff's leave of absence

is attached to Defendant's Rule 56.1 Statement as Exhibit "31". Effective December 12, 2005, Plaintiff was approved by The Hartford for long-term disability benefits. See Exhibits "31" and "32".

21.     On July 10, 2007, Plaintiff's surgeon cleared her to return to work as of September 1, 2007. A true and correct copy of a July 10, 2007 letter from Plaintiff's surgeon is attached to Defendant's Rule 56.1 Statement as Exhibit "33". On August 9, 2007, The Hartford, the long-term disability insurance carrier for the Bank's long-term disability policy, advised Pinsky that her long-term disability benefits were being terminated as of July 10, 2007 based on information submitted by Plaintiff's health care providers. A true and correct copy of The Hartford's August 9, 2007 notice to Pinsky is attached to Defendant's Rule 56.1 Statement as Exhibit "34".

The JPMorgan Chase & Co. Code of Conduct

22.     JPMorgan Chase & Co. has a firm-wide Code of Conduct, administered by the Office of the Secretary within the Legal and Compliance Department. True and correct copies of the November 2004 Code of Conduct, the February 2006 Code of Conduct, and the February 2007 Code of Conduct are attached to Defendant's Rule 56.1 Statement as Exhibits "36", "37", and "38".

23.     The Code of Conduct applies to all JPMorgan Chase employees, including those on disability leaves. See Exhibits "36" at § 1.1, "37" at § 1.1, and "38" at § 1.1.

24.     Compliance with the Code of Conduct and with other applicable policies and procedures is a term and condition of employment by JPMorgan Chase. See Exhibits "36" at § 1.3, "37" at § 1.3, and "38" at § 1.3.

25.    The Code of Conduct was and is available to all employees on the Firm's intranet website. See Exhibits "36" at § 1.6, "37" at § 1.6, and "38" at § 1.6.

26.    Section 6.3.2 of the November 2004 Code of Conduct, in effect from November 2004 through February 2006, provided that:

"Subject to the exclusions listed below, you are required to pre-clear:

- any outside activity for which you will be paid, including a second job.

- whether or not you will be paid, any affiliation with another business as a director, officer, advisory board member, general partner, owner, consultant, holder of 5% or more of the business' voting equity interests, or in any similar position."

See Exhibit "36".

27.    Section 6.3.2 of the February 2006 Code of Conduct, in effect from February 2006 through February 2007, provided that:

"Subject to the exclusions listed below, you are required to pre-clear:

(1)    any outside activity for which you will be paid, including a second job.

(2)    whether or not you will be paid, any affiliation with another business as a director, officer, advisory board member, general partner, owner, consultant, holder of 5% or more of the business' voting equity interests, or in any similar position."

See Exhibit "37".

28.    Section 6.3.2 of the February 2007 Code of Conduct, in effect from February 2007 to the present, provides that:

"Subject to the exclusions listed below, you are required to pre-clear:

(i)    any outside activity for which you will be paid, including a second job.

      (ii)    whether or not you will be paid, any affiliation with another business as a director, officer, advisory board member, general partner, owner, consultant, holder of 5% or more of the business' voting equity interests, or in any similar position."

See Exhibit "38".

    29.    All JPMorgan Chase employees are required to affirm their understanding of, and compliance with, the Code of Conduct on a recurring basis. See Exhibits "36" at § 1.7, "37" at § 1.7, and "38" at § 1.7. Pinsky submitted her affirmances on December 18, 2002, October 21, 2003, and March 3, 2005. True and correct copies of Pinsky's affirmances are attached to Defendant's Rule 56.1 Statement as Exhibits "39", "40", and "41".

<u>Pinsky's Relationship with Tri-State Biodiesel, LLC Violates the Code of Conduct</u>

    30.    During discovery in this action, Defendant served a subpoena on Tri-State Biodiesel, LLC ("Tri-State"), for its records relating to Plaintiff, and received documents from Tri-State in response to that subpoena.

    31.    Pinsky testified that she helped "build the corporate structure of the company of Tri-State Biodiesel", and completed paperwork for, and managed, "monthly or quarterly reports" and "all the City and State licensing companies, registration and the financials." Pinsky 12.

    32.    Plaintiff was and is an investor in Tri-State. See Exhibit "44"; Pinsky 10.

    33.    Plaintiff neither requested, nor received, any pre-clearance from the Bank regarding her relationship with Tri-State. See Wells Aff. at ¶¶ 4 and 5; Pinsky 15.

<u>This Action</u>

    34.    On or about February 6, 2006 Pinsky filed a Complaint of Discrimination with the New York State Division of Human Rights. A true and correct copy of the Complaint of Discrimination is attached to Defendant's Rule 56.1 Statement as Exhibit "45".

35. On March 27, 2007, Pinsky filed her Complaint in this action in New York State Supreme Court, asserting claims of disability discrimination under the New York State Human Rights Law and the New York City Human Rights Law, alleging that Defendant failed to make any reasonable accommodation for her disability. A true and correct copy of the Summons and Complaint is attached to Defendant's Rule 56.1 Statement as Exhibit "46". Plaintiff's Complaint was served on Defendant on March 28, 2007.

36. On April 26, 2007, Defendant removed this action from New York State Supreme Court, New York County, to the United States District Court for the Southern District of New York.

37. On April 26, 2007, the New York State Division of Human Rights issued an Annulment Determination regarding Pinsky's Complaint of Discrimination. A true and correct copy of the Annulment Determination is attached to Defendant's Rule 56.1 Statement as Exhibit "47".

38. On May 15, 2007, Defendant filed its Answer to Pinsky's Complaint. A true and correct copy of Defendant's Answer is attached to Defendant's Rule 56.1 Statement as Exhibit "48". On June 4, 2007, Defendant filed its Amended Answer and Counterclaims to Pinsky's Complaint. A true and correct copy of Defendant's Amended Answer is attached to Defendant's Rule 56.1 Statement as Exhibit "50".

39. On June 1, 2007, the Equal Employment Opportunity Commission issued a Dismissal and Notice of Rights to Plaintiff. A true and correct copy of the Dismissal and Notice of Rights is attached to Defendant's Rule 56.1 Statement as Exhibit "49".

40. On September 12, 2007, Plaintiff filed a First Amended Complaint, asserting an additional claim that Defendant's alleged actions also violated the Americans with Disabilities

Act. A true and correct copy of Plaintiff's First Amended Complaint is attached to Defendant's Rule 56.1 Statement as Exhibit "51". On January 30, 2008, Defendant filed its Answer and Counterclaims to Pinsky's Amended Complaint. A true and correct copy of Defendant's Answer to the Amended Complaint is attached to Defendant's Rule 56.1 Statement as Exhibit "52".

41. On November 26 and December 7, 2007, Defendant took the deposition of Plaintiff Susan Pinsky. True and correct copies of cited pages from the transcript of that deposition are annexed hereto at tab "Pinsky".

42. On November 13, 2007, Plaintiff took the deposition of Miriam Negron, an employee of JPMorgan Chase Bank. True and correct copies of cited pages from the transcript of that deposition are annexed hereto at tab "Negron".

43. On December 7, 2007, Plaintiff took the deposition of Dee Lakhani, an employee of JPMorgan Chase Bank. True and correct copies of cited pages from the transcript of that deposition are annexed hereto at tab "Lakhani".

44. On March 14, 2008, Plaintiff took the deposition of Barbara Zimmer, a former employee of JPMorgan Chase Bank. True and correct copies of cited pages from the transcript of that deposition are annexed hereto at tab "Zimmer".

45. On March 14, 2008, Plaintiff took the deposition of Migdalia Centeno, an employee of JPMorgan Chase Bank. True and correct copies of cited pages from the transcript of that deposition are annexed hereto at tab "Centeno".

WHEREFORE, Defendant respectfully requests that the Court (1) grant its motion for summary judgment; (2) dismiss this action in its entirety with prejudice; (3) find in favor of Defendant as to its counter-claims against Plaintiff; (4) grant Defendant its costs and attorneys' fees; and (5) grant such other and further relief as this Court deems just and proper.

_____
FREDERIC L. LIEBERMAN

Sworn to before me this
___31st___ day of March, 2008

_____
Notary Public

RHOSHENA R. ALLEN
Notary Public, State of New York
No. 01AL5087961
Qualified in Westchester County
Certificate Filed in New York County
Commission Expires November 10, 2009