# EXHIBIT 13



# CHASE

Chase Home Finance New York, NY
Tel: 212-638-1958
Fax: 585-530-8742
Cell 917-676-8556

| | |
|---|---|
| **ATT:** | **FROM:** |
| Miriam Negron | Susan Pinsky |
| **COMPANY:** | **DATE:** |
| JP MORGAN CHASE | FEBRUARY 24, 2005 |
| **FAX NUMBER:** | **TOTAL NO. OF PAGES INCLUDING COVER:** |
| 212-552-1654 | 2 |
| **PHONE NO.** | **RE:** |
| | Request for Standing Desk |

*ECA - [illegible] # 474707*

*ATT: Cindy*

REC W
APR
MEDICAL DE

### STEPHEN S. WEINBERG, D.C., LLC
50 Lexington Avenue
Lower Level
New York, NY 10010
(212) 995-1515
Fax: (212) 995-2335

February 23, 2005

To Whom It May Concern:

Ms. Susan Pinsky is under my care for lower back pain and muscle spasm, secondary to an Acute Strain/Sprain Syndrome of the Lumbosacral Spine and Pelvis. She has been advised to refrain from extended periods of sitting (not to exceed 20 to 30 minutes) and to seek Therapeutic Massage Therapy as an adjunct to treatment in this office. These measures are necessary to improve the outcome of this condition and to help prevent further exacerbation of her symptoms. In particular, I believe that Ms. Pinsky would benefit from the use of a "standing desk", to avoid having to sit while working for more than the recommended time frame. Please extend her all due consideration in this matter.

If any questions arise concerning this case, feel free to contact my office. Thank You.

Respectfully Yours,

Stephen S. Weinberg, D.C.

RECEIVED
APR - 4 2005
MEDICAL DEPT.

# EXHIBIT 14

 Cindy Chan
04/04/2005 04:22 PM

To: Dee Lakhani/JPMCHASE@JPMCHASE
cc: Susan X Pinsky/JPMCHASE@JPMCHASE, Barbara
    Zimmer/JPMCHASE@JPMCHASE
Subject: Susan Pinsky  GID# 474407

The Medical Dept. has received medical documentation for the following work accommodation for Susan Pinsky:

- Ms. Pinsky would benefit from the use of a "standing desk"

Dee, please make sure that the proper equipment is ordered for Susan.


Thank you,
Cindy Chan, RN
Health Services
1 CMP/ 27
(212) 552-5881

# EXHIBIT 15

 **Barbara Zimmer**
04/05/2005 10:17 AM

To: Dee Lakhani/JPMCHASE@JPMCHASE
cc:
Subject: Fw: Susan Pinsky GID# 474407

Dee, I assume that she is at a branch? You will want to work with the branch to make sure that there is a place to put this. If the branch cannot accommodate you will want to work with Medical on other alternatives. Also, since she is a HELO I assume that she has only 90 days remaining. In that case, there may be less expensive alternatives that Medical can recommend. Usually the medical department calls the manager to discuss before just sending a request for the accommodation, I suggest that you call Cindy and have a conversation about the options.

----- Forwarded by Barbara Zimmer/JPMCHASE on 04/05/2005 07:06 AM -----
Health Services - Tel (212) 270-4779 Fax (212) 270-9798

 **Cindy Chan**
04/05/2005 06:41 AM

To: Dee Lakhani/JPMCHASE@JPMCHASE
cc: Barbara Zimmer/JPMCHASE@JPMCHASE, Susan X
    Pinsky/JPMCHASE@JPMCHASE
Subject: Re: Susan Pinsky GID# 474407

Dee,
You can order the desk through ePurchase which is accessible through the JPMC eSource homepage. If the desk is a non-catalog item after searching, you will need to put in a request for a "non catalog item" also from the ePurchase website.

Regards,
Cindy

Dee Lakhani

 **Dee Lakhani**
04/04/2005 08:42 PM

To: Cindy Chan/JPMCHASE@JPMCHASE
cc: Susan X Pinsky/JPMCHASE@JPMCHASE, Barbara
    Zimmer/JPMCHASE@JPMCHASE
Subject: Re: Susan Pinsky GID# 474407

Please tell me how to go about this? Where and how..?

Cindy Chan



Cindy Chan                                    04/04/2005 04:22 PM

**\*\*ARCHIVED\*\***

To:    Dee Lakhani/JPMCHASE@JPMCHASE
cc:    Susan X Pinsky/JPMCHASE@JPMCHASE, Barbara Zimmer/JPMCHASE@JPMCHASE
Subject:  Susan Pinsky  GID# 474407

The Medical Dept. has received medical documentation for the following work accommodation for Susan Pinsky:

- Ms. Pinsky would benefit from the use of a "standing desk"

Dee, please make sure that the proper equipment is ordered for Susan.


Thank you,
Cindy Chan, RN
Health Services
1 CMP/ 27
(212) 552-5881

# EXHIBIT 16

**Susan X Pinsky**
04/06/2005 03:41 PM

To: Dee Lakhani/JPMCHASE@JPMCHASE
cc: Cindy Chan/JPMCHASE@JPMCHASE
Subject: Re: Susan Pinsky GID# 474407

Hi Dee,
Do you know when my standing desk will be arriving? My back is killing me and right now I am working with my keyboard
lodged atop a moving box.
Dee Lakhani



**Dee Lakhani**
04/04/2005 08:42 PM

To: Cindy Chan/JPMCHASE@JPMCHASE
cc: Susan X Pinsky/JPMCHASE@JPMCHASE, Barbara Zimmer/JPMCHASE@JPMCHASE
Subject: Re: Susan Pinsky GID# 474407

Please tell me how to go about this?  Where and how..?

Cindy Chan



Cindy Chan                                04/04/2005 04:22 PM

**ARCHIVED**

To:        Dee Lakhani/JPMCHASE@JPMCHASE
cc:        Susan X Pinsky/JPMCHASE@JPMCHASE, Barbara Zimmer/JPMCHASE@JPMCHASE
Subject:  Susan Pinsky  GID# 474407

The Medical Dept. has received medical documentation for the following work accommodation for Susan Pinsky:

- Ms. Pinsky would benefit from the use of a "standing desk"

Dee, please make sure that the proper equipment is ordered for Susan.


Thank you,
Cindy Chan, RN
Health Services
1 CMP/ 27
(212) 552-5881

# EXHIBIT 17



**Dee Lakhani**
04/08/2005 03:57 PM

To: Cindy L Chan/JPMCHASE@JPMCHASE
cc: Barbara Zimmer/JPMCHASE@JPMCHASE, Gareth Hoeni/JPMCHASE@JPMCHASE
Subject: Re: Susan Pinsky GID# 474407

Hi Barbara- I wanted to run something by you.  I spoke to Susan this morning ad my only concern is ordering this desk today, getting it a month from now and her using it for a total of 3 weeks (her last day is June 30th).  Not only are we spending money on it, but the Water Street Branch will have no use for this desk afterwards and they will not have the space to leave it there so we will have to discard it.  They will need to throw it away to make room for a banker (with a regular desk).

I just spoke to Sales Manager there and asked if Susan can stand at the Customer Service desk in the back of the branch there is no traffic) and she said it may work.  I ran this by Susan this morning and she thought it would be a good idea as well.  I don't know what a standing desks looks like but the way Susan described it to me, it is no different than the customer service desk.

Let me know if this is okay or is it mandatory that I order this desk?
Cindy Chan



Cindy Chan                                                              04/05/2005 09:41 AM

To:       Dee Lakhani/JPMCHASE@JPMCHASE
cc:       Barbara Zimmer/JPMCHASE@JPMCHASE, Susan X Pinsky/JPMCHASE@JPMCHASE
Subject:  Re: Susan Pinsky GID# 474407

Dee,
You can order the desk through ePurchase which is accessible through the JPMC eSource homepage.  If the desk is a non-catalog item after searching, you will need to put in a request for a "non catalog item" also from the ePurchase website.

Regards,
Cindy

Dee Lakhani

**Dee Lakhani**
04/04/2005 08:42 PM

To: Cindy Chan/JPMCHASE@JPMCHASE
cc: Susan X Pinsky/JPMCHASE@JPMCHASE, Barbara Zimmer/JPMCHASE@JPMCHASE
Subject: Re: Susan Pinsky GID# 474407

Please tell me how to go about this?  Where and how..?

Cindy Chan



Cindy Chan                                                              04/04/2005 04:22 PM



To:      Dee Lakhani/JPMCHASE@JPMCHASE
cc:      Susan X Pinsky/JPMCHASE@JPMCHASE, Barbara Zimmer/JPMCHASE@JPMCHASE
Subject:  Susan Pinsky  GID# 474407

The Medical Dept. has received medical documentation for the following work accommodation for Susan Pinsky:

- Ms. Pinsky would benefit from the use of a "standing desk"

Dee, please make sure that the proper equipment is ordered for Susan.


Thank you,
Cindy Chan, RN
Health Services
1 CMP/ 27
(212) 552-5881

# EXHIBIT 18

 **Cindy L Chan**
04/08/2005 04:15 PM

To: Dee Lakhani/JPMCHASE@JPMCHASE
cc: Barbara Zimmer/JPMCHASE@JPMCHASE, Gareth
    Hoeni/JPMCHASE@JPMCHASE
Subject: Re: Susan Pinsky GID# 474407

HI Dee,
You do not need to order the desk as long as she can be accommodated by standing at the Customer Service Desk until she leaves her employment with JPMC on June 30th.

Regards,
Cindy


Dee Lakhani


**Dee Lakhani**
04/08/2005 03:57 PM

To: Cindy L Chan/JPMCHASE@JPMCHASE
cc: Barbara Zimmer/JPMCHASE@JPMCHASE, Gareth
    Hoeni/JPMCHASE@JPMCHASE
Subject: Re: Susan Pinsky GID# 474407

Hi Barbara- I wanted to run something by you. I spoke to Susan this morning ad my only concern is ordering this desk today, getting it a month from now and her using it for a total of 3 weeks (her last day is June 30th). Not only are we spending money on it, but the Water Street Branch will have no use for this desk afterwards and they will not have the space to leave it there so we will have to discard it. They will need to throw it away to make room for a banker (with a regular desk).

I just spoke to Sales Manager there and asked if Susan can stand at the Customer Service desk in the back of the branch there is no traffic) and she said it may work. I ran this by Susan this morning and she thought it would be a good idea as well. I don't know what a standing desks looks like but the way Susan described it to me, it is no different than the customer service desk.

Let me know if this is okay or is it mandatory that I order this desk?
Cindy Chan



Cindy Chan                                                04/05/2005 09:41 AM

To:      Dee Lakhani/JPMCHASE@JPMCHASE
cc:      Barbara Zimmer/JPMCHASE@JPMCHASE, Susan X Pinsky/JPMCHASE@JPMCHASE
Subject: Re: Susan Pinsky GID# 474407

Dee,
You can order the desk through ePurchase which is accessible through the JPMC eSource homepage. If the desk is a non-catalog item after searching, you will need to put in a request for a "non catalog item" also from the ePurchase website.

Regards,
Cindy


Dee Lakhani

Dee Lakhani
04/04/2005 08:42 PM

To:    Cindy Chan/JPMCHASE@JPMCHASE
cc:    Susan X Pinsky/JPMCHASE@JPMCHASE, Barbara
Zimmer/JPMCHASE@JPMCHASE
Subject:    Re: Susan Pinsky GID# 474407

Please tell me how to go about this?  Where and how..?

Cindy Chan



To:    Dee Lakhani/JPMCHASE@JPMCHASE
cc:    Susan X Pinsky/JPMCHASE@JPMCHASE, Barbara Zimmer/JPMCHASE@JPMCHASE
Subject:  Susan Pinsky  GID# 474407

The Medical Dept. has received medical documentation for the following work accommodation for Susan
Pinsky:

- Ms. Pinsky would benefit from the use of a "standing desk"

Dee, please make sure that the proper equipment is ordered for Susan.


Thank you,
Cindy Chan, RN
Health Services
1 CMP/ 27
(212) 552-5881

# EXHIBIT 19

**Susan X Pinsky**

05/31/2005 03:51 PM

To:  Dee Lakhani/JPMCHASE@JPMCHASE
cc:  Barbara Zimmer/JPMCHASE@JPMCHASE
Subject:  standing desk

Hi,
my back is killing me any word on my standing desk?

# EXHIBIT 20



**Dee Lakhani**
06/01/2005 01:48 PM

To: Susan X Pinsky/JPMCHASE@JPMCHASE
cc: Barbara Zimmer/JPMCHASE@JPMCHASE
Subject: Re: standing desk

I was under the impression that you were standing at the CS service desk in the back which is a standing
desk and that you did not want to order one b/c you can stand at that desk.  Dolly and I spoke about this
and then I called you and you decided that it would be the best way to go.  Am I missing something?
From: Susan X Pinsky on 05/31/2005 03:51 PM

From:      Susan X Pinsky on 05/31/2005 03:51 PM


To:        Dee Lakhani/JPMCHASE@JPMCHASE
cc:        Barbara Zimmer/JPMCHASE@JPMCHASE
Subject:   standing desk

Hi,
my back is killing me any word on my standing desk?

**EXHIBIT 21**

**Susan X Pinsky**

06/01/2005 03:08 PM

To: Dee Lakhani/JPMCHASE@JPMCHASE
cc: Barbara Zimmer/JPMCHASE@JPMCHASE
Subject: Re: standing desk

yes, you are missing quite a lot. I requested the standing desk originally in January. Then since nothing
was done about it I called HR and they had me put in a second request for it.  Dolly came up with the idea
of using the service desk a month after the second time the desk was requested. Although the service
desk is a lot better than the regular desk, it lacks the ability to provide sufficesnt support when I actually do
sit. All this time, I was under the impression that the desk had been ordered, and I was using the service
desk until it arrived.
Dee Lakhani



**Dee Lakhani**

06/01/2005 01:48 PM

To: Susan X Pinsky/JPMCHASE@JPMCHASE
cc: Barbara Zimmer/JPMCHASE@JPMCHASE
Subject: Re: standing desk

I was under the impression that you were standing at the CS service desk in the back which is a standing
desk and that you did not want to order one b/c you can stand at that desk.  Dolly and I spoke about this
and then I called you and you decided that it would be the best way to go.  Am I missing something?
From: Susan X Pinsky on 05/31/2005 03:51 PM

From:     Susan X Pinsky on 05/31/2005 03:51 PM

## **\*\*ARCHIVED\*\***

To:        Dee Lakhani/JPMCHASE@JPMCHASE
cc:        Barbara Zimmer/JPMCHASE@JPMCHASE
Subject:  standing desk

Hi,
my back is killing me any word on my standing desk?

# EXHIBIT 22

 **Barbara Zimmer**
06/02/2005 02:24 PM

To: Susan X Pinsky/JPMCHASE@JPMCHASE
cc: Dee Lakhani/JPMCHASE@JPMCHASE
Subject: Re: standing desk

Susan,

From what I recall, Chase Medical approved of the service desk as a reasonable accommodation for your needs. They would have based their decision on the information provided from your physician as to what you required. Since your position is being eliminated, and we were looking for a short term solution, this was deemed an appropriate way to meet your accommodation. There was not a desk ordered for you.

Barbara Zimmer
HR Business Partner
Home Equity
(602) 221-4740 Office
(602) 221-4716 Fax
Susan X Pinsky

**Susan X Pinsky**
06/01/2005 12:08 PM

To: Dee Lakhani/JPMCHASE@JPMCHASE
cc: Barbara Zimmer/JPMCHASE@JPMCHASE
Subject: Re: standing desk

yes, you are missing quite a lot. I requested the standing desk originally in January. Then since nothing was done about it I called HR and they had me put in a second request for it. Dolly came up with the idea of using the service desk a month after the second time the desk was requested. Although the service desk is a lot better than the regular desk, it lacks the ability to provide sufficesnt support when I actually do sit. All this time, I was under the impression that the desk had been ordered, and I was using the service desk until it arrived.
Dee Lakhani

 **Dee Lakhani**
06/01/2005 01:48 PM

To: Susan X Pinsky/JPMCHASE@JPMCHASE
cc: Barbara Zimmer/JPMCHASE@JPMCHASE
Subject: Re: standing desk

I was under the impression that you were standing at the CS service desk in the back which is a standing desk and that you did not want to order one b/c you can stand at that desk. Dolly and I spoke about this and then I called you and you decided that it would be the best way to go. Am I missing something?
From: Susan X Pinsky on 05/31/2005 03:51 PM

From:      Susan X Pinsky on 05/31/2005 03:51 PM

To:       Dee Lakhani/JPMCHASE@JPMCHASE
cc:       Barbara Zimmer/JPMCHASE@JPMCHASE
Subject:  standing desk

Hi,
my back is killing me any word on my standing desk?

# EXHIBIT 23

# SEVERANCE PAY PLAN

# OF

# JPMORGAN CHASE & CO.

As Amended through June 30, 2005
Reflects
Amendments as of April 1, 2004 Resulting from Bank One Corporation Merger

264648-v1

# SEVERANCE PAY PLAN

# OF JPMORGAN CHASE & CO.

## TABLE OF CONTENTS

Preface ......................................................... iii

Article I        Purpose ......................................... 1

Article II       Definitions ..................................... 1

Article III      Eligibility ....................................... 6

Article IV       Benefits ........................................ 8

Article V        Participating Employers ..................... 11

Article VI       Plan Administration .......................... 12

Article VII      Miscellaneous ................................ 13

## PREFACE

This Severance Pay Plan of JPMorgan Chase & Co. is intended to be a welfare plan as defined in Section 3(1) of the Employee Retirement Income Security Act of 1974 ("ERISA").

## PLAN

The Employers adopting this Plan have voluntarily determined to offer assistance to certain of their Employees whose employment involuntarily terminates as a result of the events specified in this Plan. (Unless an event is described in this Plan, no benefits are provided to an Employee.) The severance payment provided hereunder is intended to provide financial assistance to such Employees. Such payment does not represent consideration for past services rendered.

Outplacement assistance under the Plan is provided to help Employees find other employment. Such outplacement assistance is intended to complement the independent job search efforts of affected Employees. In all events, the responsibility for seeking, identifying and locating other employment remains with the Employee.

This Plan can be amended, discontinued or terminated, in whole or in part, without notice, and benefits hereunder, whether in an individual case or more generally, may be altered, reduced or eliminated without notice. The benefits provided hereunder are not vested nor do they represent a contractual undertaking by participating Employers. Because there is no entitlement to benefits under this Plan, individual determinations may be made as may be deemed to be in the best interest of an Employer.

As of the Effective Date, this Plan supersedes all statements, plans or policies with respect to providing benefits to employees, whose jobs have been eliminated, including any and all statements, plans or policies with respect to providing benefits because of any of the events described in the Plan. This Plan may be terminated or amended or benefits curtailed at anytime.

With respect to Notifications dated after June 30, 2005, this Plan is no longer effective. A new Severance Plan, effective July 1, 2005, applies to Notifications dated after June 30, 2005.

iii

# ARTICLE I
## PURPOSE

1.1    <u>No Right to Severance</u>. In amplification of the Preface, this Plan does not provide severance benefits to any terminated Employee as a matter of right.

1.2    <u>Discretionary</u>. The payment of a severance benefit to a terminated Employee is a matter solely within the discretion of the Employer; provided that severance benefits are never provided under this Plan or any formal or informal Plan of an Employer without a written Notification. Because of discretionary nature of this plan, any Employer reserves the right to provide different level of benefits, as well as eligibility criteria, for an individual employee or groups of employees or business units.

1.3    <u>Defines General Circumstances</u>. The purpose of this Plan is to define those circumstances under which the Employer may, in its discretion, grant severance benefits to an eligible Employee.

1.4    <u>Application to Bank One Employees</u>. This Plan has no application to those individuals who were employed by Bank One Corporation or its Subsidiaries immediately prior to Bank One Corporation's merger into JPMorgan Chase & Co. Such individuals will be subject to the Severance Plan of Bank One Corporation.

1.5    <u>Termination of Plan</u>. This Plan is no longer effective for Notifications dated after June 30, 2005. It has been superseded by a new Severance Plan applicable to all Employees of JPMorgan Chase, including former Bank One Employees.

# ARTICLE II
## DEFINITIONS

2.1.    Whenever used herein, unless the context otherwise indicates, the following terms shall have the meanings set forth below:

| | |
|---|---|
| Administrator: | The individual who holds the title of Director Corporate Human Resources of the Corporation or holds the successor position or title. |
| Base Salary: | An amount equal to (i) the per annum amount that a Participant is scheduled to receive from his Employer as salary or wages for services rendered (including shift differential, but excluding all bonuses, commissions, overtime, and other forms of special or incentive remuneration) immediately preceding the Date of Termination of |

1

Employment divided by (ii) 52. (In the case of an individual who does not receive salary or wages and receives instead draw, commissions in excess of draw or production overrides, the per annum amount shall be such amount, including zero, as the Employer may prescribe from time to time.)

| | |
|---|---|
| Benefit Period: | The length of time certain welfare benefits may be maintained by a Participant as described in Section 4.2. |
| Chase: | The Chase Manhattan Corporation after its merger with Chemical Banking Corporation and prior its merger with J.P. Morgan & Co. Incorporated. |
| Corporation: | JPMorgan Chase & Co., a corporation incorporated under the laws of the State of Delaware. |
| Date of Notification: | The date set forth on notice described in Section 3.1. |
| Date of Termination of Employment: | Close of business of the last day for which an Employee received compensation for services rendered to an Employer as specified on the payroll records of the Employer. |
| Effective Date: | April 1, 2004 and as amended thereafter. |
| Employee: | Any individual who is (i) regularly scheduled to work at least 20 hours per week, (ii) on the United States payroll of an Employer and (iii) classified as a full-time or part-time salaried Employee of an Employer, in each case, in accordance with the Employer's classifications then in effect; provided that, for purposes of this Plan, an individual shall not be considered an Employee if such individual is on a Leave of Absence on the Date of Notification. By way of further clarification, a person who (A) serves only as a director of an Employer, (B) agrees to render services as or to an independent contractor, (C) is considered by the Employer to be rendering services as or to an independent contractor or (D) whose compensation is paid solely in the form of a commission or fee under contract, is not considered employed by an Employer. · |

| | |
|---|---|
| Employer: | The Corporation or any Subsidiary of the Corporation which has adopted the Plan pursuant to Article IV hereof or any successor to the Corporation or to any such Subsidiary. Any reference to a particular Employee's Employer is intended to refer to the Employer which is or was the Employer of such Employee at the time in question. Any Employee employed by more than one Employer shall be considered to be an Employee of the Employer which is or was such Employee's principal employer at the time in question. |
| Heritage Chase: | The Chase Manhattan Corporation, a corporation incorporated under the laws of the State of Delaware, immediately prior to its merger with the Chemical Banking Corporation (a predecessor of the Corporation). |
| Heritage Morgan: | J.P. Morgan & Co. Incorporated, a corporation incorporated under the laws of the State of Delaware, immediately prior to its merger with The Chase Manhattan Corporation (a predecessor of the Corporation). |
| Leave of Absence: | A leave of absence from employment (whether or not paid) with the consent of an Employer. |
| MHC: | Manufacturers Hanover Corporation. |
| Notification: | The written notification described in Section 3.1. |
| Participant: | An Employee who is eligible to receive benefits under the Plan in accordance with Section 3.1 following the Date of Termination of Employment; provided that any Employee who has a contract or is covered by a program, in either case providing severance benefits, shall not be a Participant under this Plan and shall not receive benefits hereunder, irrespective of whether he or she receives benefits under such program or contract; provided, further, that an Employee who is described in Section 409A (a)(2)(B) of the Internal Revenue Code shall not be eligible for benefits under this Plan. |
| Plan: | The Severance Pay Plan of the Corporation, as set forth in this document and as it may be amended from time to time. |
| Subsidiary: | Any corporation or other business entity (other than the Corporation) that is:  (a) included in a controlled group of corporations within which the Corporation is included, as provided in Section 414(b) of the |

Internal Revenue Code of 1986, as amended; or (b) a trade or business under common control with the Corporation, as provided in Section 414(c) of such Code.

Year of Service:    A twelve-month uninterrupted continuous period of active employment as an Employee of an Employer, provided that:

    (i)    a period of uninterrupted continuous active employment of an individual shall only include the length of employment with his or her latest Employer at the Date of Termination of Employment except as provided below;

    (ii)    in amplification of the term "latest Employer",

        (a)    if an individual had been employed by MHC or its Subsidiaries and had also been employed by Chemical Banking Corporation or its Subsidiaries prior to Chemical Banking Corporation's merger with MHC, Years of Service shall include only service with the entity employing the individual immediately prior to the merger plus continuing service with the Corporation and its Subsidiaries thereafter;

        (b)    if an individual had been employed by Heritage Chase or its Subsidiaries and had also been employed by Chemical Banking Corporation or its Subsidiaries (or by MHC) prior to the Chemical Banking Corporation's merger with Heritage Chase, then Years of Service shall include only service with the entity employing the individual immediately prior to the merger, plus continuing service with the Corporation and its Subsidiaries thereafter;

        (c)    if an individual had been employed by Heritage Morgan or its Subsidiaries and had also been employed by The Chase Manhattan Corporation or its Subsidiaries prior to The Chase Manhattan Corporation's merger with Heritage Morgan, then Years of Service shall include only service with the entity employing the individual immediately prior to

4

the merger, plus continuing service with the Corporation and its Subsidiaries thereafter;

(iii) a period of uninterrupted continuous active employment of an individual shall include a period of active employment with a prior Employer if the Employee, at the request of such prior Employer transferred, to the employ of his/her current Employer without interruption in service;

(iv) an Employee's period of employment will not be deemed interrupted if the Employee is re-employed by the same Employer within six months of his Date of Termination of Employment; and

(v) an Employee's period of employment may include, in the sole and absolute discretion of the Administrator, a period of service with an entity unrelated to the Corporation in the case of immediate employment following the acquisition of such unrelated entity or other corporate transaction with such entity.

By way of further clarification, for purposes of the Exhibits attached hereto, Years of Service shall be determined as of the Date of Termination.

2.2.    Whenever used herein, words in the masculine form shall be deemed to refer to females as well as to males.

## ARTICLE III
### ELIGIBILITY

3.1.    <u>Participation</u>.  Subject to Article I and Sections 3.2 and 3.3, on and after the Effective Date, an Employee who is not on a Leave of Absence may be a Participant if:

(i)    such individual's employment is involuntarily terminated with an Employer because of:

(a)    a relocation of the Employee's place of work to a location that is more than a reasonable commuting distance (as determined by the Administrator in his sole discretion) from such individual's existing place of work; or

(b)    a sale or closing of all or part of the business unit in which the Employee is employed; or

5

(c)   an elimination or re-assignment of the job position or functions held or performed by the Employee; and

(ii)   an Employee described in (i) above receives a specific written notification from the Employer addressed to the Employee providing that the Employee is eligible for benefits under this Plan as a result of the termination of employment and the amount of such benefits ("Notification"), and

(iii)   notwithstanding (i) and (ii) above, the Administrator will condition the effectiveness of the Notification and the payment of severance on the execution of a release ( in such form as the Administrator may designate) and such other agreements as the Administrator may specify including, but not limited to, non-solicitation of customers and employees.

By way of amplification of the foregoing, no benefits under this Plan or any other formal or informal Plan are payable with respect to any termination of employment (i) absent receipt of the Notification by the Participant or (ii) following receipt of the Notification the execution and return of the release with in the period specified by the Administrator. Notwithstanding receipt of the Notification and execution of a release, the Employee shall not be a Participant and receive benefits hereunder unless such individual shall have complied with any reasonable request of his/her Employer, including, but not limited to, cooperating with the Employer through out the Benefit Period. If an individual fails to comply with any such reasonable request, such individual's employment (if not previously terminated) shall terminate and no benefits shall be provided hereunder (or in the case of a former Employee, benefits shall cease).

3.2   Ineligible for Benefits. An Employee shall not be a Participant or eligible for benefits hereunder if the Administrator (or his or her delegates), in his/her sole discretion, determines that such Employee (i) has been offered another position or reassigned to perform other functions (whether or not such position or reassignment is accepted or comparable to the current position) by any Employer, Subsidiary, affiliate, any purchaser of a business unit or any other potential employer with whom an Employer has made arrangements for the employment of the Employee, (ii) has been terminated for misconduct, performance reasons (including attendance or lateness) or any other reason unrelated to the events described in Section 3.1, (iii) has not received a written Notification or (iv) has not executed and returned the release and/or agreement provided by the Administrator within the time period set forth in the Notification. By way of

6

clarification, it is not the intent of the Plan (notwithstanding Section 3.3) to provide benefits to an Employee who has agreed to accept a position or reassignment more than a reasonable commuting distance from such individual's current location or who continues employment with a Subsidiary, Employer or purchaser of a business unit or any other potential employer with whom an Employer has made arrangements for the employment of the Employee.

3.3    Redeployment. An Employee shall not be a Participant if such individual's position is eliminated by action of his Employer and if, prior to his/her Date of Termination of Employment, such individual obtains continued employment with an Employer. However, if during the ninety-day period following commencement of such employment, the Employer or Employee determines that it is desirable for the Employee's employment to terminate and his/her employment so terminates within such period, then the Employer may grant severance benefits hereunder in its discretion; provided that the additional period of employment shall not count as service for purpose of severance benefits hereunder.

<div align="center">

ARTICLE IV

BENEFITS

</div>

4.1.    Amount of Severance. (a) In lieu of any wages, salary, bonus, other compensation not otherwise earned and payable (including any amounts under any annual incentive compensation program of the Corporation) or any other severance program of the Corporation or an Employer, effective for Notifications dated on or April 1, 2004, a Participant shall receive, following the Date of Termination of Employment, severance equal to the number of weeks of a Participant's Base Salary, as set forth on the Exhibit applicable to such individual, opposite such individual's Years of Service. (The Administrator has the authority in his/her sole and absolute discretion to determine the Exhibit applicable to an Employee and such determination shall be final and conclusive on all parties.) Such severance shall be payable in equal semi-monthly installments following the Date of Termination of Employment.

<div align="center">

7

</div>

(b)     Business Unit Exception.     Employers, with the consent of the Administrator, may provide higher or lower levels of benefits than those set forth in Exhibits I and II for particular Employees of various business units. With respect to the Bank One Corporation merger and resulting actions that have or will result in a geographic relocation of certain business functions after March 31, 2004, as well as the closing of certain credit card centers, Exhibit III sets forth the levels of benefits that may be provided and those Employees who are eligible for such benefits.

(c)     Outplacement. Participants receiving benefits hereunder may receive such outplacement services as the Employer shall determine.

(d)     Termination of Employment For Salaried Part-time.   Severance for all part-time salaried employees shall be based on their Base Salary in effect at the Date of Termination of Employment.

4.2.     Medical and Other Welfare Benefits.   A Participant may elect to continue to maintain medical and/or dental coverage from his or her Employer, as well as other welfare benefits as may be specified from time to time, at the active employee rate for a number of weeks equal to the number of weeks of Base Salary payable as severance under Section 4.1(a) ("Benefit Period"); provided that such coverages will cease if a Participant requests a lump sum of the remaining installments of severance (lump sums are not permitted with respect to Notifications dated after January 1, 2005) or fails to pay for the cost of coverage; provided, further, that if the Participant had any coverages, subject to COBRA, as of the date the Benefit Period ends, a Participant may continue such coverages for the full COBRA period.   In the event that a Participant on termination of employment qualifies for retiree medical coverage and continues medical coverage, such Participant for the Benefit Period shall pay for such medical coverage at a cost no greater than that of a similarly situated Participant who has elected similar coverage.

4.3     Employer Paid Group Term. For the Benefit Period, the Employer will provide a Participant with Employer paid group-term life insurance on such individual's life equal to individual's actual Employer paid group term life insurance coverage on the Date of Termination of Employment; provided that if such Participant qualifies for retiree life insurance on the Date of Termination of Employment, any reduction in the amount of coverage shall commence on the day following the expiration of the Benefit Period; provided further that if a Participant requests a lump sum payment of severance or of any remaining severance installments (lump sums are not permitted

8

with respect to Notifications dated after January 1, 2005), such Employer paid group-term life insurance shall cease.

    4.4    <u>Loss of Benefits</u>.  No benefits shall be provided (or benefits shall cease) if the Participant:

        (i)    is found by such individual's Employer at any time to have engaged in misconduct, including an act or acts of willful misfeasance or nonfeasance of his duties; or

        (ii)    fails to perform any services requested by such individual's Employer between the Date of Notification and the Date of Termination of Employment; or

        (iii)    demonstrates a deterioration in performance between the Date of Notification and the Date of Termination of Employment which warrants termination of his employment; or

        (iv)    is offered another position or is reassigned to perform other functions, which position or reassignment is determined by the Administrator to be within a reasonable commuting distance (whether or not such new position or functions are with an Employer) or refuses to interview for another position with the Employer, a Subsidiary or affiliate, purchaser of a business unit, or any other potential employer with whom an Employer has made arrangements for the potential employment of the Employee; or

        (v)    subject to Section 3.3, voluntarily terminates employment with Employer for any reason, including, but not limited to, a change in bonus, salary, incentive compensation, title or job functions; or

        (vi)    fails to cooperate with reasonable requests of Employer for assistance during the Benefit Period; or

        (vii)    engages in conduct during the Benefit Period detrimental to his/her Employer.

    4.5    <u>Offsets</u>.  Any benefits hereunder may be reduced by any amounts owed to an Employer by the Participant (including, but not limited to, overpayments of compensation or benefits or salary or other advances) and may be reduced in the discretion of the Administrator by

any amounts previously provided by the Corporation and its Subsidiaries (or any predecessor Employer) duplicative of benefits hereunder and any and all withholdings required by law or authorized by the Participant.

4.6     Allocations.  Payments of benefits under this Plan shall be made by the Employer who last employed the Participant.  In case such benefits are payable with respect to a Participant whose service included employment with more than one Employer, the Administrator in his or her sole discretion shall determine any amounts to be reimbursed by the prior Employer to the Employer paying benefits hereunder.

## ARTICLE V

## PARTICIPATING EMPLOYERS

This Plan may be adopted by any Subsidiary by written act of its Board of Directors or Human Resources Executive and approval of the Administrator.  Upon such adoption, the Subsidiary shall become an Employer hereunder and the provisions of the Plan shall be fully applicable to all Employees of that Subsidiary or to such classes of Employees as the Subsidiary shall designate as eligible for benefits hereunder.  Further, any Employer may cease to be an Employer as defined in the Plan by providing the Administrator with written notice 60 days prior to the date that participation shall cease.

## ARTICLE VI

## PLAN ADMINISTRATION

6.1     Administrator.  The Plan shall be administered by the Administrator on behalf of all Employers.  The Administrator shall have all powers necessary to administer the Plan.  The Administrator or his delegates may, from time to time, establish rules for administration of the Plan and shall have sole responsibility and complete discretion to interpret all terms and provisions of the Plan and to decide any matters in connection with the Plan including, but not limited to, whether an (A) individual (i) qualifies to participate, (ii) is eligible or continues to be eligible for benefits, and/or (iii) has refused an offer of employment and (B) the calculation of the amount and type of benefits to which such individual (including the determination of which Exhibit is applicable to the individual) is entitled hereunder.  The Administrator may delegate all or part of his/her responsibilities hereunder to others.  The Administrator or his/her delegates are empowered to make case by case or specific group by group determinations and interpretations.  The Administrator or

his delegates may grant benefits in such circumstances in which they may deem appropriate which act of discretion shall not be deemed precedential for future grants of benefits or denial. To the extent permitted by law, interpretations and determinations of the Administrator or his delegates shall be final and conclusive.

6.2.    Claims and Appeals.    If an individual does not receive benefits hereunder, such individual may make such claim by writing to his or her Employee Relations Representative within six months after the events giving rise to the claim arose. Such claim shall (i) be in writing, (ii) include the name and address of the individual, and (iii) include a statement of the facts and reason that the individual believes that the claim should be considered. A written decision shall be provided to the individual within 90 days after the claim is received; provided that it may be extended for an additional period in conformity with regulations issued under ERISA. If such claim is denied, an appeal, including all information set forth above, may be made to the Administrator or his/her delegate within 60 days of the denial. A written decision shall be provided to the individual within 60 days after the appeal is received; provided that such period may be extended for an additional period in conformity with regulations issued under ERISA.

6.3    Fiduciary.    The Administrator or his/her delegates with respect to the duties set forth in Articles III, IV and VI and any individual responding to an appeal shall be deemed a fiduciary under ERISA.

<div align="center">

**ARTICLE VII**

**MISCELLANEOUS**

</div>

7.1.    Amendments, Termination.    The Corporation reserves the right to amend, discontinue or terminate the Plan in whole or part, without notice, on behalf of itself and any Employer at any time in writing by act of the Administrator, and benefits hereunder, whether in an individual case or more generally, may be altered, reduced or eliminated by act of the Administrator, and without notice or regard to the effect such action would have on any Participant.

7.2.    Supersede.    This Plan supersedes all statements, plans or policies with respect to providing separation benefits to Participants whose jobs have been eliminated and does not provide retroactive benefits.

7.3.    No Rights of Employment.    This Plan does not constitute a contract of employment or impose on any Employer (or potential employer) any obligation to retain any Employee or Participant as an employee, to change the status of an Employee's or a Participant's employment, or to change the policies of any Employer regarding termination of employment. The benefits

<div align="center">11</div>

provided hereunder are not vested nor do they represent a contractual undertaking by participating Employers.

7.4     <u>Not Assignable</u>.    No right to receive benefits hereunder shall be transferable or assignable.  Any attempt to assign or transfer benefits shall be void and of no force or effect.

7.5.    <u>New York Law</u>.    The validity, interpretation, construction and performance of the Plan shall in all respects be governed by the laws of the State of New York.

12

## Exhibit I

Effective For Involuntary Terminations Of Employment
Pursuant to Notifications dated on or after April 1, 2004

Subject to the other terms and conditions of this Plan, this Exhibit 1 shall only apply to Participants whose annual Base Salary is less than $150,000 as of the Date of Notification. By way of further amplification of the foregoing, no severance under this Exhibit 1 shall be paid to:

- Individuals who have contracts or who are covered under another program, in either case providing for severance benefits (whether or not benefits are actually received under such program or contracts).
- Individuals whose severance would be calculated under Exhibit II or III (whether or not benefits are actually received).

Severance under this Exhibit is conditioned on receipt of a release in such form as the Administrator shall specify.

| Years of Continuous Service | Weeks of Base Salary As Severance |
|---|---|
| 0-2 | 4 |
| 3 | 7 |
| 4 | 8 |
| 5 | 10 |
| 6 | 12 |
| 7 | 14 |
| 8 | 16 |
| 9 | 19 |
| 10 | 22 |
| 11 | 25 |
| 12 | 28 |
| 13 | 31 |
| 14 | 34 |
| 15 | 37 |
| 16 | 40 |
| 17 | 43 |
| 18 | 46 |
| 19 | 49 |
| 20 | 52 |
| 21 | 54 |
| 22 | 56 |
| 23 | 58 |
| 24 | 59 |
| 25 | 60 |
| 26 | 61 |
| 27 | 62 |
| 28 | 63 |
| 29 | 64 |
| 30 or more | 65 |

(a)    Years of Service are determined as of the Date of Termination of Employment.

(b)    A partial Year of Service of at least six months, determined as of the Date of Termination of Employment, shall be deemed one Year of Service solely for purpose of Exhibit I.

Exhibit II

Effective For Involuntary Terminations Of Employment
Pursuant to Notifications dated on or after April 1, 2004

Subject to the other terms and conditions of this Plan, this Exhibit II shall apply only to Participants whose annual Base Salary is at $150,000 or more as of the Date of Notification. By way of amplification of the foregoing, no severance shall be paid under Exhibit II to:

- Individuals whose severance would be calculated under Exhibit I or III (whether or not benefits are actually received).
- Individuals who have contracts or who are covered under another program, in either case providing for severance benefits (whether or not benefits are actually received under such program or contracts).

Severance under this Exhibit is conditioned on receipt of a release in such form as the Administrator shall specify.

| Years of Continuous Service | Weeks of Base Salary As Severance |
|---|---|
| 0-5 | 16 |
| 6 | 18 |
| 7 | 21 |
| 8 | 24 |
| 9 | 27 |
| 10 | 30 |
| 11 | 33 |
| 12 | 36 |
| 13 | 39 |
| 14 | 42 |
| 15 | 45 |
| 16 | 48 |
| 17 | 49 |
| 18 | 50 |
| 19 | 51 |
| 20 | 52 |
| 21 | 54 |
| 22 | 56 |
| 23 | 58 |
| 24 | 59 |
| 25 | 60 |
| 26 | 61 |
| 27 | 62 |
| 28 | 63 |
| 29 | 64 |
| 30 or more | 65 |

iii

(a)    Years of Service are determined as of the Date of Termination of Employment.

(b)    A partial Year of Service of at least six months, determined as of the Date of Termination of Employment, shall be deemed one Year of Service solely for purpose of Exhibit II.

Exhibit III
Business Unit Exception
With Respect to Bank One Corporation Merger

As provided in Section 4.1(b), this Exhibit defines those circumstances in which Eligible Employees of certain business units may receive the Enhanced Severance Benefits set forth below.

**Business Units**
Business units subject to this Exhibit are

- specified business units of the Credit Card Division that are relocated or eliminated (including the closing of a Credit Card Center) because the Division is headquartered in Delaware;
- specified business units of the Retail Banking Division that are relocated or eliminated because the Division is headquartered in Chicago;
- specified business units of the Middle Market Division that are relocated or eliminated because the Division is headquartered in Chicago, and
- specified business units of the Investment Bank that are relocated or eliminated because the Division is headquartered in New York.

The Administrator (or his designee), in his sole and absolute discretion, shall determine and specify the business units of the above Divisions that are subject to this Exhibit, and such determination shall be final and conclusive on all parties.

**Definition**
An Eligible Employees is an Employee

- employed on or before March 31, 2004 by one of the business units that the Administrator has determined to be the subject of this Exhibit;
- whose employment terminates with an Employer in such a manner, so that he or she would be a Participant as defined in Section 3.1 of this Plan;
- but only if the job elimination or other termination of such Employee is determined by the Administrator (or his designee), in his sole and absolute discretion, to be the immediate and direct result of the business unit's relocation or elimination (including the closing of a Credit Card Center) as a result of a geographic relocation of the business function on or after March 31, 2004;
  - in the case of an Eligible Employee who is employed by a Credit Card Center, such individual must be employed as of the date that the center is closed, unless the Administrator specifically determines that an earlier date shall be used;
- whose employment terminates on or before January 31, 2006, and
- whose Notification specifically provides for the Enhanced Severance Benefits set forth below, and who in fact receives such a Notification

The Enhanced Severance Benefits are not payable unless each of the above conditions is satisfied. By way of further clarification, as among Employees employed by the specified business units, it is expected that the Administrator will determine that certain job eliminations are not the result of a geographic relocation of the business function; and accordingly such Employees are only entitled to the benefits, as applicable, set forth on Exhibits I and II.

Additionally, the Administrator in his sole and absolute discretion may determine that an Employee in a staff position supporting such business units on a substantially full-time basis would be an Eligible Employee.

## Enhanced Severance Benefits

Subject to the other terms and conditions of this Plan and this Exhibit, Eligible Employees shall receive Enhanced Severance Benefits based upon the following schedules except that no benefits under this Exhibit shall be paid to:

- Individual who have contracts providing for severance benefits or who are subject to the Executive Severance Program whether or not they receive benefits there under.
- Individuals whose severance would be calculated under Exhibit I or II (whether or not benefits are actually received).

| Non-Managing Directors/Senior Vice President Schedule | | Managing Directors/Senior Vice President Schedule | |
|---|---|---|---|
| Years of Continuous Service | Weeks of Base Salary | Years of Continuous Service | Weeks of Base Salary |
| 0-2 | 8 | 0-17 | 52 |
| 3 | 9 | 18 | 54 |
| 4 | 12 | 19 | 57 |
| 5 | 15 | 20 | 60 |
| 6 | 18 | 21 | 63 |
| 7 | 21 | 22 | 66 |
| 8 | 24 | 23 | 69 |
| 9 | 27 | 24 | 72 |
| 10 | 30 | 25 | 104 |
| 11 | 33 | | |
| 12 | 36 | | |
| 13 | 39 | | |
| 14 | 42 | | |
| 15 | 45 | | |
| 16 | 48 | | |
| 17 | 51 | | |
| 18 | 54 | | |
| 19 | 57 | | |
| 20 | 60 | | |
| 21 | 63 | | |
| 22 | 66 | | |
| 23 | 69 | | |
| 24 | 72 | | |
| 25 | 104 | | |

(a)    Years of Service are determined as of the Date of Termination of Employment.

vi

(b)    A partial Year of Service of at least six months, determined as of the Date of Termination of Employment, shall be deemed one Year of Service solely for purpose of Exhibit III.

EXHIBIT 24



May 20, 2005

Susan Pinsky
241 Third Ave
New York, NY 10003

Dear Susan,

Due to changes in our business, our staffing needs have changed. As a result, your position will be eliminated and your employment will be terminated on July 18, 2005. You will continue to receive salary and benefits during the 60-day notice period. Your notice period begins on May 20, 2005 and ends on July 18, 2005.

Please note that if you leave the firm before the 60-day notice period begins or fail to comply with requests for assistance before or during your severance period, you are not eligible for the severance benefits described in this letter or such benefits shall cease.

I want to assure you that we are prepared to provide you with a range of support services to help you manage this transition. The following summarizes those services.

**Severance Pay and Benefits**
If you do not secure another position within JPMorgan Chase by your termination date, you will receive 7 weeks of severance pay, provided that you execute the enclosed Release Agreement ("Release"). Please note that severance pay, career services and severance-related benefits (including continuation of subsidized medical and/or dental coverage, vision coverage, firm-provided basic life insurance and EAP, supplemental term life insurance, accidental death & dismemberment insurance, group legal services, and health care spending account benefits) are conditioned upon our receipt of the executed Release. Also conditioned upon our receipt of the executed Release is your eligibility for retiree benefits when such eligibility is determined by the event of position elimination. In addition, outstanding awards (both Restricted Stock/Units or Stock Options) under JPMorgan Chase's Long Term Incentive or Stock Option Plans granted on or after January 1, 2003 are also conditioned upon our receipt of the executed Release. Severance pay and severance-related benefits are provided based on the terms and conditions specified in the Severance Pay Plan. You have 45 calendar days within which to review and return the signed and notarized Release to the human resources business partner as noted in the Release. Enclosed are three copies of the Release; return two copies and retain one copy for your own records. If you have not provided us the signed Release by July 3, 2005, you will receive your regular pay for only the 60-day notice period.

*Semimonthly Severance Installments*
If you execute the Release, severance will be paid in semimonthly installments for the duration of your severance period. Applicable taxes and other legally required deductions will be withheld. During the period that you receive semimonthly severance installments, you are not an employee for any purpose. Severance payments are not considered eligible compensation under the 401(k) Savings Plan or Retirement Plan, and therefore any contributions, match, and pay credits will cease as of your termination date (July 18, 2005).

While you are receiving severance in semimonthly installments, you may continue participating in the medical and/or dental plans at subsidized employee rates on a pre-tax basis. You may also continue participating in the vision plan and the health care spending account on a pre-tax basis. If you are currently participating in the Supplemental Term Life Insurance Plan, the Accidental Death and Dismemberment

*This Notice is intended to serve as notice under applicable federal, state or local law regarding plant closings and job layoffs, including WARN (The Worker Adjustment and Retraining Notification Act), if applicable. If WARN applies, please be advised that this job elimination is expected to be permanent in nature and that no bumping rights exist.*

Plan and/or the Group Legal Services Plan, you may continue participating in these plans on an after-tax basis. Contributions for the above mentioned benefits plans will be deducted from your semimonthly severance payment. During this period, you are also eligible to use the Employee Assistance Program. In addition, firm-provided basic life insurance will continue during the period that you receive severance in semimonthly installments. You will receive additional information under separate cover regarding benefits for which you may be eligible. Please note that your participation in the Disability Leave Policy, the Long Term Disability Plan, the Child/Eldercare Spending Account, the Transit Account, and the Parking Account ends on your termination date.

When you stop receiving severance in semimonthly installments, you may, if you are eligible, continue your current medical, dental, and/or vision coverage and EAP coverage for 18 months by paying the COBRA rate which is 102% of the total cost for these benefits. You may also continue the Health Care Spending Account through the end of the plan year by making after-tax contributions.

*COBRA* – If you do not execute the Release, you may in most situations elect COBRA coverage, provided that you had medical, dental, and/or vision coverage immediately before your termination date. If you elect any coverage under COBRA, you must pay for the coverage at the COBRA rate, which is 102% of the total cost for those benefits. You may also continue the Health Care Spending Account through the end of the plan year by making after-tax contributions, otherwise, eligible expenses for reimbursement are those incurred through your termination date only. If you sign the Release and receive semimonthly severance payments, your eligibility for COBRA will begin on the first day of the month following the date your severance payments end.

**Note:** Please refer to the last page of this letter for the Summary of Eligibility for U.S. Retiree Benefits – Heritage JPMorgan Chase Employees and how the Release may affect your eligibility.

## EAP
You will be eligible for the counseling services provided by the Employee Assistance Program (EAP) for the period that you receive severance in semimonthly installments. New York City area employees may call EAP at 1-212-464-2685. Outside NYC and across the country, you may call 1-800-276-0760. If you have a hearing impairment, you may call the TDD number, 1-800-697-0353.

## Career Services
You will be provided assistance in making the transition to other employment provided you have executed the Release. You may begin using career services in advance of executing the Release and continue for a maximum of one year after your date of termination. However, if you do not execute the Release within 45 days, you may not continue using the service. The services will include one-to-one and group meetings with a career counselor who will assist you with skills assessment, resume preparation, job search strategies and training in interviewing techniques.

Assuming you meet other eligibility criteria, you may pursue job opportunities at JPMorgan Chase. In order to pursue job opportunities at JPMorgan Chase, you should create or update your profile in JobConnect at http://careers.jpmorganchase.com/jpmcdirect/default.asp. When updating your profile, be sure to include your GID number in the employee ID field and respond appropriately to all profile questions regarding the job elimination. Human Resources will support your efforts during this transition.

You may also be eligible to receive an Education and Training Grant provided you have executed the Release. Please call 1-212-623-1777 for information on career services.

## Other Pay
You will be paid for any accrued and unused vacation, as well as any floating holidays you earned but did not use. If you have used more vacation than you have accrued, an appropriate deduction will be taken from your final pay. Any other unused sources of paid time off are not paid out unless the laws in the state where you work require payment.

## 401(k) Savings Plan and Retirement Plan
If you participated in the 401(k) Savings Plan, you will receive information regarding your final distribution and/or deferral options from the 401(k) Savings Plan Call Center following your termination

date. If you have any questions regarding your account, please contact the 401(k) Savings Plan Call Center at 1-866-JPMC401K (1-866-576-2401). The TDD number for participants with a hearing impairment is 1-800-345-1833. A Retirement Plan Package will be sent to your home address within approximately two weeks of your termination date. Questions on this benefit should be referred to the *access*HR Contact Center.

## Broad-based Employee Stock Option Program Awards

If you were awarded options under JPMorgan Chase's broad-based employee stock option program, you will have the right to exercise outstanding Value Share options awarded prior to your termination date on the same terms and conditions as if you had continued working for JPMorgan Chase. Please contact Mellon Investor Services at 1-800-982-7089 for further information. Employees with a hearing impairment may call the TDD number, 1-800-231-5469.

## Long Term Incentive Plan Awards

### For LTIP Awards Granted On or After January 1, 2003

With respect to a job elimination, the terms and conditions of outstanding awards of Restricted Stock/Units or Stock Options under JPMorgan Chase's Long-Term Incentive or Stock Option Plans granted on or after January 1, 2003 require you to execute the enclosed Release. If you fail to do so, then those awards, if any, will be immediately forfeited on your termination of employment.

### For LTIP Awards Granted Before January 1, 2003

For awards granted before January 1, 2003 under such Plans, you are not required to execute the enclosed Release. Such awards will be treated in accordance with their terms and conditions applicable to a job elimination.

With respect to awards under the Long-Term Incentive Plan, including heritage-Morgan Stock Bonus or Stock Option awards, the terms and conditions for different award years and different heritage companies, vary, particularly relative to option expiration dates. (Only awards granted on or after January 1, 2003 require you to execute a release.) You should contact Executive Compensation early in your notice period to confirm the terms and conditions applicable to each grant, particularly option expiration dates. Additionally, if you have outstanding restricted stock/units that will vest as of your termination date, Executive Compensation will provide you with the Accelerated RS/U Vesting Brochure. You may contact Executive Compensation by e-mail -- internally via Lotus Notes at Executive Compensation/JPMChase and externally via the internet at Executive.Compensation@Chase.com. Please include your Global Identification Number (GID) in the e-mail message. LTIP options which are exercisable may be exercised by calling 1-212-270-8558 or 1-212-270-8121 and submitting exercise forms to the Options Unit located at 270 Park Avenue, 35th floor before Noon (New York time) of a business day. Please note that this information does not apply to grants made under the Value Sharing program.

## Deferred Compensation Program

If you are a participant in the Deferred Compensation Program, you will receive information from the Deferred Compensation Call Center after your termination. If you have questions regarding your account, please call the *access*HR Contact Center.

## Severance and Redeployment or Re-employment

If you secure another position with JPMorgan Chase before your termination date, you will still be eligible to receive severance pay if either you or the manager determines that the position is not suitable and you leave within 90 days of the placement.

If you secure a position with JPMorgan Chase after your termination date, but before the severance period ends, your semimonthly severance payments will stop. If either you or the manager determines that the new position is not suitable and you leave within 90 days of the placement, your semimonthly severance payments will resume and continue through the remainder of your severance period. Shortly following your termination date, you will receive the exit booklet, *As You Leave* or *As You Retire,* which contains important additional information regarding the disposition of your benefits. You may preview the booklet

*Summary of Eligibility for U.S. Retiree Benefits – Heritage JPMorgan Chase Employees*

### General Eligibility

Generally, to be eligible for JPMorgan Chase U.S. retiree benefits, including medical coverage, you must be at least age 55 and have 15 or more years of cumulative service of which the five years immediately prior to your termination of employment must have been continuous. You must have also participated in the applicable JPMorgan Chase benefit plan for active employees immediately before termination to participate in the corresponding plan in retirement. For example, you must have participated in the JPMorgan Chase Medical Plan immediately before termination to participate in the Retiree Medical Plan. In addition, certain alternative eligibility rules apply for employees affected by position elimination, as described below.

Please note that if you are a heritage Morgan employee, you must have been employed on January 31, 1989 (without incurring a break in service longer than one year since that date) to be eligible to receive *subsidized* retiree medical coverage. If you do not meet this criteria, you will have "access" to group retiree medical coverage through JPMorgan Chase if you've attained the applicable retirement eligibility criteria as of your termination date. In this case, you will pay the full cost of group retiree medical coverage, as determined by JPMorgan Chase in its sole discretion.

### Alternative Eligibility for Certain Heritage Morgan Employees

If you are a heritage Morgan employee and do not satisfy the general eligibility rules above, you may be eligible for retiree benefits, including subsidized retiree medical coverage, regardless of reason for termination, if:

- you were at least age 50 with age plus credited service under the heritage Morgan Retirement Plan equal to 70 or more on or before December 31, 2003, **and**
- you were employed on January 31, 1989 and have not incurred a break in service longer than one year since that date, **and**
- you and any eligible dependents must have participated in the JPMorgan Chase Medical Plan for five consecutive years immediately before termination (if your position is eliminated and you execute the Release, you and any eligible dependents are only required to have had medical coverage immediately before termination)

### Alternative Eligibility for Employees Receiving Severance

If you do not meet the general eligibility rules above, you may be eligible for retiree benefits if you terminate employment because of position elimination, you execute the Release, you participate in the corresponding benefit plan for active employees immediately before termination (for eligibility for that plan in retirement), and you meet the criteria below.

- you are at least age 50 as of your termination date, **and**
- you have at least 20 years of cumulative service as of your termination date

OR

- you are at least age 54 as of your termination date, **and**
- you have at least 15 years of cumulative service as of your termination date

### For More Information on Retiree Benefits

For more information on the retiree health and life insurance benefits offered if you meet the eligibility criteria outlined above, please refer to The 2005 Retiree Benefits Resource Guide, which is available on the Benefits home page of *access*HR on Company Home.

online under the Benefits section of *access*HR or you may receive an advance copy by calling the *access*HR Contact Center.

Susan, we are committed to helping you make this transition. If you have any questions about severance, the Release or the services outlined in this letter, please call Barbara Zimmer at (602) 221-4740. If you have other questions, you may call the *access*HR Contact Center at 1-877-JPMChase (1-877-576-2427). Individuals with a hearing impairment may call the TDD number, 1-800-719-9980.

I wish you every success in your future endeavors.

Sincerely yours,

Dee Lakhani

Enclosures:
Release (3)