# EXHIBIT 43



TSB Team

**Susan Pinsky,** *Chief Administration Officer*– Susan comes to us with over 10 years of corporate relationship management experience. Her background is in sales specializing in banking, lending and brokerage, financial planning and wealth management. Her expertise and her leadership skills have made her the perfect fit to help build the corporate structure of our company. She currently manages all of the city and state licensing, the company registrations and the financials. Susan earned a BA in Liberal Arts from Bernard Baruch College and was a licensed member of the NASD and a registered member of the SEC. She also held several licenses in real estate and insurance.
Email Susan

# EXHIBIT 44

TRI-STATE BIODIESEL LLC

SUBSCRIPTION AGREEMENT

This Subscription Agreement (this "Agreement") is made and entered into by and between Tri-State Biodiesel LLC, a Delaware limited liability company (the "Company"), and the undersigned purchaser (the "Purchaser") of the Securities (defined below) effective as of March 5, 2007.

WHEREAS, the Purchaser desires to subscribe for and purchase Class B Units of the Company for the Purchase Price (as defined below); and

WHEREAS, the Company desires to issue and sell to Purchaser Class B Units of the Company for the Purchase Price; and

NOW, THEREFORE, in consideration of the premises and the mutual obligations and covenants set forth herein, the parties hereto agree as follows:

A. Purchase of Securities.

1.  The Purchaser hereby subscribes for the number of Class B Units (the "Securities") of the Company set forth on Exhibit A hereto for the aggregate purchase price set forth on Exhibit A hereto (the "Purchase Price").

The closing of the purchase and sale of the Securities shall take place at the offices of the Company in New York, New York on date herein at 10:00 a.m. or at such other time and place as the Company shall designate in writing to Purchaser. At the closing, the Purchase Price shall be received by the Company from the Purchaser by cashier's check or wire transfer of immediately available funds and the Company shall deliver the Securities to the Purchaser.

2.  This subscription shall be deemed accepted by the Company once this Agreement has been executed by the Company and the Purchaser.

3.  The Purchaser hereunder understands, acknowledges and agrees that:

a.  This subscription is and shall be irrevocable, except that the Purchaser shall have no obligation hereunder in the event that this subscription is for any reason rejected.

b.  In reliance upon applicable exemptions, the Securities have not been registered under the Securities Act of 1933, as amended (the "Act"), and the rules and regulations thereunder or any state securities laws and the rules and regulations thereunder.

c.  No federal or state agency has made any finding or determination as to the fairness of this subscription for investment or any recommendation or endorsement of the Securities.

d.  Because the Securities have not been registered under the Act or applicable state securities laws, the economic risk of the investment must be borne indefinitely by the Purchaser and the Securities may not be sold, pledged or hypothecated or otherwise transferred unless subsequently registered under the Act and applicable state securities laws or an exemption from such registration is available.  Registration under the Act and applicable state securities laws is unlikely at any time in the future.

e.  No assignment, sale, pledge, hypothecation, transfer, exchange or other disposition, or offer thereof, of the Securities may be made if, in the opinion of counsel to the Company, such disposition or offer would require registration under the Act or would result in the violation of applicable federal or state securities laws.

B.  <u>Representations, Warranties and Agreements of the Purchaser</u>.  For purposes of this Section B, the Purchaser shall mean the Purchaser and, if applicable, each equity owner of the Purchaser.

1.  The Purchaser hereby represents, warrants, acknowledges and agrees that:

a.  The Purchaser is acquiring the Securities for his own account for investment, and not with a view to distribution, resale, subdivision or fractionalization thereof and the Purchaser has no present plans to enter into any contract, undertaking, agreement or arrangement for the distribution, resale, subdivision or fractionalization of the Securities.  In order to induce the Company to issue and sell the Securities subscribed for hereby, the Purchaser agrees that the Company will have no obligation to recognize the ownership, beneficial or otherwise, of the Securities by anyone but the Purchaser.

b.  The Company has made available to the Purchaser and/or his attorney and/or his accountant and/or his representative all agreements, documents, books, records and reports that he or they have requested relating to an investment in the Company.  The Purchaser and/or his attorney and/or his accountant and/or his representative all have had an opportunity to ask questions of and receive answers from the Company, or a person or persons acting on its behalf, concerning the terms and conditions of this investment and answers have been provided to all of his or their questions concerning an investment in the Company.  In evaluating the suitability of an investment in the Company, the Purchaser has not been furnished and has not relied upon any representations or other information (whether oral or written) other than as set forth in this Agreement (including Exhibits), or as contained in any documents, information or answers to questions furnished to him by the Company.  The Purchaser has not relied on any projections in making an investment decision with respect to the Securities.

c.  The Purchaser recognizes that an investment in the Company involves a high degree of risk of loss by the Purchaser of the Purchaser's entire investment in the Company and has taken full cognizance of and understands all of the risks related to the purchase of Securities.

d.  The Purchaser (i)†is an "accredited investor" as such term is defined in Rule 501 promulgated under the Act, and (ii)†the Purchaser's financial situation is such that he/she/it can afford to bear the economic risk of holding the Securities for an

indefinite period of time and suffer complete loss of his/her/its investment in the Securities.

  e. The Purchaser has discussed with its professional legal, tax and financial advisors, to the extent it deemed appropriate, the suitability of the investment in the Company for its particular tax and financial situation. All information that the Purchaser has provided to the Company concerning itself and its financial position is correct and complete as of the date set forth below, and, if there should be any material change in such information prior to the date such Purchaser's subscription is either accepted or rejected by the Company, it will immediately provide such information to the Company.

  f. The address set forth below is the Purchaser's true and correct residence or principal place of business and the Purchaser has no present intention of becoming a resident of any other state or jurisdiction or moving its principal place of business.

  g. It has been disclosed to the Purchaser that the following restrictions and limitations are applicable to the Purchaser's purchase and resales, pledges, hypothecations or other transfers of the Securities, and, therefore, that the Purchaser must bear the economic risk of investment in the Securities for an indefinite period of time as described in subparagraph A.3.e.:

  (i) As described in subparagraph A.3.d. above, the Securities have not been registered and, therefore, they may not be sold, pledged, hypothecated or otherwise transferred unless they are registered under the Act and applicable state securities laws or an exemption from such registration is available.

  (ii) A legend will be placed on the certificate or certificates (if any) evidencing the Securities in substantially the following form:

  THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE STATE SECURITIES LAWS OF ANY STATE. WITHOUT SUCH REGISTRATION, SUCH SECURITIES MAY NOT BE SOLD, PLEDGED, HYPOTHECATED OR OTHERWISE TRANSFERRED AT ANY TIME WHATSOEVER, EXCEPT UPON DELIVERY TO THE COMPANY OF AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY THAT REGISTRATION IS NOT REQUIRED FOR SUCH TRANSFER AND/OR THE SUBMISSION TO THE COMPANY OF SUCH OTHER EVIDENCE AS MAY BE SATISFACTORY TO THE COMPANY TO THE EFFECT THAT ANY SUCH TRANSFER WILL NOT BE IN VIOLATION OF THE SECURITIES ACT OF 1933, AS AMENDED, AND/OR APPLICABLE STATE SECURITIES LAWS AND/OR ANY RULE OR REGULATION PROMULGATED THEREUNDER.

  (iii) Stop transfer instructions have been or will be placed with respect to the Securities so as to restrict the resale, pledge, hypothecation or other transfer thereof.

  (iv) Stop transfer instructions described in subparagraph (iii) above will be

placed with respect to any new certificate representing the Securities upon presentment by the Purchaser of a certificate for transfer.

The foregoing representations and warranties are true and accurate as of the date hereof and will be true and accurate as of the date the Purchaser's subscription for the Securities is accepted by the Company. The Purchaser agrees to indemnify the Company for any losses, costs or expenses resulting from its breach of any such representations and warranties. If in any respect such representations and warranties will not be true and accurate as of the date the Purchaser's subscription for the Securities is accepted by the Company, the Purchaser will give written notice of such fact to the Company specifying which representations and warranties are not true and accurate and the reasons therefor.

C. Representations, Warranties and Agreements of the Company.

In order to induce the Purchaser to enter into this Agreement and to invest in the Securities, the Company hereby represents, warrants and agrees that:

1. Organization and Standing. The Company is a limited liability company duly formed and in good standing under the laws of the State of Delaware. The Company has all requisite power and authority to own its properties, to conduct its business as now being conducted and to enter into and consummate the transactions described in this Agreement.

2. Authorization. All limited liability company action on the part of the Company and its members necessary for the authorization, execution and delivery by the Company of this Agreement, the consummation of the transactions contemplated hereby and otherwise for the authorization, issuance and delivery of the Securities has been taken. This Agreement is a valid and binding obligation of the Company, enforceable in accordance with its terms, except as such enforceability may be limited by general principles of equity and subject to bankruptcy or other laws relating to or affecting the rights of creditors generally. The execution, delivery and performance by the Company of this Agreement and compliance herewith and the issuance and sale of the Securities will not result in any violation of and will not conflict with, or result in a breach of any of the terms of, or constitute a default under, any provision of state or federal law to which the Company is subject, or any mortgage, indenture, agreement, instrument, judgment, decree, order, rule or regulation, or other restriction to which the Company is a party or by which it or any of its assets are bound, or result in the creation of any mortgage, pledge, lien, encumbrance or charge upon any of its assets.

3. Capitalization. As of the date hereof, the issued and outstanding membership interests of the Company consist of 1085.7143 membership interests, of which 950 membership interests are Class A Units, and 135.7143 are Class B Units. After giving effect to the closing of the transactions contemplated hereby and the closing of subscriptions for additional shares to other investors on the date hereof, (i)†there will be 1098.2659 membership interests issued and outstanding, of which 950 will be Class A Units, and 148.2659 will be Class B Units, and (ii)†the record and beneficial ownership of the issued and outstanding membership interests of the Company will be as set forth on

Exhibit B attached hereto.

D.  Reserved.

E.  Governing Law.

This Agreement and the rights and obligations of the parties hereunder and the transactions contemplated hereby shall be governed by, enforced and interpreted in accordance with the laws of the State of New York without regard to principles of conflicts of laws.

F.  Successors and Assigns.

Except as otherwise expressly provided herein, the provisions hereof will inure to the benefit of, and be binding upon, the successors, assigns, heirs, executors and administrators of the parties hereto, except that the Purchaser may not assign any of its rights or obligations hereunder.

G.  Entire Agreement; Amendment.

This Agreement constitutes the full and entire understanding and agreement between the parties with regard to the subject matter hereof. Neither this Agreement nor any term hereof may be amended, waived, discharged or terminated except by a written instrument signed by the Company and the Purchaser.

H.  Notices, etc.

All notices and other communications required or permitted hereunder must be in writing and addressed (a) if to the Purchaser, as indicated on the signature pages hereto, or at such other address as the Purchaser will have furnished to the Company in writing in accordance with this Section H or (b) if to the Company, to Tri-State Biodiesel LLC, P.O. Box 1648, New York, New York 10009, Attention: Chief Executive Officer, or at such other address as the Company will have furnished to the Purchaser in writing in accordance with this Section H. All such notices or communications will be deemed given when actually delivered by hand, messenger, confirmed facsimile, telegram or mailgram or, if mailed, three business days after deposit, postage prepaid, in the United States mail.

I.  Rights; Severability.

Unless otherwise expressly provided herein, each party's rights hereunder are several rights, not rights jointly held with any of the other investors in the Company's Securities. If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws effective during the term of this Agreement, such provision shall be fully severable, this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provisions had never comprised a part of this Agreement and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provisions or by

their severance from this Agreement. Furthermore, in lieu of each such illegal, invalid or unenforceable provision, there shall be added automatically as a part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

J.   Agent's Fees.

The Purchaser (i) represents and warrants that he has retained no finder or broker in connection with the transactions contemplated by this Agreement and (ii) †hereby agrees to indemnify and to hold the Company and any other investors in the Company's Securities harmless from any liability for any commission or compensation in the nature of an agent's fee to any broker or other person or firm (and the costs and expenses of defending against such liability or asserted liability) for which the Purchaser is responsible in connection with the transactions contemplated by this Agreement.

K.   Information Confidential.

The Purchaser acknowledges that the information received by such Purchaser pursuant hereto may be confidential and is for his use only and such Purchaser will not reproduce, disclose or disseminate such information to any other person (other than the Purchaser's employees or agents having a need to know the contents of such information, and the Purchaser's attorneys), except in connection with the exercise of rights under this Agreement, unless the Company has made such information available to the public generally or the Purchaser is required to disclose such information by a governmental body or is summoned as a witness or required to give such information pursuant to a valid subpoena or any other lawful process.

L.   Titles and Subtitles.

The titles of the Sections of this Agreement are for convenience of reference only and are not to be considered in construing this Agreement.

M.  Counterparts.

This Agreement may be executed in any number of counterparts, each of which will be an original, but all of which together will constitute one instrument.

*[Remainder of page intentionally left blank; signature pages follow]*

IN WITNESS WHEREOF, the Purchaser has executed this Agreement this 5th day of March, 2007.

Tax Identification Number

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

By: _____
Name: Susan Pinsky
Title: Chief Administration Officer

Address: 300 East 64th St
Apt. 11C
New York, NY 10021

03/05/07

8

SUBSCRIPTION ACCEPTED AND SUBSCRIPTION AGREEMENT
AGREED TO:

TRI-STATE BIODIESEL LLC


By:_____
Name:  Brent Baker
Title:  Chief Executive Officer
Date:  03/05/07

## EXHIBIT A

| Name | Securities | Aggregate Purchase Price |
|---|---|---|
| Susan Pinsky | 5.4913 Class B membership interests | $25,000 |

## EXHIBIT B

### Capitalization

| <u>Shareholder</u> | <u>Number of Shares</u> | <u>Class of Shares</u> | <u>Percentage</u> |
|---|---|---|---|
| ████████ | ███ | ██████████ | ████ |
| █████████████ | ██████ | █████████ | ███ |
| ██████████ | ██████ | ██████████ | ████ |
| ████████████ | █████ | ███████████ | ███ |
| ███████████████ | █████ | █████████ | ████ |
| ████████████ | ████ | ██████████ | ████ |
| Susan Pinsky | 5.4913 | Class B Units | .5% |
| ████████████ | █████ | ██████████ | ███ |
| ████████ | ██████ | ██████████████ | ███ |

# EXHIBIT 45

STATE DIVISION OF HUMAN RIGHTS
STATE OF NEW YORK: EXECUTIVE DEPARTMENT

STATE DIVISION OF HUMAN RIGHTS
on the Complaint of

SUSAN PINSKY

Complainant

v.

JP MORGAN CHASE BANK

Respondent

VERIFIED COMPLAINT
Pursuant to Executive
Law, Article 15

Case No.
**10110051**

Federal Charge No. 16GA601632

I, Susan Pinsky, residing at 153 Garfield Place, # 2L,
Brooklyn, NY, 11215, charge the above named respondent, whose
address is P.O. Box 2558, Houston, TX, 77252 with an unlawful
discriminatory practice relating to employment in violation of
Article 15 of the Executive Law of the State of New York (Human
Rights Law) because of disability.

Date most recent or continuing discrimination took place is
6/10/2005.

The particulars are:

1.    I have impairments which are considered disabilities
under the NYS Human Rights Law. (torn hip lining, bone spur and
cyst in hip and two herniated discs) Because of this, I have
been subject to unlawful discriminatory actions.

2.    I began to work for the respondent on November 4, 2002 as
an Assistant Financial Advisor. My most recent position with the
respondent is Home Equity Loan Officer. My time, attendance and
work performance have always been excellent.

3.    On February 24, 2005, I requested an accommodation, in
the form of a standing desk, for my disabilities (torn hip
lining, a cyst and bone spur in my hip and two herniated discs)
from the respondent's Human Resources Medical Department.

4.    Since I did not hear from anyone, in April, 2005, I
requested the accommodation from the respondent's
representative, Cindy Chan, who asked to me to fax my original
request for the accommodation to the department once again.

5.    In the beginning of May, 2005, Ms. Chan informed me that
I was approved for the accommodation and provided me with a copy

Complaint
SDHR Case No. 10110051
Susan Pinsky v. JP Morgan Chase Bank

of the correspondence, indicating my approval for the standing desk.

6.    In June, 2005, when I inquired about the standing desk, I was informed by the respondent's Manager, Dee Lakhani, and Human Resources Representative, Barbara Zimmer, that the standing desk was never ordered; and they stated that it would be unnecessary to do so because my position was being eliminated.

7.    On June 10, 2005, I began my medical leave of absence from my position, due to my ongoing disabilities and based on the recommendation of my doctors. Currently, I am still on a medical leave of absence from my position with the respondent.

8.    I believe I was disparately treated and denied an accommodation because of my disabilities.

Based on the foregoing, I charge respondent with an unlawful discriminatory practice relating to employment because of disability, in violation of the New York State Human Rights Law (Executive Law, Article 15), Section 296.

I also charge the above-named respondent with violating the Americans with Disabilities Act (ADA) (covers disability relating to employment).   I hereby authorize SDHR to accept this verified complaint on behalf of the U.S. Equal Employment Opportunity Commission (EEOC) subject to the statutory limitations contained in the aforementioned law(s).

I have not commenced any other civil action, nor do I have an action pending before any administrative agency, under any state or local law, based upon this same unlawful discriminatory practice.

Susan Pinsky

Complaint
SDHR Case No. 10110051
Susan Pinsky v. JP Morgan Chase Bank

STATE OF NEW YORK )
COUNTY OF            )  SS:

Susan Pinsky, being duly sworn, deposes and says: that he/she is
the complainant herein; that he/she has read (or had read to him
or her) the foregoing complaint and knows the content thereof;
that the same is true of his/her own knowledge except as to the
matters therein stated on information and belief; and that as to
those matters, he/she believes the same to be true.

_____
Susan Pinsky

Subscribed and sworn to
before me this 6th day
of February, 2006

_____
Signature of Notary Public

CYNTHIA B. MENDOZA-GARCIA
NOTARY PUBLIC, State of New York
No. 01ME5087152
Qualified in New York County
Commission Expires Oct 27, ——
Dec 20, 2009

Page 3 of 3

## STATE OF NEW YORK
### DIVISION OF HUMAN RIGHTS

### COMPLAINANT'S INFORMATION SHEET

_SP_ 1.  According to the Division's Rules of Practice:

(a)  The Division or I shall be able to reasonably amend my complaint.

(b)  This complaint may voluntarily be withdrawn in writing by me at any time before the Regional Office issues a determination.  The withdrawal form must be signed by me or my attorney (original or fax will be accepted).  A withdrawal form may be obtained from the Division.

(c)  Conciliation or settlement is encouraged at all points in the proceeding, and the Division may provide assistance with conciliation or settlement at the request of any party.

_SP_ 2.  A copy of my complaint and/or the determination in this matter will be sent to:

U.S. Equal Employment Opportunity Commissioner (EEOC)

_SP_ 3.  I have a right to obtain private counsel.

_SP_ 4.  I, or my attorney, may review the Division's file in this matter.  I understand that I, or my attorney, may copy by hand any material in the file, or obtain photocopies at a nominal charge.  I also understand that the Respondent in this matter has the same right to review the file.

_SP_ 5.  I am to notify the Division of Human Rights of any change in my address, telephone number or place of employment which may occur during the course of the Division's proceedings.  I understand that failure to do so may jeopardize my rights.

_SP_ 6.  I shall give the Division's regional office as much advance notice as possible in the event I cannot attend any scheduled conference at which my presence has been requested.  (Except for emergency situations, please give at least four days notice.)

_SP_ 7.  I acknowledge receipt of a copy of the complaint and a copy of the complainant's information sheet in the above-entitled matter.

02/06/2006
(Date)

Susan Pinsky

SDHR Case No. 10110051

(Complainant is asked to initial each numbered space where indicated)



STATE OF NEW YORK
EXECUTIVE DEPARTMENT
# DIVISION OF HUMAN RIGHTS
20 EXCHANGE PLACE, 2ND FLOOR
NEW YORK, NEW YORK 10005

**(212) 480-2522**
Fax: (212) 480-0143
www.nysdhr.com

GEORGE E. PATAKI
GOVERNOR

February 6, 2006

MICHELLE CHENEY DONALDSON
COMMISSIONER

Susan Pinsky
153 Garfield Place, # 2L
Brooklyn, NY 11215
(718) 676-8556

Re:  Susan Pinsky v. JP Morgan Chase Bank
     SDHR Case No. 10110051

Dear Susan Pinsky:

    Please be advised that this office has received your
verified complaint and it is now part of the Division's case
load.  The Division, except for critical exceptions, investigates
complaints chronologically by date of filing.  Your filing date
is February 6, 2006.

    You will be contacted by the Human Rights Specialist
assigned to your case when the active investigation of your
complaint begins.

    Please notify us immediately of any change in your address
and telephone number should you move. A form is enclosed for this
purpose.

    To protect your rights, it is essential that the Division be
advised promptly at all times of any change of address.

    Thank you for your cooperation.

                              Very truly yours,


                              Leon Dimaya
                              Regional Director

# EXHIBIT 46

OFFICE RECORD

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

DOCKET YES ✓ NO_____ CLOSED_____

-------------------------------------------------------------------- X

SUSAN PINSKY

                                    Plaintiffs,

               -against-

J.P. MORGAN CHASE AND CO.,

                                Defendant.

-------------------------------------------------------------------- X

**SUMMONS**

**Index No.** *07-04146*

**PLAINTIFF DESIGNATES NEW YORK COUNTY AS THE PLACE OF TRIAL**

**TO THE ABOVE-NAMED DEFENDANTS:**

     **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with the summons, to serve a notice of appearance on the Plaintiffs' Attorney within 20 days after the service of this summons, exclusive of the day of service, and in the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
       March 27, 2007

                                SCHWARTZ, LICHTEN & BRIGHT, P.C.
                                Attorneys for Plaintiff

                         By: _____
                              Arthur Z. Schwartz
                              113 University Place, 11th Floor
                              New York, New York  10003
                              Phone:  (212) 228-6320
                              Fax:  (212) 358-1353

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------ X

SUSAN PINSKY,

                       Plaintiff,                Index No. *07-04146*

        - against -                     **COMPLAINT**

JP MORGAN CHASE & CO.,

                    Defendant.

------------------------------------------------------------------ X

## INTRODUCTION

1.     This is an action brought under the New York City and New York State Human Rights Laws for damages and injunctive relief, filed by an employee of JP Morgan Chase & Co. (hereinafter "Chase") who sought to have a disability accommodated, whose disability was not properly accommodated, and who, as a result, has lost the ability to work.

## VENUE

2.     Venue of this action is properly set in New York County.  Defendant's principal New York office is located in New York County, and all actions complained of occurred in New York County.

## PARTIES

3.     Plaintiff Susan Pinsky, at all relevant times, was an employee of defendant Chase.

4.     Defendant Chase is a financial services corporation whose corporate headquarters is located at 270 Park Avenue, New York, New York 10017.

## STATEMENT OF RELEVANT FACTS

5.      Plaintiff began her employment with defendant on or about November 12, 2002. Her initial position was Assistant Financial Advisor. In around February 2004, plaintiff was promoted to the position of Home Equity Loan Officer. In around July 2005, plaintiff was again promoted by being transferred to the JP Morgan Chase Mega-Branch at 55 Water Street in Manhattan.

6.      Plaintiff's work as a Home Equity Loan Officer for defendant largely involved sitting at a desk, for eight to ten hours a day, speaking with customers on the phone.

7.      In around December 2004 plaintiff began to experience an aching pain in her left hip. She sought medical attention and was advised that sitting for long periods of time was the cause of the problem. Prior to her transfer to Water Street, plaintiff was able to alleviate some of the pain by taking breaks, and taking a long walk during lunch.

8.      Upon her transfer to Water Street, plaintiff's workload increased substantially, making it difficult to take breaks and walks. The hip pain worsened and plaintiff's physician recommended that her employer accommodate her by providing her with a "standing desk."

9.      On or about February 24, 2005, plaintiff presented a medical note to Barbara Zimmer, her Human Resources representative, requesting that she be accommodated with the standing desk.

10.      Despite repeated inquiries by plaintiff, she learned on April 14, 2005 that the desk had not been ordered. Plaintiff contacted the Human Resources Medical Department which immediately directed plaintiff's manager to order the standing desk.

11. In fact, the standing desk was never ordered.

12. During May 2005, plaintiff's hip pain worsened, forcing her to miss work. Upon her return, she was placed at a "service desk," in the back of the branch, which was not constructed in such a way as to alleviate the pressure which was causing plaintiff's hip pain.

13. On June 1, 2005, plaintiff learned that the standing desk had not been ordered and complained to her supervisor, Dee Lakhani, and Human Resources Representative Barbara Zimmer. Several days later, plaintiff was advised that the desk hadn't been ordered because her position was being eliminated.

14. In fact, plaintiff's position had been eliminated as part of a corporate reorganization. However, she was being given sixty days to find a new position within Chase, and fully intended and expected, as a high performing employee, to find a new position.

15. On or about June 10, 2005, plaintiff had an MRI done and discovered that she had disc herniations. Her physicians ordered her to stop work immediately. After two months of physical therapy plaintiff's pain continued; further tests showed that the lining in her left hip was torn and that cysts and a bone spur had developed on her femur.

16. Plaintiff's inability to work since June 2005 was a proximate result of defendant's failure to provide a reasonable accommodation for her disability.

17. In addition, plaintiff, as a proximate result of defendant's failure to accommodate her disability, has suffered from severe hip and back pain, and as a result of the extended period of severe pain and inability to work, has suffered from emotional distress, with additional attendant physical consequences.

3

18.    The allegations in paragraphs 1-17 hereunder are incorporated by reference into the Causes of Action set forth below.

## AS AND FOR A FIRST CAUSE OF ACTION

19.    By acting as aforedescribed, defendant discriminated against plaintiff because of her disability, in violation of § 296(1) of the New York State Executive Law.

## AS AND FOR A SECOND CAUSE OF ACTION

20.    By acting as aforedescribed, defendant discriminated against plaintiff because of her disability, in violation of the New York City Human Rights Law, Section 8-107(1) *et seq.*

## DAMAGES

21.    Plaintiff, as a result of defendant's action, has suffered a loss of wages and benefits and suffered severe emotional distress, to her injury, in an amount exceeding $2 million.

22.    By proceeding against plaintiff as described hereinabove, defendant acted with malice, or with reckless disregard for plaintiff's health and well being.

4

## PRAYER FOR RELIEF

WHEREFORE plaintiff prays that this Court enter judgment:

1.    Awarding plaintiff all pay and benefits lost by her.

2.    Awarding plaintiff $2 million in compensatory damages.

3.    Awarding plaintiff punitive damages in the amount of $2 million.

4.    Awarding plaintiff attorneys' fees and costs.

Dated: March 26, 2007

SCHWARTZ, LICHTEN & BRIGHT, P.C.
Attorneys for Plaintiff

By: _____
    Arthur Z. Schwartz
    113 University Place, 11th Floor
    New York, New York  10003
    (212) 228-6320
    Fax:  (212) 358-1353
    E-mail:  districtleader@msn.com

5

# EXHIBIT 47

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

SUSAN PINSKY,

                    Complainant,

        v.

JP MORGAN CHASE BANK,

                    Respondent.

ANNULMENT
DETERMINATION

Case No.
10110051

Federal Charge No. 16GA601632

---

On 2/6/2006, Susan Pinsky filed a verified complaint with the New York State Division of Human Rights ("Division") charging the above-named respondent with an unlawful discriminatory practice relating to employment because of disability in violation of N.Y. Exec. Law, art 15 ("Human Rights Law").

Pursuant to Section 297.9 of the Human Rights Law, a complainant, at any time prior to a hearing before a hearing officer, may request that the Division dismiss the complaint and annul the election of remedies so that the case may be pursued in court, and the Division may, upon such request, dismiss that case on the grounds that the complainant's election of an administrative remedy is annulled.

The above named complainant has made such a request.  The complaint is ordered dismissed, on the grounds that the complainant's election of an administrative remedy is annulled.

Section 297.9 of the Human Rights Law provides that:

... where the Division has dismissed such complaint on the grounds of the administrative convenience, ... such person shall maintain all rights to bring suit as if no complaint had been filed.  ...  [I]f a complaint is so annulled by the division, upon the request of the party bringing such complaint before the division, such party's rights to bring such cause of action before a court of appropriate jurisdiction shall be limited by the statute of limitations in effect in

such court at the time the complaint was initially
filed with the division.

PLEASE TAKE NOTICE that any party to this proceeding may
appeal this Determination to the New York State Supreme Court in
the County wherein the alleged unlawful discriminatory practice
took place by filing directly with such court a Notice of
Petition and Petition within sixty (60) days after service of
this Determination. A copy of this Notice and Petition must
also be served on all parties including General Counsel, State
Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx,
New York 10458. DO NOT FILE THE ORIGINAL NOTICE AND PETITION
WITH THE STATE DIVISION OF HUMAN RIGHTS.

Dated:    APR 2 6 2007
          New York, New York

                         STATE DIVISION OF HUMAN RIGHTS


                  By:    _____
                         Leon Dimaya
                         Regional Director

# EXHIBIT 48

DOCKET YES_____ `no`_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

SUSAN PINSKY,                                    :

                   Plaintiff,    :    *ECF*

                                              07 Civ. 3328 (CM) (HP)

            - against -                 :

                                               **ANSWER**

JP MORGAN CHASE & CO.,                    :

                   Defendant.    :

-------------------------------------------------------------X

        Defendant JPMorgan Chase Bank, N.A. ("the Bank" or "JPMorgan Chase"), incorrectly

named herein as JP Morgan Chase & Co., by its attorney, JPMorgan Chase Legal and

Compliance Department, Frederic L. Lieberman, Assistant General Counsel, as and for its

Answer to the Complaint, asserts as follows:

## AS TO THE INTRODUCTION

        1.     The allegations set forth therein in paragraph "1" of the Complaint constitute a

description of Plaintiff's claims in this action as to which no response is required. To the extent

that JPMorgan Chase is required to respond to the allegations of paragraph "1", JPMorgan Chase

admits that Plaintiff purports to bring this action pursuant to the New York State and City Human

Rights Laws, denies the truth of the remainder of the allegations set forth therein and further denies

that Plaintiff is entitled to any remedy or relief.

## AS TO VENUE

        2.     The allegations set forth therein in paragraph "2" of the Complaint constitute

conclusions of law regarding the proper venue of this action as to which no response is required.

To the extent that JPMorgan Chase is required to respond to the allegations of paragraph "2",

JPMorgan Chase denies knowledge or information sufficient to form a belief as to the truth of those allegations, except denies that the Bank has its principal office in New York County, and avers that the Bank is a national banking association with its main office at 1111 Polaris Parkway, Columbus, Ohio 43240.

## AS TO PARTIES

3.      Upon information and belief, admits the truth of the allegations set forth in paragraph "3" of the Complaint.

4.      Denies the truth of the allegations set forth in paragraph "4" of the Complaint, except admits that JPMorgan Chase & Co. is a corporation organized under the laws of the State of Delaware, is authorized to do business in New York, and has a principal place of business located at 270 Park Avenue, New York, New York 10017, and avers that the Bank is a national banking association with its main office at 1111 Polaris Parkway, Columbus, Ohio 43240, and further avers that Plaintiff was employed by JPMorgan Chase Bank, N.A., but not by JPMorgan Chase & Co.

## AS TO STATEMENT OF RELEVANT FACTS

5.      Denies the truth of the allegations set forth in paragraph "5" of the Complaint, except avers that Plaintiff was hired by Chase Investment Services Corp., effective November 12, 2002, as a Personal Financial Advisors Assistant, she applied for and was hired by JPMorgan Chase Bank, effective February 1, 2004, as a Home Equity Loan Officer, and that in or about late 2004 or early 2005, although Plaintiff's job title remained the same, Plaintiff's work location was changed to the Bank's Branch located at 55 Water Street, New York, New York.

6.      Denies the truth of the allegations set forth in paragraph "6" of the Complaint.

7.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "7" of the Complaint.

8.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "8 of the Complaint, except denies the truth of the allegation that Plaintiff's workload increased substantially upon her transfer to the 55 Water Street work location.

9.    Denies the truth of the allegations set forth in paragraph "9" of the Complaint.

10.    Denies the truth of the allegations set forth in paragraph "10" of the Complaint, except avers that Plaintiff and her manager agreed that Plaintiff could use an existing customer service workstation that was designed for use by employees who were standing, rather than requiring the Bank to obtain an additional standing desk.

11.    Admits the truth of the allegations set forth in paragraph "11" of the Complaint, except avers that Plaintiff and her manager agreed that Plaintiff could use an existing customer service workstation that was designed for use by employees who were standing, rather than requiring the Bank to obtain an additional standing desk.

12.    Denies the truth of the allegations set forth in paragraph "12" of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding plaintiff's hip pain.

13.    Denies the truth of the allegations set forth in paragraph "13" of the Complaint, except admits that Plaintiff complained that she had not been provided with a standing desk.

14.    Denies the truth of the allegations set forth in paragraph "14" of the Complaint, except avers that Plaintiff was notified orally in or about March 2005 and in writing on May 20, 2005 that her position as a Home Equity Loan Officer was being eliminated, and that she

received a sixty (60) day paid notice period before the elimination of her position took effect, and denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning her intent and expectations.

15.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "15" of the Complaint.

16.    Denies the truth of the allegations set forth in paragraph "16" of the Complaint.

17.    Denies the truth of the allegations set forth in paragraph "17" of the Complaint.

18.    Repeats and realleges its responses to paragraphs "1" through "17" of the Complaint as if fully set forth herein.

## AS TO PLAINTIFF'S FIRST CAUSE OF ACTION

19.    Denies the truth of the allegations set forth in paragraph "19" of the Complaint.

## AS TO PLAINTIFF'S SECOND CAUSE OF ACTION

20.    Denies the truth of the allegations set forth in paragraph "20" of the Complaint.

## AS TO DAMAGES

21.    Denies the truth of the allegations set forth in paragraph "21" of the Complaint.

22.    Denies the truth of the allegations set forth in paragraph "22" of the Complaint.

23.    The allegations set forth in the "Prayer for Relief" section of the Complaint constitute a demand for relief as to which no response is required.  To the extent that JPMorgan Chase is required to respond to the allegations of the "Prayer for Relief", JPMorgan Chase denies that Plaintiff is entitled to any or all of the remedies or relief sought therein.

## AFFIRMATIVE DEFENSES

JPMorgan Chase asserts that it only bears the burden of proof on those matters set forth herein as affirmative defenses within the meaning of Fed. R. Civ. P. 8(c). JPMorgan Chase sets forth its defenses and affirmative defenses to Plaintiff's claims as follows:

### AS AND FOR A FIRST DEFENSE

24.    The Complaint fails, in whole or in part, to state a claim upon which relief can be granted or the damages sought can be awarded.

### AS AND FOR A SECOND DEFENSE

25.    Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to satisfy the jurisdictional prerequisites, appropriate statutes of limitations and/or conditions precedent to asserting any or all of such claims.

### AS AND FOR A THIRD DEFENSE

26.    Plaintiff's disability discrimination claims are barred, in whole or in part, by the fact that any and all actions taken by JPMorgan Chase with respect to Plaintiff were based upon legitimate, non-discriminatory business reasons totally unrelated to Plaintiff's alleged disability, and were without any discriminatory animus or in violation of any rights under any discrimination laws.

### AS AND FOR A FOURTH DEFENSE

27.    Plaintiff's disability discrimination claims are barred because she does not come within the statutory definitions of an individual with a disability or impairment.

### AS AND FOR A FIFTH DEFENSE

28.     Plaintiff's disability discrimination claims are barred because she did not identify herself as an individual with a disability or impairment as defined by the statutes or request an "accommodation" of any alleged disability or impairment at any time.

### AS AND FOR A SIXTH DEFENSE

29.     Plaintiff's claims are barred because any reasonable accommodation requested by Plaintiff would have imposed an undue hardship on the Bank.

### AS AND FOR A SEVENTH DEFENSE

30.     Each and every action taken by JPMorgan Chase was undertaken in good faith and in full compliance with all applicable laws, rules, and regulations.

### AS AND FOR AN EIGHTH DEFENSE

31.     Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

### AS AND FOR A NINTH DEFENSE

32.     Upon information and belief, Plaintiff's claims for damages are barred and/or limited in that she has failed to mitigate her damages by using reasonable diligence to seek and obtain comparable employment elsewhere.

### AS AND FOR AN TENTH DEFENSE

33.     Plaintiff's claims are barred and/or limited by the doctrine of laches, waiver or estoppel.

### AS AND FOR A ELEVENTH DEFENSE

34.     Plaintiff's claims are barred and/or limited by her fraudulent conduct.

## AS AND FOR A TWELFTH DEFENSE

35.    Plaintiff's claims are barred and/or limited by her violation of the Bank's Code of Conduct.

## AS AND FOR A THIRTEENTH DEFENSE

36.    Plaintiff's damages are barred and/or limited by the after acquired evidence doctrine.

## AS AND FOR A FOURTEENTH DEFENSE

37.    Plaintiff's claims are barred and/or limited by the Release Agreement with JPMorgan Chase Bank that she executed on or about June 24, 2005.

## AS AND FOR A FIFTEENTH DEFENSE

38.    Upon information and belief, Plaintiff's claims pursuant to the New York City Human Rights Law are barred by Plaintiff's failure to serve a copy of the Complaint herein on the New York City Commission on Human Rights.

## AS AND FOR A SIXTEENTH DEFENSE

39.    Plaintiff's claims for punitive damages are barred in that the Bank did not act maliciously or with reckless indifference toward Plaintiff.

**WHEREFORE**, Defendant JPMorgan Chase Bank, N.A. demands judgment against Plaintiff:

(a)    dismissing the Complaint in its entirety with prejudice;

(b)    denying the demands and prayer for relief contained in the Complaint;

(c)    awarding Defendant JPMorgan Chase Bank, N.A. its reasonable costs, disbursements, and attorneys' fees; and

(d)    granting such other further relief as may be just and proper.

Dated: May 15, 2007

JPMORGAN CHASE LEGAL AND
COMPLIANCE DEPARTMENT

By: _Frederic L. Lieberman/rcc_
Frederic L. Lieberman, Esq. (FLL 9454)
Attorneys for Defendant
One Chase Manhattan Plaza, 26th Floor
New York, New York 10081
(212) 552-1815

To:     Arthur Z. Schwartz, Esq.
        Schwartz, Lichten & Bright, P.C.
        275 Seventh Avenue, Suite 1700
        New York, New York 10001
        (212) 228-6320

        Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

SUSAN PINSKY,                                    :

                                Plaintiff,       :        Index No. 104146/07

               - against -                       :        **CERTIFICATE OF SERVICE**

JP MORGAN CHASE & CO.,                           :

                                Defendant.       :

-------------------------------------------------------------X

I hereby certify that on May 15, 2007 I caused a copy of the following document :

**ANSWER**

to be served by first class mail directed to the attorney of plaintiff at the following address:

      Arthur Z. Schwartz, Esq.
      Schwartz, Lichten & Bright, P.C.
      275 Seventh Avenue, Suite 1700
      New York, New York 10001

Dated: May 15, 2007

                                    _____
                                      Frederic L. Lieberman (FL 9454)