# EXHIBIT 49

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  **Susan Pinsky**<br>**153 Garfield Place, # 2L**<br>**Brooklyn, NY 11215** | From:  **New York District Office**<br>**33 Whitehall Street**<br>**5th Floor**<br>**New York, NY 10004** |

| | |
|---|---|
| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2006-01632 | **Holly M. Woodyard,**<br>**Investigator** | (212) 336-3643 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐ While reasonable efforts were made to locate you, we were not able to do so.

☐ You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒ Other *(briefly state)*     **Charging Party to Pursue Matter in Federal Court.**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this notice;** or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** **before you file suit may not be collectible.**

On behalf of the Commission

_____                 6/1/07
**Spencer H. Lewis, Jr.,**                          *(Date Mailed)*
**Director**

Enclosures(s)

| | |
|---|---|
| cc:  **JPMORGAN CHASE & CO.**<br>**707 Travis Box 2558**<br>**4CBB-N45**<br>**Houston, TX. 77002**<br>**Attn: Legal Dept.** | Schwartz, Lichten &Bright PC<br>113 Universitiy Place<br>New York, NY. 10003<br>Attn: Arthur Z. Schwartz Esq. |

JP Morgan Chase & Co.
712 Main St. 4th Fl.
Houston, TX. 77252-Attn Lillain M. Davenport

# EXHIBIT 50

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

SUSAN PINSKY,                                  :

                              Plaintiff,       :

                                                      07 Civ. 3328 (CM) (HP)
            - against -                        :

                                                      **AMENDED ANSWER**
JP MORGAN CHASE & CO.,                         :      **AND COUNTERCLAIMS**

                              Defendant.       :

----------------------------------------------------------------X

        Defendant JPMorgan Chase Bank, N.A. ("the Bank" or "JPMorgan Chase"), incorrectly named herein as JP Morgan Chase & Co., by its attorney, JPMorgan Chase Legal and Compliance Department, Frederic L. Lieberman, Assistant General Counsel, as and for its Amended Answer to the Complaint and its Counterclaims, asserts as follows:

### AS TO THE INTRODUCTION

        1.     The allegations set forth therein in paragraph "1" of the Complaint constitute a description of Plaintiff's claims in this action as to which no response is required. To the extent that JPMorgan Chase is required to respond to the allegations of paragraph "1", JPMorgan Chase admits that Plaintiff purports to bring this action pursuant to the New York State and City Human Rights Laws, denies the truth of the remainder of the allegations set forth therein and further denies that Plaintiff is entitled to any remedy or relief.

### AS TO VENUE

        2.     The allegations set forth therein in paragraph "2" of the Complaint constitute conclusions of law regarding the proper venue of this action as to which no response is required. To the extent that JPMorgan Chase is required to respond to the allegations of paragraph "2",

JPMorgan Chase denies knowledge or information sufficient to form a belief as to the truth of those allegations, except denies that the Bank has its principal office in New York County, and avers that the Bank is a national banking association with its main office at 1111 Polaris Parkway, Columbus, Ohio 43240.

## AS TO PARTIES

3.      Upon information and belief, admits the truth of the allegations set forth in paragraph "3" of the Complaint.

4.      Denies the truth of the allegations set forth in paragraph "4" of the Complaint, except admits that JPMorgan Chase & Co. is a corporation organized under the laws of the State of Delaware, is authorized to do business in New York, and has a principal place of business located at 270 Park Avenue, New York, New York 10017, and avers that the Bank is a national banking association with its main office at 1111 Polaris Parkway, Columbus, Ohio 43240, and further avers that Plaintiff was employed by JPMorgan Chase Bank, N.A., but not by JPMorgan Chase & Co.

## AS TO STATEMENT OF RELEVANT FACTS

5.      Denies the truth of the allegations set forth in paragraph "5" of the Complaint, except avers that Plaintiff was hired by Chase Investment Services Corp., effective November 12, 2002, as a Personal Financial Advisors Assistant, she applied for and was hired by JPMorgan Chase Bank, effective February 1, 2004, as a Home Equity Loan Officer, and that in or about late 2004 or early 2005, although Plaintiff's job title remained the same, Plaintiff's work location was changed to the Bank's Branch located at 55 Water Street, New York, New York.

6.      Denies the truth of the allegations set forth in paragraph "6" of the Complaint.

7.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "7" of the Complaint.

8.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "8 of the Complaint, except denies the truth of the allegation that Plaintiff's workload increased substantially upon her transfer to the 55 Water Street work location.

9.      Denies the truth of the allegations set forth in paragraph "9" of the Complaint.

10.     Denies the truth of the allegations set forth in paragraph "10" of the Complaint, except avers that Plaintiff and her manager agreed that Plaintiff could use an existing customer service workstation that was designed for use by employees who were standing, rather than requiring the Bank to obtain an additional standing desk.

11.     Admits the truth of the allegations set forth in paragraph "11" of the Complaint, except avers that Plaintiff and her manager agreed that Plaintiff could use an existing customer service workstation that was designed for use by employees who were standing, rather than requiring the Bank to obtain an additional standing desk.

12.     Denies the truth of the allegations set forth in paragraph "12" of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding plaintiff's hip pain.

13.     Denies the truth of the allegations set forth in paragraph "13" of the Complaint, except admits that Plaintiff complained that she had not been provided with a standing desk.

14.     Denies the truth of the allegations set forth in paragraph "14" of the Complaint, except avers that Plaintiff was notified orally in or about March 2005 and in writing on May 20, 2005 that her position as a Home Equity Loan Officer was being eliminated, and that she

received a sixty (60) day paid notice period before the elimination of her position took effect, and denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning her intent and expectations.

15.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "15" of the Complaint.

16.     Denies the truth of the allegations set forth in paragraph "16" of the Complaint.

17.     Denies the truth of the allegations set forth in paragraph "17" of the Complaint.

18.     Repeats and realleges its responses to paragraphs "1" through "17" of the Complaint as if fully set forth herein.

## AS TO PLAINTIFF'S FIRST CAUSE OF ACTION

19.     Denies the truth of the allegations set forth in paragraph "19" of the Complaint.

## AS TO PLAINTIFF'S SECOND CAUSE OF ACTION

20.     Denies the truth of the allegations set forth in paragraph "20" of the Complaint.

## AS TO DAMAGES

21.     Denies the truth of the allegations set forth in paragraph "21" of the Complaint.

22.     Denies the truth of the allegations set forth in paragraph "22" of the Complaint.

23.     The allegations set forth in the "Prayer for Relief" section of the Complaint constitute a demand for relief as to which no response is required. To the extent that JPMorgan Chase is required to respond to the allegations of the "Prayer for Relief", JPMorgan Chase denies that Plaintiff is entitled to any or all of the remedies or relief sought therein.

## AFFIRMATIVE DEFENSES

JPMorgan Chase asserts that it only bears the burden of proof on those matters set forth herein as affirmative defenses within the meaning of Fed. R. Civ. P. 8(c). JPMorgan Chase sets forth its defenses and affirmative defenses to Plaintiff's claims as follows:

### AS AND FOR A FIRST DEFENSE

24.     The Complaint fails, in whole or in part, to state a claim upon which relief can be granted or the damages sought can be awarded.

### AS AND FOR A SECOND DEFENSE

25.     Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to satisfy the jurisdictional prerequisites, appropriate statutes of limitations and/or conditions precedent to asserting any or all of such claims.

### AS AND FOR A THIRD DEFENSE

26.     Plaintiff's disability discrimination claims are barred, in whole or in part, by the fact that any and all actions taken by JPMorgan Chase with respect to Plaintiff were based upon legitimate, non-discriminatory business reasons totally unrelated to Plaintiff's alleged disability, and were without any discriminatory animus or in violation of any rights under any discrimination laws.

### AS AND FOR A FOURTH DEFENSE

27.     Plaintiff's disability discrimination claims are barred because she does not come within the statutory definitions of an individual with a disability or impairment.

### AS AND FOR A FIFTH DEFENSE

28.     Plaintiff's disability discrimination claims are barred because she did not identify herself as an individual with a disability or impairment as defined by the statutes or request an "accommodation" of any alleged disability or impairment at any time.

### AS AND FOR A SIXTH DEFENSE

29.     Plaintiff's claims are barred because any reasonable accommodation requested by Plaintiff would have imposed an undue hardship on the Bank.

### AS AND FOR A SEVENTH DEFENSE

30.     Each and every action taken by JPMorgan Chase was undertaken in good faith and in full compliance with all applicable laws, rules, and regulations.

### AS AND FOR AN EIGHTH DEFENSE

31.     Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

### AS AND FOR A NINTH DEFENSE

32.     Upon information and belief, Plaintiff's claims for damages are barred and/or limited in that she has failed to mitigate her damages by using reasonable diligence to seek and obtain comparable employment elsewhere.

### AS AND FOR AN TENTH DEFENSE

33.     Plaintiff's claims are barred and/or limited by the doctrine of laches, waiver or estoppel.

### AS AND FOR A ELEVENTH DEFENSE

34.     Plaintiff's claims are barred and/or limited by her fraudulent conduct.

### AS AND FOR A TWELFTH DEFENSE

35.     Plaintiff's claims are barred and/or limited by her violation of the Bank's Code of Conduct.

### AS AND FOR A THIRTEENTH DEFENSE

36.     Plaintiff's damages are barred and/or limited by the after acquired evidence doctrine.

### AS AND FOR A FOURTEENTH DEFENSE

37.     Plaintiff's claims are barred and/or limited by the Release Agreement with JPMorgan Chase Bank that she executed on or about June 24, 2005.

### AS AND FOR A FIFTEENTH DEFENSE

38.     Upon information and belief, Plaintiff's claims pursuant to the New York City Human Rights Law are barred by Plaintiff's failure to serve a copy of the Complaint herein on the New York City Commission on Human Rights.

### AS AND FOR A SIXTEENTH DEFENSE

39.     Plaintiff's claims for punitive damages are barred in that the Bank did not act maliciously or with reckless indifference toward Plaintiff.

### COUNTERCLAIMS

### FACTUAL BACKGROUND

40.     Upon information and belief, Plaintiff submitted documentation from her physician regarding her back condition to the Bank's Health Services unit on or around April 4, 2005.

41.     JPMorgan Chase's Disability Leave Policy allows qualified employees to take a leave of absence for up to 26 weeks for approved disabilities for any illness or injury that lasts

more than one workweek. This leave is only available if an employee is unable to perform the material and substantial duties of his/her position on an active employment basis.

42.    The portion of the disability leave which is paid, and the rate of payment, is based upon years of service with JPMorgan Chase.

43.    As a result of her back condition, Plaintiff commenced a leave of absence from her active employment with the Bank beginning on or around June 13, 2005.

44.    Upon information and belief, Plaintiff was approved by The Hartford for, and received, disability benefits for the period from June 13, 2005 through December 11, 2005.

45.    JPMorgan Chase's Disability Leave Policy provides that, when an employee's position is eliminated during an approved disability leave, the employee's employment termination date typically will be deferred until the employee's disability leave has ended.

46.    JPMorgan Chase's Disability Leave Policy provides that, where an employee's disability continues after completing an approved 26 week short-term disability leave, the employee may be eligible for long-term disability benefits if the employee elected long-term disability coverage under the Bank's employee benefit plan.

47.    Plaintiff elected long-term disability coverage under the Bank's employee benefit plan for the 2002, 2003, 2004, 2005, 2006, and 2007 benefits years.

48.    Plaintiff was approved for long-term disability benefits by The Hartford as of December 12, 2005.

49.    Plaintiff commenced a long-term disability leave of absence beginning on or around December 12, 2005.

50.    JPMorgan Chase's Disability Leave Policy provides that, when an employee is approved for long-term disability benefits, the employee will be placed on LTD status.

51.    Plaintiff was placed on LTD status as of December 12, 2005.

52.    Plaintiff's long-term disability leave continues to date.

53.    Upon information and belief, Plaintiff has received long-term disability payments continuously since in or about December 2005 and as recently as in or about May 2007.

54.    Upon information and belief, Plaintiff has received, and is receiving, an amount of long-term disability benefits commensurate with being considered fully disabled and unable to work.

55.    During her long-term disability leave, Plaintiff from time to time has submitted proof to The Hartford that she remained fully disabled and was eligible to continue to receive long-term disability benefits.

56.    JPMorgan Chase's Disability Leave Policy provides that, when an employee is on a disability leave, the employee continue many of his/her elected benefits so long as the employee makes the necessary contributions.

57.    Plaintiff elected to continue to participate in medical, dental, vision, employee supplemental term life, employee accidental death and disability, and group legal coverages for the 2006 benefits year under the Bank's benefit plan.

58.    Plaintiff elected to continue to participate in medical, dental, vision, employee supplemental term life, and employee accidental death and disability coverages for the 2007 benefits year under the Bank's benefit plan.

59.    Plaintiff also received employee basic life insurance coverage for the 2006 and 2007 benefits years under the Bank's benefit plan.

60.    Under the Bank's benefit plan, contributions to plan costs for medical and dental coverages are paid in part by the employee and in part by the Bank.

61.    The Bank has paid contributions to plan costs for medical and dental coverage for Plaintiff for the 2006 and 2007 benefits years.

62.    In addition, under the Bank's benefit plan, some or all of any actual costs incurred by an employee who elected point of service medical and dental coverages are paid in part by the employee and in part by the Bank.

63.    The Bank has paid some of the actual costs incurred by Plaintiff for medical and dental coverage for the 2006 and 2007 benefits years.

64.    In addition, under the Bank's benefit plan, employee basic life insurance is paid for in full by the Bank.

65.    The Bank has paid for employee basic life insurance for Plaintiff for the 2006 and 2007 benefits years.

66.    The JPMorgan Chase & Co. Code of Conduct provides that all employees are required to obtain pre-clearance for any paid, outside activity, including a second job, or any affiliation with another business as an officer, or in any similar position.

67.    Plaintiff affirmed that she would comply with the Code of Conduct on December 18, 2002, October 21, 2003, and March 3, 2005.

68.    Upon information and belief, notwithstanding all of the foregoing, Plaintiff currently is employed by Tri-State Biodiesel LLC as Chief Administration Officer.

69.    Upon information and belief, Plaintiff failed to advise The Hartford that she no longer was disabled.

70.    Plaintiff failed to advise the Bank that she no longer was disabled and could be removed from LTD status pursuant to the provisions of the Bank's Disability Leave Policy.

71.     As a result of Plaintiff's failure to advise the Bank that she no longer was disabled and could be removed from LTD status, the Bank did not terminate Plaintiff's employment following the elimination of her position, and Plaintiff continued to be eligible for, and receive, medical and dental coverage at the employee contribution rate rather than at the higher COBRA rate for terminated employees during 2006 and/of 2007.

72.     As a result of Plaintiff's failure to advise the Bank that she no longer was disabled and could be removed from LTD status, the Bank did not terminate Plaintiff's employment following the elimination of her position, and Plaintiff continued to be eligible for, and receive, vision, employee basic life, employee supplemental term life, employee accidental death and disability, and group legal coverages during 2006 and/or 2007.

73.     Plaintiff neither requested, nor received, any pre-clearance from the Bank regarding her employment with Tri-State Biodiesel LLC.

74.     Plaintiff failed to advise the Bank that she now is employed by Tri-State Biodiesel LLC.

## AS AND FOR A FIRST COUNTERCLAIM

### FRAUD

75.     Defendant realleges and incorporates by reference Paragraphs "40" through "67" of the counter claim as if fully set forth hereat.

76.     During some or all of the period during which Pinsky was on short-term and long-term disability leave from JPMorgan Chase, Pinsky represented to JPMorgan Chase that she was fully disabled and unable to work and/or concealed the fact that she was not fully disabled and was able to work.

77.    Pinsky knew that such representations were false during some or all of the period during which she was on short-term and long-term disability leave from JPMorgan Chase.

78.    Pinsky intended to mislead JPMorgan Chase regarding her alleged disability and ability to work during some or all of the period during which she was on short-term and long-term disability leave from JPMorgan Chase.

79.    JPMorgan Chase reasonably relied on Pinsky's representations that she was fully disabled and unable to work.

80.    Had JPMorgan Chase known that Pinsky no longer was fully disabled and was able to work, it would have proceeded with the termination of her employment pursuant to the job elimination notice which she received on or about May 30, 2005.

81.    As a direct and proximate result of Pinsky's misrepresentations and/or concealment of relevant facts, Pinsky has been able to received medical and dental benefits coverages under the JPMorgan Chase benefits plan at the employee cost, which includes an employer contribution, rather than at the COBRA cost, which does not include an employer contribution, and has had JPMorgan Chase pay for some of the actual medical and dental costs she incurred.

82.    As a direct and proximate result of Pinsky's misrepresentations and/or concealment of relevant facts, Pinsky has been able to received vision, employee basic life, employee supplemental term life, employee accidental death and disability, and group legal coverages under the JPMorgan Chase benefits plan.

83.    As a direct and proximate result of Pinsky's misrepresentations and/or concealment of relevant facts, and JPMorgan Chase's reliance on those facts, JPMorgan Chase has been damaged.

## AS AND FOR A SECOND COUNTER-CLAIM

### UNJUST ENRICHMENT

84.     Defendant realleges and incorporates by reference Paragraphs "40" through "67" as if fully set forth hereat.

85.     During some or all of the period during which Pinsky was on short-term and long-term disability leave from JPMorgan Chase, Pinsky was enriched in that she was able to obtain medical and dental coverage at the employee cost rather than at the COBRA cost.

86.     During some or all of the period during which Pinsky was on short-term and long-term disability leave from JPMorgan Chase, Pinsky was enriched at JPMorgan Chase's expense in that JPMorgan Chase made employer contributions to her medical and dental coverage, rather than Pinsky bearing the entire cost of such benefits.

87.     During some or all of the period during which Pinsky was on short-term and long-term disability leave from JPMorgan Chase, Pinsky was enriched at JPMorgan Chase's expense in that JPMorgan Chase paid for some of the actual medical and dental costs she incurred, rather than Pinsky bearing such costs.

88.     During some or all of the period during which Pinsky was on short-term and long-term disability leave from JPMorgan Chase, Pinsky was enriched at JPMorgan Chase's expense in that she was able to elect and obtain vision, employee basic life, employee supplemental term life, employee accidental death and disability, and group legal coverages at group rates obtained by JPMorgan Chase for which she should not have been eligible.

89.     Equity and good conscience militate against permitting Pinsky to retain the value of the benefits by which she was unjustly enriched as set forth above.

## AS AND FOR A THIRD COUNTER-CLAIM

## BREACH OF CONTRACT

90.     Defendant realleges and incorporates by reference paragraphs "40" through "67" as if fully set forth hereat.

91.     JPMorgan Chase & Co.'s Code of Conduct, although not an employment contract, sets forth certain terms and conditions of employment with JPMorgan Chase.

92.     Every JPMorgan Chase employee's compliance with the Code of Conduct and with other applicable policies and procedures is a term and condition of his/her employment by JPMorgan Chase.

93.     By failing to request and obtain clearance from JPMorgan Chase to hold her position as Chief Administration Officer with Tri-State Biodiesel, Plaintiff breached her agreement with JPMorgan Chase to comply with the terms of the Code of Conduct.

94.     JPMorgan Chase has been injured by Plaintiff's breach of her agreement to comply with the terms of the Code of Conduct.

**WHEREFORE,** Defendant JPMorgan Chase Bank, N.A. demands judgment against Plaintiff:

(a)     dismissing the Complaint in its entirety with prejudice;

(b)     denying the demands and prayer for relief contained in the Complaint;

(c)     granting judgment in favor of JPMorgan Chase Bank, N.A. and awarding it damages on each of its counterclaims;

(d)     awarding Defendant JPMorgan Chase Bank, N.A. its reasonable costs, disbursements, and attorneys' fees; and

(e)     granting such other further relief as may be just and proper.

Dated:  June 4, 2007

> **JPMORGAN CHASE LEGAL AND
> COMPLIANCE DEPARTMENT**
>
> By: _____
>      Frederic L. Lieberman, Esq. (FLL 9454)
> Attorneys for Defendant
> One Chase Manhattan Plaza, 26th Floor
> New York, New York 10081
> (212) 552-1815

To:     Arthur Z. Schwartz, Esq.
        Schwartz, Lichten & Bright, P.C.
        275 Seventh Avenue, Suite 1700
        New York, New York 10001
        (212) 228-6320

        Attorneys for Plaintiff

# EXHIBIT 51

OPTODED
DOCKET YES___✓___NO_____CLOSED_____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X

SUSAN PINSKY,

                              Plaintiff,                          07 Civ.3328 (CM)

          - against -                                            **FIRST AMENDED**
                                                                 **COMPLAINT**
JP MORGAN CHASE & CO.,

                              Defendant.                          _____  15

---------------------------------------------------------------- X

*U.S. DISTRICT COURT FILED SEP 12 2007 S. D. OF N.Y.*

## **INTRODUCTION**

1.        This is an action brought under the American With Disabilities Act ("ADA"), 42

USC Sec.1210 *et seq,* and the New York City and New York State Human Rights Laws for

damages and injunctive relief, filed by an employee of JP Morgan Chase & Co. (hereinafter

"Chase") who sought to have a disability accommodated, whose disability was not properly

accommodated, and who, as a result,  lost the ability to work for an extended period of time.

## **JURISDICTION**

2.        This Court has jurisdiction over this action pursuant to 42 USC Sec.12112 -

12117, and 28 USC Sec. 1331.

## **PARTIES**

3.        Plaintiff Susan Pinsky, at all relevant times, was an employee of defendant Chase.

4.        Defendant Chase is a financial services corporation whose corporate headquarters

is located at 270 Park Avenue, New York, New York 10017.

## STATEMENT OF RELEVANT FACTS

5.      Plaintiff began her employment with defendant on or about November 12, 2002. Her initial position was Assistant Financial Advisor.  In around February 2004, plaintiff was promoted to the position of Home Equity Loan Officer.  In around July 2005, plaintiff was again promoted by being transferred to the JP Morgan Chase Mega-Branch at 55 Water Street in Manhattan.

6.      Plaintiff's work as a Home Equity Loan Officer for defendant largely involved sitting at a desk, for eight to ten hours a day, speaking with customers on the phone.

7.      In around December 2004 plaintiff began to experience an aching pain in her left hip.  She sought medical attention and was advised that sitting for long periods of time was the cause of the problem.  Prior to her transfer to Water Street, plaintiff was able to alleviate some of the pain by taking breaks, and taking a long walk during lunch.

8.      Upon her transfer to Water Street, plaintiff's workload increased substantially, making it difficult to take breaks and walks.  The hip pain worsened and plaintiff's physician recommended that her employer accommodate her by providing her with a "standing desk."

9.      On or about February 24, 2005, plaintiff presented a medical note to Barbara Zimmer, her Human Resources representative, requesting that she be accommodated with the standing desk.

10.      Despite repeated inquiries by plaintiff, she learned on April 14, 2005 that the desk had not been ordered.  Plaintiff contacted the Human Resources Medical Department which immediately directed plaintiff's manager to order the standing desk.

11.    In fact, the standing desk was never ordered.

12.    During May 2005, plaintiff's hip pain worsened, forcing her to miss work. Upon her return, she was placed at a "service desk," in the back of the branch, which was not constructed in such a way as to alleviate the pressure which was causing plaintiff's hip pain.

13.    On June 1, 2005, plaintiff learned that the standing desk had not been ordered and complained to her supervisor, Dee Lakhani, and Human Resources Representative Barbara Zimmer. Several days later, plaintiff was advised that the desk hadn't been ordered because her position was being eliminated.

14.    In fact, plaintiff's position had been eliminated, as part of a corporate reorganization, well after the accomodation request was made. Although plaintiff's position was being eliminated, she was not terminated from employment. Instead, she was being given sixty days to find a new position within Chase, and fully intended and expected, as a high performing employee, to find a new position.

15.    On or about June 10, 2005, plaintiff had an MRI done and discovered that she had disc herniations. Her physicians ordered her to stop work immediately. After two months of physical therapy plaintiff's pain continued; further tests showed that the lining in her left hip was torn and that cysts and a bone spur had developed on her femur.

16.    Plaintiff's inability to work beginning in June 2005 was a proximate result of defendant's failure to provide a reasonable accommodation for her disability.

17.    In addition, plaintiff, as a proximate result of defendant's failure to accommodate her disability, has suffered from severe hip and back pain, and as a result of the extended period

3

of severe pain and inability to work, has suffered from emotional distress, with additional attendant physical consequences. As a result of therapy, medical treatment, and surgery, plaintiff is expected to regain the ability to work at her profession in about September 2007.

18.    The allegations in paragraphs 1-17 hereunder are incorporated by reference into the Causes of Action set forth below.

## AS AND FOR A FIRST CAUSE OF ACTION

19.    By acting as aforedescribed, defendant discriminated against and failed to accomodate plaintiff in violation of the ADA, 42 USC Sec. 12101 *et seq.*

## AS AND FOR A SECOND CAUSE OF ACTION

20.    By acting as aforedescribed, defendant discriminated against plaintiff because of her disability, in violation of § 296(1) of the New York State Executive Law.

## AS AND FOR A THIRD CAUSE OF ACTION

21.    By acting as aforedescribed, defendant discriminated against plaintiff because of her disability, in violation of the New York City Human Rights Law, Section 8-107(1) *et seq.*

## DAMAGES

22.    Plaintiff, as a result of defendant's action, has suffered a loss of wages and benefits and suffered severe emotional distress, to her injury, in an amount exceeding $2 million.

23.    By proceeding against plaintiff as described hereinabove, defendant acted with malice, or with reckless disregard for plaintiff's health and well being.

4

5

## PRAYER FOR RELIEF

WHEREFORE plaintiff prays that this Court enter judgment:

1.    Awarding plaintiff all pay and benefits lost by her.

2.    Awarding plaintiff $2 million in compensatory damages.

3.    Awarding plaintiff punitive damages in the amount of $2 million.

4.    Awarding plaintiff attorneys' fees and costs.

Dated: August 21, 2007

SCHWARTZ, LICHTEN & BRIGHT, P.C.
Attorneys for Plaintiff

By:

Arthur Z. Schwartz
275 Seventh Ave.  17th Floor
New York, New York  10001
(212) 228-6320
Fax:  (212) 358-1353
E-mail:  districtleader@msn.com

6

# EXHIBIT 52

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

SUSAN PINSKY,                                                :

                                    Plaintiff,              :        07 Civ. 3328 (CM) (HP)

                   - against -                              :        **DEFENDANT'S ANSWER TO**
                                                                     **FIRST AMENDED COMPLAINT**
JP MORGAN CHASE & CO.,                                      :        **AND COUNTERCLAIMS**

                                    Defendant.              :

-------------------------------------------------------------X

     Defendant JPMorgan Chase Bank, N.A. ("the Bank" or "JPMorgan Chase"), incorrectly

named herein as JP Morgan Chase & Co., by its attorney, JPMorgan Chase Legal and

Compliance Department, Frederic L. Lieberman, Assistant General Counsel, as and for its

Answer to the First Amended Complaint and its Counterclaims, asserts as follows:

## AS TO THE INTRODUCTION

     1.     The allegations set forth therein in paragraph "1" of the Complaint constitute a

description of Plaintiff's claims in this action as to which no response is required. To the extent

that JPMorgan Chase is required to respond to the allegations of paragraph "1", JPMorgan Chase

admits that Plaintiff purports to bring this action pursuant to the Americans with Disabilities Act,

the New York State Human Rights Law and the New York City Human Rights Law, denies the

truth of the remainder of the allegations set forth therein and further denies that Plaintiff is entitled

to any remedy or relief.

## AS TO JURISDICTION

     2.     The allegations set forth therein in paragraph "2" of the Complaint constitute

conclusions of law regarding the Court's subject matter jurisdiction over this action as to which

no response is required. To the extent that JPMorgan Chase is required to respond to the allegations of paragraph "2", JPMorgan Chase denies knowledge or information sufficient to form a belief as to the truth of those allegations.

## AS TO PARTIES

3.     Denies the truth of the allegations set forth in paragraph "3" of the Complaint, except admits that Plaintiff was employed by JPMorgan Chase Bank, N.A., and/or its predecessors and subsidiaries from on or about November 12, 2002 through July 10, 2007.

4.     Denies the truth of the allegations set forth in paragraph "4" of the Complaint, except admits that JPMorgan Chase & Co. is a corporation organized under the laws of the State of Delaware, is authorized to do business in New York, and has a principal place of business located at 270 Park Avenue, New York, New York 10017, and avers that the Bank is a national banking association with its main office at 1111 Polaris Parkway, Columbus, Ohio 43240, and further avers that Plaintiff was employed by JPMorgan Chase Bank, N.A., but not by JPMorgan Chase & Co.

## AS TO STATEMENT OF RELEVANT FACTS

5.     Denies the truth of the allegations set forth in paragraph "5" of the Complaint, except avers that Plaintiff was hired by Chase Investment Services Corp., effective November 12, 2002, as a Personal Financial Advisors Assistant, she applied for and was hired by JPMorgan Chase Bank, effective February 1, 2004, as a Home Equity Loan Officer, and that in or about late 2004 or early 2005, although Plaintiff's job title remained the same, Plaintiff's work location was changed to the Bank's Branch located at 55 Water Street, New York, New York.

6.     Denies the truth of the allegations set forth in paragraph "6" of the Complaint.

7.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "7" of the Complaint.

8.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "8 of the Complaint, except denies the truth of the allegation that Plaintiff's workload increased substantially upon her transfer to the 55 Water Street work location.

9.    Denies the truth of the allegations set forth in paragraph "9" of the Complaint.

10.    Denies the truth of the allegations set forth in paragraph "10" of the Complaint, except avers that Plaintiff first submitted her request for an accommodation to the JPMorgan Chase Medical Department on April 4, 2005, which approved her request for an accommodation that same day, and Plaintiff and her manager then agreed that Plaintiff could use an existing customer service workstation that was designed for use by employees who were standing, rather than requiring the Bank to obtain an additional standing desk.

11.    Admits the truth of the allegations set forth in paragraph "11" of the Complaint, except avers that Plaintiff and her manager agreed that Plaintiff could use an existing customer service workstation that was designed for use by employees who were standing, rather than requiring the Bank to obtain an additional standing desk.

12.    Denies the truth of the allegations set forth in paragraph "12" of the Complaint, except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding plaintiff's hip pain.

13.    Denies the truth of the allegations set forth in paragraph "13" of the Complaint, except admits that Plaintiff complained that she had not been provided with a standing desk.

14.    Denies the truth of the allegations set forth in paragraph "14" of the Complaint, except avers that Plaintiff was notified orally in or about March 2005 and in writing on May 20, 2005 that her position as a Home Equity Loan Officer was being eliminated, and that she received a sixty (60) day paid notice period in which to seek a new position before the elimination of her position and the termination of her employment took effect, and denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning her intent and expectations.

15.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph "15" of the Complaint.

16.    Denies the truth of the allegations set forth in paragraph "16" of the Complaint.

17.    Denies the truth of the allegations set forth in paragraph "17" of the Complaint, except denies knowledge or information as to the truth of the allegations regarding when Plaintiff is expected to be able to resume working.

18.    Repeats and realleges its responses to paragraphs "1" through "17" of the Complaint as if fully set forth herein.

### AS TO PLAINTIFF'S FIRST CAUSE OF ACTION

19.    Denies the truth of the allegations set forth in paragraph "19" of the Complaint.

### AS TO PLAINTIFF'S SECOND CAUSE OF ACTION

20.    Denies the truth of the allegations set forth in paragraph "20" of the Complaint.

### AS TO PLAINTIFF'S THIRD CAUSE OF ACTION

21.    Denies the truth of the allegations set forth in paragraph "21" of the Complaint.

### AS TO DAMAGES

22.    Denies the truth of the allegations set forth in paragraph "22" of the Complaint.

23.     Denies the truth of the allegations set forth in paragraph "23" of the Complaint.

24.     The allegations set forth in the "Prayer for Relief" section of the Complaint constitute a demand for relief as to which no response is required. To the extent that JPMorgan Chase is required to respond to the allegations of the "Prayer for Relief", JPMorgan Chase denies that Plaintiff is entitled to any or all of the remedies or relief sought therein.

## AFFIRMATIVE DEFENSES

JPMorgan Chase asserts that it only bears the burden of proof on those matters set forth herein as affirmative defenses within the meaning of Fed. R. Civ. P. 8(c). JPMorgan Chase sets forth its defenses and affirmative defenses to Plaintiff's claims as follows:

## AS AND FOR A FIRST DEFENSE

25.     The Complaint fails, in whole or in part, to state a claim upon which relief can be granted or the damages sought can be awarded.

## AS AND FOR A SECOND DEFENSE

26.     Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to satisfy the jurisdictional prerequisites, appropriate statutes of limitations and/or conditions precedent to asserting any or all of such claims.

## AS AND FOR A THIRD DEFENSE

27.     Plaintiff's disability discrimination claims are barred, in whole or in part, by the fact that any and all actions taken by JPMorgan Chase with respect to Plaintiff were based upon legitimate, non-discriminatory business reasons totally unrelated to Plaintiff's alleged disability, and were without any discriminatory animus or in violation of any rights under any discrimination laws.

## AS AND FOR A FOURTH DEFENSE

28.    Plaintiff's disability discrimination claims are barred because she does not come within the statutory definitions of an individual with a disability or impairment.

## AS AND FOR A FIFTH DEFENSE

29.    Plaintiff's disability discrimination claims are barred because she did not identify herself as an individual with a disability or impairment as defined by the statutes or request an "accommodation" of any alleged disability or impairment at any time.

## AS AND FOR A SIXTH DEFENSE

30.    Plaintiff's claims are barred because any reasonable accommodation requested by Plaintiff would have imposed an undue hardship on the Bank.

## AS AND FOR A SEVENTH DEFENSE

31.    Each and every action taken by JPMorgan Chase was undertaken in good faith and in full compliance with all applicable laws, rules, and regulations.

## AS AND FOR AN EIGHTH DEFENSE

32.    Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## AS AND FOR A NINTH DEFENSE

33.    Upon information and belief, Plaintiff's claims for damages are barred and/or limited in that she has failed to mitigate her damages by using reasonable diligence to seek and obtain comparable employment elsewhere.

## AS AND FOR A TENTH DEFENSE

34.    Plaintiff's claims are barred and/or limited by the doctrine of laches, waiver or estoppel.

6

## AS AND FOR AN ELEVENTH DEFENSE

35.    Plaintiff's claims are barred and/or limited by her fraudulent conduct.

## AS AND FOR A TWELFTH DEFENSE

36.    Plaintiff's claims are barred and/or limited by her violation of the Bank's Code of Conduct.

## AS AND FOR A THIRTEENTH DEFENSE

37.    Plaintiff's damages are barred and/or limited by the after acquired evidence doctrine.

## AS AND FOR A FOURTEENTH DEFENSE

38.    Plaintiff's claims are barred and/or limited by the Release Agreement with JPMorgan Chase Bank that she executed on or about June 24, 2005.

## AS AND FOR A FIFTEENTH DEFENSE

39.    Upon information and belief, Plaintiff's claims pursuant to the New York City Human Rights Law are barred by Plaintiff's failure to serve a copy of the Complaint herein on the New York City Commission on Human Rights.

## AS AND FOR A SIXTEENTH DEFENSE

40.    Plaintiff's claims for punitive damages are barred in that the Bank did not act maliciously or with reckless indifference toward Plaintiff.

## COUNTERCLAIMS

## FACTUAL BACKGROUND

41.    Plaintiff submitted documentation regarding her back condition from her physician to the Bank's Health Services unit on or around April 4, 2005.

42.    JPMorgan Chase's Disability Leave Policy allows qualified employees to take a leave of absence for up to 26 weeks for approved disabilities for any illness or injury that lasts more than one workweek. This leave is only available if an employee is unable to perform the material and substantial duties of his/her position on an active employment basis.

43.    The portion of the short-term disability leave which is paid, and the rate of payment, is based upon years of service with JPMorgan Chase.

44.    As a result of her back condition, Plaintiff commenced a leave of absence from her employment with the Bank beginning on or around June 13, 2005.

45.    Plaintiff was approved for, and received, short-term disability benefits for the period from June 13, 2005 through December 11, 2005.

46.    JPMorgan Chase's Disability Leave Policy provides that, when an employee's position is eliminated during an approved disability leave, the employee's employment termination date typically will be deferred until the employee's disability leave has ended.

47.    JPMorgan Chase's Disability Leave Policy provides that, where an employee's disability continues after completing an approved 26 week short-term disability leave, the employee may be eligible for long-term disability benefits if the employee elected long-term disability coverage under the Bank's employee benefit plan.

48.    Plaintiff elected long-term disability coverage under the Bank's employee benefit plan for the 2002, 2003, 2004, 2005, 2006, and 2007 benefits years.

49.    Plaintiff was approved for long-term disability benefits by The Hartford as of December 12, 2005.

50.    Plaintiff commenced a long-term disability leave of absence beginning on or around December 12, 2005.

8

51.    JPMorgan Chase's Disability Leave Policy provides that, when an employee is approved for long-term disability benefits, the employee will be placed on LTD employment status.

52.    Plaintiff was placed on LTD status as of December 12, 2005.

53.    The Hartford terminated Plaintiff's long-term disability leave as of July 10, 2007, based on information submitted by one of Plaintiff's health care providers.

54.    Upon information and belief, Plaintiff has received long-term disability payments continuously since in or about December 2005 through and including July 2007.

55.    Upon information and belief, Plaintiff has received an amount of long-term disability benefits commensurate with being considered fully disabled and unable to work.

56.    During her long-term disability leave, Plaintiff from time to time has submitted proof to The Hartford that she remained fully disabled and was eligible to continue to receive long-term disability benefits.

57.    JPMorgan Chase's Disability Leave Policy provides that, when an employee is on a disability leave, the employee continue many of his/her elected benefits so long as the employee makes the necessary contributions.

58.    Plaintiff elected medical, dental, and vision coverage for the 2006 and 2007 benefits years under the Bank's benefit plan.

59.    Under the Bank's benefit plan, medical, dental, and vision coverage are paid in part by the employee and in part by the Bank.

60.    The Bank has paid for medical, dental, and vision coverage for Plaintiff for the 2006 and 2007 benefits years.

61.    The JPMorgan Chase & Co. Code of Conduct provides that all employees are required to obtain pre-clearance for any paid, outside activity, including a second job, or any affiliation with another business as an officer, or in any similar position.

62.    Plaintiff affirmed that she would comply with the Code of Conduct on December 18, 2002, October 21, 2003, and March 3, 2005.

63.    Upon information and belief, notwithstanding all of the foregoing, Plaintiff was employed by, performed services for, and/or was affiliated with Tri-State Biodiesel, LLC as its Chief Administration Officer.

64.    Plaintiff also was and is an investor in Tri-State Biodiesel, LLC.

65.    Upon information and belief, Plaintiff failed to advise The Hartford that she no longer was disabled.

66.    Plaintiff failed to advise the Bank that she no longer was disabled and could be removed from LTD status pursuant to the provisions of the Bank's Disability Leave Policy.

67.    As a result of Plaintiff's failure to advise the Bank that she no longer was disabled and could be removed from LTD status, the Bank did not terminate Plaintiff's employment following the elimination of her position, and Plaintiff continued to be eligible for, and receive, medical, dental and vision benefits at the employee contribution rate rather than at the higher COBRA rate for terminated employees.

68.    Plaintiff neither requested, nor received, any pre-clearance from the Bank regarding her employment with Tri-State Biodiesel, despite being required to do so by the JPMorgan Chase Code of Conduct.

69.     Plaintiff neither requested, nor received, any pre-clearance from the Bank regarding her investments in Tri-State Biodiesel, despite being required to do so by the JPMorgan Chase Code of Conduct.

70.     Plaintiff failed to advise the Bank that she now is employed by Tri-State Biodiesel.

## AS AND FOR A FIRST COUNTERCLAIM

## FRAUD

71.     Defendant realleges and incorporates by reference Paragraphs "41" through "70" as if fully set forth hereat.

72.     During some or all of the period during which Pinsky was on short-term and long-term disability leave from JPMorgan Chase, Pinsky represented to JPMorgan Chase that she was fully disabled and unable to work and/or concealed the fact that she was not fully disabled and was able to work.

73.     Pinsky knew that such representations were false during some or all of the period during which she was on short-term and long-term disability leave from JPMorgan Chase.

74.     Pinsky intended to mislead JPMorgan Chase regarding her alleged disability and ability to work during some or all of the period during which she was on short-term and long-term disability leave from JPMorgan Chase.

75.     JPMorgan Chase reasonably relied on Pinsky's representations that she was fully disabled and unable to work.

76.     Had JPMorgan Chase known that Pinsky no longer was fully disabled and was able to work, it would have proceeded with the termination of her employment pursuant to the job elimination notice which she received on or about May 30, 2005.

11

77.    As a direct and proximate result of Pinsky's misrepresentations and/or concealment of relevant facts, Pinsky has been able to received medical, dental, and vision benefits coverage under the JPMorgan Chase benefits plan at the employee cost, which includes an employer contribution, rather than at the COBRA cost, which does not include an employer contribution.

78.    As a direct and proximate result of Pinsky's misrepresentations and/or concealment of relevant facts, and JPMorgan Chase's reliance on those facts, JPMorgan Chase has been damaged.

## AS AND FOR A SECOND COUNTER-CLAIM

### UNJUST ENRICHMENT

79.    Defendant realleges and incorporates by reference Paragraphs "41" through "70" as if fully set forth hereat.

80.    During some or all of the period during which Pinsky was on short-term and long-term disability leave from JPMorgan Chase, Pinsky was enriched in that she was able to obtain medical, dental, and vision benefits coverage at the employee cost rather than at the COBRA cost.

81.    During some or all of the period during which Pinsky was on short-term and long-term disability leave from JPMorgan Chase, Pinsky was enriched at JPMorgan Chase's expense in that JPMorgan Chase made employer contributions to her medical, dental, and vision benefits coverage, rather than Pinsky bearing the entire cost of such benefits.

82.    Equity and good conscience militate against permitting Pinsky to retain the difference between the COBRA cost and the employee cost of such benefits in that Pinsky was not entitled to receive such benefits at the employee cost.

## AS AND FOR A THIRD COUNTER-CLAIM

### BREACH OF CONTRACT

83.    Defendant realleges and incorporates by reference paragraphs "41" through "70" as if fully set forth hereat.

84.    JPMorgan Chase & Co.'s Code of Conduct, although not an employment contract, sets forth certain terms and conditions of employment with JPMorgan Chase.

85.    Every JPMorgan Chase employee's compliance with the Code of Conduct and with other applicable policies and procedures is a term and condition of his/her employment by JPMorgan Chase.

86.    By failing to request and obtain clearance from JPMorgan Chase to hold her position as Chief Administration Officer with Tri-State Biodiesel, LLC, and to invest in Tri-State Biodiesel, LLC, Plaintiff breached her agreement with JPMorgan Chase to comply with the terms of the Code of Conduct.

87.    JPMorgan Chase has been injured by Plaintiff's breach of her agreement to comply with the terms of the Code of Conduct.

**WHEREFORE,** Defendant JPMorgan Chase Bank, N.A. demands judgment against Plaintiff:

(a)    dismissing the Complaint in its entirety with prejudice;

(b)    denying the demands and prayer for relief contained in the Complaint;

(c)    granting judgment in favor of JPMorgan Chase Bank, N.A. and awarding it damages on each of its counterclaims;

(d)    awarding Defendant JPMorgan Chase Bank, N.A. its reasonable costs, disbursements, and attorneys' fees; and

    (e)    granting such other further relief as may be just and proper.

Dated: January 30, 2008

                    **JPMORGAN CHASE LEGAL AND COMPLIANCE DEPARTMENT**

                    By:
                        Frederic L. Lieberman, Esq.
                    Attorneys for Defendant
                    One Chase Manhattan Plaza, 26th Floor
                    New York, New York 10081
                    (212) 552-1815
                    frederic.l.lieberman@jpmchase.com

To:    Arthur Z. Schwartz, Esq.
        Schwartz, Lichten & Bright, P.C.
        275 Seventh Avenue, Suite 1700
        New York, New York 10001
        (212) 228-6320

        Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

SUSAN PINSKY,                                          :

                              Plaintiff,               :          Index No. 104146/07

                                                       :          **AFFIDAVIT OF SERVICE**

            - against -                                :

JP MORGAN CHASE & CO.,                                 :

                              Defendant.    :

----------------------------------------------------------------X

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

Marlene Thompson _____, being duly sworn, deposes and says, that deponent is not a party to the action, is over eighteen years of age and is employed by JPMorgan Chase Bank, N.A., and that on the 30th day of January, 2008, deponent served the within:

### DEFENDANT'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

To:    Arthur Z. Schwartz, Esq.
       Schwartz, Lichten & Bright, P.C.
       275 Seventh Avenue, Suite 1700
       New York, New York 10001

by the address designated for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

Sworn to before me this
30th day of January 30, 2008

_Vivian Patricia Falcone_
Notary Public

VIVIAN PATRICIA FALCONI
Notary Public, State of New York
No. 41-4835878
Qualified in Queens County
Certificate Filed in New York County
Commission Expires Aug 31 , 20 09

157604:v1

## Answers to Complaints
1:07-cv-03328-CM-HBP Pinsky v. JP Morgan Chase & Co.
CASREF, ECF

### U.S. District Court

### United States District Court for the Southern District of New York

### Notice of Electronic Filing

The following transaction was entered by Lieberman, Frederic on 1/30/2008 at 4:15 PM EST and filed on 1/30/2008
**Case Name:**          Pinsky v. JP Morgan Chase & Co.
**Case Number:**        1:07-cv-3328
**Filer:**              JP Morgan Chase & Co.
**Document Number:** 31

**Docket Text:**
**ANSWER to Amended Complaint., COUNTERCLAIM against Susan Pinsky. Document filed by JP Morgan Chase & Co.. Related document: [15] Amended Complaint filed by Susan Pinsky. (Lieberman, Frederic)**

**1:07-cv-3328 Notice has been electronically mailed to:**

Frederic L. Lieberman    susan.mcnamara@chase.com

Arthur Z Schwartz    districtleader@msn.com

**1:07-cv-3328 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=1/30/2008] [FileNumber=4225972-0
] [394cffeb2b80d6164521c5a202b92c48a9f128b0687cea22a669d5920018ea5fa9d
2e45ea1d8c3e542758b1528732d6a2eb793da9ed31c21de065ce1f1c8919d]]