**Defendant's Reply Exhibit 9**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

SUSAN PINSKY,                                      :

                              Plaintiff,           :        07 Civ. 3328 (CM) (HP)

            - against -                            :        **DEFENDANT'S FIRST**
                                                            **REQUEST TO PLAINTIFF**
JP MORGAN CHASE & CO.,                             :        **FOR PRODUCTION OF**
                                                            **DOCUMENTS**
                              Defendant.           :

--------------------------------------------------------------X

　　　　PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 34, Defendant JPMorgan

Chase Bank, N.A. ("the Bank" or "JPMorgan Chase"), incorrectly named herein as JP Morgan

Chase & Co., by its attorney, JPMorgan Chase Legal and Compliance Department, Frederic L.

Lieberman, Assistant General Counsel, hereby requests that Plaintiff Susan Pinsky produce and

permit counsel for Defendant an opportunity to inspect and copy the following documents at the

offices of the JPMorgan Chase Legal and Compliance Department, One Chase Manhattan Plaza,

26th Floor, New York, New York 10081, at 10:00 a.m. on July 9, 2007.  Compliance with this

request can be made by delivering, or by mailing copies, of said documents to Frederic L.

Lieberman, Esq., JPMorgan Chase Legal and Compliance Department, One Chase Manhattan

Plaza, 26th Floor, New York, New York 10081 on or before July 9, 2007.

## DEFINITIONS AND INSTRUCTIONS

　　　　Defendant incorporates herein all the applicable instructions and definitions set forth in Fed.

R. Civ. P. 26 and 34(a) and Local Civil Rules 26.2, 26.3, and 26.5. In addition, for the purposes of

these document requests, the instructions, definitions and rules of construction set forth below also

apply.

157774:v1

## A.    **Instructions**

1.    The documents provided in response to these requests must include all documents available to Plaintiff, including documents in the possession or control of her agents and employees, including her attorneys, his investigators and all persons acting on her behalf or under her control.

2.    With respect to any documents or portions thereof which have been lost, destroyed, discarded or otherwise disposed of since their preparation or receipt, provide the following information separately as to each such document: general description of the subject matter; author; recipient(s); date; last custodian of the document or copies thereof; the full particulars or circumstances whereby the document was lost, destroyed, discarded or otherwise disposed of; and a description sufficient to form the basis for a request for production of any other document(s) containing some or all of the information contained in the document lost, destroyed, discarded or otherwise disposed of.

3.    These requests are continuing.  If, after responding to these requests, Plaintiff obtains or becomes aware of any further documents responsive to these requests, supplementary production is required.  Such supplementary responses are to be served upon counsel for Defendant within ten (10) days after Plaintiff knows, or should have known, of such documents.

4.    Unless otherwise stated above, the document requests are not limited as to time period.

## B.    **Definitions**

1.    "Plaintiff" means Plaintiff Susan Pinsky.

2

2.    "Complaint" means the Complaint in this action, filed by Plaintiff Susan Pinsky in the Supreme Court of the State of New York, County of New York, on or about March 27, 2007.

3.    "JPMorgan Chase" means JPMorgan Chase Bank, N.A., and, where applicable, its officers, directors, employees, desks, departments, operating units, partners, corporate parent, subsidiaries or affiliates and merged entities.

5.    "Defendant" means JPMorgan Chase Bank, N.A.

6.    "Document" means any medium upon, through or by which intelligence or information is recorded, in whole or in part, or from which intelligence or information may be retrieved. This includes, but is not limited to, any printed, typewritten, handwritten, word processed, recorded or other graphic matter of any kind or nature whatsoever, however produced or reproduced, whether sent or received or neither; any and all drafts, abstracts or copies bearing notations or markings not found on the original; and any and all writings, drawings, graphs, emails, instant messages, charts, files, databases, correspondence, transcripts, contracts, agreements, letters, envelopes, purchase orders, memoranda, telegrams, notes, marginal notations, summaries, opinions, forms, catalogues, journals, fact sheets, credit files, credit reports, credit requests, records, articles, brochures, diaries, reports, calendars, interoffice communications, statements, jottings, announcements, authorizations, investigations, checks, check stubs, bank statements, financial statements, notices, accounts, account statements, messages, telephone messages, applications, minutes, papers, charts, day books, pleadings, notices, excerpts, clippings, sworn or unsworn testimony, interviews, examinations, depositions, affidavits, negotiable instruments, photographs, phone records and other data compilations, tape or video recordings (and transcripts thereof), motion pictures and any carbon or photographic

copies of any such material in Plaintiff's possession, custody or control, or formerly in his possession, custody or control, or to which Plaintiff has or has had access if Plaintiff does not have custody or control of the original.   A draft or non-identical copy is a separate document within the meaning of this term.

7.    "Employee" refers to all employees, including officials, officers, managers, professionals, office and clerical employees, trainees, supervisors, superiors or co-employees of Plaintiff and any other person carried on the payroll of JPMorgan Chase.

8.    "Identify," when used with reference to a corporation, association or other entity, means to state: (a) the legal name under which such entity is incorporated or registered; (b) the state in which such entity is incorporated or registered; (c) the full business address, including telephone number of such entity; and (d) the officers of such entity.

9.    "Identify," when used with reference to an oral communication, means to state: (a) the nature, subject matter and substance, in detail, of the oral communication; (b) each date, time, place and party to the oral communication, or some other means of identifying same, including the identity of each person making or receiving the oral communication; (c) the medium (e.g., in person, telephonic) through which the oral communication was made; (d) each person who participated in the oral communication; (e) each other person hearing the oral communication; and (f) whether any document refers, pertains or relates thereto, which concerns such oral communication, or which was prepared in anticipation or as a consequence of the oral communication, and if so, identify the document in accordance with the foregoing paragraph.

10.    "Person" means any natural person, individual, or any business, firm, corporation, association, organization or other entity or association.

11.    "Produce" means to provide each document, front and back, if applicable, demanded above in its best available form. All documents shall be segregated in accordance with the numbered paragraphs below.

C.    **Rules of Construction**

1.    Any pronoun shall mean the masculine, feminine or neuter gender, as in each case may be appropriate.

## DOCUMENTS TO BE PRODUCED

1.    All documents concerning the allegation that "Plaintiff Susan Pinsky, at all relevant times, was an employee of defendant Chase," as set forth in Paragraph "3" of the Complaint.

2.    All documents concerning the allegation that "Plaintiff began her employment with defendant on or about November 12, 2002," as set forth in Paragraph "5" of the Complaint.

3.    All documents concerning the allegation that Plaintiff's "initial position was Assistant Financial Advisor," as set forth in Paragraph "5" of the Complaint.

4.    All documents concerning the allegation that "[i]n around February 2004, plaintiff was promoted to the position of Home Equity Loan Officer," as set forth in Paragraph "5" of the Complaint.

5.    All documents concerning the allegation that "[i]n around July 2005, plaintiff was again promoted by being transferred to the JP Morgan Chase Mega-Branch at 55 Water Street in Manhattan," as set forth in Paragraph "5" of the Complaint.

6.    All documents concerning the allegation that "Plaintiff's work as a Home Equity Loan Officer for defendant largely involved sitting at a desk, for eight to ten hours a day, speaking with customers on the phone," as set forth in Paragraph "6" of the Complaint.

7.    All documents concerning the allegation that "[i]n around December 2004 plaintiff began to experience an aching pain in her left hip," as set forth in Paragraph "7" of the Complaint.

8.    All documents concerning the allegation that Plaintiff "sought medical attention and was advised that sitting for long periods of time was the cause of the problem," as set forth in Paragraph "7" of the Complaint.

9.    All documents concerning the allegation that "[p]rior to her transfer to Water Street, plaintiff was able to alleviate some of the pain by taking breaks, and taking a long walk during lunch," as set forth in Paragraph "7" of the Complaint.

10.    All documents concerning the allegation that "[u]pon her transfer to Water Street, plaintiff's workload increased substantially, making it difficult to take breaks and walks," as set forth in Paragraph "8" of the Complaint.

11.    All documents concerning the allegation that Plaintiff's "hip pain worsened and plaintiff's physician recommended that her employer accommodate her by providing her with a 'standing desk'," as set forth in Paragraph "8" of the Complaint.

12.    All documents concerning the allegation that "[o]n or about February 24, 2005, plaintiff presented a medical note to Barbara Zimmer, her Human Resources representative, requesting that she be accommodated with the standing desk," as set forth in Paragraph "9" of the Complaint.

13.    All documents concerning the allegation that "[d]espite repeated inquiries by plaintiff, she learned on April 14, 2005 that the desk had not been ordered," as set forth in Paragraph "10" of the Complaint.

14.    All documents concerning the allegation that "Plaintiff contacted the Human Resources Medical Department which immediately directed plaintiff's manager to order the standing desk," as set forth in Paragraph "10" of the Complaint.

15.    All documents concerning the allegation that "the standing desk was never ordered," as set forth in Paragraph "11" of the Complaint.

16.    All documents concerning the allegation that "[d]uring May 2005, plaintiff's hip pain worsened, forcing her to miss work," as set forth in Paragraph "12" of the Complaint.

17.    All documents concerning the allegation that "[u]pon her return, [Plaintiff] was placed at a 'service desk,' in the back of the branch, which was not constructed in such a way as to alleviate the pressure which was causing plaintiff's hip pain," as set forth in Paragraph "12" of the Complaint.

18.    All documents concerning the allegation that "[o]n June 1, 2005, plaintiff learned that the standing desk had not been ordered and complained to her supervisor, Dee Lakhani, and Human Resources Representative Barbara Zimmer," as set forth in Paragraph "13" of the Complaint.

19.    All documents concerning the allegation that "plaintiff was advised that the desk hadn't been ordered because her position was being eliminated," as set forth in Paragraph "13" of the Complaint.

20.    All documents concerning the allegation that "plaintiff's position had been eliminated as part of a corporate reorganization," as set forth in Paragraph "14" of the Complaint.

21.     All documents concerning the allegation that Plaintiff "was being given sixty days to find a new position within Chase, and fully intended and expected, as a high performing employee, to find a new position," as set forth in Paragraph "14" of the Complaint.

22.     All documents concerning the allegation that "[o]n or about June 10, 2005, plaintiff had an MRI done and discovered that she had disc herniations," as set forth in Paragraph "15" of the Complaint.

23.     All documents concerning the allegation that Plaintiff's "physicians ordered her to stop work immediately," as set forth in Paragraph "15" of the Complaint.

24.     All documents concerning the allegation that "[a]fter two months of physical therapy plaintiff's pain continued; further tests showed that the lining in her left hip was torn and that cysts and a bone spur had developed on her femur," as set forth in Paragraph "15" of the Complaint.

25.     All documents concerning the allegation that "Plaintiff's inability to work since June 2005 was a proximate result of defendant's failure to provide a reasonable accommodation for her disability," as set forth in Paragraph "16" of the Complaint.

26.     All documents concerning the allegation that "plaintiff, as a proximate result of defendant's failure to accommodate her disability, has suffered from severe hip and back pain," as set forth in Paragraph "17" of the Complaint.

27.     All documents concerning the allegation that Plaintiff, "as a result of the extended period of severe pain and inability to work, has suffered from emotional distress, with additional attendant physical consequences," as set forth in Paragraph "17" of the Complaint.

28.    All documents concerning the allegation that "[b]y acting as aforedescribed, defendant discriminated against plaintiff because of her disability, in violation of § 296(1) of the New York State Executive Law," as set forth in Paragraph "19" of the Complaint.

29.    All documents concerning the allegation that "[b]y acting as aforedescribed, defendant discriminated against plaintiff because of her disability, in violation of the New York City Human Rights Law, Section 8-107(1) et seq.," as set forth in Paragraph "20" of the Complaint

30.    All documents concerning the allegation that "Plaintiff, as a result of defendant's action, has suffered a loss of wages and benefits and suffered severe emotional distress, to her injury, in an amount exceeding $2 million," as set forth in Paragraph "21" of the Complaint.

31.    All documents concerning the allegation that "[b]y proceeding against plaintiff as described hereinabove, defendant acted with malice, or with reckless disregard for plaintiff's health and well being," as set forth in Paragraph "22" of the Complaint.

32.    All documents concerning Plaintiff's employment with JPMorgan Chase, including, but not limited to, handbooks, manuals, company policies and procedures, employment contracts, severance packages, and benefit plans.

33.    All documents concerning any evaluation of Plaintiff's job performance.

34.    All documents given to Plaintiff regarding her job performance while employed by JPMorgan Chase.

35.    All notes, writings, computer stored data, tapes or documents of any kind that contain Plaintiff's recording or recollection of events that occurred during Plaintiff's employment with JPMorgan Chase.

36. All diaries, calendars, chronologies of events, correspondence files, meeting notes, minutes, tape recordings, logs, e-mails or other records maintained between January 1, 2004 through the present regarding Plaintiff's employment with JPMorgan Chase.

37. All diary or journal entries concerning Plaintiff's employment or the cessation of her employment with JPMorgan Chase.

38. All correspondence or notes of conversations between Plaintiff and any other individuals, including but not limited to any of her friends, acquaintances, relatives, or any current or former employees of Defendant, concerning Plaintiff's employment or the cessation of her employment with JPMorgan Chase.

39. All documents reflecting or concerning compensation or benefits received by Plaintiff in connection with her employment with JPMorgan Chase.

40. Plaintiff's federal, state and local income tax returns (including but not limited to W-2s, K-1s and 1099s) for the years 2005 through and including the present.

41. All documents reflecting or concerning income earned by Plaintiff during the time period January 1, 2005 through and including the present.

42. Any and all documents concerning Plaintiff's financial assets or holdings from January 1, 2005 through the present, including, but not limited to, bank statements, stock market or brokerage account statements, trust fund statements, 401K and individual retirement account statements, and mutual fund account statements.

43. All documents concerning any claim by Plaintiff for, or her receipt of, short- and/or long-term disability benefits from JPMorgan Chase and/or The Hartford during the period from January 1, 2005 through the present, including but not limited to documents concerning the consideration and/or disposition of any such claim.

44.     All documents concerning any claim by Plaintiff for, or her receipt of, workers' compensation benefits in connection with her employment with Defendant, including but not limited to documents concerning the consideration and/or disposition of any such claim.

45.     All documents concerning any claim by Plaintiff for, or her receipt of, unemployment compensation benefits in connection with her employment with Defendant, including but not limited to documents concerning the consideration and/or disposition of any such claim.

46.     All documents concerning any claim by Plaintiff for, or her receipt of, public assistance benefits during the period from January 1, 2005 through the present, including but not limited to documents concerning the consideration and/or disposition of any such claim.

47.     All documents concerning any claim by Plaintiff for, or her receipt of, Social Security disability benefits during the period from January 1, 2005 through the present, including but not limited to documents concerning the consideration and/or disposition of any such claim.

48.     All documents concerning any claim by Plaintiff for, or her receipt of, medical or dental insurance benefits during the period from January 1, 2005 through the present, including but not limited to documents concerning the consideration and/or disposition of any such claim.

49.     All documents concerning Plaintiff's efforts to secure employment since January 1, 2004, including, but not limited to, employment applications and documents prepared, submitted or received by Plaintiff, and any responses thereto, correspondence to or from other employers, potential employers, persons or recruiting firms, documents related to the acquisition of any business, and all versions of Plaintiff's employment resume.

50.    All documents concerning Plaintiff's employment or self-employment from January 1, 2004 to the present, including, but not limited to, documents concerning compensation and benefits following the end of his employment with JPMorgan Chase.

51.    All documents concerning Plaintiff's employment with, or provision of services to, Tri-State Biodiesel LLC.

52.    All documents concerning any medications (prescription or non-prescription) prescribed for, taken by or administered to Plaintiff since January 1, 2004.

53.    All documents concerning Plaintiff's receipt of health care services of any type (including but not limited to physical health and mental health services) since January 1, 2004.

54.    Documents sufficient to show Plaintiff's educational background or work experience, including but not limited to resumes, diplomas and certificates from any secondary or post-secondary educational institution.

55.    All documents received or taken from JPMorgan Chase.

56.    All files, records, or documents concerning any current or former employee of JPMorgan Chase.

57.    All written statements rendered by any person that Plaintiff may call as a witness in the trial of this matter.

58.    All documents and/or reports rendered by any expert who has been contacted and/or retained for this litigation by Plaintiff.

59.    Except attorney work product, all reports prepared or rendered in connection with any investigation of the facts underlying this action.

60.    All documents Plaintiff reviewed or obtained in connection with any investigation of her claims in this action.

61.    All documents or statements Plaintiff obtained from Defendant or any of its agents concerning the allegations in Plaintiff's Complaint.

62.    All statements (oral or written) Plaintiff obtained from any individuals concerning the allegations in Plaintiff's Complaint.

63.    All documents or statements which Plaintiff contends constitute an admission against interest by Defendant or any of its agents.

64.    All documents Plaintiff intends to use at the trial of this action.

65.    All documents concerning the allegations and causes of action set forth in Plaintiff's Complaint.

66.    All documents concerning any damages Plaintiff intends to seek at the trial of this action including, but not limited to, the claims for damages set forth in Plaintiff's Complaint.

67.    All copies and drafts of Plaintiff's discrimination complaints filed against JPMorgan Chase.

68.    All documents submitted by Plaintiff or anyone on behalf of Plaintiff to the Equal Employment Opportunity Commission ("EEOC"), the New York State Division on Human Rights ("NYSDHR"), the New York City Commission on Human Rights ("NYCCHR") or any other government agency concerning alleged discrimination against Plaintiff by Defendant.

69.    All documents received by Plaintiff or her representatives from the EEOC, the NYSDHR, the NYCCHR, or any other government agency concerning Plaintiff's allegations of discrimination against him by JPMorgan Chase.

70.    All documents concerning complaints of discrimination (whether formal or informal complaints and regardless of whether filed with the EEOC, the NYSDHR, the

NYCCHR, or any other agency, court, individual or entity) made by Plaintiff against any individual or entity, aside from Plaintiff's Complaint in this action.

71.    All emails and/or instant messages, whether from a JPMorgan Chase system/account or a personal system/account, concerning any of the allegations of the Complaint.

72.    All documents or copies of documents identified or referred to or reviewed by Plaintiff in responding to Defendant's First Set Of Interrogatories To Plaintiff.

73.    All documents not previously identified in response to these document requests or in Plaintiff's responses to Defendant's First Set Of Interrogatories To Plaintiff which in any way concern the allegations in Plaintiff's Complaint.

Dated: June 4, 2007

JPMORGAN CHASE LEGAL AND
COMPLIANCE DEPARTMENT

By: _____
     Frederic L. Lieberman, Esq. (FLL 9454)
Attorneys for Defendant
One Chase Manhattan Plaza, 26th Floor
New York, New York 10081
(212) 552-1815

To:    Arthur Z. Schwartz, Esq.
       Schwartz, Lichten & Bright, P.C.
       275 Seventh Avenue, Suite 1700
       New York, New York 10001
       (212) 228-6320

       Attorneys for Plaintiff

**Defendant's Reply Exhibit 12**

OFFICE RECORD

DOCKET YES ___/___ NO _____ CLOSED _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

SUSAN PINSKY,

               Plaintiff,              07 Civ. 3328 (CM) (HP)

      - v. -                        PLAINTIFF'S RULE 26
                                    DISCLOSURE STATEMENT

J P MORGAN CHASE & CO.,

               Defendant.

------------------------------------------------------------ X

     Plaintiff, by her attorney, as and for her disclosure pursuant to FRCP 26, submits as

follows:

    1.    The name and known address and phone number of witnesses, other than

plaintiff, and individuals listed by plaintiff, likely to have discoverable information that the

disclosing party may use to support her claims:

| Name | Address/Phone |
| --- | --- |
| Luz Blanco | c/o J P Morgan Chase Branch 55 55 Water Street, New York, NY |
| Bryan Nestor, MD | 535 East 70th Street, New York, NY  10021 212-606-1484 |
| Rubin Inbar, MD | 285 Lexington Avenue, New York, NY 212-213-0001 |
| Richard Goldberg, MD | 22 West 15th Street, New York, NY 212-206-7717 |
| Steven Weinberg, MD | 50 Lexington Avenue, New York, NY  10010 212-995-1515 |
| Steven Martin, MD | 155 E. 38th Street, New York, NY  10010 212-682-5059 |

| | |
|---|---|
| Lorette Friedman | 80 Fifth Avenue, New York, NY 10014<br>212-243-5515 |
| Heather Case | Comprehensive Physical Therapy<br>1560 Broadway, New York, NY<br>212-938-0100 |
| Michael Hearns, MD | 26 Court Street, Brooklyn, NY 11242<br>718-797-9111 |
| Richard Koffler, MD | 61 Broadway, New York, NY 10006<br>212-747-0934 |
| David Maiman, MD | Hospital for Special Surgery<br>535 E. 70th Street, New York, NY 10021<br>212-774-2024 |
| Christopher Catopano | current address unknown<br>516-318-7887 |
| Claire Fitzpatrick | 30 East 20th Street, New York, NY<br>646-290-5827 |
| Anne Covalt | 211 Grand Street, New York, NY<br>917-494-0722 |

Except for Luz Blanco, each of these individuals is a medical practitioner (doctor, chiropractor, or physical therapist) who provided treatment to plaintiff and is knowledgeable about her physical and/or psychiatric history and treatment.

Luz Blanco was at all relevant times a co-employee at J P Morgan Chase who observed plaintiff at work.

2.    Documents in the possession of plaintiff:

a.    E-mails and memos to managerial and medical staff at J P Morgan Chase.

b.    Medical records.

c.    Tax returns.

2

3.    Damages — Plaintiff cannot at this time calculate her damages.  In broad terms,

he losses include compensation and pain, suffering, and emotional trauma.


Dated: New York, New York
       July 16, 2007


                                        SCHWARTZ, LICHTEN & BRIGHT, P.C.
                                        Attorneys for Plaintiff

                                By:     _____
                                        Arthur Z. Schwartz
                                        275 Seventh Avenue, 17th Floor
                                        New York, New York  10001
                                        (212) 228-6320


TO:    Frederic L. Lieberman, Esq.
       J P Morgan Chase Legal Dept.
       One Chase Manhattan Plaza, 26th Floor
       New York, New York  10081

**Defendant's Reply Exhibit 13**

DOCKET YES ✓ NO____ CLOSED____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

SUSAN PINSKY                              :       07 Civ. 3328 (CM) (HP)

                Plaintiff,            :       PLAINTIFF'S RESPONSE TO
                                                DEFENDANT'S FIRST SET
   - against -                          :       OF INTERROGATORIES

JP MORGAN CHASE & CO.,                    :

                Defendant.          :

-------------------------------------------------------------- X

       Plaintiffs respond as follows to the First Set of Interrogatories propounded by defendant JP

Morgan Chase:

      **INTERROGATORY NO. 1**

      Identify all persons with knowledge or information concerning the facts and subject
matter of this action.

      **RESPONSE**

    1)       Craig Ortiz

            Address: 48 West 8[th]st. Apt. 3A NY, NY 10011

    2)       Luz Blanco

            Address: Chase Bank 55 Water St. NY, NY  10041

    3)       Nick Harper

            Address: JPM Chase 270 Park Ave NY, NY 10017

    4)       Diana Czuchta

            Address: Chase Bank 55 Water St. New York, NY 10041

    5)       Elena Nevins

            Address: 270 Park Ave NY, NY 10017

6)    Melissa Kaminsky
       Address: 151 East 3rd St. Apt. 3B NY, NY 10009

7)    Rebecca Begin
       Address: 7125 Delongprey Los Angeles, CA 90024

8)    Dimitr Todronov   (MD)
       Address: Sportclub/LA 330 East 61st NY, NY 11215

9)    John Bovill
       Address: 535 West 49th St. #2Fe NY, NY 10019

10)   Mac Brillhart
       Address: Unknown

11)   Heather Case  (PT)
       Address: 1560 Broadway #609 NY, NY 10036

12)   Migdalia Centeno
       Address: 270 Park Ave NY, NY 10017

13)   Keith Swanson
       Address: 270 Park Ave NY, NY 10017

14)   Chris Catapano   (MD)
       Address Unknown

15)   Stan Chen
       Address: 100 Reade St Apt 5B NY, NY 10013

16)   Kimba Pitman
       Address: 100 Reade St. Apt. 5B NY, NY 10013

17)   Frank Hark
       Address: 186 South 8th St. Brooklyn, NY 11211

18)   Kevin Diamon
       Address: 270 Park Ave. NY, NY

19)   Patrick Donohue
       Address: Merrill Lynch 717 Fifth Ave NY, NY 10022

2

20) Mike (last name unknown)
Address: Unknown

21) Dr. Loretta Friedman (MD)
Address: 80 Fifth Ave. NY, NY 10014

22) Dr. Richard Goldberg (MD)
22 West 15th St. NY, NY

23) Dr. Andrew Martin    (MD)
Address: 155 West 38th St. NY, NY 10010

24) Dr. Frank Scaccia    (MD)
Address: 70 East Front St. Red Bank, NJ

25) Dr. Stephen Weinberg (MD)
Address: 50 Lexington Ave. NY, NY 10010

26) Dr. Claire Fitzpatrick   (MD)
Address: 30 East 20th St. NY, NY

27) Dr. Howard Goodman (MD)
Address: 15 Park Ave. NY, NY

28) Dr. Herns(MD)
Address: 26 Court St. Brooklyn, NY 11242

29) Dr. David Mayman    (MD)
Address: HSS 535 E.70th St. NY, NY 10021

30) Dr. Bryan Nestor     (MD)
Address: HSS 535 E. 70th St. NY, NY 10021

31) Jennifer Reed
Address: Unknown

32) Dan Flynn
Address: 270 Park Ave. NY, NY 10017

33) Joel Fredrickson
Address: 312 Rugby Road Brooklyn, NY 11226

34) Charlie Grindstaff
Address: 206 Main St. White Plains, NY 10601

3

35) David Hoffer
   Address:  177 East Hartsdale Ave. Hartsdale, NY 10530

36) Dr. Ann Covalt        (MD)
   Address: 211 Grand St. NY, NY 10013

37) Pedro Caberello        (DM)
   Address: 300 East 64th St. NY, NY 10021

38) Yafa Lamm
   Address: 244 Colony St. West Hempstead, NY 11552

39) David Lamm
   Address: 244 Colony St. West Hempstead, NY 11552

40) Michael Lanning
   Address: Wells Fargo530 Fifth Ave. NY, NY 10036

41) John Lauria
   Address: 330 East 90th St. Apt. 5D NY, NY 10128

42) Don Arrup
   Address: 330 West 95th St. NY, NY 10025

43) Ilona Kolonyuk
   Address: Unkown

44) Dee Lakhani
   Address: 270 Park Ave. NY, NY 10017

45) Barbara Zimmer
   Address: 270 Park Ave. NY, NY 10017

46) Dr. Richard Koffler   (MD)
   Address: 61 Broadway Suite 900 NY, NY 10006

47) Sasha Serman
   Address: 270 Park Ave. NY, NY 10017

48) Rocco Manziano        (MD)
   Address: Unknown

49) Luis Nin
   Address:Unknown

4

50) Crystall Nuchurch

Address: Can't locate

51) Mike Ready

Address: 300 East 64th St. NY, NY 10021

52) Neal Shikes

Address: 235 East 87 St. Apt. 4J New York, NY 10128

53) Brian Steiner

Address: 380 Lexington Ave. suite 2020 NY, NY 10168

54) Chris Carera

Address: 55 Water St. NY, NY 10041

55) Andrew Zomick        (MD)

Address: 61 Broadway Suite 900 NY, NY 10006

56) Terrence McDevitt     (MD)

Address: 61 Broadway Suite 900 NY, NY 10006

*THE NUMBERS USED NEXT TO THE WITNESSES NAMED ABOVE ARE UTILIZED BELOW TO INDICATE WHICH WITNESSES' NAMES ARE RESPONSIVE TO THE INTERROGATORIES WHICH FOLLOW*

**INTERROGATORY NO. 2**

Identify all persons with knowledge or information concerning the allegation that Plaintiff "sought medical attention and was advised that sitting for long periods of time was the cause of the problem," as set forth in Paragraph "7" of the Complaint.

**RESPONSE**

1-6, 9-13, 18-20, 21-22, 31, 31, 34, 38, 41, 43-45, 47, 49, 50-54

**INTERROGATORY NO.3**

Identify all persons with knowledge or information concerning the allegation that "[u]pon her transfer to Water Street, plaintiff's workload increased substantially, making it difficult to take breaks and walks," as set forth in Paragraph "8" of the Complaint.

**RESPONSE**

2-4, 9-13, 21, 22, 25, 31, 32, 34, 41, 43, 45, 47, 49, 50, 52, 56

**INTERROGATORY NO. 4**

Identify all persons with knowledge or information concerning the allegation that Plaintiff's "hip pain worsened and plaintiff's physician recommended that her employer accommodate her by providing her with a `standing desk'," as set forth in Paragraph "8" of the Complaint.

**RESPONSE**

2-5, 9-13, 21, 23, 25, 31, 32, 34, 38, 41, 43, 44, 45, 47, 49, 52, 53, 54

**INTERROGATORY NO. 5**

Identify all persons with knowledge or information concerning the allegation that "[o]n or about February 24, 2005, plaintiff presented a medical note to Barbara Zimmer, her Human Resources representative, requesting that she be accommodated with the standing desk," as set forth in Paragraph "9" of the Complaint.

**RESPONSE**

2-5, 9-13. 1, 22, 25, 31, 32, 34, 38, 41, 43, 44, 45, 47, 49, 52, 53, 54

**INTERROGATORY NO. 6**

Identify all persons with knowledge or information concerning the allegation that "[d]espite repeated inquiries by plaintiff, she learned on April 14, 2005 that the desk had not been ordered," as set forth in Paragraph "10" of the Complaint.

**RESPONSE**

2-5, 6, 9-13, 21, 22, 25, 31, 32, 34, 38, 41, 43, 44, 45, 47, 49, 52, 53, 54


**INTERROGATORY NO. 7**

Identify all persons with knowledge or information concerning the allegation that "Plaintiff contacted the Human Resources Medical Department which immediately directed plaintiff's manager to order the standing desk," as set forth in Paragraph "10" of the Complaint.

**RESPONSE**

2-5,13, 21, 22, 25, 31, 32, 34, 38, 41, 43, 44, 45, 47, 49, 52, 53, 54


**INTERROGATORY NO. 8**

Identify all persons with knowledge or information concerning the allegation that "[u]pon her return, she was placed at a 'service desk,' in the back of the branch, which was not constructed in such a way as to alleviate the pressure which was causing plaintiff's hip pain," as set forth in Paragraph "12" of the Complaint.

**RESPONSE**

2, 4, 5, 9, 10, 11, 12, 13, 22, 23, 25, 31, 31, 34, 36, 38, 39, 40, 41, 42, 43, 44, 45, 49, 50, 51,

52, 53, 54


**INTERROGATORY NO. 9**

Identify all persons with knowledge or information concerning the allegation that "[o]n June 1, 2005, plaintiff learned that the standing desk had not been ordered and complained to her supervisor, Dee Lakhani, and Human Resources Representative Barbara Zimmer," as set forth in Paragraph "13" of the Complaint.

**RESPONSE**

2-5, 9-13, 21, 22, 23, 25, 31, 32, 334, 35, 38, 41, 43-45, 47, 49, 52, 53, 54

7

**INTERROGATORY NO. 10**

Identify all persons with knowledge or information concerning the allegation that "[s]everal days later, plaintiff was advised that the desk hadn't been ordered because her position was being eliminated," as set forth in Paragraph "13" of the Complaint.

**RESPONSE**

2-5, 9-13, 21, 22, 23, 25, 31, 32, 34, 35, 38, 41, 43-45, 47, 49, 52, 53, 54

**INTERROGATORY NO. 11**

Identify all persons with knowledge or information concerning the allegation that "[o]n or bout June 10, 2005, plaintiff had an MRI done and discovered that she had disc herniations," as set forth in Paragraph "15" of the Complaint.

**RESPONSE**

1-7, 9-14, 17, 18-25, 30, 31, 32, 34, 35, 36-45, 48, 51, 53, 54

**INTERROGATORY NO. 12**

Identify all persons with knowledge or information concerning the allegation that Plaintiff's "physicians ordered her to stop work immediately," as set forth in Paragraph "15" of the Complaint.

**RESPONSE**

2-5, 9-13, 21, 22, 23, 25, 31, 32, 34, 35, 38, 41, 43-45, 47, 49, 52, 53, 54

**INTERROGATORY NO. 13**

Identify all persons with knowledge or information concerning the allegation that "[a]fter two months of physical therapy plaintiff's pain continued; further tests showed that the lining in her left hip was torn and that cysts and a bone spur had developed on her femur," as set forth in Paragraph "15" of the Complaint.

8

**RESPONSE**

**INTERROGATORY NO. 14**

Identify all persons with knowledge or information concerning the allegation that "Plaintiff's inability to work since June 2005 was a proximate result of defendant's failure to provide a reasonable accommodation for her disability," as set forth in Paragraph "16" of the Complaint.

**RESPONSE**

1-7, 9-20, 21-23, 25-46, 40-54, 55, 56

**INTERROGATORY NO. 15**

Identify all persons with knowledge or information concerning the allegation that "plaintiff, as a proximate result of defendant's failure to accommodate her disability, has suffered from severe hip and back pain," as set forth in Paragraph "17" of the Complaint.

**RESPONSE**

1-56

**INTERROGATORY NO. 16**

Identify all persons with knowledge or information concerning the allegation that Plaintiff, "as a result of the extended period of severe pain and inability to work, has suffered from emotional distress, with additional attendant physical consequences," as set forth in Paragraph "17" of the Complaint.

**RESPONSE**

1, 4, 5, 6, 7, 19, 22, 23, 25, 26, 28, 31, 33, 35, 36, 38, 40, 42, 46, 48, 51, 52, 55, 56

**INTERROGATORY NO. 17**

Identify all persons with knowledge or information concerning the allegation that "Plaintiff, as a result of defendant's action, has suffered a loss of wages and benefits and suffered severe emotional distress, to her injury, in an amount exceeding $2 million," as set forth in Paragraph "21" of the Complaint.

**RESPONSE**

1, 2, 4, 5, 6, 7, 9, 10, 15, 16, 19, 23, 25, 31, 33, 34, 35, 36, 38, 39, 40, 52, 53

**INTERROGATORY NO. 18**

Identify all persons with knowledge or information concerning the allegation that "[b]y proceeding against plaintiff as described hereinabove, defendant acted with malice, or with reckless disregard for plaintiff's health and well being," as set forth in Paragraph "22" of the Complaint.

**RESPONSE**

1-7, 9-23, 25-36, 38, 40-43, 47, 49, 50, 52-54

**INTERROGATORY NO. 19**

Identify each person Plaintiff or her representatives have contacted or interviewed in connection with this action.

**RESPONSE**

1, 2, 4, 5, 15, 16, 17, 34

**INTERROGATORY NO. 20**

Identify any and all experts contacted or retained by Plaintiff for purposes of this litigation.

**RESPONSE**

10

Plaintiff has not contacted any expert.


### INTERROGATORY NO. 21

Identify each and every physician, psychiatrist, psychologist, therapist, social worker, counselor, or other health care professional of any type consulted by Plaintiff with respect to any physical, mental, or other condition at any time since January 1, 2004.

### RESPONSE

20-23, 25-30, 46, 55,, 56


### INTERROGATORY NO. 22

Excluding JP Morgan Chase, identify in chronological order all entities or persons from or with whom Plaintiff sought work or employment, either as an employee, consultant, or independent contractor, since January 1, 2004.

### RESPONSE

Plaintiff has not sought employment.


### INTERROGATORY NO. 23

Excluding JP Morgan Chase, identify each entity or person for whom Plaintiff performed work or provided services for compensation of any kind (including, but not limited to, any self employment) since January 1, 2004.

### RESPONSE

Plaintiff has not provided services for compensation to any entity other than defendant since January 1, 2004.

### INTERROGATORY NO. 24

Set forth the dollar amount and an itemized computation of each category of damages which Plaintiff claims to have suffered as a result of Defendant's actions and state the

maximum amount of damages Plaintiff claims for each type of damage.

**RESPONSE**

Such a computation has not been completed

**INTERROGATORY NO. 25**

Identify all email and instant message service providers, email addresses and screen names used by Plaintiff during the period from January 1, 2004 through the present.

**RESPONSE**

Dated:  August 24, 2007

                        SCHWARTZ, LICHTEN & BRIGHT, P.C.
                        Attorneys for Plaintiff

                        By: ------------------------------------------
                            Arthur Z. Schwartz
                            275 Seventh Avenue, 17th Floor
                            New York, New York  10001
                            (212) 228-6320

12

**Defendant's Reply Exhibit 14**





GROUP BENEFITS

JUN 19 2007

# SCHWARTZ, LICHTEN & BRIGHT PC
## Attorneys at Law

275 Seventh Avenue   Suite 1700
New York, New York 10001
Phone 212 228 6320   Facsimile 212 358 1353

Arthur Z Schwartz*
Stuart Lichten
Daniel R Bright
*Also admitted in Pennsylvania

June 15, 2007

Benefit Management Services
The Hartford
Maitland Claim Office
P.O. Box 946710
Maitland, Florida  32794-6710

Re:   Susan Pinsky
      Claim No. GLT675174
      SS No. 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

Dear Sir/Madam:

This office represents Susan Pinsky in litigation involving the injury which resulted in this disability claim.

On April 6, 2007, Ms. Pinsky had surgery designed to give her some relief from her disability. Her recovery has gone well and she hopes to be able to return to work soon, although with limitations.  Please advise us what steps she needs to take to bring about an orderly and timely cessation of the benefits as she returns to work with JP Morgan Chase.

Sincerely,

Arthur Z. Schwartz

AZS:dr

cc:   Susan Pinsky

**Defendant's Reply Exhibit 15**

06/28/2007  10:41    4079195000               HARTFORD                                PAGE  02/03



**THE HARTFORD**

June 28, 2007

Dr. Bryan Nestor
P: 212-606-1484
F: 212-774-2236

Policy Holder:     Jpmorgan Chase Bank
Claimant:          Susan Pinsky
Policy Number:     GLT675174

Dear Dr. Nestor:

We are evaluating a claim for Long Term Disability (LTD) benefits on behalf of your patient.

In order to properly evaluate this claim, we need additional information. Please provide the following information:

1. What type of full time work do you feel that Susan Pinsky is now capable of performing?

☐ **Very Heavy** – Exerting in excess of 100 pounds of force occasionally and/or in excess of 50 pounds of force frequently and/or in excess of 20 pounds of force constantly to move objects.

☐ **Heavy** – Exerting 50 to 100 pounds of force occasionally and/or 25 to 50 pounds of force frequently and/or 10 to 25 pounds of force constantly to move objects.

☐ **Medium** – Exerting 20 to 50 pounds of force occasionally and/or 10-25 pounds of force frequently and/or greater than negligible up to 10 pounds of force constantly to move objects.

☒ **Light** – Exerting up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently and/or a negligible amount of force constantly to move objects. Even through the weight lifted may only be a negligible amount, a job should be rated Light work when it requires walking or standing to a significant degree or when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls and/or when the job requires working at a production rate pace entailing constant pushing and/or pulling of materials even though the weight of those materials is negligible.

☐ **Sedentary** - Exerting up to 10 pounds of force occasionally and/or negligible amount of force frequently to lift carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

☐ **No Work**

Benefit Management Services
Maitland Claim Office
P.O. Box 946710
Maitland, FL 32794-6710
Fax (407) 919-6329

07/10/2007   2:36PM

2. What are your patient's permanent restrictions and limitations?   _A v o i d    He_
_w o r k_

3. Please send us all medical records from 04/2007 to the present.

Physician's Signature _____  Specialty _O R T A O_   Date _7/10/07_

To permit you to honor our request, we are enclosing a signed authorization to release medical information. Please be assured that we will honor a reasonable fee for necessary clerical expenses in complying with our request promptly upon its receipt. Finally, include your tax identification number with all fee requests.

If you have any questions, please feel free to contact our office at Toll Free (800) 741-4306, x6726. Our office hours are 8:00 AM to 8:00 PM EST, Monday through Friday.

Sincerely,

Jennifer M. Saucrhoff, Examiner
Hartford Life and Accident Insurance Co.

Benefit Management Services
Maitland Claim Office
P.O. Box 946710
Maitland, FL 32794-6710
Fax (407) 919-6329

07/10/2007   2:36PM

# Pinsky Deposition Transcript

<u>Susan Pinsky v. JP Morgan Chase & Co.</u>

<u>Summary Judgment Reply Deposition Transcript Index</u>

<u>Deposition of Susan Pinsky</u>

<u>Tab</u>

1.      Page 95

2.      Page 63

3.      Pages 64-66

4.      Page 112

5.      Page 13

6.      Page 38

7.      Page 41

Susan Pinsky

Page 95

1                           Pinsky

2    the back injury that was the basis for the

3    Workers' Comp claim was in March 2005.  Is

4    that not correct?

5          A.    I just didn't read it that way.

6                At the time I kind of combined

7    them all, it was the end of November, December

8    was when I started having pain in my hip, and

9    that's what I was relating that to.

10         Q.    What happened with your Workers'

11   Compensation claim?

12         A.    I canceled it.

13         Q.    You canceled it?

14         A.    Yes.

15         Q.    When was that?

16         A.    Oh God.

17         Q.    You can approximate.

18               MR. SCHWARTZ:  If you remember.

19         A.    A few months before my surgery, a

20   few months before April, I believe.

21         Q.    Of 2007?

22         A.    Yes.

23         Q.    Do you think it was in 2007 or was

24   it in 2006?

25         A.    Anywhere between the last month of

Susan Pinsky

1                    Pinsky

2    was with a bunch of us where she like, she

3    didn't discuss it in full.  I think it was

4    supposed to be a meeting about discussing it

5    in full, but that's not what happened.  She

6    just kind of ran through it and said basically

7    ba, ba, ba, sign it and I'll help you get a

8    job, you will get your severance pay.  So it

9    wasn't gone over line by line where everything

10   was explained in detail.

11        Q.    So it was your understanding you

12   could both get a new job with the bank and get

13   your severance pay?

14        A.    No, it was one or the other.  They

15   would help me get a new job was part of

16   signing this.  If I got the new job I would

17   not get the severance pay, but if I God forbid

18   if I didn't find another job, then I would get

19   the severance pay, I believe that's what my

20   understanding was.

21        Q.    Did anyone during this period ever

22   tell you that you were guaranteed to get a new

23   job with the bank?

24        A.    No.

25        Q.    What, if anything, were you told

Susan Pinsky

Page 64

1                         Pinsky

2    about your chance of obtaining a new position

3    with the bank?

4         A.     That they were excellent.  That

5    they would help me like she actually promised

6    us to get us an interview in any area we were

7    interested in.

8         Q.     Okay.

9                In order to obtain a position,

10   what would you have to do?

11        A.     I would have to qualify for it.

12        Q.     What else, would just having the

13   qualification be enough to get you a position?

14        A.     No, it would get my foot in the

15   door.  I have to go through the process the

16   same as everyone else.

17        Q.     By the same as everyone else you

18   mean interviewing and persuading the hiring

19   person they should hire you and persuading

20   yourself that it is a job you wanted?

21        A.     Yes.

22        Q.     Anything else besides that?

23        A.     I'm sorry, she did guarantee us a

24   job in the mortgage department if we wanted

25   one, and she said set us up in a meeting with

Susan Pinsky

Page 65

1                        Pinsky

2      three, two or three gentlemen from the

3      mortgage department to discuss if that's what

4      we wanted to go into.

5           Q.    That was Ms. Lakhani again?

6           A.    Yes.

7                 That was a guaranteed position, I

8      apologize, I haven't thought about it in a

9      long time.

10          Q.    What specifically did she say in

11     terms of guaranteeing you a position?

12          A.    She said if we wanted a job as a

13     mortgage brother that she could get us in, she

14     guaranteed us a position in there, but

15     after --

16          Q.    You said there were three other

17     people?

18          A.    Well, there was her who promised

19     us that then we met with them, I believe it

20     was two gentlemen or three gentlemen who were

21     from the mortgage department who basically

22     gave us the rundown of what was going on in

23     their division and about the job and whatnot

24     and gave us an explanation of it.

25          Q.    Can you recall who any of those

Susan Pinsky      .

Page 66

1                      Pinsky

2    people were?

3         A.    No, I don't.

4         Q.    Do you recall when you met with

5    them?

6         A.    Had to have been in May.

7         Q.    Do you recall what they said about

8    your chances or anyone else's chances of

9    obtaining a position in their department?

10        A.    Yes.

11        Q.    What was that?

12        A.    If we were interested to contact

13   them and they would get us on our way.

14        Q.    Were you interested in such a

15   position?

16        A.    No.

17        Q.    Why not?

18        A.    Because they made it clear that

19   the business wasn't really there, that we

20   wouldn't make much money.

21               It was changing, they were

22   bringing on more mortgages brokers and

23   territories were being split up.  So it wasn't

24   financially that great a position.

25        Q.    Do you recall who else was present

Susan Pinsky

Page 112

```
 1                    Pinsky
 2    the words, management team?
 3         A.    Yes.
 4         Q.    Further down you see your name?
 5         A.    Yes.
 6         Q.    Could you read that section about
 7    yourself?
 8         A.    Chief administration officer --
 9         Q.    You don't have to read it out
10    loud, I wanted you to read it so you're
11    familiar with what it says.
12         A.    Oh, I'm already with familiar with
13    that, thanks.
14         Q.    Do you know who wrote this
15    paragraph?
16         A.    I helped write it.
17         Q.    Who else worked on it besides
18    yourself?
19         A.    Brent.
20         Q.    Anybody else?
21         A.    I don't think so.
22         Q.    Okay.
23               In that paragraph it states that
24    you recently left your position at JPMorgan
25    Chase.
```

Susan Pinsky

1                        Pinsky

2          A.      Nothing out of the norm.

3                  I filled out the thing, he had

4     already been gone for six months, excuse me,

5     six years, so I think that we proceeded on

6     him, I forgot what the legal terminology is

7     but I guess some sort of abandonment.  There

8     was nothing to file aside from that except the

9     regular documentation they had me file.

10         Q.      In the lawsuit against the

11    construction company, did you testify either

12    at hearing or trial?

13         A.      Nothing.

14         Q.      Have you ever been sued?

15         A.      No.

16         Q.      You understand that the testimony

17    that you are giving today is for use in your

18    lawsuit against JPMorgan Chase Bank?

19         A.      Yes.

20                 Can I talk to my lawyer for a

21    second?

22                 MR. LIEBERMAN:  Since there is no

23            question pending, you may.

24                 MR. SCHWARTZ:  Thank you.

25                 MR. LIEBERMAN:  Off the record.

Susan Pinsky

Page 38

```
 1                    Pinsky

 2    for other companies?

 3         A.    I became so after I was sued.

 4         Q.    In this lawsuit?

 5         A.    In this lawsuit.

 6         Q.    Okay.

 7               Are you familiar with any of the

 8    code of conduct provisions regarding

 9    investments in other companies?

10         A.    No.

11         Q.    Are you familiar with any of the

12    code of conduct's provisions regarding being

13    an officer of another company?

14         A.    I was made aware of that after I

15    was sued by Chase.

16         Q.    In this lawsuit?

17         A.    In this lawsuit.

18         Q.    Did you ever affirm the code of

19    conduct?

20         A.    What does that mean?

21         Q.    Did you ever acknowledge that you

22    had read it and understood its obligations and

23    agreed to abide by them?

24         A.    I signed off on it.

25         Q.    Okay.
```

Susan Pinsky

1                    Pinsky

2        Q.    Okay, thank you.

3              I had also asked you whether you

4    had ever affirmed the code of conduct and you

5    had indicated that you had acknowledged it I

6    think in some way, I'm not sure if that was

7    your word.

8        A.    I think I may have scanned over it

9    but I never read it from front to back.

10             MR. LIEBERMAN:  If you can mark

11        this as Defendant's Exhibit 3, for

12        identification.

13             (Defendant's Exhibit 3, affirmation

14        form, marked for identification, as of

15        this date.)

16        Q.    Ms. Pinsky, I'm showing you what

17   was marked Defendant's Exhibit 3, for

18   identification.  I ask you do you recall ever

19   seeing this before?

20        A.    I don't remember it.

21        Q.    You don't remember it.

22             Down almost all the way at the

23   bottom on the left side above the line with

24   the word signature there is some handwriting.

25             Is that your signature?

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

SUSAN PINSKY,                                    :

                              Plaintiff,         :          ECF

        - against -                              :          07 Civ. 3328 (CM) (HP)

JP MORGAN CHASE & CO.,                           :          **CERTIFICATE OF SERVICE**

                              Defendant.         :

----------------------------------------------------------X

I hereby certify that on July 18, 2008 I caused a copy of the following documents:

**AFFIDAVITS OF FREDERIC L. LIEBERMAN and
MELISSA CELSO**

**and**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

to be served by Federal Express overnight delivery directed to the attorney of plaintiff at the

following address:

Arthur Z. Schwartz, Esq.
Schwartz, Lichten & Bright, P.C.
275 Seventh Avenue, Suite 1700
New York, New York 10001

Dated: New York, New York
        July 18, 2008

Frederic L. Lieberman (FL 9454)

163400:v1