UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SUSAN PINSKY,

       Plaintiff,

   - against -                                   07 Civ. 3328 (CM)(HP)

JP MORGAN CHASE & CO.,

       Defendant.

------------------------------------------------------------x

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/10/08
```

### DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO ITS COUNTERCLAIMS

McMahon, J.:

    On February 14, 2008, I issued an opinion granting defendant's motion for summary judgment dismissing plaintiff's complaint. Several days earlier, defendant had withdrawn its motion, so that it could file a revised motion, one that also sought summary judgment on its counterclaims against plaintiff. I therefore withdrew my February 14 opinion and the parties submitted new briefs addressing both the old and the new issues raised by the revised motion.

    Nothing in the revised summary judgment papers leads me to believe that I erred by granting summary judgment dismissing the complaint in the February 14 opinion. I am reissuing that opinion under today's date. The plaintiff's complaint is dismissed in accordance with that opinion.

    In this companion opinion, I will address whether defendant is entitled to summary judgment on its counterclaims. I conclude that it is not.

    The following facts are undisputed:

    Plaintiff Susan Pinsky was first employed by Chase Investment Services Corp., an affiliated entity of defendant, in November 2002, as an Assistant Personal Financial Advisor. She was then hired by JP Morgan Chase Bank, effective February 1, 2004, as a Home Equity Loan Officer. On May 20, 2005, plaintiff's manager gave plaintiff written notice that her position was being eliminated and that her employment was to be terminated as of July 18, 2005.

    In the May 20 letter, defendant offered plaintiff seven weeks' severance pay if she did not obtain another position with JP Morgan Chase prior to her termination date. The offer of

severance was conditioned on the execution of a Release Agreement, which plaintiff executed on June 24, 2005.

On June 13, 2005, plaintiff began a short-term disability leave due to a disc herniation and associated complications. Although plaintiff's job no longer existed after July 18, 2005, plaintiff could not be fired as of that date, because she was out on disability. Nor did her employment end when her short term disability benefits expired; on December 12, 2005, plaintiff was approved for a long-term disability leave of absence, and it was against company policy to fire an employee who was out on disability leave.

During the entire period of her disability leave, plaintiff received medical and dental benefits at employee cost, rather than at COBRA cost (which is greater), as well as vision, life insurance and other benefits under various JP Morgan benefits plans. JP Morgan Chase has paid for some of plaintiff's medical and dental bills. All these advantageous benefits, which plaintiff received well into 2007, would have come to an end had plaintiff lost her job when it was eliminated. She received them only due to the fact that she was out on disability when her position was eliminated.

On July 10, 2007, Plaintiff's physician, Dr. Bryan J. Nestor of the Hospital for Special Surgery, cleared Pinsky to return to work effective September 1, 2007. On July 16, 2007, plaintiff's attorney forwarded Dr. Nestor's note to defendant, and announced, "Ms. Pinsky will be able to return to work, with accommodation, as of September 1, 2007."

After receiving the note and letter, JP Morgan Chase's long term disability carrier determined that plaintiff was no longer disabled and terminated Pinsky's disability leave as of July 10, 2007. Plaintiff's term of employment automatically ended when her disability period expired.

While she was out on disability leave from JP Morgan Chase, plaintiff invested in Tri-State Biodiesel LLC, an alternative fuel company, and served as its Chief Administration Officer. Plaintiff did not receive pre-clearance from JP Morgan Chase regarding her affiliation with Tri-State. Although plaintiff states that she became involved with Tri-State after she was "out for a year" on disability (Pinsky Decl. ¶ 21) – which would have been sometime during 2006 – defendant did not learn of the affiliation until April 20, 2007, after this case commenced (Pl. Rule 56.1 Stmt. ¶ 103).

**The Instant Action and Motion**

On March 27, 2007, plaintiff filed a complaint in the Supreme Court of the State of New York, alleging claims of disability discrimination under the New York State Human Rights Law and the New York City Human Rights Law. Defendant removed the action to this court on April 26, 2007. The ground for removal was diversity of citizenship under 28 U.S.C. § 1332. Plaintiff did not seek remand, but instead served an amended complaint, adding a cause of action under the Americans with Disabilities Act.

JP Morgan Chase answered the complaint and countersued for fraud, unjust enrichment, and breach of contract. Defendant alleges that, by taking a position as Chief Administration Officer of Tri-State while she was on disability leave, plaintiff violated the terms of JP Morgan Chase's Code of Conduct by failing to request or receive pre-clearance from JP Morgan before performing services for Tri-State. Plaintiff also allegedly failed to notify either defendant (so it could terminate her employment) or defendant's plan coordinator (so she could be removed from long term disability status) that she had regained her ability to work. Defendant alleges that plaintiff was unjustly enriched by her receipt of benefits after the period when -- had JP Morgan Chase known she was able to work – plaintiff would have been fired. Defendant seeks a refund of all monies it has expended on plaintiff (for insurances, etc.) for any period when plaintiff was able to work.

**Discussion**

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court views the record in the light most favorable to the non-movant and resolves all ambiguities and draws all reasonable inferences against the movant. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987).

**1. Fraud**

Under New York law, defendant must establish the following five elements of a fraud claim by clear and convincing evidence: (1) a material misrepresentation or omission of fact; (2) made by plaintiff with knowledge of its falsity; (3) and an intent to defraud; coupled with (4) reasonable reliance on the representation by the defendant; and (5) resulting damage to defendant. Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006) (citation omitted). Here, there is a disputed issue of fact concerning whether plaintiff made a material representation of fact by representing that she was "disabled" within the meaning of defendant's policy while being associated with Tri-State.

Defendant alleges that the material misrepresentation or omission was that, while out on disability leave, plaintiff was not fully disabled and was able to work, as evidenced by her involvement with Tri-State. However, plaintiff argues that she was unable to work within the meaning of the plan during her affiliation with Tri-State, because she "could not sit and had to lie down during meetings," so she could only proofread papers and complete simple forms. (Pl. Rule 56.1 Stmt. ¶ 22.)

The JP Morgan Chase disability policy defines "disability" as "a period of illness or injury that continues for eight or more consecutive calendar days, during which you are unable to perform all of the material and substantial duties of your position, on an active employment basis. You must be under the care of a licensed physician during this time . . . ." (Def. Rule 56.1 Stmt., Ex. 26 at 1.)

The JP Morgan Chase policy is notable because it does not define "disability" as a total inability to work at any employment, but as the inability to perform the duties of the plaintiff's specific position. Therefore, the policy does not absolutely preclude a person who is out on disability from performing alternative work, and the fact that plaintiff was performing services for Tri-State does not in and of itself establish that she was capable of performing "all of the material and substantial duties of" her regular position at JP Morgan Chase. As JP Morgan Chase offers only plaintiff's affiliation with Tri-State as "proof" of her alleged misrepresentation, it fails to establish that it is entitled to judgment as a matter of law on its fraud claim.

### 2. Breach of Contract

Under New York law, to establish a claim for breach of contract defendant must prove: (1) the existence of a contract; (2) breach of the contract by plaintiff; and (3) damages suffered as a result of the breach. See, e.g., Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir. 2000). Although defendant has proved that plaintiff breached JP Morgan Chase's Code of Conduct, defendant has not established that it is entitled to summary judgment on this claim, either.

JP Morgan Chase's Code of Conduct provides that as an employee, "[Y]ou are required to pre-clear . . . whether or not you will be paid, any affiliation with another business as a[n] . . . officer . . . ." (Pl. Rule 56.1 Stmt. ¶¶ 97-99.) Plaintiff was required to affirm her understanding of, and compliance with, the Code of Conduct on a recurring basis, and did so in 2002, 2003, and 2005. (Id. ¶ 100-01.) Compliance with the Code of Conduct is a term and condition of employment by JP Morgan Chase. Plaintiff understood that she was still an employee of JP Morgan Chase while out on disability, and therefore required to comply with the Code. (See id. ¶¶ 93-95.) Moreover, the Disability Leave Policy provides that an employee can be fired, even during a disability leave, for a Code of Conduct violation: "Your employment may be terminated if it determined that you, either before or during your leave, committed a material violation of the firm's Code of Conduct." (Def. Rule 56.1 Stmt., Ex. 26 at 7.)

Plaintiff does not dispute that she was the Chief Administration Officer of Tri-State Biodiesel LLC and listed on the company's website as such. (Id. ¶¶ 104, 108.) Plaintiff's position as an officer of Tri-State while employed by, and without pre-clearance from, JP Morgan Chase is a clear violation of the Code of Conduct and the terms and conditions of her employment. However, JP Morgan has not established, by undisputed evidence, that plaintiff's violation qualifies as "material." Unless the violation was "material," JP Morgan Chase did not have any option to fire plaintiff for committing it. For this reason, it seems odd that the concept of the materiality of the breach is not even mentioned in the defendant's motion paper.

Furthermore, the option to fire is clearly that – an option that JP Morgan Chase can elect to exercise or not ("Your employment 'may' be terminated," not "Your employment 'will' be terminated"). Plaintiff points out that defendant learned of her affiliation with Tri-State in April 2007, but did not fire her until September. This was after the disability carrier determined that plaintiff was no longer disabled, and coincident with the date when her doctor stated she would no longer be disabled. One could infer from this evidence that plaintiff was fired, not because she violated the Code of Conduct, but because she was no longer disabled within the meaning of

the policy. That raises a disputed issue of fact as to whether JP Morgan Chase would in fact have fired plaintiff as soon as she became affiliated with Tri-State if it had known about the violation.

Both of these issues of fact are material because defendant must prove that it was damaged in order to prevail on a claim for breach of contract. JP Morgan contends that it was damaged because it continued to provide Pinsky with insurance and other employment benefits during a period when she was not actually entitled to them – because she would and should have been fired during that period. Whether she would have been fired is the most material of issues, and it is very much disputed. Therefore, there are disputed issues of material fact about the damages suffered by defendant.

### 3. Unjust Enrichment

To prevail on a claim for unjust enrichment under New York law, defendant must establish: (1) that plaintiff benefited (2) at defendant's expense, and (3) that equity and good conscience require restitution. Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006) (citation omitted). Defendant's unjust enrichment counterclaim fails for the same reasons that its fraud and breach of contract counterclaims fail.

Defendant's argument in favor of summary judgment on the unjust enrichment claim parallels the arguments made in support of its fraud and breach of contract claims: at some point during the period that plaintiff was out on disability she ceased to be disabled; the proof of the pudding is that she was working for Tri-State; she would have ceased receiving certain benefits once fired; to the extent she received benefits from and after the time she became associated with Tri-State, she was unjustly enriched. For the reasons explained above, there are disputed issues of material fact that bar summary judgment on this claim as well.

### Conclusion

For the foregoing reasons, defendant's motion for summary judgment as to its counterclaims is denied.

Dated: New York, New York
September 10, 2008

_____
U.S.D.J.

BY ECF TO ALL COUNSEL